## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Joint Administration Requested) |

## DEBTORS' MOTION
## FOR ENTRY OF INTERIM AND FINAL
## ORDERS (I) AUTHORIZING THE DEBTORS TO CONTINUE
## THEIR INSURANCE POLICIES AND PAY ALL OBLIGATIONS IN RESPECT
## THEREOF, (II) AUTHORIZING THE DEBTORS' BANKS AND OTHER FINANCIAL
## INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS
## RELATED THERETO, AND (III) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (the "Debtors") hereby file this motion (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as **Exhibit B** (the "Interim Order") and **Exhibit C** (the "Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew the Insurance Policies (as defined below) and pay the Insurance Obligations (as defined below) arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business, (ii) authorizing the Debtors' banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of John Faieta in Support of*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

*Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.        The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.        Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The statutory and legal predicates for the relief sought herein are  sections 105(a), 363(b), and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

4.        On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The

---

[2]    Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed in these Chapter 11 Cases and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## RELIEF REQUESTED

7.      By this Motion, the Debtors request entry of the Proposed Orders authorizing the Debtors to (i) maintain the Insurance Policies, including, but not limited to, those listed on **Exhibit A** hereto, on an uninterrupted basis in accordance with their practices and procedures in effect prior to the Petition Date (including by renewing the Insurance Policies or obtaining replacement coverage as needed in the ordinary course of business without further Court approval) and (ii) pay, in their sole discretion, all undisputed premiums,[3] claims, retrospective adjustments, administrative and broker's fees, Insurance Finance Obligations (as defined below), and all other obligations relating to the Insurance Policies, in each case, that were or are due and payable, whether relating to the period prior to or following the Petition Date (collectively, the "Insurance Obligations").  As of the Petition Date, the Debtors do not owe any outstanding Insurance Obligations.

8.      The Debtors also request that the Court authorize the Banks at which the Debtors maintain disbursement accounts to receive, honor, process, and pay, to the extent of funds on

---

[3]    By this Motion, the Debtors do not seek the authority to pay premiums in connection with their Workers Compensation Insurance Policies.  Such relief is requested in the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and (B) Maintain Employee Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

deposit, any and all checks drawn or electronic fund transfers requested or to be requested by the Debtors relating to the Insurance Policies or the Insurance Obligations.

## THE INSURANCE POLICIES AND RELATED OBLIGATIONS[4]

### I.   The Insurance Policies

9.      In connection with the operation of their business, the Debtors maintain eleven (11) insurance policies (the "Insurance Policies") through several different insurance carriers (the "Insurance Carriers").[5]  The Insurance Policies provide coverage for liabilities relating to, among other things, commercial general liability, directors' and officers' liability (including tail coverage), and cyber liability. Continuation of the Insurance Policies is essential to the operation of the Debtors' business and is necessary to protect the Debtors from various types of liability.

10.     The Debtors are required to pay premiums under the Insurance Policies based upon rates established by the applicable Insurance Carrier.  For the 2023-2024 policy period, the annual premiums for the Insurance Policies total approximately $1,700,000[6] in the aggregate.  Payments made in connection with the Insurance Policies are prospective.  The Debtors pay such premiums either directly to an Insurance Carrier or, as described in greater detail below, to their Insurance Lender (as defined below) under an insurance premium financing agreement (the "Premium Financing Agreement") that facilitates the prepayment of the annual premiums associated with certain of their directors' and officers' liability Insurance Policies.  The Debtors believe that there are no outstanding amounts owed under the Insurance Policies.

---

[4]   The descriptions of the Insurance Policies provided herein is intended only as a summary, and the actual terms of the foregoing shall govern in the event of any inconsistency with the descriptions set forth herein.

[5]   A list of the Insurance Policies and Insurance Carriers is attached hereto as **Exhibit A**.

[6]   This number equals approximately the total amount of annual premiums due on the Insurance Policies listed in **Exhibit A**, provided, however, this number does not include any applicable runoff premiums in respect of the Debtors' directors' and officers' tail coverage.

