## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (II) AUTHORIZING THE BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO, AND (III) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (the "Debtors") hereby file this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing the Debtors to maintain, administer, and/or modify their customer programs as described in this Motion and honor certain prepetition obligations related thereto, (ii) authorizing the Debtors' banks and other financial institutions (collectively, the "Banks") to honor and process check and electronic transfer requests related to the foregoing, and (iii) granting related relief.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of John Faieta in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]  Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory and legal predicates for the relief sought herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1.

## BACKGROUND

4.    On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions in the Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration, filed contemporaneously herewith.

## RELIEF REQUESTED

7.      By this Motion, the Debtors seek entry of the Proposed Orders: (i) authorizing the Debtors to maintain and administer their customer-related programs as described in this Motion and honor certain prepetition obligations related thereto, (ii) authorizing the Banks to honor and process check and electronic transfer requests related to the foregoing, and (iii) granting related relief.  A description of each of the Customer Programs (as defined below) is set forth below.  The Debtors estimate that, as of the Petition Date, the Debtors have approximately $150,000 of prepetition obligations owed under or in connection with the Customer Programs.  Notably, as described below, the Debtors' obligations to Customers (as defined below) under the Customer Programs are not satisfied in cash, but are rather netted against the outstanding amounts that Customers owe the Debtors under applicable customer agreements.

## CUSTOMER PROGRAMS

8.      The Debtors are a full stack, data intelligence software as a service (SaaS) platform and provider of enriched data on people and places.  They are a leading provider of privacy-safe consumer movement data and generate revenue by compiling raw data from unique, anonymized user identifications and points of interests, and then curating and providing that data to their customers (the "Customers") through their digital software products.  The Customers pay a fee to access these digital software products.

9.      As described in the First Day Declaration, the Debtors' primary digital products are a marketing intelligence product (AllSpark) and an operational intelligence product (Pinnacle).

AllSpark enables data-driven segmentation and activation for marketing intelligence, including flighting, delivering, and the ability to measure the effectiveness of marketing campaigns. Pinnacle enables Customers to access data that is focused on consumer behavior in and around places, such as restaurants, retail locations, and tourist attractions.

10.     The Debtors' customers include Fortune 500 companies and small to large enterprises across numerous industries, including the restaurant, tourism, automotive, and retail industries.  As the Debtors operate in a competitive market with increasing pressure and quickly evolving technology, it is important for the Debtors to have positive customer relationships and to maintain a reputation for reliability to ensure that the Customers continue to purchase, use, and promote the Debtors' software products.  In addition, it is important for the Debtors to be creative in their sales and marketing practices, as well as accommodating to the Customers so as to attract new business and drive business growth.

11.     Accordingly, prior to the Petition Date and in the ordinary course of business, the Debtors implemented certain customer incentives and accommodations in order to maximize the value of, and maintain their Customer relationships.  These include Rebate Programs and Credit Programs (each as defined below, and collectively, the "Customer Programs").[3]  The Customer Programs promote Customer satisfaction, create goodwill for the Debtors' business, and enhance the value of their brand.  On account of the Customer Programs, the Debtors may owe certain obligations to their Customers arising both before and after the Petition Date (collectively, the "Customer Obligations").

---

[3]     Although this Motion is intended to be comprehensive, the Debtors may have inadvertently omitted individual promotion, incentive, discount, or accommodation programs offered to customers.  The Debtors request relief with respect to all Customer Programs, regardless of whether such Customer Program is specifically identified herein.

12.     The Debtors' failure to either honor their prepetition Customer Obligations or to continue the Customer Programs in the ordinary course during these Chapter 11 Cases will put the Debtors at a significant competitive disadvantage.  Retaining Customers is critical to the Debtors' ongoing operations in these Chapter 11 Cases and is necessary to maximize the value of their business for the benefit of all stakeholders.  The Customer Programs are described in further detail below.

I.     **The Rebate Programs**

13.     In the ordinary course of business, the Debtors offer rebates (the "Rebate Programs") to certain Customers.  The Rebate Programs are necessary to incentivize certain Customers to continue their relationships with the Debtors and spend increased amounts on their software products.  The Rebate Programs are memorialized in applicable customer agreements and include rebates that the Debtors offer to certain Customers based on the total amount that the Customers spend on their products.  For example, a Customer may receive a certain percentage rebate on any amount that it spends between $100,000 and $200,000, and a higher percentage rebate on any amount that it spends between $200,000 and $400,000.  The Debtors' obligations to Customers under the Rebate Programs are not satisfied in cash.  Rather, the amount of any rebate earned by a Customer is netted against the outstanding amount that the Customer owes the Debtors under the applicable customer agreement.

