## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE AND MAINTAIN THEIR CASH MANAGEMENT SYSTEM, INCLUDING BANK ACCOUNTS AND BUSINESS FORMS, (B) CONTINUE INTERCOMPANY TRANSACTIONS, AND (C) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (II) WAIVING CERTAIN OPERATING GUIDELINES, (III) EXTENDING THE TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE, AND (IV) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (the "Debtors") hereby file this motion (this "Motion") for the entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the " Interim Order") and **Exhibit B** (the " Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtors to (a) continue to maintain their existing cash management system, including bank accounts and business forms, (b) continue intercompany transactions among and between the Debtors and their non-Debtor foreign affiliates (the "Non-Debtor Foreign Affiliates") in the ordinary course of business, and (c) honor certain prepetition obligations related thereto, (ii) waiving certain operating guidelines, (iii) extending the time to comply with section 345(b) of the Bankruptcy Code (as defined below), and (iv) granting related relief. In support of this Motion, the Debtors

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

rely upon and incorporate by reference the *Declaration of John Faieta in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory and legal predicates for the relief requested herein are sections 105(a), 345, 363(b), 507(a), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2015-2 and 9013-1.

## BACKGROUND

4.  On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions in the Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.       Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## **RELIEF REQUESTED**

7.       By this Motion, the Debtors respectfully request the entry of the Proposed Orders, pursuant to sections 105(a), 345, 363, 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2: (i) authorizing, but not directing, the Debtors to (a) continue to maintain their existing cash management system, including bank accounts and business forms, (b) continue intercompany transactions among and between the Debtors and their Non-Debtor Foreign Affiliates in the ordinary course of business, and (c) honor certain prepetition obligations related thereto; (ii) waiving certain operating guidelines; (iii) extending the time to comply with section 345(b) of the Bankruptcy Code; and (iv) granting related relief.

8.       To enable the Debtors to carry out the requested relief, the Debtors also request that the Court authorize the Banks to continue to service and maintain the Bank Accounts (as defined below) as accounts of the Debtors as debtors in possession without interruption and in the ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfers requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, in accordance with applicable orders of the Court.

## THE CASH MANAGEMENT SYSTEM

9.      In the ordinary course of business, the Debtors utilize and maintain a cash management system (the "Cash Management System") that includes operating and collection accounts. The Cash Management System is integral to the operation and administration of both the Debtors' business and the businesses of their Non-Debtor Foreign Affiliates. Like other businesses of their size, the Cash Management System allows the Debtors to efficiently collect, transfer, and disburse funds generated through the Debtors' operations and to accurately record such collections, transfers, and disbursements as they are made. A schematic illustrating the general flow of funds through the Cash Management System (inclusive of the Non-Debtor Foreign Affiliates) is attached as **Exhibit C** hereto, and the main components of the Cash Management System are described below.

### I.      Bank Accounts

10.      The Cash Management System includes nineteen (19) accounts held by the Debtors (the "Bank Accounts") at HSBC Bank USA, N.A. ("HSBC U.S."), HSBC Bank (Singapore) Limited ("HSBC Singapore"), AvidBank, and Citibank Singapore Limited ("Citibank Singapore") (each, a "Bank," and collectively, the "Banks"). The Bank Accounts include four (4) collection accounts (the "Collection Accounts") and fifteen (15) operating accounts (the "Operating Accounts"). Each of the Banks is a financially stable institution and, with respect to HSBC U.S. and AvidBank, are insured by the Federal Deposit Insurance Corporation ("FDIC").[3] A complete list of the bank accounts of the Debtors and Non-Debtor Foreign Affiliates as of the Petition Date is annexed hereto as **Exhibit D**.

---

[3]    Singapore dollar deposits of non-bank depositors are insured by the Singapore Deposit Insurance Corporation, for up to $75,000 SGD in aggregate per depositor. Foreign currency deposits, dual currency investments, structured deposits and other investment products are not insured.

11.     Receipts from the Debtors' U.S. customers are deposited directly into Collection Accounts held by Debtor Near North America, Inc. (the "U.S. Collection Accounts") (accounts ending in -2046 and -2053 at AvidBank, and -3765 at HSBC U.S.).  Funds in the U.S. Collection Accounts are then transferred to Operating Accounts held by Debtors Near Intelligence, Inc. and Near Intelligence LLC (f/k/a Near Intelligence Holdings, Inc.)[4] (accounts ending in -4877, -4087, -4320, and -4672 at HSBC U.S.) (the "U.S. Operating Accounts").

12.     Additionally, receipts from the Debtors' international customers are deposited directly into a Collection Account held by Debtor Near Intelligence Pte. Ltd. (the "Foreign Debtor") (account ending in -5178 at HSBC Singapore) (the "Foreign Collection Account"). Funds in the Foreign Collection Account are transferred into Operating Accounts held by the Foreign Debtor (the "Foreign Operating Accounts") (accounts ending in -5179, -5180, -5181, -5182, and -9001 at HSBC Singapore).  The Debtors use the amounts in the U.S. and Foreign Operating Accounts to fund payroll, vendor payments, and other necessary and required disbursements.

13.     The Non-Debtor Foreign Affiliates also maintain Collection and Operating Accounts with certain banks, including BNP Paribas, HSBC Bank (French and Australian Branches), Citibank (Indian Branch), and ICICI Bank. With respect to the Non-Debtor Foreign Affiliates, these accounts are used for customer collections, funding vendor disbursements, funding payroll and foreign government obligations, intercompany receivable collections, and funding intercompany payables that are owed to the Debtors or other Non-Debtor Foreign Affiliates.

---

[4]    As described in the First Day Declaration and pursuant to the Agreement and Plan of Merger, Debtor Near Intelligence LLC is the successor to Near Intelligence Holdings, Inc. and the owner of all property, rights, privileges, agreements, powers and franchises, debts, liabilities, duties and obligations of Near Intelligence Holdings, Inc.

