**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING DEBTORS TO (A) PAY CERTAIN**
**PREPETITION EMPLOYMENT OBLIGATIONS AND (B) MAINTAIN**
**EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this motion (this "Motion") for the entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order," and together with the Interim Order, the "Proposed Orders"), (i) authorizing, but not directing, the Debtors, in accordance with their stated policies and in their discretion, to (a) pay the Prepetition Workforce Obligations (as defined below) and (b) maintain the Employee Benefits Obligations (as defined below) and (ii) granting related relief. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of John Faieta in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]  Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 507(a), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions in the Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

**RELIEF REQUESTED**

7.     By this Motion, the Debtors respectfully request entry of the Proposed Orders authorizing, but not directing, the Debtors, in their discretion, to: (i) pay all unpaid prepetition wages, salaries, and compensation owed to Employees and Independent Contractors (each as defined below), certain sales commissions and other payments owed to non-insiders, all related administrative and incidental costs (each as described below, and collectively, the "Compensation Obligations"), and prepetition employee benefits (each as described below and, collectively, the "Employee Benefit Obligations"); (ii) pay all employment, unemployment, Social Security, Medicare, and federal, state, and local taxes relating to the Compensation Obligations and Employee Benefit Obligations, whether withheld from wages or paid directly by the Debtors to governmental authorities (collectively, the "Payroll Taxes"), and make other payroll deductions, including, but not limited to, retirement and other employee benefit plan contributions and voluntary deductions (all as described below and, collectively with the Payroll Taxes, the "Wage Deduction Obligations" and collectively with the Compensation Obligations and Employee Benefit Obligations, the "Prepetition Workforce Obligations"); and (iii) honor and continue the Debtors' prepetition programs, policies, and practices as described in this Motion in the ordinary course of business.

8.     To fulfil these commitments, the Debtors request entry of the Interim Order, authorizing the Debtors to pay Prepetition Workforce Obligations in an amount not to exceed $644,325 and 19,500 SGD, subject to the $15,150 statutory cap per current employee established by sections 507(a)(4) and (a)(5) of the Bankruptcy code.  Further, the Debtors request that the

3

Court authorize the banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for Prepetition Workforce Obligations (or to reissue checks, drafts, electronic fund transfers or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and authorize, but not direct, such banks and financial institutions to rely on the Debtors' representations as to which checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this Motion, provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.

## THE DEBTORS' EMPLOYEES

9.      As of the Petition Date, the Debtors employ 37 total employees in the United States and Singapore (the "Employees"). Of these employees, 35 are full-time (the "Full-time Employees") and salaried, and 2 employees are hourly (the "Hourly Employees"). The Debtors' workforce is spread across their headquarters in Pasadena, California (the "Headquarters"), their office location in Singapore, and remote and home-based locations throughout the United States.

10.     In the ordinary course of business, the Debtors have historically hired independent contractors to supplement their workforce and complete discrete projects, including individuals and vendors with specialized expertise (the "Independent Contractors"). The number of Independent Contractors employed by the Debtors at any given time fluctuates depending on the Debtors' business needs. As of the Petition Date, the Debtors do not currently retain any Independent Contractors.

11.     The Debtors' ability to run their business safely and productively depends on the expertise and continued support and service of their Employees. Due to the disruption and

uncertainty that typically accompanies a chapter 11 filing, the Debtors believe that the continuity

and competency of their Employees will be jeopardized if the relief requested herein is not granted.

Moreover, if the Debtors fail to pay the Prepetition Workforce Obligations in the ordinary course

of business, members of their workforce will suffer significant personal hardship and, in some

cases, may be unable to pay their basic living expenses.  Such an outcome would have a highly

negative impact on workforce morale and productivity and would risk immediate and irreparable

harm to the Debtors' continuing operation and their estates.  Accordingly, the Debtors have

determined that meeting their Prepetition Workforce Obligations and continuing all of the

compensation and benefits programs described in this Motion are vital to preventing the loss of

key Employees during the pendency of these Chapter 11 Cases and to maintaining the continuity

and stability of the Debtors' operations.

## I.    Overview

12.    As described in further detail below, the Prepetition Workforce Obligations that the

Debtors seek authority to pay are summarized in the following table:

| Obligations | Requested Interim Amount | Requested Final Amount |
|---|---|---|
| **Compensation Obligations** | | |
| Wages and Other Compensation | $540,000 15,000 SGD | $1,630,000 45,000 SGD |
| Payroll Processing Fees | $6,000 500 SGD | $19,000 1,500 SGD |
| Commission Program | $20,000 | $350,000 |
| Non-Insider Bonus Program | N/A | $240,000 15,000 SGD |
| Wage Deductions & Payroll Tax Obligations | $24,000 4,000 SGD | $250,000 12,000 SGD |
| **Employee Benefit Obligations** | | |
| Medical Plans | $35,000 | $105,000 |
| Dental Plans | $75 | $200 |
| Vision Plans | $200 | $500 |

| | | |
|---|---|---|
| Paid Leave | $150 | $400 |
| Expense Reimbursement | $15,000 | $45,000 |
| Life and AD&D Plans | $1,500 | $4,000 |
| Disability Plans | $400 | $1,300 |
| 401(K) | $2,000 | $72,000 |
| **TOTAL** | **$644,325**<br>**19,500 SGD** | **$2,717,400**<br>**73,500 SGD** |

## II.     Compensation Obligations

### A.     Unpaid Wages and Other Compensation

13.     Historically, the Debtors' gross aggregate payroll liability in the U.S. is approximately $700,000 per month and in Singapore is approximately 52,000 SGD.  U.S. Hourly Employees and Independent Contractors are paid on a bi-weekly basis every other Friday, and Full-time Employees are generally paid wages and salaries on a semi-monthly basis, both via direct deposit.  With respect to Full-time Employees, Payroll is made on the fifteenth (15th) and the last day of each month for the period ending the prior week ("Payroll").  In the event that a payday falls on a holiday or weekend, Payroll is made the prior business day.  The Debtors' Employees in Singapore are paid via direct deposit on a monthly basis.