11.     Moreover, in the ordinary course of business, the Debtors obtain brokerage services from Marsh USA Inc. (the "Broker"). The Broker assists the Debtors in obtaining comprehensive insurance for the Debtors' operations by, among other things, managing renewal data, assisting the Debtors with the procurement and negotiation of the Insurance Policies, marketing the Insurance Policies, enabling the Debtors to obtain such policies on advantageous terms at competitive rates under the Premium Financing Agreement, and providing ongoing support throughout the applicable policy periods. The Debtors do not pay the Broker directly for its services. Instead, in accordance with the relevant insurance policy, the Broker may receive surplus lines brokers fees directly from the Insurance Carriers. As a result, the Debtors do not have any outstanding prepetition amounts due and owing to the Broker on account of its services.[7]

## II.     The Insurance Premium Financing Agreement

12.     The Insurance Policies are annual policies that require renewal based on when the policy was originally purchased. Certain of the Insurance Policies require the Debtors to prepay the full premium amount for the applicable coverage period. To lessen the financial burden that would be imposed on the Debtors by prepaying the full amount of premiums, the Debtors have financed the premiums for certain of their directors' and officers' liability Insurance Policies through AFCO Acceptance Corporation (the "Insurance Lender").

13.     Pursuant to that certain Premium Financing Agreement with the Insurance Lender, dated April 19, 2023, the Insurance Lender prepaid the aggregate annual amount in premiums due on account of three (3) of the Debtors' directors' and officers' liability Insurance Policies, equal to approximately $1,483,000. In exchange, in April 2023, the Debtors paid the Insurance Lender a

---

[7]     The Broker serves as the agent under the Debtors' Premium Financing Agreement with the Insurance Lender (as defined below).

down payment equal to $127,110.94 and are required to make eleven (11) subsequent installments over a twelve (12) month term, as well as remit a finance charge to the Insurance Lender equal to approximately $42,485.28.  As of the Petition Date, the Debtors have made eight (8) out of eleven (11) payments on account of the Premium Financing Agreement, and the next installment is due on December 23, 2023.

14.     Payments made in connection with the Premium Financing Agreement (collectively, the "Insurance Finance Obligations") are secured obligations, and the Premium Financing Agreement grants the Insurance Lenders a security interest in any and all of the Debtors' (a) unearned premiums or dividends which may become payable for any reason under all insurance policies financed by the Insurance Lender, (b) loss payments which reduce the unearned premiums subject to any mortgagee or loss payee interests, and (c) any interest in any state guarantee fund relating to any financed insurance policy (collectively, the "Insurance Collateral").  Furthermore, in the event of non-payment, the Insurance Lender is appointed as attorney-in-fact for all named insureds under the applicable Insurance Policies, and is granted the authority to, among other things, cancel the applicable Insurance Policies.

15.     As of the Petition Date, the Debtors are current on all Insurance Finance Obligations.  In the Debtors' business judgment, the terms of the Premium Financing Agreement represent the best possible terms for financing the premiums of the Insurance Policies.

**BASIS FOR RELIEF**

I.    **Cause Exists to Authorize the Continuation of the Debtors' Insurance Policies and the Payment of the Debtors' Insurance Obligations Pursuant to Sections 363(c)(1), 363(b)(1), and 105(a) of the Bankruptcy Code.**

16.     Pursuant to section 363(c)(1) of the Bankruptcy Code, the Debtors may "enter into transactions…in the ordinary court of business" and "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The Debtors' request to

continue honoring all obligations under the Insurance Policies on a postpetition basis is consistent with their prepetition practices.  Accordingly, the Debtors are permitted to pay all postpetition amounts due pursuant to the Insurance Obligations and to renew or obtain new policies concerning the same, because such actions are in the ordinary course of the Debtors' business.

17.     To the extent that the Debtors' continuation of the Insurance Policies is outside of the ordinary course of business, section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, in the exercise of its sound business judgment and "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 .U.S.C. § 363(b).  Under section 363(b), courts in this jurisdiction require only that the debtor "show that a sound business purpose" justifies the proposed use of property.  The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code).  When applying the "business judgment" standard, courts show great deference to the debtor's decision making.  See, e.g., Myers v. Martin, 91 F.3d 389, 395 (3d Cir. 1996).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  Comm. of Asbestos-Related Litigants v. Johns-Mansville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); see also In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").  Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

18.     The Debtors submit that continuing to honor the Insurance Obligations enables them to avoid potentially significant liabilities and, therefore, represents a sound exercise of their

business judgment.  More specifically, any interruption in coverage would expose the Debtors to a number of operational and financial risks, including: (i) potentially incurring direct liability for the payment of claims that otherwise would have been covered by the Insurance Policies; (ii) potentially incurring material costs and other losses that otherwise would have been reimbursed, such as attorneys' fees for certain covered claims; (iii) potentially being unable to obtain similar types and levels of insurance coverage on equally favorable terms as the present coverage; and (iv) potentially incurring higher costs for re-establishing lapsed Insurance Policies or for obtaining new replacement policies.  Accordingly, the Debtors respectfully submit that the requirements of section 363(b) are satisfied.