14.     Maintaining the Rebate Programs is critical to retaining certain Customers who would be less willing to pay for the Debtors' software products, or may completely stop doing business with the Debtors, absent the benefits of such programs.  Such an outcome would inevitably lead to a decline in revenues to the detriment of the Debtors' stakeholders.  Accordingly, the Debtors seek authorization to honor all outstanding prepetition obligations on account of the Rebate Programs and continue honoring Customer Obligations in connection with the Rebate

Programs in a manner consistent with their past practices on a postpetition basis. As of the Petition Date, the Debtors do not believe that any obligations are outstanding on account of prepetition Customer Obligations related to the Rebate Programs.

## II.     The Credit Programs

15.     In addition to the Rebate Programs, the Debtors offer certain Customers discounts or credits related to the use of multiple products (the "Credit Programs"). For example, if a Customer agrees to a monthly minimum spend on the Debtors' operational intelligence products, the Debtors might provide such Customer with a credit towards their spend on their marketing intelligence products. Like the Rebate Programs, the Credit Programs are memorialized in applicable customer agreements and are necessary to incentivize certain Customers to continue their relationships with the Debtors and spend increased amounts on the Debtors' software products. The Credit Programs also increase the Debtors' ability to retain existing Customers and attract new Customers. Moreover, the Debtors' obligations to Customers under the Credit Programs are not satisfied in cash. Rather, the amount of any credit earned by a Customer is netted against the outstanding amount that the Customer owes the Debtors under the applicable customer agreement.

16.     Accordingly, the Debtors seek authorization to honor all outstanding prepetition obligations on account of the Credit Programs and continue honoring Customer Obligations with respect to the Credit Programs in a manner consistent with their past practices on a postpetition basis. As of the Petition Date, the Debtors estimate that they may owe approximately $150,000 in prepetition Customer Obligations related to the Credit Programs.

**BASIS FOR RELIEF**

I.   **Continuing to Honor the Customer Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code and Is in the Best Interests of the Debtors and Their Estates.**

17.     The Court has authority to authorize the Debtors to continue the Customer Programs, modify such programs in the ordinary course of business, and pay prepetition claims arising thereunder, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Courts generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers); see also In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (granting authority to pay prepetition claims of certain vendors and finding that such payment was "essential to the survival of the debtor during the chapter 11 reorganization").  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

18.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize satisfaction of prepetition obligations where a sound business purpose exists for doing so.  See In re Ionosphere Clubs, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); see also In re James A. Phillips, Inc., 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien

claimants).  Indeed, courts have noted that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

19.    In addition, courts may authorize satisfaction of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  See In re United Am., Inc., 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging that the doctrine of necessity "is a necessary deviation because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim."); In re NVR L.P., 147 B.R. at 127 ("Under [section 105(a)] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); see also In re Lehigh & New Eng. Ry., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); In re Just for Feet, Inc., 242 B.R. at 824–25 (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of prepetition claims" under the doctrine of necessity).

20.    Accordingly, the Court may authorize the Debtors to continue the Customer Programs, modify such programs in the ordinary course of business, and satisfy prepetition claims arising thereunder, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Continuing to administer the Customer Programs without interruption during the pendency of these Chapter 11

Cases is critical to preserving the value of the Debtors' assets by, most importantly, preserving customer goodwill and market share. If the Customer Programs are maintained, Customers may continue to receive credits and rebates through the Rebate Programs and Credit Programs. These Customer Programs promote customer satisfaction, brand loyalty, and ensure that the Debtors remain competitive. By encouraging sustained access to the Debtors' services, the continuation of the Customer Programs will inure to the benefit of the Debtors' estates and their creditors.

21.    Further, the Customer Programs are also essential marketing tools for attracting new customers. In contrast, if the Debtors are unable to continue the Customer Programs postpetition or pay Customer Obligations due and owing to customers, the Debtors risk missing out on new customers, alienating existing customers (who might then initiate business relationships with the Debtors' competitors), and suffering potential corresponding losses in customer loyalty that will harm their ability to maximize value. This would place the Debtors at a competitive disadvantage in the marketplace, amplifying the negative effect of customer uncertainty that may arise from the chapter 11 filings. Notably, as described herein, the Debtors' obligations to Customers under the Customer Programs are not satisfied in cash, but are rather netted against the outstanding amounts that Customers owe the Debtors under applicable customer agreement. Accordingly, the Debtors submit that they have shown cause sufficient to warrant honoring the Customer Programs and any obligations relating thereto, and respectfully request that the relief sought herein be approved on the terms set forth in the Interim Order and the Final Order, as applicable.