II.     **The Credit Card Program**

14.     As part of the Cash Management System, in the ordinary course of business and in accordance with the terms of the existing agreements between the Debtors and American Express Company, Cross River Bank, and AvidBank (collectively, the "Credit Card Companies") the Debtors provide certain employees with access to credit cards issued by American Express under a corporate credit card program (the "Credit Card Program"). The Credit Card Program is used to cover certain payments for travel expenses, such as hotel stays and meals, and other necessary and approved company expenditures.

15.     The Debtors pay expenses charged through the Credit Card Program to the Credit Card Companies from their Operating Accounts. As of the Petition Date, the Debtors have issued five (5) credit cards under the Credit Card Program to employees of the Debtors. On average, the charges under the Credit Card Program equal approximately $104,000 in the aggregate per month ("Credit Card Obligations"). Payments made in respect of the Credit Card Obligations are made monthly to the Credit Card Companies, and the Debtors are current on all payments owed to the Credit Card Companies as of the Petition Date.

16.     The Credit Card Program is an integral part of the Debtors' Cash Management System. Employees' continued use of the credit cards for procurement and travel purposes is essential to the continued operation of the Debtors' businesses. The Debtors seek authority to (i) continue using credit cards and incurring Credit Card Obligations on a postpetition basis pursuant to the Credit Card Program, subject to the terms of any applicable cash collateral orders and (ii) honor all Credit Card Obligations of any of the Debtors to the Credit Card Companies and any of its affiliates in connection with the Credit Card Program, in the ordinary course of business on a postpetition basis, including, without limitation, making timely payments on account of charges that were made under the Credit Card Program both prior to and after the Petition Date.

### III.    Intercompany Transactions

17.    As further described below, in the ordinary course of business, the Debtors engage in routine business relationships among and between the Debtors and between the Debtors and the Non-Debtor Foreign Affiliates (the "Intercompany Transactions") related to, among other things, intercompany funding and loans, which may result in intercompany receivables and payables (the "Intercompany Claims").  These Intercompany Transactions occur as part of regular business operations, and at any given time, there may be Intercompany Claims owing between the Debtors and between the Debtors and the Non-Debtor Foreign Affiliates.

18.    The Non-Debtor Foreign Affiliates include Near Intelligence SAS (the "French Subsidiary"), Near Intelligence Pvt. Ltd. (the "Indian Subsidiary"), and Near Intelligence Pty. Ltd. (the "Australian Subsidiary").  The Indian Subsidiary and the Australian Subsidiary are not revenue generating entities, and have historically relied entirely on Intercompany Transactions to fund operating expenses, including payroll.  Specifically, payroll and other expense incurred by the Indian and Australian Subsidiaries have historically been funded through intercompany loans issued by Debtor Near Intelligence Pte. Ltd. (the "Singapore Subsidiary").  During the course of these Chapter 11 Cases, the Debtors anticipate that the Singapore Subsidiary will fund payroll and other expenses incurred by the Indian and Australian Subsidiaries in the amount of approximately $2 million, consistent and in accordance with historical practice and in accordance with the Debtors' DIP Facility.

19.    Unlike the Indian and Australian Subsidiaries, the French Subsidiary is a revenue generating entity, which collects receipts from customers and then uses those receipts to fund the French Subsidiary's expenses, including payroll.  The Debtors historically do not fund the French Subsidiary through Intercompany Transactions, and do not anticipate that any Debtors will engage

in any Intercompany Transactions with the French Subsidiary during the course of these Chapter 11 Cases.

20.     As discussed above, the Debtors also engage in routine business relationships and Intercompany Transactions among themselves.  This includes the transfer of funds from the Debtors' Collection Accounts to their Operating Accounts, which are held among the various Debtors.  The Intercompany Transactions are critical to the Debtors' operations and help facilitate the flow of funds necessary to ensure that the Debtors have sufficient funds to continue their global operations in the ordinary course.

21.     Prior to the Petition Date, the Debtors have historically reflected the Intercompany Claims as intercompany receivables and payables in the books and records of each applicable party.  Certain Intercompany Transactions have also historically been made pursuant to intercompany loan agreements between certain Debtors, and between certain Debtors and Non-Debtor Foreign Affiliates.  The Debtors closely track all fund transfers in their accounting system and, therefore, can ascertain, trace, and account for all Intercompany Transactions.

22.     The Debtors will continue to track postpetition Intercompany Transactions in the ordinary course of business.  The Intercompany Transactions ensure the smooth functioning and operation of the Debtors' business while allowing the Debtors to sell and deliver their products to their customers worldwide.  Any interruption of the Intercompany Transactions would severely disrupt the Debtors' operations and result in harm to the Debtors' estates and stakeholders.  Specifically, it would prevent the funding of payroll expenses at the Non-Debtor Foreign Affiliates.  Accordingly, the Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business, in a manner consistent with prepetition practice.  Additionally, all

such Intercompany Transactions shall be made in accordance with any budget and the relief requested in the DIP Motion, any interim or final orders entered pursuant to the DIP Motion.[5]

## IV.   Bank Fees

23.     In the ordinary course of their business, the Debtors incur, pay, honor, or allow to be deducted from the appropriate accounts certain service charges and other fees, costs, and expenses charged by the Banks (collectively, the "Bank Fees").

24.     During the past 12 months, the Debtors paid on average approximately $5,000 to $10,000 in Bank Fees each month, excluding interest.  The Debtors estimate that approximately $5,000 in Bank Fees remain outstanding as of the Petition Date.  The Debtors seek authority to continue paying the Bank Fees, including any prepetition Bank Fees, in the ordinary course on a postpetition basis, consistent with historical practices.

## V.   Business Forms

25.     As part of the Cash Management System, the Debtors utilize various business forms, including checks (the "Business Forms"), in the ordinary course of their business.  The Debtors do not typically print their own checks and instead rely on existing check stock from their Banks.  To minimize expenses, the Debtors seek authority to continue to use all Business Forms in substantially the form used immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.  Given the expansive scope of the Debtors' business operations, requiring the Debtors to change their existing Business Forms would impose needless expense on the Debtors' estates.