14.     The Debtors' last prepetition U.S. Full-time Employee Payroll (for the period December 1, 2023 through December 15, 2023) was funded on December 7, 2023, in the amount of approximately $312,500.  The Debtors' next U.S. Full-time Employee Payroll (for the period December 16, 2023 through December 29, 2023) will be funded on December 26, 2023, and is expected to be approximately $312,500.  The Debtors' last prepetition U.S. Hourly Employee Payroll (for the period November 19, 2023 through December 2, 2023) was funded on December 5, 2023, in the amount of approximately $3,000.  The next U.S. Hourly Employee Payroll (for the period December 3, 2023 through December 16, 2023) will be funded on December 19, 2023, and is expected to be approximately $3,000.

15.     The Debtors' last prepetition Singapore Payroll (for the period November 1, 2023 through November 30, 2023) was funded on November 29, 2023, in the amount of approximately 14,252 SGD.  The Debtors' next Singapore Payroll (for the period December 1, 2023, through December 31, 2023) will be funded on December 29, 2023, and is expected to be approximately 14,252 SGD.

16.     The Debtors hereby request authority to pay the total amount of outstanding prepetition accrued wages, salaries, and other compensation due from the Debtors to the Employees that may exist as of the Petition Date.  To the best of the Debtors' knowledge, as of the Petition Date, no Employee is owed Unpaid Wages in an amount exceeding the $15,150 statutory cap imposed by section 507(a)(4) of the Bankruptcy Code.

### B.     Payroll Processing Fees

17.     The Debtors use TriNet III, Inc. ("TriNet") in the U.S. and ICS Services PTE LTD.[3] in Singapore (the "Payroll Processors") to administer payroll, which includes calculating and processing gross-to-net payroll, issuing payroll payments to the appropriate funds transfer networks, generating pay statements, and coordinating the payment of any Wage Deduction Obligations (as defined below) or other applicable withholdings.  The ongoing services of the Payroll Processors are imperative to the smooth functioning of the Debtors' operations and payroll processing.  The Debtors pay the Payroll Processors approximately $6,000 and 200 SGD per month for their services.  The Debtors estimate that, as of the Petition Date, the amount of accrued but unpaid obligations owed on account of the Payroll Processing Fees is approximately 400 SGD.

---

[3]     The Debtors may be transitioning to a different payroll processor in Singapore during the pendency of the Chapter 11 Cases.  This transition will not affect the requested relief with respect to for payroll processing fees.

C.      **Employee Commission and Bonus Programs**

1.      **Commission Program**

18.      In the ordinary course of business, the Debtors maintain several incentive and bonus programs to drive performance and retention among their non-insider Employees, including a commission compensation plan for the Debtors' sales teams (the "Commission Program").

19.      Employees working on the Debtors' sales teams earn commission based on performance, specifically the revenue the Debtors receive from each Employee's assigned customer(s). Employees are also able to earn a flat commission rate for any one-time non-recurring services sold, and also may earn an additional commission for any deals with multi-year contract terms. The Debtors also provide Employees the opportunity to earn a fixed cash amount each business quarter for (i) achieving certain dollar amount benchmarks in sales, and (ii) consistently hitting quarterly targets.

20.      The Debtors estimate that, as of the Petition Date, the amount of accrued but unpaid commission owed under the Commission Program to non-insider Employees is $190,000, of which $20,000 will become due and owing within the first twenty one (21) days of these Chapter 11 Cases. By this Motion, the Debtors request authority to pay any and all amounts accrued prepetition and postpetition relating to the Commission Program, and are seeking authority to continue the Commission Program in the ordinary course of business.

2.      **Non-Insider Bonus Program**

21.      Additionally, the Debtors have historically maintained a bonus program for non-insider Full-Time Employees (the "Bonus Program"). The Bonus Program is discretionary, calculated as a percentage of the Employees' salary, and dependent upon the Employees' performance as well as the Debtors' performance and ultimate revenue for the given year. The next iteration of the Bonus Program will be paid by the Debtors around February 2024. The

Debtors estimate that, as of the Petition Date, the amount of accrued but unpaid bonuses owed

under the Bonus Program is $240,000 and 15,000 SGD, none of which will become due and owing

within the first twenty one (21) days of these Chapter 11 Cases.  Subject to entry of the Final Order,

the Debtors hereby request authorization, but not direction to continue the Bonus Program and pay

any prepetition amounts owed to the Employees in connection therewith.