19.     Furthermore, while most of the Insurance Obligations under the Insurance Policies will constitute postpetition obligations of the Debtors' estates, to the extent that there are prepetition Insurance Obligations outstanding, honoring such obligations is necessary and appropriate.  The Debtors respectfully submit that payment of such obligations should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code pursuant to the "doctrine of necessity."  Section 105(a) of the Bankruptcy Code provides that a court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C. § 105(a).  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.  As a result, the Debtors submit that the use of estate funds for payment of the Insurance Obligations is permitted under sections 105(a) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estates.

20.     The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See, e.g., In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to continued operation of the debtor); In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition employee wages and benefits while recognizing the judicial power to authorize a debtor "to pay prepetition claims where such payment is essential to the continued operation of the debtor"); see also In re Just for Feet, Inc., 242 B.R. 821, 824–25 (Bankr. D. Del. 1999) (holding that section 105(a) "provides a statutory basis for the payment of prepetition claims" under the doctrine of necessity and noting that the Supreme Court, the United States Court of Appeals for the Third Circuit, and the United States District Court for the District of Delaware all accept the authority of the bankruptcy court "to authorize payment of prepetition claims when such payment is necessary for the debtor's survival during chapter 11"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation).  The rationale for the "doctrine of necessity" is consistent with the paramount goal of chapter 11: "facilitating the continued operation and rehabilitation of the debtor."  Ionosphere Clubs, 98 B.R. at 176.

21.     The Debtors submit that the payment of the Insurance Obligations is necessary because, as noted above, continuation of the Insurance Policies is essential to continuing uninterrupted operations and preserving the value of the Debtors' business, properties, and assets of the estates.  The nature of the Debtors' business and the extent of their operations make it

essential for the Debtors to maintain their Insurance Policies on an ongoing and uninterrupted basis.  The non-payment of any premiums or related fees due and owing under the Insurance Policies could result in one or more of the Insurance Carriers terminating the Debtors' existing policies, declining to renew the Debtors' policies, or refusing to enter into new insurance agreements with the Debtors in the future.  The Insurance Policies protect the Debtors and other parties in interest from losses caused by, among other things, casualty or other unforeseen events. If the Insurance Policies are allowed to lapse without renewal, the Debtors could be exposed to substantial liability for damages resulting to persons and property of the Debtors and others. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Court is empowered to grant the relief requested herein.  Thus, it is imperative that the Debtors be able to renew, supplement, or purchase insurance coverage on a postpetition basis in the ordinary course of business.

## II.     Continuation of the Premium Financing Agreement and Payment of the Insurance Finance Obligations Is Proper Pursuant to Section 361, 362(d), and 363(e) of the Bankruptcy Code.

22.     Security interests created by insurance premium financing agreements, such as the Premium Financing Agreement, are generally recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  See St. James Inc. v. Cananwill, Inc. (In re St. James Inc.), 402 B.R. 209, 213 (Bankr. E.D. Mich. 2009); In re JII Liquidating, Inc., 344 B.R. 875, 882-84 (Bankr. N.D. Ill. 2006). Sections 361 and 363(e) of the Bankruptcy Code require that "adequate protection" be given to secured parties to the extent of the diminution in value of such a secured creditor's collateral.  See 11 U.S.C. §§ 361, 363(e).  As a secured creditor, the Insurance Lender is entitled to seek adequate protection of the Insurance Collateral, or even to seek relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to cancel the Insurance Policies in accordance with the terms of the Premium

Financing Agreement.  See AICCO, Inc. v. Lisowski (In re Silver State Helicopters, LLC), 403 B.R. 849, 861-63 (Bankr. D. Nev. 2009) (recognizing that a default under the financing arrangement justified relief from the automatic stay).