## II.    Processing of Electronic Fund Transfers Should Be Authorized

22.    The Debtors also request that the Court authorize the Banks, when requested by the Debtors, in their discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition amounts described herein, whether such checks or other

requests were submitted prior to, or after, the Petition Date.  The Debtors have sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, anticipated debtor-in-possession financing, and anticipated access to cash collateral.  The Debtors further request that the Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003

23.    Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  See Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

24.    As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without authorization for the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

25.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek

in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

26.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## **RESERVATION OF RIGHTS**

27.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## **NOTICE**

28.     Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) counsel to the Stalking Horse Bidder, prepetition lenders and DIP lenders; (vi) the Banks; (vii) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors will serve copies of this Motion and an order entered in respect of this Motion as

required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Left Intentionally Blank]*

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: December 8, 2023
       Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (*pro hac vice* pending)
Andrew S. Mordkoff (*pro hac vice* pending)
Joseph R. Brandt (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*

**Exhibit A**

**Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. ___ |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (II) AUTHORIZING THE BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases (the "Debtors") for entry of an interim order (this "Interim Order") and a final order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1, (i) authorizing the Debtors to maintain and administer the Customer Programs and honor certain prepetition obligations related thereto, (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]   Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

*Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      **A final hearing on the relief sought in the Motion shall be conducted on [_____], 2023 at [_____] (ET) (the "<u>Final Hearing</u>").**  Any party in interest objecting to the relief sought at the Final Hearing or entry of the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed co-counsel for the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Rachel C. Strickland, Esq. (rstrickland@willkie.com), Andrew S. Mordkoff, Esq. (amordkoff@willkie.com) and Joseph R. Brandt, Esq. (jbrandt@willkie.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn:  Edmon L. Morton, Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), Shane M. Reil, Esq. (sreil@ycst.com) and Carol E. Cox, Esq. (ccox@ycst.com); (ii) counsel to any official committee appointed in the Chapter 11 Cases; (iii) counsel to the DIP Lenders, (a) King & Spalding LLP, 1185 Sixth Avenue, Floor 34, New York, NY 10036, Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com), Geoffrey King, Esq. (gking@kslaw.com), and Miguel Cadavid, Esq. (mcadavid@kslaw.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., #1600, Wilmington, DE 19801, Attn: Robert Dehney, Esq. (rdehney@morrisnichols.com), Matthew Harvey, Esq. (mharvey@morrisnichols.com), Brenna Dolphin, Esq.

(bdolphin@morrisnichols.com) and Austin Park, Esq. (apark@morrisnichols.com); and (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn:  Benjamin Hackman, Esq. (Benjamin.a.hackman@usdoj.gov), in each case no later than [_____], 2023 at 4:00 p.m. (ET).  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.      The Debtors are authorized, but not directed, to continue to administer the Customer Programs currently in effect, modify such programs as in the ordinary course of business, and honor any Customer Obligations related to the Customer Programs, on an interim basis, without regard to whether the Debtors' obligations arose before, on, or after the Petition Date.

4.      Subject to the applicable requirements of 11 U.S.C. §365, the Debtors are authorized to continue, replace, implement, modify, and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further Court order.

5.      The Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and the Banks are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

7.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

8.      Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

10.     Notwithstanding anything to the contrary in this Interim Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

11.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

13.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

14.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit B**

**Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. __ & __** |

## FINAL ORDER (I) AUTHORIZING THE DEBTORS TO MAINTAIN AND ADMINISTER THEIR EXISTING CUSTOMER PROGRAMS AND HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (II) AUTHORIZING THE BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "<u>Motion</u>")[2] of the debtors and debtors in possession in the above-captioned cases (the "<u>Debtors</u>") for entry of an interim order and a final order (this "<u>Final Order</u>"), pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1, (i) authorizing the Debtors to maintain and administer the Customer Programs and honor certain prepetition obligations related thereto, (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

*Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to continue to administer Customer Programs currently in effect, modify such programs as in the ordinary course of business, and honor any prepetition Customer Obligations related to the Customer Programs, on a final basis without regard to whether the Debtors' obligations arose before, on, or after the Petition Date.

3.      Subject to the applicable requirements of 11 U.S.C. §365, The Debtors are authorized to continue, replace, implement, modify, and/or terminate one or more of the Customer Programs, in each case as the Debtors deem appropriate in their business judgment and in the ordinary course of business, without further Court order.

4.      The Banks on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and the Banks are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

5.      Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.      The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

7.      Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order.

9.      Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.