---

[5]     "DIP Motion" means the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Liens and Superpriority Administrative Expense Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* filed contemporaneously herewith.

26.     In accordance with Local Rule 2015-2(a), to the extent that the Debtors exhaust their existing supply of checks during the Chapter 11 Cases and require new checks, the Debtors will update their checks to reflect the designation "Debtors in Possession" and the case numbers of the Chapter 11 Cases; provided that with respect to checks that the Debtors or their agents print themselves, the Debtors will begin printing the "Debtors in Possession" legend and the bankruptcy case numbers on such items within ten (10) business days of the date of entry of the Interim Order.

## COMPLIANCE WITH U.S. TRUSTEE GUIDELINES AND SECTION 345 OF THE BANKRUPTCY CODE

27.     Section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  To comply with section 345 of the Bankruptcy Code, the Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "U.S. Trustee Guidelines") for the United States Trustee for the District of Delaware (the "U.S. Trustee") generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized bank depository that agrees to comply with certain requirements set by the U.S. Trustee (each an "Authorized Depository"). Section 345(b) of the Bankruptcy Code requires a debtor's bank to post a bond unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b).

28.     The majority of the Debtors' Bank Accounts are held at authorized depositories under the U.S. Trustee Guidelines (the "Authorized Depositories") (i.e., HSBC Bank and Citibank), while the remaining Bank at which the Debtors maintain two of their Bank Accounts is not (i.e., AvidBank).  Moreover, the Debtors' Bank Accounts at HSBC U.S. and AvidBank are

insured by the Federal Deposit Insurance Corporation (the "<u>FDIC</u>").  HSBC Singapore and Citibank Singapore, where certain Debtors maintain accounts outside the United States (the "<u>Foreign Bank Accounts</u>"), are also insured by the Singapore government and are well-capitalized, financially stable, and reputable institution.  The Debtors' banks are well-positioned to continue performing depository and cash management functions during these Chapter 11 Cases.

29.     In the event that any of the Bank Accounts cease to comply with, or do not comply with, the requirements of section 345(b) of the Bankruptcy Code during these Chapter 11 Cases, the Debtors request that the Court grant the Debtors a forty-five (45) day extension, without prejudice to the Debtors' right to seek an additional extension after the entry of the Interim Order, to either (a) bring the applicable Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) seek appropriate relief from the Court.

<b><u>BASIS FOR RELIEF</u></b>

**I.     The Court Should Authorize the Debtors' Uninterrupted Use of Their Existing Cash Management System.**

30.     The Debtors maintain the Cash Management System in the ordinary course of their business operations, which allows them to administer their cash and financial affairs.  Maintenance of the Cash Management System is important for preserving and enhancing the value of the Debtors' business and for administering these Chapter 11 Cases.

31.     As described herein, any disruption to the Cash Management System would have an immediate adverse impact on the Debtors' business and would impair the Debtors' ability to successfully administer these Chapter 11 Cases.  Continued maintenance of the Cash Management System is necessary to, among other things, ensure that the Debtors may (a) honor obligations that accrued or any payments that were made or issued prepetition, but that remain outstanding as of the Petition Date (to the extent authorized by the Court), and (b) avoid any unnecessary interruption

of the Cash Management System, including the flow of funds between the Debtors and the Non-Debtor Foreign Affiliates. It would be time-consuming, difficult, and costly for the Debtors to establish an entirely new system of accounts and a new cash management system, and particularly impractical given that the Debtors anticipate moving through these Chapter 11 Cases as expeditiously as possible. The attendant delays from revising cash management procedures, redirecting receipts and implementing new payment protocols would create unnecessary pressure on the Debtors while they work to meet the other administrative obligations imposed by the Bankruptcy Code.

32.     Allowing the Debtors to utilize and maintain the Cash Management System is consistent with section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business, without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) is intended to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business. See, e.g., In re Roth Am., Inc., 975 F.2d 949, 952 (3d Cir. 1992); see also In re Nellson Nutraceutical, Inc., 369 B.R. 787, 796 (Bankr. D. Del. 2007). Included within the purview of section 363(c) is a debtor's ability to continue the routine transactions necessitated by its cash management system. See Amdura Nat'l Distrib. Co. v. Amdura Corp., 75 F.3d 1447, 1453 (10th Cir. 1996).

33.     Courts in this District have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993). The Third Circuit has agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring affiliated debtors to maintain all accounts separately. Columbia

Gas Sys., 997 F.2d at 1061; see also Southmark Corp. v. Grosz, 49 F.3d 1111, 1114 (5th Cir. 1995)

(maintaining existing cash management system allows debtor "to administer more effectively and

efficiently its financial operations and assets").

34.     The Court may also exercise its equitable powers to grant the relief requested

herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process

or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §

105(a); see also In re Combustion Eng'g, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section

105 of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to

provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings");

In re Nixon, 404 F. App'x 575, 578 (3d Cir. 2010) ("It is well settled that the court's power under

§ 105(a) is broad."); In re Nortel Networks, Inc., 532 B.R. 494, 554 (Bankr. D. Del. 2015) ("The

Third Circuit has construed [section 105 of the Bankruptcy Code] to give bankruptcy courts 'broad

authority' to provide appropriate equitable relief to assure the orderly conduct of reorganization

proceedings, and to 'craft flexible remedies that, while not expressly authorized by the Code, effect

the result the Code was designed to obtain.'").