### D.   Non-Insider Retention Bonus Program

22.     Prior to the Petition Date, the Debtors implemented a retention bonus program for

7 key non-insider Employees (the "Non-Insider Retention Bonus Program")[4] in order to ensure a

smooth transition into the Chapter 11 Cases and to accomplish the overall goals of realizing a

value-maximizing sale transaction.  Increased instability in the Debtors' Employees would only

undermine the Debtors' ability to maintain business continuity and continued operations during

the pendency of the Chapter 11 Cases and beyond.  The Debtors believe that the Non-Insider

Retention Program helps to motivate, reward, and retain certain key non-insider Employees.

23.     In the aggregate, as of the Petition Date, outstanding awards under the Non-Insider

Retention Program total approximately $300,000 (the "Non-Insider Retention Program

Obligations"), none of which will become due and owing within the first twenty one (21) days of

these Chapter 11 Cases.  By this Motion, and solely pursuant to the Final Order, the Debtors request

authority, but not direction, to make any outstanding Non-Insider Retention Program Obligations

as they come due in the ordinary course.  For the avoidance of doubt, eligibility for full payment

---

[4]     Separate from and unrelated to the non-insider retention programs described herein, prior to the Petition Date, the
Debtors implemented retention bonus programs for certain named officers.  Pursuant to these programs, the
Debtors prepaid retention bonuses for three named officers in the amount of $145,000. Moreover, with respect to
the retention bonus program for one named officer, a retention bonus in the amount $45,000 is contemplated to
be paid in three equal quarterly installments, beginning in Q1 2024.  Payments under these retention bonus
programs are subject to clawback by the Debtors if the employee voluntarily leaves the employ of the Debtors
during the applicable time periods covered by the program. By this Motion, the Debtors do not seek approval or
authorization from the Court with respect to paying amounts under such programs.

under the Non-Insider Retention Program is subject to the condition that the participating Employees do not terminate voluntarily or are not terminated by the Debtors for cause before September 30, 2024, and no payments under the Retention Programs will be made to insiders.

### E.   Wage Deduction and Payroll Tax Obligations

24.   During each applicable pay period, the Debtors routinely deduct certain amounts from the Employees' compensation as required by law, including but not limited to: federal income taxes, legally ordered deductions, insurance premiums, and other miscellaneous deductions (collectively, the "Wage Deduction Obligations"), and forward those amounts to various third-party recipients.  The Debtors are current on their U.S. Wage Deduction Obligations, but various payroll tax obligations will reset in January.  The Debtors believe that, as of the Petition Date, 7,270 SGD remains outstanding to the various third-party recipients on account of the Wage Deduction Obligations.

25.   Accordingly, the Debtors seek authority to (i) remit 7,270 SGD in pre-petition Wage Deduction Obligations to the various third-party recipients and (ii) continue to forward Wage Deduction Obligations to the applicable third-party recipients on a postpetition basis in the ordinary course of their business, as routinely done prior to the Petition Date.

### III.   Employee Benefit Obligations

26.   In the ordinary course of business, the Debtors provide their eligible Employees, directly or indirectly, a number of benefits, including, but not limited to: (a) medical, dental, and vision insurance; (b) paid sick days, vacation days, pregnancy and parental leave, and other paid time off; (c) a 401(k) retirement plan; (d) certain other miscellaneous employee benefits, including, but not limited to, life and accidental death & dismemberment insurance, short-term and long-term disability insurance, and certain benefits to certain former Employees after their termination, retirement, or disability leave, including, but not limited to, benefits provided under the

Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); and (e) certain state specific benefits, including voluntary benefits available for opt-in at the discretion of the Employees (the "Voluntary Benefits" and together the foregoing, the "Employee Benefit Obligations").  As of the Petition Date, the total accrued but unpaid obligations owed by the Debtors relating to the Employee Benefits are approximately $32,000.

### A.    Health Benefits

#### 1.    Medical, Dental, and Vision Benefits

27.    The Debtors offer all eligible Employees and their dependents the option to select between medical plans (collectively, the "Medical Plans") administered through Blue Shield of California ("Blue Shield") and Kaiser HMO ("Kaiser").  Certain of the medical plans are only available to Northern California-based Employees, and certain of the medical plans are only available to Southern California-based Employees.  The Medical Plans includes PPO Medical Plans with low to high deductibles, ACO Medical Plans, HMO Medical Plans and HSA high deductible Medical Plans.  The Debtors pay monthly premiums based on the number of covered Employees for administrative services related to the Medical Plans.  The Debtors pay, on average, approximately $40,000 per month towards the Medical Plans.  As of the Petition Date, the total accrued but unpaid obligations owed by the Debtors relating to the Medical Plans are approximately $20,000.

28.    Additionally, the Debtors offer all eligible Employees the option of participating in a range of dental plans (the "Dental Plans") administered by Delta Dental, Guardian Dental, or MetLife Dental.  The Debtors offer PPO low deductible and PPO high deductible plans.  The Debtors subsidize the Employees' premiums in connection with the Dental Plans, and all eligible Employees contribute through Wage Deduction Obligations.  As of the Petition Date, the Debtors do not estimate that any amounts are outstanding with respect to the Dental Plans.

29.     The Debtors also offer all eligible Employees the option of participating in a vision plan administered through a narrow Aetna EyeMed or VSP Vision (the "Vision Plans"), which are funded partially through Wage Deduction Obligations and partially through contribution from the Debtors.  As of the Petition Date, the Debtors do not estimate that any amounts are outstanding with respect to the Vision Plans.