23.     Pursuant to section 362(d)(1) of the Bankruptcy Code, a court shall grant a secured creditor relief from the stay for cause, which includes the lack of adequate protection of such secured creditor's interest in certain collateral.  See 11 U.S.C. § 362(d)(1).  The passage of time and the Debtors' continued use of the Insurance Policies decrease the value of the Insurance Collateral for the Insurance Lenders.  However, this loss in value is accounted for by the Debtors' payment of the Insurance Finance Obligations.  Accordingly, the Insurance Lender is entitled to the continued payment of the Insurance Finance Obligations because such payments constitute adequate protection of their interests in the Insurance Collateral under sections 361 and 363(e) of the Bankruptcy Code.

24.     Even if the Debtors were successful in preventing the Insurance Lender from lifting the automatic stay to pursue their remedies, such litigation likely would be contested and thus, very costly to the estates.  More importantly, if unsuccessful in any automatic stay litigation, the Debtors may be unable to find another carrier willing to provide them similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.  Thus, the Debtors respectfully submit that continuation of the Premium Financing Agreement and payment of the Insurance Finance Obligations thereunder is proper pursuant to sections 361, 362(d), and 363(e) of the Bankruptcy Code.

### III.     Maintaining the Insurance Policies Is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines.

25.     Pursuant to section 1112(b)(4)(c) of the Bankruptcy Code and the operating guidelines established by the United States Trustee for the District of Delaware (the "U.S.

Trustee"), the Debtors are obligated to remain current with respect to their Insurance Policies. Section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" constitutes "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  Additionally, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the U.S. Trustee.  The Debtors believe that it is essential to their estates, as well as consistent with the Bankruptcy Code and the U.S. Trustee's operating guidelines, that they maintain and continue to make all payments required under their Insurance Policies, and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as necessary, in their business judgment, without further order of the Court.  Accordingly, by this Motion, the Debtors seek authority pursuant to sections 105(a) and 363 of the Bankruptcy Code to honor their Insurance Obligations and continue their Insurance Policies without interruption, as such programs were in effect as of the Petition Date.

**IV.**    **Authorization for the Bank to Honor and Pay Checks Issued and Electronic Funds Transfers Requested to Pay Insurance Obligations Is Warranted.**

26.    The Debtors further request that this Court authorize and direct the Banks to receive, process, honor, and pay any and all checks drawn or electronic funds transfers requested to pay Insurance Obligations, whether such checks were presented prior to or after the Petition Date; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the authorized payment of the Insurance Obligations.  The Debtors also seek authority to issue new postpetition checks, or effect new electronic funds transfers, on account of such claims to replace any prepetition checks or electronic funds transfer requests that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

## SATISFACTION OF BANKRUPTCY RULE 6003

27.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the Petition Date regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

28.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without authorization for the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULE 6004

29.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estate.  Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

30.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## **RESERVATION OF RIGHTS**

31.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their right to contest any invoice with respect to the Insurance Policies or the Insurance Obligations under applicable non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' right to dispute such claim subsequently.

## **NOTICE**

32.     Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) counsel to the Stalking Horse Bidder, prepetition lenders and DIP lenders; (vi) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (vii) the Insurance Carriers; (viii) the Banks; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

[*Remainder of Page Intentionally Left Blank.*]

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: December 8, 2023
       Wilmington, Delaware

Respectfully Submitted,

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**


_/s/ Shane M. Reil_
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com


-and-

**WILLKIE FARR & GALLAGHER LLP** Rachel Strickland (_pro hac vice_ pending)
Andrew S. Mordkoff (_pro hac vice_ pending) Joseph R. Brandt (_pro hac vice_ pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