35.     Accordingly, to minimize the disruption caused by the filing of these Chapter 11

Cases and maximize the value of the Debtors' estates, the Debtors request authority to continue to

utilize the Cash Management System during the pendency of the Chapter 11 Cases.  The Cash

Management System has been used by the Debtors for many years.  Parties in interest will not be

harmed by the Debtors' continued maintenance of the Cash Management System, including the

Bank Accounts, because the Debtors will implement appropriate mechanisms to ensure that

unauthorized payments will not be made on account of obligations incurred prior to the Petition

Date.  Specifically, with the assistance of their professionals and consistent with prior practice, the

Debtors will continue to maintain detailed records of all transfers of cash, if any, and record all transactions on applicable accounts. Therefore, the Debtors should be permitted to continue to manage their cash and transfer funds among the Bank Accounts, if needed, in accordance with the Cash Management System.

**II.   The Court Should Authorize the Debtors to Maintain the Bank Accounts.**

36.   The U.S. Trustee Guidelines require that the debtor in possession open new bank accounts and close all existing accounts. This requirement was designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and to help protect against the inadvertent payment of prepetition claims. The U.S. Trustee Guidelines also require opening a separate operating account and a special tax payment account into which all funds that may be collected and/or payable during the pendency of a debtor's case will be deposited. This requirement is meant to provide cash collateral for, and ensure payment of, certain priority tax claims such as federal and state payroll taxes and sales taxes.

37.   To avoid disruption to the Debtors' operations, the Debtors request that they be permitted to continue to maintain the existing Bank Accounts. Allowing the Debtors to maintain the Bank Accounts will assist the Debtors in accomplishing a smooth transition to operations under chapter 11. Moreover, through their internal controls, the Debtors can distinguish between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones. In addition, all Banks with which the Debtors maintain Bank Accounts have been or are in the process of being advised not to honor checks, advises, drafts, or other requests for payment issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and as directed by the Debtors. Therefore, the goals of the U.S. Trustee Guidelines can be satisfied, and the Debtors' creditors can be protected, without closing the Bank Accounts.

38.     Although the Debtors are requesting a waiver of the requirement that they close all Bank Accounts, the Debtors may determine, in their business judgment, that opening new bank accounts and/or closing existing Bank Accounts is in the best interests of the estates.  Nothing contained herein should prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, as they may deem necessary and appropriate in their sole discretion; provided, however, that (a) the consent of the DIP Agent (as defined in any orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing use of cash collateral) shall be required, and (b) the Debtors shall give notice of the opening or closing of any such bank accounts within fifteen (15) days to (i) the U.S. Trustee and (ii) counsel to any statutory committee appointed in these Chapter 11 Cases.  Any new bank account opened by the Debtors shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute a Uniform Depository Agreement.

39.     As part of the requested relief, the Debtors also seek a waiver of the requirement to establish specific bank accounts for tax payments.  The Debtors' tax obligations can be paid out of the Bank Accounts, and the U.S. Trustee can adequately monitor the flow of funds into, among, and out of the accounts, as set forth in the required reporting.  Moreover, the creation of a new debtor-in-possession account designated solely for tax obligations would be unnecessary and inefficient.

**III.    The Court Should Authorize the Debtors to Pay Prepetition Amounts Related to Bank Fees and the Credit Card Program.**

40.     The Debtors request authority to continue to pay, honor, or deduct from the appropriate account certain Bank Fees.  Payment of the Bank Fees will minimize disruption to the Debtors' operations and is therefore in the best interests of their estates.  Absent payment of the Bank Fees, the Banks might assert setoff rights against the funds in the Bank Accounts, freeze the

Bank Accounts, and/or refuse to provide banking services to the Debtors. Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their sole discretion, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Fees arising prior to or after the Petition Date.

41.     The Debtors also request authority to continue the Credit Card Program in the ordinary course of business, including making ordinary course modifications thereto, and to pay any outstanding obligations, whether arising prepetition or postpetition, regarding the same. The Credit Card Program is essential to the Debtors' operations. The Credit Card Program allows the Debtors' employees to charge certain business-related expenses directly to the Debtors thereby allowing the employees to conduct business more efficiently. Continuing the Credit Card Program and satisfying any prepetition and postpetition amounts outstanding thereunder will help minimize the adverse effect of the commencement of these Chapter 11 Cases on the Debtors' business.

## IV.   The Debtors Should Be Authorized to Use Existing Check Stock and Related Business Forms.

37.     Local Rule 2015-2(a) provides: "[w]here the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation 'Debtor-in-Possession' and the corresponding bankruptcy number on all such checks." Del. Bankr. L.R. 2015-2(a).

38.     As discussed above, the Debtors utilize various Business Forms in the ordinary course of its business. In order to minimize expenses to their estates, the Debtors request authority to continue using their existing prepetition Business Forms without reference to their status as debtors in possession or any other alteration. As noted above, most parties doing business with

the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession.  A failure to permit the Debtors to maintain and utilize their existing check stock and related Business Forms as set forth herein would:  (i) disrupt the ordinary financial affairs and business operations of the Debtors; (ii) delay the administration of the Debtors' estates; (iii) compromise the Debtors' internal controls and accounting system; and (iv) require the estates to unnecessarily spend money to create new Business Forms.  Accordingly, the requested relief is warranted under the circumstances.

## V.     The Court Should Authorize Applicable Banks to Continue to Service and Administer the Debtors' Bank Accounts.

39.     In connection with the foregoing, the Debtors respectfully request that the Court authorize all applicable Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors, as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to (i) receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (ii) provide that all Banks may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such banks and other financial institutions having no liability to any party for relying on such representations by the Debtors provided for herein); and (iii) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Banks.

40.     The Debtors respectfully request that the Court authorize the Banks to receive, process, honor, and pay any and all checks, automated clearing house payments ("ACH Payments") and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions

with respect thereto, whether such checks, drafts, wires, or ACH Payments are dated prior to or subsequent to the Petition Date consistent with any order of the Court and governing law; provided, however, that any check, advise, draft, or other notification that the Debtors advised the Banks to have drawn, issued, or otherwise presented prior to the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

41.     The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account that is the subject of this Motion either (i) at the direction of the Debtors; (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors, their estates or any other party on account of such prepetition check or other item honored postpetition.