30.     The Debtors seek authorization to continue to honor their obligations under the Medical Plans, Dental Plans, and Vision Plans in the ordinary course of business.

### 2.     Flexible Spending Accounts

31.     In addition to offering the medical benefits described above, the Debtors offer Employees the option to enroll in certain flexible spending accounts, including a healthcare flexible spending account, a dependent care flexible spending account, and a commuter transit flexible spending account (collectively, the "Flexible Spending Accounts") that are administered through TriNet.  Participating Employees can make pre-tax payroll contributions to the Flexible Spending Accounts up to the maximum amounts permitted by the Internal Revenue Service. Employees then may use the proceeds of Flexible Spending Accounts to cover the cost of eligible health care expenses incurred by such Employees and/or their dependents, depending on the Flexible Spending Account in which they are enrolled.  Employees who participate in the Flexible Spending Accounts may use such proceeds by, among other means, utilizing a designated debit card provided to participating Employees or submitting claims for reimbursement.  The Debtors do not make contributions to, and have no ownership interest in, the Flexible Spending Accounts.

### 3.     Health Savings Accounts

32.     Eligible Employees enrolled in a high deductible Medical Plan may elect to participate in the Debtors' tax-advantaged health savings account (the "HSA Plan") under which the Debtors offer the Employees who elect to participate in the HSA Plan (the "HSA Plan

Employees") the ability to contribute a portion of their pre-tax compensation to a health savings account to pay for qualified out-of-pocket healthcare expenses.  The HSA Plan Employees designate a certain amount per month to be withheld from their payroll as a Wage Deduction Obligation.  The Debtors do not make contributions to, and have no ownership interest in, the HSA Plans.

### B.    Paid and Unpaid Leave

33.    The Debtors provide paid and unpaid leave as forms of compensation that, in certain cases, are required by statute, and, in all cases, are customary and necessary.  These policies enable the Debtors to retain qualified Employees to operate their business.  Failure to provide these benefits could contravene applicable law, harm Employee morale, and encourage the premature departure of Employees.  The Debtors, therefore, request authority to continue these benefit programs in the ordinary course of business during these Chapter 11 Cases.

### 1.    Paid Time Off

34.    The Debtors provide, subject to certain company guidelines, unlimited paid time off for, without limitation, sick days, vacation time, holidays, and other miscellaneous reasons, to Hourly Employees as a paid-time-off benefit ("Paid Time Off").  Paid Time Off is earned on a per-hours-worked basis, with the rate of accrual based on length of employment.  Hourly Employees who have worked 1-2 years accrue 3.076 hours of Paid Time Off per 80 hours worked, Hourly Employees who have worked 3-4 years accrue 4.615 hours of Paid Time Off per 80 hours worked, and Hourly Employees who have worked 5+ years accrue 6.153 hours of Paid Time Off per 80 hours worked.  The maximum amount of annual accrued Paid Time Off allowed for the aforementioned Hourly Employee groups are capped at 10 days, 15 days, and 20 days, respectively.

35.     Paid Time Off may be carried forward to the next anniversary year, up to a cap. Hourly Employees who have worked 1-2 years are capped at 15 days of Paid Time Off total at any time, Hourly Employees who have worked 3-4 years are capped at 23 days, and Employees who have worked 5 or more years at 30 days.  Upon termination, Hourly Employees receive a payout regarding any unused or outstanding Paid Time Off.

36.     Full-time Employees do not receive the Paid Time Off benefit because they partake in a flexible time off program where each Full-time Employee has unlimited days off with no formal accrual.

37.     As of the Petition Date, the Debtors do not estimate that any amounts are outstanding in accrued Paid Time Off.

**2.      Sick Leave**

38.     Eligible Employees accrue additional time off for sick leave at a rate of 1 hour per 30 hours worked ("Sick Leave").  Eligible Employees may accrue a maximum of 80 hours of Sick Leave each year.  Sick Leave begins to accrue on an eligible Employee's start date but cannot be used until after the 90th day of that Employee's employment, except as otherwise provided by applicable law.

**3.      Holidays**

39.     Debtors offer eligible Employees 10 paid holidays throughout the year (collectively, the Holidays).  Generally, eligible Employees are not required to work on Holidays.

**4.      Other Leaves of Absence**

40.     The Debtors also permit eligible Employees to take certain other paid and unpaid leaves of absence for personal reasons.  For example, the Debtors offer leaves of absence to be used by Employees for voting, jury duty and witness duty, bereavement leave, parental leave following birth, adoption, or foster placement of a child, medical and personal appointments,

among other leaves of absence.  The Debtors also offer unlimited vacation days for eligible Employees.

### C.    Expense Reimbursement

41.    The Debtors, in the ordinary course of business, reimburse Employees for a variety of ordinary, necessary, and reasonable business-related expenses that the Employees incur on behalf of the Debtors in the scope of their employment (the "Reimbursable Expenses").  Such Reimbursable Expenses must be approved prior to purchase.  Most Employees initially incur and pay for such Reimbursable Expenses by using personal funds or credit cards, but are subsequently reimbursed by the Debtors after submission and approval of expense reimbursement reports. Reimbursable Expenses may include airfare, hotel stays, meals, and transportation, among other expenses.  Employees are expected to use sound judgment and good business sense when incurring such expenses, and the Debtors reserve executive approval to accept or deny repayment of all requested Reimbursable Expenses.  The Debtors pay, on average, approximately $15,000 per month on account of requested and approved Reimbursable Expenses. As of the Petition Date, the Debtors believe they are current on account of accrued and unpaid Reimbursable Expenses, and expect approximately $15,000 to come due and owing within the first twenty one (21) days of these Chapter 11 Cases.