_Proposed Co-Counsel to the Debtors_
_and Debtors in Possession_

# **EXHIBIT A**

**List of Insurance Contracts**

| INSURANCE CARRIER | INSURANCE PROGRAM | POLICY NUMBER | EFFECTIVE DATE |
|---|---|---|---|
| Ace American Insurance Company (Chubb) | Cyber/E&O | D01792684 | 7/22/2023 |
| Sentinel Insurance Company Ltd (Hartford) | Personal Property, Terrorism, Business Liability, etc. | 72SBABF2369 | 7/28/2023 |
| AIG | D&O (Tail Coverage Included) | 30791318 | 3/23/2023 |
| AIG | Runoff D&O | 02-970-37-97 | 3/23/2023 |
| AIG | Runoff D&O | 02-970-37-99 | 3/23/2023 |
| Allied World | Excess D&O (Runoff Coverage Included) | 3137652 | 3/23/2023 |
| Vantage | Excess D&O (Runoff Coverage Included) | P04ML0000032700 | 3/23/2023 |
| Berkshire Hathaway | Lead Side A D&O (Runoff Coverage Included) | 47EPC32742701 | 3/23/2023 |
| AIG | Excess Side A D&O (Runoff Coverage Included) | 31130534 | 3/23/2023 |
| XL SPECIALTY | Runoff D&O | AXAXLNEARRUN OFF2023 | 11/29/2023 |
| Chubb Insurance Singapore | PI/E&O and CGL | SCM00000043 | 07/16/2023 |

**<u>EXHIBIT B</u>**

**Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Jointly Administered) |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR INSURANCE POLICIES AND PAY ALL OBLIGATIONS IN RESPECT THEREOF, (II) AUTHORIZING THE DEBTORS' BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED THERETO, AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession in the above-captioned chapter 11 case (the "Debtors") for the entry of interim and final orders, pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew the Insurance Policies and pay the Insurance Obligations arising thereunder or in connection therewith, including prepetition obligations arising in the ordinary course of business, (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

and the *Amended Standing Order of Reference* from the United States District Court for the District

of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the

Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient

cause appearing therefor,

    **IT IS HEREBY ORDERED THAT:**

    1.    The Motion is GRANTED on an interim basis as set forth herein.

    2.    **A final hearing on the relief sought in the Motion shall be conducted on**

**[_____], 2023 at [_____] (ET) (the "<u>Final Hearing</u>").**  Any party-in-interest

objecting to the relief sought at the Final Hearing or in the Final Order shall file and serve a written

objection, which objection shall be served upon (i) proposed co-counsel to the Debtors, (a) Willkie

Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Rachel C. Strickland,

Esq. (rstrickland@willkie.com), Andrew S. Mordkoff, Esq. (amordkoff@willkie.com), and

Joseph R. Brandt, Esq. (jbrandt@willkie.com) and (b) Young Conaway Stargatt & Taylor, LLP,

Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn:  Edmon L. Morton,

Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), Shane M. Reil, Esq.

(sreil@ycst.com), and Carol E. Cox, Esq. (ccox@ycst.com); (ii) counsel to any official committee

appointed in these Chapter 11 Cases; (iii) counsel to the DIP Lenders, (a) King & Spalding LLP,

1185 Sixth Avenue, Floor 34, New York, NY 10036, Attn: Roger Schwartz, Esq.

(rschwartz@kslaw.com), Geoffrey King, Esq. (gking@kslaw.com), and Miguel Cadavid, Esq.

(mcadavid@kslaw.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St.,

#1600, Wilmington, DE 19801, Attn: Robert Dehney, Esq. (rdehney@morrisnichols.com),

Matthew     Harvey,     Esq.     (mharvey@morrisnichols.com),     Brenna     Dolphin,     Esq.

(bdolphin@morrisnichols.com) and Austin Park, Esq. (apark@morrisnichols.com); and (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin Hackman, Esq. (Benjamin.a.hackman@usdoj.gov), in each case no later than [_____], 2023 at 4:00 p.m. (ET).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.     The Debtors shall serve a copy of the Motion and this Interim Order on each Insurance Carrier listed on **Exhibit A** to the Motion within five business days after the date this Interim Order is entered.

4.     The Debtors are authorized, but not directed, in their discretion, to pay all Insurance Obligations that were or are due and payable, whether relating to the period prior to or following the Petition Date.

5.     The Debtors are hereby authorized, but not directed, to maintain their Insurance Policies without interruption, on the same basis, and in accordance with the same practices and procedures that were in effect prior to the Petition Date, in their business judgment and at their sole discretion, without further application to this Court.

6.     The Debtors are hereby authorized, but not directed, to renew their Insurance Policies, and to obtain replacement coverage, as needed, in the ordinary course of business without further application to this Court.

7.     The Debtors are hereby authorized, but not directed, to honor any prepetition or postpetition obligations under the Premium Financing Agreement, as needed, in the ordinary courts of business without further application to this Court.