42.     Both as part of this Motion and in other motions that have been filed concurrently herewith, the Debtors are requesting authority, but not direction, to pay certain prepetition obligations.  With respect to some of these obligations, the Debtors may have issued checks prior to the Petition Date that have yet to clear the banking system.  In other instances, the Debtors will create the relevant check once the Court enters an order permitting the Debtors to do so.  The Debtors intend to inform the Banks which checks should be so honored.  Therefore, the Debtors request that the Banks be authorized to rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a court order or otherwise.

**VI.    An Extension of Time to Comply with the Requirements of Section 345(b) of the Bankruptcy Code Is Warranted, to the Extent They Apply to the Bank Accounts.**

43.    Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes the deposits or investments of money "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit on investment."  11 U.S.C. § 345(a).

44.    Section 345(b) of the Bankruptcy Code provides:

> Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
> (1) a bond—
>
> (A) in favor of the United States;
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on—
>
>> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>> (ii) prompt repayment of such money and return; and
>> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise.

11 U.S.C. § 345(b).  In addition, the U.S. Trustee Guidelines generally require chapter 11 debtors, among other things, to deposit all estate funds into an account with an authorized depository approved by the U.S. Trustee.  Section 345(b) provides further, however, that a bankruptcy court may allow the use of alternatives to these approved investment guidelines "for cause." See 11 U.S.C. § 345(b); see also In re Serv. Merch. Co., 240 B.R. 894, 896.  (Bankr. M.D. Tenn. 1999).

45.     The Debtors submit that they are in substantial compliance with section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines with respect to each of the Bank Accounts, or, that cause exists to grant a waiver of such requirements.  The majority of the Bank Accounts are held at Authorized Depositories (i.e., HSBC Bank and Citibank), while only one Bank—at which the Debtors maintain two of the Bank Accounts—is not (i.e., AvidBank).  Moreover, the Debtors' Bank Accounts at HSBC U.S. and AvidBank are insured by the Federal Deposit Insurance Corporation (the "FDIC").  And HSCB Singapore, where the Debtors maintain accounts outside the United States (the "Foreign Bank Accounts"), is a well-capitalized, financially stable, and reputable institutions.  The Debtors' banks are well-positioned to continue performing depository and cash management functions during these Chapter 11 Cases.  Furthermore, given the global scope of the Debtors' operations and cash management requirements, it is not feasible to post a bond or relocate the Debtors' foreign bank accounts to U.S. accounts, which could have potentially significant tax or regulatory impacts.  Accordingly, "cause" exists to allow the Debtors to continue utilizing the existing Bank Accounts consistent with historical practices.

46.     Nevertheless, out of an abundance of caution, the Debtors request a 45-day (or such longer period as the U.S. Trustee may agree) extension of time to address any questions that the U.S. Trustee may have regarding the Cash Management System and, should the U.S. Trustee have concerns regarding the Bank Accounts, to make such arrangements as are acceptable to the U.S. Trustee (without prejudice to the Debtors' right to request further extensions of time by motion in this Court).

## VII.    Cause Exists to Permit Continued Use of Intercompany Transactions.

47.     As described above, the Debtors enter into certain Intercompany Transactions in the ordinary course of business.  These transactions are essential to the operations of the Debtors' business (and, by extension, the Foreign Subsidiaries' operations, which are critical to the Debtors'

business).  If the Intercompany Transactions were to be discontinued, the Debtors' operations, Cash Management System, and related administrative controls would be disrupted causing irreparable harm to the Debtors.

48.     The continuation of the Intercompany Transactions will not prejudice the Debtors' estates or their creditors.  Among other things, the Intercompany Transactions are part of the normal course of operation of the Debtors' business, which allows the Debtors' enterprise as a whole to function more effectively and efficiently, thereby benefitting all of the Debtors' stakeholders.  Further, the Debtors maintain strict records of transfers of cash and can ascertain, trace, and account for all such Intercompany Transactions.  Accordingly, the Debtors believe that continuation of the Intercompany Transactions, in accordance with any interim and/or final order entered pursuant to the DIP Motion and the relief granted thereunder, is in the best interests of the Debtors' estates and creditors.

49.     Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code, and therefore, do not require the Court's approval.  Yet, precisely because of their routine nature, the continuation of such transactions is integral to the Debtors' ability to operate its business.  Accordingly, out of an abundance of caution, the Debtors are seeking express authority to engage in Intercompany Transactions postpetition.  The continued performance of the ordinary course Intercompany Transactions are integral to ensuring the Debtors' ability to operate its business.

51.     Furthermore, continuation of Intercompany Transactions between the Debtor sand Non-Debtor Foreign Affiliates is necessary to prevent costly disruption to the Debtors' businesses.

As noted above, certain Non-Debtor Affiliates rely on Intercompany Transactions with the Debtors to support their global operations. Specifically, any interruption of the Intercompany Transactions would prevent the funding of payroll expenses at the Non-Debtor Foreign Affiliates. The Intercompany Transactions are also necessary to maintain and maximize the enterprise value of the Debtors and the Non-Debtor Affiliates, which is essential to realizing a value maximizing transaction through a sale process in these Chapter 11 Cases.

52.     Moreover, payments made to Non-Debtor Foreign Affiliates pursuant to the Cash Management System will be in the ordinary course, consistent with past practices, easily identifiable in the Debtors' records, and consistent with the Debtors' DIP budget. Ensuring the Non-Debtor Foreign Affiliates' businesses remain uninterrupted during these Chapter 11 Cases—including through the continuation of Intercompany Transactions—will necessarily inure to the benefit of the Debtors and their estates.