### D.    Additional Employee Benefits

#### 1.    401(k) Plan

42.    The Debtors offer a 401(k) plan for the benefit of their eligible Employees (the "401(k) Plan"), which is administered through TriNet.  The 401(k) Plan permits eligible Full-Time Employees to defer a portion of their wages into the 401(k) Plan.  Eligible Employees can participate in the 401(k) Plan after receiving their first paycheck after their first month of employment.

43.     Employees enrolled in the 401(k) Plan can contribute up to the maximum amount permitted under federal law.  On behalf of Employees enrolled in the 401(k) Plan, subsequent to each pay period, the Debtors remit approximately $10,000 for contributions to Employees' 401(k) Plans.  Additionally, in their sole discretion, the Debtors may match up to one hundred (100) percent of Employees' elective deferrals up to six (6) percent of an eligible Employee's contributions into the 401(k) Plan.

44.     As of the Petition Date, the Debtors do not believe that any amounts are currently owed on account of the 401(k) Plan.

### 2.     Life and AD&D Insurance and Disability Benefits

45.     The Debtors offer to all eligible Employees basic life and accidental death and dismemberment insurance ("Life and AD&D Insurance") through TriNet, as well as long-term and short-term disability insurance ("Disability Benefits") through The Hartford.  The Debtors offer the Life and AD&D Insurance at 1 times the Employee's annual salary, up to a cap of $1,000,000. All Employees who worked at least 30 hours per week on a regular basis are automatically enrolled in Disability Benefits.  The Life and AD&D Insurance and the Disability Benefits are fully funded by the Debtors and provided to the Employees at no cost.

46.     As of the Petition Date, the Debtors believe they owe approximately $1,500 on account of the Life and AD&D Insurance and the Disability Benefits.

### 3.     Voluntary Benefits

47.     The Debtors offer certain voluntary benefits to eligible Employees, including (i) identity protection insurance, (ii) pet insurance, (iii) legal insurance, (iv) COBRA, (v) counseling sessions, (vi) referrals for childcare and eldercare, and (vii) certain other miscellaneous benefits.

48.     The Voluntary Benefits are available at the election of eligible Employees, and do not require any payments of administrative costs or fees by the Debtors.  The Debtors seek authorization, but not direction, to continue to offer the Voluntary Benefits to eligible Employees.

## BASIS FOR RELIEF

**I.    Payment of the Prepetition Workforce Obligations Is a Sound Exercise of the Debtors' Business Judgment and Is Appropriate Under Sections 105(a) and 363 of the Bankruptcy Code.**

49.     Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); see also In re Phoenix Steel Corp., 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); see also, e.g., In re Adelphia Commc'ns Corp., No. 02-41729 (REG), 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); Comm. of Equity Sec. Holders v. Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); In re Glob. Home Prods., LLC, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007); In re Dana Corp., 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006).

50.     In addition to being justified under section 363(b)(1) of the Bankruptcy Code, payment of the Prepetition Workforce Obligations is warranted under the doctrine of necessity. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is

necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) and the "doctrine of necessity," the Court may exercise its broad grant of equitable powers to permit the payment of prepetition workforce obligations when such payment is essential to the continued operation of the debtor's business. See, e.g., In re Just for Feet, Inc., 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

51.    The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh & New England Railway Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. Id. (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); see also Official Comm. of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l, Inc.), No. 08-12136 (BLS), 2009 WL 330993, at *3 (D. Del. Feb. 10, 2009) (denying stay pending appeal on grounds that doctrine of necessity had not been brought into serious question by courts in Third Circuit).

52.     The necessity of payment doctrine is designed to foster a debtor's rehabilitation, which courts have recognized is "the paramount policy of Chapter 11." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition workers' compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); In re Just for Feet, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition workforce obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

53.     It is a sound exercise of the Debtors' business judgment to pay the Prepetition Workforce Obligations because doing so will help the Debtors avoid potentially value-destructive interruption to their business operations during these Chapter 11 Cases. For the reasons discussed herein, payment of the Prepetition Workforce Obligations enhances value for the benefit of all interested parties. The Debtors' ability to continue operations and maximize value depends, in

large part, on the retention, motivation, and productivity of their workforce, whose efforts will be critical to the success of these Chapter 11 Cases. Most of the Debtors' Employees rely exclusively on the Prepetition Workforce Obligations to satisfy their daily living expenses. If amounts owed are not received or benefits are delayed, the workforce may be exposed to significant financial hardship, in some cases, Employees will be unable to meet their basic needs, which may make continuing to work for the Debtors impossible. If the Debtors are unable to satisfy their various compensation and benefits obligations, the workforce will suffer at a time when their support is critical to the Debtors. Therefore, to provide certainty to the Debtors' Employees, maintain morale and productivity, limit turnover, and minimize any adverse effect of the commencement of these Chapter 11 Cases, it is necessary to continue providing ordinary course compensation and benefits to such Employees. Moreover, for the avoidance of doubt, no Employee will receive payment under this Motion in excess of the statutory cap of $15,150 on account of any existing Prepetition Workforce Obligations outstanding as of the Petition Date, unless such amounts above the statutory cap are a result of a cash payment for Paid Time Off or Sick Leave that is required to be made under applicable state law. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay and continue the Prepetition Workforce Obligations in the ordinary course of business and consistent with past practice.