3

8.      The Banks are hereby authorized to receive, process, honor, and pay any checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the Insurance Obligations approved herein, and the costs and expenses incident thereto, whether such checks were presented or such electronic transfer requests were submitted before or after the Petition Date, to the extent funds are available in the Debtors' accounts; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the payment of the Insurance Obligations, or the costs and expenses incident thereto, approved herein.

9.      The Banks are further authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Interim Order.  In no event shall any such bank or other financial institution that takes any such action either (i) at the direction of the Debtors, (ii) in the good faith belief that the Court has authorized such action consistent with the implementation of reasonable item handling procedures or (iii) as a result of an innocent mistake made despite the implementation of reasonable item handling procedures, be deemed in violation of this Interim Order or have liability in connection therewith.

10.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Interim Order and is not cleared by the applicable bank or other financial institution.

11.      Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

4

12.     The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Insurance Policies and Insurance Obligations.

13.     The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

14.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

15.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

16.     Notwithstanding anything to the contrary in this Interim Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

17.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## EXHIBIT C

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR
INSURANCE POLICIES AND PAY ALL OBLIGATIONS IN RESPECT THEREOF,
(II) AUTHORIZING THE DEBTORS' BANKS AND OTHER FINANCIAL
INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS
RELATED THERETO, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors-in-possession

in the above-captioned chapter 11 case (the "Debtors") for the entry of interim and final orders,

pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004,

(i) authorizing, but not directing, the Debtors to continue and, to the extent necessary, renew the

Insurance Policies and pay the Insurance Obligations arising thereunder or in connection therewith,

including prepetition obligations arising in the ordinary course of business, (ii) authorizing the

Banks to honor and process check and electronic transfer requests related thereto, and (iii) granting

related relief; and upon consideration of the Motion and all pleadings related thereto, including the

First Day Declaration; and due and proper notice of the Motion having been given; and having

determined that no other or further notice of the Motion is required; and having determined that

this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors shall serve a copy of the Motion and this Final Order on each Insurance Carrier listed on **Exhibit A** to the Motion within five business days after the date this Final Order is entered.

3.      The Debtors are authorized, but not directed, in their discretion, to pay all Insurance Obligations that were or are due and payable, whether relating to the period prior to or following the Petition Date.

4.      The Debtors are hereby authorized, but not directed, to maintain their Insurance Policies without interruption, on the same basis, and in accordance with the same practices and procedures that were in effect prior to the Petition Date, in their business judgment and at their sole discretion, without further application to this Court.

5.      The Debtors are hereby authorized, but not directed, to renew their Insurance Policies, and to obtain replacement coverage, as needed, in the ordinary course of business without further application to this Court.

6.      The Debtors are hereby authorized, but not directed, to honor any prepetition or postpetition obligations under the Premium Financing Agreement, as needed, in the ordinary courts of business without further application to this Court.

2

7.      The Banks are hereby authorized to receive, process, honor, and pay any checks presented for payment and electronic transfer requests made by the Debtors related to the payment of the Insurance Obligations approved herein, and the costs and expenses incident thereto, whether such checks were presented or such electronic transfer requests were submitted before or after the Petition Date, to the extent funds are available in the Debtors' accounts; provided, however, that such checks or electronic funds transfers are identified by the Debtors as relating directly to the payment of the Insurance Obligations, or the costs and expenses incident thereto, approved herein.

8.      The Banks are further authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Final Order.  In no event shall any such bank or other financial institution that takes any such action either (i) at the direction of the Debtors, (ii) in the good faith belief that the Court has authorized such action consistent with the implementation of reasonable item handling procedures or (iii) as a result of an innocent mistake made despite the implementation of reasonable item handling procedures, be deemed in violation of this Final Order or have liability in connection therewith.

9.      The Debtors are authorized to reissue any check or electronic payment that originally was given in payment of any prepetition amount authorized to be paid under this Final Order and is not cleared by the applicable bank or other financial institution.

10.      Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates;  or (iii) shall be construed as a promise to pay a claim.

11.     The relief granted herein is without prejudice to the Debtors' ability to request further relief related to the Insurance Policies and Insurance Obligations.

12.     The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

13.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon their entry.

14.     Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

15.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.