## SATISFACTION OF BANKRUPTCY RULE 6003

53.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

54.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without authorization of the relief requested herein. Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

55.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve the value of their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

56.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

57.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## NOTICE

58.     Notice of this Motion has been or will be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) counsel to the Stalking Horse Bidder, prepetition lenders and DIP lenders;

(vi) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (vii) the Banks; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Left Intentionally Blank]*

## CONCLUSION

WHEREFORE, the Debtors request entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: December 8, 2023
      Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (*pro hac vice* pending)
Andrew S. Mordkoff (*pro hac vice* pending)
Joseph R. Brandt (*pro hac vice* pending)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors*
*and Debtors in Possession*

## EXHIBIT A

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NEAR INTELLIGENCE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11962 (___)<br><br>(Jointly Administered)<br><br>**Ref. Docket No. ___** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE AND
MAINTAIN THEIR CASH MANAGEMENT SYSTEM, INCLUDING BANK
ACCOUNTS AND BUSINESS FORMS, (B) CONTINUE INTERCOMPANY
TRANSACTIONS, AND (C) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (II) WAIVING CERTAIN OPERATING GUIDELINES, (III)
EXTENDING THE TIME TO COMPLY WITH SECTION 345(B) OF THE
BANKRUPTCY CODE, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") for the entry of interim and final orders, (i) authorizing, but not directing, the Debtors to (a) continue to maintain their existing cash management system, including bank accounts and business forms, (b) continue intercompany transactions among and between the Debtors and their Non-Debtor Foreign Affiliates in the ordinary course of business, and (c) honor certain prepetition obligations related thereto, (ii) waiving certain operating guidelines, (iii) extending the time to comply with section 345(b) of the Bankruptcy Code , and (iv) granting related relief; and upon consideration of the First Day Declaration; and due and proper notice of the Motion having been given; and it appearing that no other or further notice of the Motion is required except as otherwise provided herein; and it

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion and provided for herein is in the best interest of the Debtors, their estates, and their creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      **A final hearing on the relief sought in the Motion shall be conducted on [_____], 2023 at [_____](ET) (the "<u>Final Hearing</u>")**.  Any party-in-interest objecting to the relief sought at the Final Hearing or the Final Order shall file and serve a written objection, which objection shall be served upon (i) proposed co-counsel to the Debtors, (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Rachel C. Strickland, Esq. (rstrickland@willkie.com), Andrew S. Mordkoff, Esq. (amordkoff@willkie.com), and Joseph R. Brandt, Esq. (jbrandt@willkie.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Edmon L. Morton, Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), Shane M. Reil, Esq. (sreil@ycst.com), and Carol E. Cox, Esq. (ccox@ycst.com); (ii) counsel to any official committee appointed in these Chapter 11 Cases; (iii) counsel to the DIP Lender, King & Spalding, LLP, 1185 Avenue of the Americas, New York, NY 10036 (Attn: Roger Schwartz, Esq., Geoffrey King, Esq., and Miguel Cadavid, Esq.) (rschwartz@kslaw.com, gking@kslaw.com, mcadavid@kslaw.com) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Flr. P.O. Box 1347

Wilmington, DE 19899 (Attn: Robert J. Dehney, Esq., Matthew Harvey, Esq., Brenna Dolphin, Esq., and Austin Park, Esq.) (rdehney@morrisnichols.com, mharvey@morrisnichols.com, bdolphin@morrisnichols.com, and apark@morrisnichols.com); and (iv) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin Hackman, Esq. (Benjamin.a.hackman@usdoj.gov), in each case no later than [_____], 2023 at 4:00 p.m. (ET). If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.      The Debtors are authorized, but not directed, to: (i) continue to maintain and use the Cash Management System as described in the Motion and (ii) honor prepetition obligations related thereto; provided that such action is taken in the ordinary course of business and consistent with prepetition practices.

4.      The Debtors are further authorized, but not directed, to (i) continue to use, with the same account numbers, the Bank Accounts in existence on the Petition Date; (ii) use, in their present form, any preprinted correspondence and Business Forms (including checks and letterhead) without reference to the Debtors' status as debtors in possession; provided that once the Business Forms (including letterhead and existing checks) have been used, the Debtors shall, when reordering, require the designation "Debtors in Possession" and the corresponding bankruptcy case number on all such documents; (iii) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (iv) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, ACH Payments, wire transfers, and other debits; and (v) perform their obligations under the documents governing the Bank Accounts. With respect to Business Forms that the Debtors or their agents print themselves, the Debtors shall begin

printing the "Debtors in Possession" legend and the bankruptcy case number on such Business Forms within ten (10) days of the date of entry of this Interim Order.

5.     The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtors before the Petition Date may be honored by a Bank if specifically authorized by order of this Court.

6.     The Banks are hereby authorized to debit Bank Fees from the Bank Accounts without further order of this Court; provided that such fees and charges are authorized under the applicable account agreement with the Debtors, and provided further that nothing set forth herein shall authorize any of the Banks to debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements.

7.     Notwithstanding any other provision of this Interim Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (i) at the direction of the Debtors; (ii) in good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item-handling procedures, shall be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

8.     Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks, items, and

other payment orders drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of these Chapter 11 Cases; (ii) all checks, automated clearing house entries, and other items deposited or credited to any of the Debtors' accounts with such Bank prior to filing of these Chapter 11 Cases which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of these Chapter 11 Cases; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

9.      Each of the Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

10.     Within fifteen (15) days of the date of entry of this Interim Order, the Debtors shall (i) contact the Banks; (ii) provide the Banks with the Debtors' employer identification number and the case number of these Chapter 11 Cases; and (iii) identify for the Banks each of the Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

11.     The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; provided that the Debtors provide the U.S. Trustee and counsel to any statutory committee appointed in these Chapter 11 Cases with notice within fifteen (15) days of the opening or closing of any such accounts; provided further that the Debtors shall only open any such new bank accounts at banks

5

that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement.

12.     To the extent that any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have forty-five (45) days, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee; provided that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from this Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the 45-day period referenced above by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

13.     The Debtors are authorized (i) to continue the Credit Card Program in the ordinary course, including making ordinary course modifications thereto, (ii) to perform their obligations under the Credit Card Program, and (iii) to pay outstanding prepetition expenses arising thereunder in an aggregate amount not to exceed $50,000 and postpetition expenses in the ordinary course.