II.    **Payment of Certain of the Prepetition Workforce Obligations Is Required as Priority Claims.**

54.    The Debtors believe that the majority of the Prepetition Workforce Obligations constitute priority claims under sections 507(a)(4), (a)(5), and (a)(8) of the Bankruptcy Code, which must be satisfied before any general unsecured claims against the Debtors' estates. See 11 U.S.C. §§ 507(a)(4), 507(a)(5), 507(a)(8), 726. Specifically, under section 507(a)(4)(A) of the Bankruptcy Code, claims of employees for "wages, salaries, or commissions, including vacation,

severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority

unsecured status up to $15,150 per individual.  <u>See</u> 11 U.S.C. § 507(a)(4)(A).

55.     Similarly, under section 507(a)(5) of the Bankruptcy Code, employees' claims for

contributions to certain employee benefit plans are also afforded priority unsecured status up to

$15,150 per employee covered by such plan, less any amount paid under section 507(a)(4).  <u>See</u>

11 U.S.C. § 507(a)(5)(A).  The same holds true for the payment of payroll taxes, as the relevant

taxing authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy

Code for such obligations and their payment will not prejudice other creditors of the Debtors.  <u>See</u>

11 U.S.C. § 507(a)(8).

56.     The Debtors believe that no Employee is owed prepetition accrued and unpaid

wages in excess of the cap and no amounts are accrued and owing under any benefits plan in excess

of the cap.  Thus, the Prepetition Workforce Obligations are priority claims that, in any event, must

be paid in full under the Bankruptcy Code.  As a result, payment of such Prepetition Workforce

Obligations merely expedites the treatment afforded to such claims and is consistent with the

priority scheme set forth in the Bankruptcy Code.  Accordingly, the Debtors request entry of the

Interim Order authorizing the Debtors to pay the Prepetition Workforce Obligations in an

aggregate amount not to exceed the Interim Amount subject to the $15,150 per Employee cap

(unless such amounts above the statutory cap are a result of a cash payment for Paid Time Off or

Sick Leave that is required to be made under applicable state law), followed by the final hearing

on this Motion authorizing the Debtors to continue paying such obligations in the ordinary course

throughout these Chapter 11 Cases; <u>provided</u> that the Debtors are not requesting relief for the Non-

Insider Bonus Programs on an interim basis, and are only requesting such relief subject to entry of

a Final Order.

III.    **Funds Related to the Payroll Taxes and Wage Deduction Obligations May Be Held in Trust and Are Not Property of the Estates.**

57.    Payroll Taxes withheld from an Employee's wages and any other Wage Deduction Obligations are collected or withheld by the Debtors and may be held in trust for the benefit of the applicable taxing authority.  As a result, Payroll Taxes and other Wage Deduction Obligations are not property of the Debtors' estates under section 541 of the Bankruptcy Code and those funds, therefore, are not available for the satisfaction of creditors' claims.  See, e.g., Begier v. I.R.S., 496 U.S. 53 (1990) (withheld taxes are property held by the debtor in trust for another and, as such, not property of the debtor's estate); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); see generally Official Comm. of Unsecured Creditors of Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc., 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found).  Instead, the Debtors may be obligated to remit these funds to the applicable taxing authority.

58.    Many federal, state, and local statutes also impose personal liability on officers and directors of companies for the failure to remit certain Payroll Taxes and other Wage Deduction Obligations.   To the extent that the relevant Payroll Taxes and other Wage Deduction Obligations remain unpaid by the Debtors, the Debtors' directors, officers, and executives may be subject to lawsuits or criminal prosecution during the pendency of these Chapter 11 Cases.  Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtors and their directors, officers, and executives from devoting their full attention to the Debtors' businesses and the orderly administration of these Chapter 11 Cases.  The Debtors believe that these distractions would materially undermine their ability to operate in the ordinary course of business and to administer these Chapter 11 Cases, with resulting detriment to any parties-in-interest.

59.     For these reasons, the Debtors submit that the relief requested in this Motion is essential, appropriate, and in the best interests of their estates, creditors, and any parties-in-interest, and, therefore, should be granted.