14.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived, as applicable.

15.     The Banks are authorized to continue to charge, and the Debtors are authorized to pay, honor, or allow the deduction from the appropriate account, any service charges or fees owed to the Banks in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.  The liens on any of the Bank Accounts granted to creditors will

not have priority over such fees and services charges of the respective Bank at which the Bank Account is located.

16.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions, including in connection with the Cash Management System in the ordinary course of business and in compliance with past practices by and among the Debtors and the Non-Debtor Foreign Affiliates; provided that the Debtors shall not be authorized by this Interim Order to undertake any Intercompany Transactions that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period.

17.     The Debtors shall maintain accurate and detailed records of all transfers, including the Intercompany Transactions in accordance with their prepetition practices, so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

18.     Within five (5) business days from the date of the entry of this Interim Order, the Debtors shall (i) serve a copy of this Interim Order on each Bank and (ii) request that each Bank internally code each of the Bank Accounts as "debtors in possession" accounts.

19.     Pursuant to section 503(b)(1) of the Bankruptcy Code, all postpetition payments on account of any Intercompany Transaction, including any interest and fees related thereto, made by a Debtor to another Debtor, upon net transfers, shall in each case be accorded administrative expense status, except to the extent such Intercompany Transactions are on account of antecedent debts (including with respect to "netting" or setoffs).

20.     Notwithstanding anything to the contrary in this Interim Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

21.     Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii) shall be construed as a promise to pay a claim.

22.     The Debtors shall calculate quarterly fees payable pursuant to 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

23.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

24.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

25.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

26.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**EXHIBIT B**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE AND
MAINTAIN THEIR CASH MANAGEMENT SYSTEM, INCLUDING BANK
ACCOUNTS AND BUSINESS FORMS, (B) CONTINUE INTERCOMPANY
TRANSACTIONS, AND (C) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (II) WAIVING CERTAIN OPERATING GUIDELINES, (III)
EXTENDING THE TIME TO COMPLY WITH SECTION 345(B) OF THE
BANKRUPTCY CODE, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors") for the entry of interim and final orders,

(i) authorizing, but not directing, the Debtors to (a) continue to maintain their existing cash

management system, including bank accounts and business forms, (b) continue intercompany

transactions among and between the Debtors and their Non-Debtor Foreign Affiliates in the

ordinary course of business, and (c) honor certain prepetition obligations related thereto,

(ii) waiving certain operating guidelines, (iii) extending the time to comply with section 345(b) of

the Bankruptcy Code , and (iv) granting related relief; and upon consideration of the First Day

Declaration; and due and proper notice of the Motion having been given; and it appearing that no

other or further notice of the Motion is required except as otherwise provided herein; and it

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

appearing that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§

157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware, dated as of February 29, 2012; and it appearing that this is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and

the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief

requested in the Motion and provided for herein is in the best interest of the Debtors, their estates,

and their creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to: (i) continue to maintain and use

the Cash Management System as described in the Motion and (ii) honor prepetition obligations

related thereto; provided that such action is taken in the ordinary course of business and consistent

with prepetition practices.

3.      The Debtors are further authorized, but not directed, to (i) continue to use, with the

same account numbers, the Bank Accounts in existence on the Petition Date; (ii) use, in their

present form, any preprinted correspondence and Business Forms (including checks and

letterhead) without reference to the Debtors' status as debtors in possession; provided that once

the Business Forms (including letterhead and existing checks) have been used, the Debtors shall,

when reordering, require the designation "Debtors in Possession" and the corresponding

bankruptcy case number on all such documents; (iii) treat the Bank Accounts for all purposes as

accounts of the Debtors as debtors in possession; (iv) deposit funds in and withdraw funds from

the Bank Accounts by all usual means, including checks, ACH Payments, wire transfers, and other

debits; and (v) perform their obligations under the documents governing the Bank Accounts.  With

respect to Business Forms that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtors in Possession" legend and the bankruptcy case number on such Business Forms within ten (10) days of the date of entry of this Final Order.

4.      The Banks are hereby authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that any check drawn or issued by the Debtors before the Petition Date may be honored by a Bank if specifically authorized by order of this Court.

5.      The Banks are hereby authorized to debit Bank Fees from the Bank Accounts without further order of this Court; provided that such fees and charges are authorized under the applicable account agreement with the Debtors, and provided further that nothing set forth herein shall authorize any of the Banks to debit any claim or charges not in the ordinary course of business and not permitted under the applicable account agreements.

6.      Notwithstanding any other provision of this Final Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (i) at the direction of the Debtors; (ii) in good-faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) as the result of an innocent mistake made despite implementation of reasonable item-handling procedures, shall be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

7.     Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks, items, and other payment orders drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Bank's receipt of notice of filing of these Chapter 11 Cases; (ii) all checks, automated clearing house entries, and other items deposited or credited to any of the Debtors' accounts with such Bank prior to filing of these Chapter 11 Cases which have been dishonored, reversed, or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to filing of these Chapter 11 Cases; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

8.     Each of the Banks may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

9.     Within fifteen (15) days of the date of entry of this Final Order, the Debtors shall (i) contact the Banks; (ii) provide the Banks with the Debtors' employer identification number and the case number of these Chapter 11 Cases; and (iii) identify for the Banks each of the Bank Accounts held at such Bank as being held by a debtor in possession in a bankruptcy case.

10.     The Debtors are authorized to open any new bank accounts or close any existing Bank Accounts as they may deem necessary and appropriate in their sole discretion; provided that the Debtors provide the U.S. Trustee and counsel to any statutory committee appointed in these

Chapter 11 Cases with notice within fifteen (15) days of the opening or closing of any such accounts; provided further that the Debtors shall only open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at banks that are willing to immediately execute such an agreement.

11.     To the extent that any of the Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have forty-five (45) days, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines or to make such other arrangements as agreed to by the U.S. Trustee; provided that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from this Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the 45-day period referenced above by entering into a written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

12.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived, as applicable.