**IV.     Processing of Checks and Electronic Fund Transfers Should Be Authorized.**

60.     The Debtors further request that the Court authorize and direct their banks and all other financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the Prepetition Workforce Obligations, whether such checks were presented before or after the Petition Date; provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.  The Debtors have sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of consensual use of cash collateral and DIP Financing.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment to be made hereunder.  For that reason, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers on account of the Prepetition Workforce Obligations to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

**SATISFACTION OF BANKRUPTCY RULE 6003**

61.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm.  Fed. R. Bankr. P. 6003(b).  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the

debtor's future as a going concern.  See In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

62.     As described herein and in the First Day Declaration, the Debtors will suffer immediate and irreparable harm without authorization of the relief requested herein.  Accordingly, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

63.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

64.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## RESERVATION OF RIGHTS

65.     Nothing in the Proposed Orders or this Motion (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors and their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair,

prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

## **NOTICE**

66.     Notice of this Motion has been or will be provided to: (i) U.S. Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Securities and Exchange Commission; (v) counsel to the Stalking Horse Bidder, prepetition lenders and DIP lenders; (vi) those creditors holding the thirty (30) largest unsecured claims against the Debtors' estates; (vii) the Banks; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve copies of this Motion and an order entered in respect of this Motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank.]*

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter the Proposed Orders, granting

the relief requested herein and such other and further relief as is just and proper.


Dated: December 8, 2023
       Wilmington, Delaware

                            **YOUNG CONAWAY STARGATT & TAYLOR, LLP**

                            */s/ Shane M. Reil*
                            Edmon L. Morton (No. 3856)
                            Matthew B. Lunn (No. 4119)
                            Shane M. Reil (No. 6195)
                            Carol E. Cox (No. 6936)
                            Rodney Square
                            1000 North King Street
                            Wilmington, Delaware 19801
                            Telephone: (302) 571-6600
                            Facsimile: (302) 571-1253
                            emorton@ycst.com
                            mlunn@ycst.com
                            sreil@ycst.com
                            ccox@ycst.com

                            -and-

                            **WILLKIE FARR & GALLAGHER LLP**
                            Rachel Strickland (*pro hac vice* pending)
                            Andrew S. Mordkoff (*pro hac vice* pending)
                            Joseph R. Brandt (*pro hac vice* pending)
                            787 Seventh Avenue
                            New York, New York 10019
                            Telephone:  (212) 728-8000
                            Facsimile:  (212) 728-8111
                            rstrickland@willkie.com
                            amordkoff@willkie.com
                            jbrandt@willkie.com

                            *Proposed Co-Counsel to the Debtors*
                            *and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No.** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN
PREPETITION EMPLOYMENT OBLIGATIONS AND (B) MAINTAIN EMPLOYEE
BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and

debtors in possession (the "<u>Debtors</u>") for the entry of interim and final orders, pursuant to sections

105(a), 363(b), 507(a), and 541 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and

Local Rule 9013-1, (i) authorizing the Debtors, in their discretion, to (a) pay all Prepetition

Workforce Obligations and (b) honor and continue the Debtors' prepetition programs, policies,

and practices as described in the Motion in the ordinary course of business; and (ii) granting certain

related relief, all as more fully set forth in the Motion; and upon consideration of the Motion and

all pleadings related thereto, including the First Day Declaration; and due and proper notice of the

Motion having been given; and having determined that no other or further notice of the Motion is

required; and having determined that this Court has jurisdiction to consider the Motion in

accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from

the United States District Court for the District of Delaware, dated as of February 29, 2012; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2] Capitalized terms used but not otherwise defined in this Interim Order shall have the meanings ascribed to them in the Motion.

having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having

determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      **A final hearing on the relief sought in the Motion shall be conducted on [**

**_____], 2023 at [____] (ET) (the "Final Hearing").**  Any party-in-interest objecting to the relief

sought at the Final Hearing or the proposed Final Order shall file and serve a written objection,

which objection shall be served upon (i) proposed co-counsel for the Debtors, (a) Willkie Farr &

Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Rachel C. Strickland, Esq.

(rstrickland@willkie.com), Andrew S. Mordkoff, Esq. (amordkoff@willkie.com), and Joseph R.

Brandt, Esq. (jbrandt@willkie.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney

Square, 1000 North King Street, Wilmington, Delaware 19801, Attn:  Edmon L. Morton, Esq.

(emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), Shane M. Reil, Esq.

(sreil@ycst.com), and Carol E. Cox, Esq. (ccox@ycst.com); (ii) counsel to any official committee

appointed in these Chapter 11 Cases; (iii) counsel to the DIP Lenders, (a) King & Spalding LLP,

1185 Sixth Avenue, Floor 34, New York, NY 10036, Attn: Roger Schwartz, Esq.

(rschwartz@kslaw.com), Geoffrey King, Esq. (gking@kslaw.com), and Miguel Cadavid, Esq.

(mcadavid@kslaw.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St.,

#1600, Wilmington, DE 19801, Attn: Robert Dehney, Esq. (rdehney@morrisnichols.com),

Matthew    Harvey,    Esq.    (mharvey@morrisnichols.com),    Brenna    Dolphin,    Esq.

(bdolphin@morrisnichols.com) and Austin Park, Esq. (apark@morrisnichols.com);  and (iv) the

Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building,

844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin Hackman, Esq. (Benjamin.a.hackman@usdoj.gov), in each case no later than [_____], 2023 at 4:00 p.m. (ET). If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.     The Debtors are authorized, but not directed, in their discretion and business judgment, to (i) pay or otherwise honor all Prepetition Workforce Obligations in an amount not to exceed $644,325 and 19,500 SGD on an interim basis; (ii) pay postpetition Compensation Obligations and Employee Benefit Obligations and honor and continue their programs, policies, obligations, and practices described in the Motion that were in effect as of the Petition Date, in the ordinary course of business, and in the same manner and on the same basis as the Debtors honored and continued such programs, policies, and practices before the Petition Date; and (iii) withhold and remit all federal, state, and local taxes relating to the Compensation Obligations and Employee Benefit Obligations as required by applicable law; provided that in no event shall the Debtors pay any Prepetition Workforce Obligations before such amounts are due and payable, and this Interim Order shall not be deemed to allow the Debtors to accelerate any payment of any amounts of Prepetition Workforce Obligations that may be due and owing by the Debtors.