13.     The Banks are authorized to continue to charge, and the Debtors are authorized to pay, honor, or allow the deduction from the appropriate account, any service charges or fees owed to the Banks in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.  The liens on any of the Bank Accounts granted to creditors will not have priority over such fees and services charges of the respective Bank at which the Bank Account is located.

14.     The Debtors are authorized (i) to continue the Credit Card Program in the ordinary course, including making ordinary course modifications thereto, (ii) to perform their obligations under the Credit Card Program, and (iii) to pay outstanding prepetition expenses arising thereunder in an aggregate amount not to exceed $50,000 and postpetition expenses in the ordinary course.

15.     Within five (5) business days from the date of the entry of this Final Order, the Debtors shall (i) serve a copy of this Final Order on each Bank and (ii) request that each Bank internally code each of the Bank Accounts as "debtors in possession" accounts.

16.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions, including in connection with the Cash Management System in the ordinary course of business and in compliance with past practices by and among the Debtors and the Non-Debtor Foreign Affiliates; provided that the Debtors shall not be authorized by this Final Order to undertake any Intercompany Transactions that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period.

17.     The Debtors shall maintain accurate and detailed records of all transfers, including the Intercompany Transactions in accordance with their prepetition practices, so that all transactions may be ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions.

18.      Pursuant to section 503(b)(1) of the Bankruptcy Code, all postpetition payments on account of any Intercompany Transaction, including any interest and fees related thereto, made by a Debtor to another Debtor, upon net transfers, shall in each case be accorded administrative expense status, except to the extent such Intercompany Transactions are on account of antecedent debts (including with respect to "netting" or setoffs).

19.     Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

20.     Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; or (iii)  shall be construed as a promise to pay a claim.

21.     The Debtors shall calculate quarterly fees payable pursuant to 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of who pays those disbursements.

22.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

23.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

24.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

25.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# EXHIBIT C

**Schematic Illustration of Cash Management System**



# Cash Management



# EXHIBIT D

## Bank Accounts

| Debtor Bank Accounts | | | | |
|---|---|---|---|---|
| **Bank** | **Account Type** | **Account Number (Last 4 Digits)** | **Currency** | **Entity** |
| HSBC Bank USA, N.A. | U.S. Operating Account | 4877 | USD | Near Intelligence Inc. |
| HSBC Bank USA, N.A. | U.S. Operating Account | 4087 | USD | Near Intelligence LLC |
| HSBC Bank USA, N.A. | U.S. Operating Account | 4320 | USD | Near Intelligence LLC |
| HSBC Bank USA, N.A. | U.S. Operating Account | 4672 | USD | Near Intelligence LLC |
| AvidBank | U.S. Collection Account | 2046 | USD | Near North America Inc. |
| AvidBank | U.S. Collection Account | 2053 | USD | Near North America Inc. |
| HSBC Bank USA, N.A. | U.S. Collection Account | 3765 | USD | Near North America Inc. |
| HSBC Bank (Singapore) Limited | Singapore Operating Account / Collections | 5178 | USD | Near Intelligence Pte. Ltd. |
| HSBC Bank (Singapore) Limited | Singapore Operating Account | 5179 | GBP | Near Intelligence Pte. Ltd. |
| HSBC Bank (Singapore) Limited | Singapore Operating Account | 5180 | AUD | Near Intelligence Pte. Ltd. |
| HSBC Bank (Singapore) Limited | Singapore Operating Account | 5181 | EUR | Near Intelligence Pte. Ltd. |
| HSBC Bank (Singapore) Limited | Singapore Operating Account | 5182 | JPY | Near Intelligence Pte. Ltd. |
| HSBC Bank (Singapore) Limited | Singapore Operating Account | 9001 | SGD | Near Intelligence Pte. Ltd. |
| Citibank Singapore Limited | Singapore Operating Account | 6083 | USD | Near Intelligence Pte. Ltd. |
| Citibank Singapore Limited | Singapore Operating Account | 6091 | GBP | Near Intelligence Pte. Ltd. |

| Citibank Singapore Limited | Singapore Operating Account | 6105 | AUD | Near Intelligence Pte. Ltd. |
|---|---|---|---|---|
| Citibank Singapore Limited | Singapore Operating Account | 6113 | EUR | Near Intelligence Pte. Ltd. |
| Citibank Singapore Limited | Singapore Operating Account | 6121 | NZD | Near Intelligence Pte. Ltd. |
| Citibank Singapore Limited | Singapore Operating Account | 6075 | SGD | Near Intelligence Pte. Ltd. |

| **Non-Debtor Foreign Affiliates Bank Accounts** | | | | |
|---|---|---|---|---|
| **Bank** | **Account Type** | **Account Number (Last 4 Digits)** | **Currency** | **Entity** |
| ICICI Bank | India Operating Account | 6299 | INR | Near Intelligence Pvt. Ltd. |
| ICICI Bank | India Time Deposit Account | 1724 | INR | Near Intelligence Pvt. Ltd. |
| Citibank (Indian Branch) | India Operating Account | 4018 | INR | Near Intelligence Pvt. Ltd. |
| HSBC Bank (Australian Branch) | Australia Operating Account | 4163 | AUD | Near Intelligence Pty. Ltd. |
| HSBC Bank (Australian Branch) | Australia Operating Account | 4159 | USD | Near Intelligence Pty. Ltd. |
| BNP Paribas | France Operating Account / Collections | 7659 | EUR | Near Intelligence S.A.S. |
| BNP Paribas | France Operating Account | 6273 | EUR | Near Intelligence S.A.S. |
| HSBC Bank (French Branch) | France Operating Account | 5666 | EUR | Near Intelligence S.A.S. |
| HSBC Bank (French Branch) | France Operating Account | 6927 | USD | Near Intelligence S.A.S. |
| HSBC Bank USA, N.A. | U.S. Legacy Account | 8046 | USD | Near Americas Inc. |