4.     Notwithstanding any other provision of this Interim Order and absent further order of the Court, (i) payments or transfers to, or on behalf of, Employees or Independent Contractors on account of all Prepetition Workforce Obligations or other obligations in the interim period shall be limited by sections 507(a)(4) and (a)(5) of the Bankruptcy Code and capped at the amount afforded priority by those statutory subsections; provided, however, that the Debtors are authorized to pay amounts owed for Paid Time Off or Sick Leave upon termination/resignation of an

3

employee in excess of the caps provided by section 507(a)(4) or (a)(5) of the Bankruptcy Code if applicable state law requires such payment.

5.      The Debtors are authorized, but not directed, to reissue payment for the Prepetition Workforce Obligations and to replace any inadvertently dishonored or rejected payments.  Further, the Debtors are authorized, but not directed, to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

6.      The Debtors' banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay Prepetition Workforce Obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date; provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors' banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

7.      Nothing in this Interim Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

8.      Notwithstanding anything to the contrary in this Interim Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

9.      The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

10.     The requirements of Bankruptcy Rule 6003(b) have been satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

11.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be effective and enforceable immediately upon its entry.

12.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>EXHIBIT B</u>**

**Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (___) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. ___** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY CERTAIN PREPETITION EMPLOYMENT OBLIGATIONS AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND (II) GRANTING RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of interim and final orders, pursuant to sections 105(a), 363(b), 507(a), and 541 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 9013-1, (i) authorizing the Debtors, in their discretion, to (a) pay all Prepetition Workforce Obligations and (b) honor and continue the Debtors' prepetition programs, policies, and practices as described in the Motion in the ordinary course of business; and (ii) granting certain related relief, all as more fully set forth in the Motion; and upon consideration of the Motion and all pleadings related thereto, including the First Day Declaration; and due and proper notice of the Motion having been given; and having determined that no other or further notice of the Motion is required; and having determined that this Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2] Capitalized terms used but not otherwise defined in this Final Order shall have the meanings ascribed to them in the Motion.

having determined that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and having determined that venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, in their discretion and business judgment, to (i) pay or otherwise honor all Prepetition Workforce Obligations in an amount not to exceed $2,717,400 USD and 73,500 SGD on a final basis; (ii) pay postpetition Compensation Obligations and Employee Benefit Obligations and honor and continue their programs, policies, obligations, and practices described in the Motion that were in effect as of the Petition Date, in the ordinary course of business, and in the same manner and on the same basis as the Debtors honored and continued such programs, policies, and practices before the Petition Date; and (iii) withhold and remit all federal, state, and local taxes relating to the Compensation Obligations and Employee Benefit Obligations as required by applicable law; <u>provided</u> that in no event shall the Debtors pay any Prepetition Workforce Obligations before such amounts are due and payable, and this Final Order shall not be deemed to allow the Debtors to accelerate any payment of any amounts of Prepetition Workforce Obligations that may be due and owing by the Debtors.

3.      Subject to paragraph 2 of this Final Order, the Debtors are authorized, but not directed, in their sole discretion, to honor their obligations under the Bonus Program and the Non-Insider Retention Bonus Program in the ordinary course of business and to pay any accrued but unpaid amounts due thereunder notwithstanding that such obligations may have arisen prior to the Petition Date.

4.      Notwithstanding any other provision of this Final Order and absent further order of the Court, (i) payments or transfers to, or on behalf of, Employees or Independent Contractors on account of Prepetition Workforce Obligations or other obligations shall be limited by sections 507(a)(4) and (a)(5) of the Bankruptcy Code and capped at the amount afforded priority by those statutory subsections; provided, however, that the Debtors are authorized to pay amounts owed for Paid Time Off or Sick Leave upon termination/resignation of an employee in excess of the caps provided by sections 507(a)(4) or (a)(5) of the Bankruptcy Code if applicable state law requires such payment.

5.      The Debtors are authorized, but not directed, to reissue payment for the Prepetition Workforce Obligations and to replace any inadvertently dishonored or rejected payments.  Further, the Debtors are authorized, but not directed, to reimburse any expenses that Employees may incur as a result of any bank's failure to honor a prepetition check.

6.      The Debtors' banks are authorized, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay Prepetition Workforce Obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, or after, the Petition Date; provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Debtors' banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

7.      Nothing in this Final Order (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as

to the validity of any claim against the Debtors; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to the validity, priority, or amount of any claim against the Debtors and their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors and their estates with respect to any and all claims or causes of action; or (iv) shall be construed as a promise to pay a claim.

8.      Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained, hereunder, shall be subject to the "Approved Budget" as defined in the order of the Court approving debtor-in-possession financing in these Chapter 11 Cases.

9.      The Debtors are authorized, but not directed, to take any and all actions necessary to effectuate the relief granted herein.

10.      Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be effective and enforceable immediately upon its entry.

11.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.      This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.