## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date**:<br>**January 5, 2024 at 11:00 a.m. (ET)** |
| | **Objection Deadline**:<br>**December 29, 2023 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF GLC ADVISORS & CO., LLC AND GLC SECURITIES, LLC AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING CERTAIN INFORMATION REQUIREMENTS IMPOSED BY LOCAL RULE 2016-2, AND (III) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this application (this "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2(h) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), requesting entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the retention and employment of GLC Advisors & Co., LLC and GLC Securities, LLC (together, "GLC") as investment banker for the Debtors, effective as of the Petition Date

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

(defined below), in accordance with the terms and conditions of that certain amended and restated engagement letter, dated as of December 7, 2023 and effective as of September 18, 2023, (the "Engagement Letter"), attached hereto as **Exhibit B** and incorporated herein by reference, (ii) modifying the time keeping requirements of Local Rule 2016-2 and the guidelines (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and the requirements of Local Rule 2016-2 in connection with GLC's proposed engagement by the Debtors, and (iii) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Abraham T. Han in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of GLC Advisors & Co., LLC and GLC Securities, LLC as Investment Banker for the Debtors and Debtors in Possession, Pursuant to 11 U.S.C. §§ 327(a) and 328, Effective as of the Petition Date, (II) Waiving Certain Information Requirements Imposed By Local Rule 2016-2, and (III) Granting Related Relief* (the "Han Declaration"), attached hereto as **Exhibit C** and incorporated herein by reference.  In further support of this Application, the Debtors respectfully represent as follows:

**JURISDICTION AND VENUE**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f) the Debtors consent to entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rules 2014-1 and 2016-2(h).

## BACKGROUND

4.      On December 8, 2023 (the "Petition Date"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court.  The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No official committee has been appointed in these Chapter 11 Cases, and no request has been made for the appointment of a trustee or an examiner.

6.       Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the circumstances leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of John Faieta in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 14].[2]

## RELIEF REQUESTED

7.      By this Application, the Debtors request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the retention and employment of GLC as investment banker for the Debtors, effective as of the Petition Date, in accordance with the terms and conditions of the Engagement Letter, this Application, and the Proposed Order, (ii) modifying

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration and/or Engagement Letter, as applicable.

the time keeping requirements of Local Rule 2016-2 and the U.S. Trustee Guidelines in connection

with GLC's proposed engagement by the Debtors, and (iii) granting related relief.

### GLC'S QUALIFICATIONS

8.      GLC is a leading independent investment banking firm, with offices in New York,

Los Angeles, San Francisco, and Denver.   GLC is consistently ranked among the top ten

restructuring advisors in the United States by Refinitiv (f.k.a. Thomason Reuters).   GLC's

professionals include those who have previously served as the heads of restructuring and leveraged

finance teams at: Credit Suisse First Boston LLC; Donaldson, Lufkin & Jenrette Securities

Corporation; Morgan Stanley & Co. International PLC; Smith Barney Inc.; and UBS Investment

Bank. GLC is highly qualified to advise on strategic alternatives and its professionals have

extensive experience in deals involving complex financial and operational restructurings.

9.      GLC and its professionals have worked with financially-troubled companies and

their stakeholders in a variety of industries in complex financial restructurings, both in chapter 11

cases and out-of-court proceedings. GLC's business reorganization professionals have served as

financial advisors to companies and creditors in numerous restructurings, including, acting as the

investment banker and/or financial advisor to debtors, creditors, including ad hoc groups, and

creditors' committees, including: In re Invacare Corporation, et al., No. 23-90068, (Bankr. S.D.

Tex.); In re Carestream Health, Inc., et al., No. 22-10778, (Bankr. D. Del.); In re Stimwave

Technologies Incorporated, No. 22-10541, (Bankr. D. Del.); In re Riverbed Technology, Inc., et

al., No. 21-11503, (Bankr. D. Del.); In re Greensill Capital Inc., No. 21-10561, (Bankr. S.D.N.Y.);

In re Alpha Media Holdings LLC, et al., No. 21-30209, (Bankr. E.D. Va.); In re Guitar Center,

Inc., et al., No. 20-34656, (Bankr. E.D. Va.); In re Southern Foods Group, LLC, et al., No. 19-

36313, (Bankr. S.D. Tex.); In re uBiome, Inc., No. 19-11938, (Bankr. D. Del.); In re FirstEnergy

Solutions Corp., et al., No. 18-50757, (Bankr. N.D. Ohio); In re iHeartMedia, Inc., et al., No. 18-

4

31274, (Bankr. S.D. Tex.); In re Brookstone Holdings Corp., et al., No. 18-11780, (Bankr. D. Del.); In re Toys "R" Us, Inc., et al., No. 17-34665, (Bankr. E.D. Va.); In re The Financial Oversight and Management Board for Puerto Rico, No. 17-3283, (D. Puerto Rico); In re Fallbrook Technologies Inc., et al., No. 18-10384, (Bankr. D. Del.); In re Basic Energy Services, Inc., et al., No. 16-12320, (Bankr. D. Del.); In re UCI International, LLC, et al., No. 16-11354, (Bankr. D. Del.); In re RCS Capital Corporation, et al., No. 16-10223, (Bankr. D. Del.); In re Essar Steel Algoma Inc., et al., No. 15-12271, (Bankr. D. Del.); In re Colt Holding Company LLC, et al., No. 15-11296, (Bankr. D. Del.); In re RadioShack Corporation, et al., No. Case 15-10197, (Bankr. D. Del.); In re Caesars Entertainment Operating Company, Inc., et al., No. 15-01145, (Bankr. N.D. Ill.); In re Lightsquared Inc., et al., No. 12-12080, (Bankr. S.D.N.Y.); In re Ahern Rentals, Inc., No. 11-53860, (Bankr. D. Nev.).

10.    Since its retention on or about September 18, 2023, GLC has provided extensive services in connection with the Debtors' strategic alternatives process, including: (a) familiarizing itself with the assets and operations of the Debtors; (b) analyzing the Debtors' liquidity and projected cash flow; (c) assisting the Debtors in evaluating financing alternatives; (d) initiating a targeted marketing and sale process for substantially all of the Debtors' assets; and (e) helping the Debtors prepare for a potential chapter 11 filing.

11.    The Debtors have selected GLC as their investment banker based upon, among other things: (a) GLC's extensive knowledge of the Debtors; (b) the Debtors' need to retain a skilled investment banking firm to provide advice with respect to the Debtors' complex restructuring activities; and (c) GLC's extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these. In light of the size and complexity of the Debtors' Chapter 11 Cases, the resources, capabilities, and experience of GLC

in advising the Debtors as investment banker are crucial to the success of the Debtors' chapter 11 strategies. An experienced investment banker in the restructuring space, such as GLC, fulfills a critical need that complements the services offered by the Debtors' other professionals. For these reasons, the Debtors require GLC's investment banking services and restructuring experience.

### SERVICES TO BE PROVIDED[3]

12.     Subject to further order of the Court, and as more fully described in and consistent with the Engagement Letter, GLC's services prior to and during the Chapter 11 Cases may include the following, to the extent necessary and appropriate:

a.     becoming familiar with the Company's financial condition and business;

b.     advising and assisting the Company in examining, analyzing, developing, structuring and negotiating the financial aspects of any potential or proposed strategy for a Transaction;[4]

---

[3]   The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter. Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Engagement Letter.

[4]   For purposes of the Engagement Letter, "Transaction" shall mean, the consummation of any of the following whether through one or more transaction(s) or series of transactions, (i) any new debt and/or equity financing, including a rights offering or the issuance or placement, whether public or private, of debt, equity or equity-linked securities, instruments or obligations (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt or other financing, including any "debtor in possession financing" or "exit financing" in connection with a chapter 11 plan or any bankruptcy case ("Bankruptcy Case(s)") filed by or against one or more of the entities comprising the Company under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")), whether from new or existing financing providers (a "Financing Transaction"); (ii) any merger, consolidation, joint venture, partnership, spin-off, split-off, business combination, tender or exchange offer, acquisition, sale, distribution, transfer or other disposition of assets or equity interests, or similar transaction, involving all or a material portion of the business, assets or equity interests of the Company, in one or more transactions, including any sale under Section 363 of the Bankruptcy Code (each, a "Sale Transaction"); or (iii) any restructuring, reorganization and/or recapitalization, including through a plan of reorganization or liquidation (a "Plan") (each, a "Restructuring") of a material portion of the Company's outstanding equity, indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), leases (both on and off balance sheet), put rights associated with outstanding securities, or other liabilities or obligations (collectively, the "Existing Obligations") that is achieved, without limitation, through (1) a solicitation of material waivers, consents, acceptances or authorizations from the holders of any Existing Obligations; (2) material rescheduling of the maturities or other terms of any Existing Obligations for a period of at least twelve months; (3) a material amendment or modification of the terms of any Existing Obligations applicable for a period of at least twelve months, including, relating to interest rates, repurchase, settlement or forgiveness of Existing Obligations; (4) conversion of any Existing Obligations into equity (other than a conversion on existing terms); (5) an exchange offer involving the issuance of new securities in exchange for any Existing Obligations; (6) any change of control transaction, sale, acquisition or merger; (7) any refinancing or reinstatement; or (8) other similar transaction or series of transactions.

c.  determining a range of enterprise values for the Company in connection with a Transaction;

d.  preparing offering and/or information materials for, and managing the due diligence process with potential bidders or potential financing parties, in connection with an applicable Transaction;

e.  assisting the Company in soliciting, coordinating and evaluating indications of interest and proposals, tenders and consents in connection with any Transaction;

f.  providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

g.  attending meetings of and advising and otherwise communicating with the Company's Board of Directors, creditor groups, and other interested parties, as GLC and the Company determine to be necessary or desirable; and

h.  providing such other financial advisory services as may be agreed in writing between GLC and the Company.

13.     The Debtors submit that it is necessary that they employ GLC to render the foregoing professional services.  The Debtors believe that GLC will provide these necessary services in a cost-effective, efficient, and timely manner, and will not duplicate the services that other professionals will provide to the Debtors in the Chapter 11 Cases.  Specifically, GLC will carry out unique functions and the Debtors will coordinate with GLC and their other professionals retained in the Chapter 11 Cases to avoid any unnecessary duplication of services.

**PROFESSIONAL COMPENSATION**[5]

14.     GLC's decision to advise and assist the Debtors in connection with the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.  As more fully described in the Engagement Letter, in consideration of the services provided by GLC, the Debtors have

---

[5]  Capitalized terms used but not defined in this section shall have the meanings ascribed to such terms in the Engagement Letter.

agreed to pay GLC during the Chapter 11 Cases according to the following terms (the "Fee and Expense Structure"):[6]

a.   **Monthly Advisory Fees**:  a monthly advisory fee of $125,000 (each, a "Monthly Advisory Fee"), payable in advance for the period commencing on the Petition Date. The initial Monthly Advisory Fee shall be pro-rated based on the commencement of services as of the Petition Date through to the end of the calendar month. Subsequent payments of the Monthly Advisory Fee shall be due and payable in advance on the anniversary of each month. Each Monthly Advisory Fee is earned in full when due. In addition, a one-time credit of 50% of the Monthly Advisory Fees in excess of $375,000 (three (3) Monthly Advisory Fees) actually paid to GLC under this Agreement will be applied once against either the Restructuring Fee, the Financing Transaction Fee, or the Sale Transaction Fee (collectively, the "Transaction Fees"), as applicable (in each case earned and payable to GLC), on a dollar for dollar basis up to 100% of the applicable Transaction Fee.

b.   **Financing Transaction Fee**: a fee payable directly out of the gross proceeds of any and all Financing Transactions equal to: (i) 2.00% of the aggregate principal face amount of any secured debt raised, including, without limitation, any debtor-in-possession or exit financing raised; (ii) 3.00% of the aggregate principal face amount of any unsecured debt raised; and (iii) 5.00% of any equity or equity-linked securities raised (each, a "Financing Transaction Fee"). As used herein, "raised" shall include all committed amounts. Each Financing Transaction Fee shall be payable in cash in full at the closing of each Financing Transaction. Notwithstanding anything to the contrary in this Agreement, with respect to any debtor-in-possession financing provided by Blue Torch Finance LLC or any of its affiliates in any Bankruptcy Case(s) (such financing, a "Blue Torch DIP"), GLC shall be entitled to a Financing Transaction Fee equal to 1.00% of the aggregate principal face amount of any such debt raised.

c.   **Sale Transaction Fee**: a fee equal to (i) 1.75% of the Aggregate Consideration (as defined on Schedule II of the Engagement Letter) for amounts up to and including $250,000,000 *plus* (ii) 4.00% of the amount, if any, of the Aggregate Consideration in excess of $250,000,000 (together, a "Sale Transaction Fee"). Notwithstanding the foregoing, in no event shall the Sale Transaction Fee be less than $1,500,000 (*i.e.*, if applicable, GLC shall be entitled to a minimum Sale Transaction Fee of $1,500,000). The Sale Transaction Fee shall be earned and payable promptly upon the

---

[6]   The summary of the Fee and Expense Structure in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained in this Application and the Han Declaration and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall govern.

consummation of the Sale Transaction and, to the extent applicable, payable directly out of the gross proceeds of the Sale Transaction.

d. **Restructuring Fee**: a fee of $1,500,000 (payable directly out of the gross proceeds of any Restructuring, if available) upon the consummation of any Restructuring (the "Restructuring Fee").

e. Credits:

    i. Multiple Transaction Fees: If a single Transaction that is consummated constitutes both a Sale Transaction and a Restructuring, GLC shall be entitled to the higher of the applicable Sale Transaction Fee and Restructuring Fee, but not both. In addition, if a Sale Transaction occurs and, subsequently, a Restructuring occurs that is a liquidation of the remaining estate of the Debtors, a Restructuring Fee shall be payable to GLC only if GLC is materially involved in the Restructuring.

    ii. Sale Transaction Fee Credit: Except as set forth in the immediately preceding clause (i), a credit of 50% of any Sale Transaction Fee paid to GLC by the Debtors will be applied once against any Restructuring Fee on a dollar-for-dollar basis up to 100% of such Restructuring Fee. Notwithstanding the foregoing, each applicable credit shall be applied once without duplication.

    iii. Financing Transaction Fee Credit: A credit of 50% of any Financing Transaction Fee (and in the case of a Blue Torch DIP, 100% of any Financing Transaction Fee) paid to GLC by the Debtors will be applied once against the either the Sale Transaction Fee or the Restructuring Fee on a dollar-for-dollar basis up to 100% of such Sale Transaction Fee or Restructuring Fee.

    iv. For the avoidance of doubt, each applicable credit shall be applied once without duplication.

f. **Expense Reimbursement**: GLC shall be entitled to monthly reimbursement from the Debtors of reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under the Engagement Letter (including, without limitation, travel fees, document productions fees, GLC's reasonable and documented out-of-pocket fees and expenses for outside legal counsel incurred in connection with the performance of the Engagement Letter and the matters contemplated thereby, and sales, use or similar tax incurred thereon, and including, in connection with the Chapter 11 Cases, GLC's retention in such case(s) and any fee issues or disputes that may arise, including defending its fee applications), whether or not a Transaction occurs or is

consummated.[7] In addition, to the extent GLC establishes an electronic data room in connection with any potential Transaction, a quarterly fee of $1,800 will be payable by the Debtors for so long as such data room is maintained.

g.   **Termination Fee**: If, during the term of GLC's engagement or as set forth in the last sentence of Section 4(b), the Debtors enters into an agreement to effect a Transaction that is subsequently terminated or otherwise is not consummated and the Debtors receives compensation pursuant to any provision contained in such agreement related thereto (the "Termination Payment"), then a cash fee equal to 25% (the "Termination Fee") of the Termination Payment, which shall be payable to GLC promptly following the Debtors' receipt of such Termination Payment, provided that the Termination Fee will not exceed the applicable Transaction Fee that would have been payable had such Transaction been completed, and any Monthly Advisory Fees paid will be credited without duplication and only to the extent not previously credited. For purposes of calculating the Termination Fee, the Termination Payment shall include any judgment for damages, any amount or other consideration received by the Debtors or in settlement of any dispute as a result of such termination or other failure to consummate the Transaction, as well as the fair value of any options granted to the Debtors (pursuant to any cross option agreement, comparable provision or otherwise).

15.   GLC's strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities were important factors to the Debtors in determining the Fee and Expense Structure.  Given the numerous issues that GLC may be required to address in the Chapter 11 Cases, GLC's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for GLC's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors believe that the Fee and Expense Structure in the Engagement Letter is reasonable.

16.   The Debtors submit that GLC's employment and compensation arrangements are competitive with those entered into by other investment banking firms when rendering comparable services.  The Debtors, in consultation with their advisors, compared GLC's fee proposal to

---

[7]   GLC was provided with an expense retainer of $25,000.

comparable precedents to determine reasonableness of the Fee and Expense Structure. After such comparison, followed by discussions and arm's-length negotiations, the Debtors concluded that the Fee and Expense Structure is in fact reasonable under the standards set forth below.

17.	To the best of the Debtors' knowledge, information, and belief, no promises have been received by GLC as to compensation in connection with the Chapter 11 Cases other than as outlined in the Engagement Letter, and GLC has no agreement with any other entity to share any compensation received with any person other than the principals and employees of GLC.

18.	GLC intends to submit interim and final applications for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving this Application.

19.	GLC will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in the Chapter 11 Cases. However, because: (a) it is not the general practice of investment banking firms such as GLC to keep detailed time records similar to those customarily kept by attorneys; (b) GLC does not ordinarily keep time records on a "project category" basis; and (c) GLC's compensation is based on a fixed rate and/or fixed-percentage, the Debtors respectfully request that GLC's restructuring professionals only be required to maintain summary records in half-hour increments describing each professional's tasks on a daily basis, including reasonably detailed descriptions of those services and the individuals who provided those services. Moreover, the Debtors respectfully request that GLC's professionals not be required to keep time records on a "project category" basis, that its non-investment banking professionals and personnel in administrative departments (including legal) not be required to

maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that GLC would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable procedures and orders of the Court, or encouraged to do so by the U.S. Trustee Guidelines, the Debtors respectfully request that the Court waive such requirements.  The Debtors also request authorization to pay GLC's Transaction fee(s) for its services as and when due under the Engagement Letter <u>provided that</u> all such fees and expenses shall remain subject to the subsequent approval of the Court following the filing of a final fee application.

20.       In addition, the Debtors request a waiver of Local Rule 2016-2(f) (reimbursement of payments made to other professionals).  GLC has informed the Debtors that it will include its counsel's time records with its monthly fee statements and to any non-summary interim and final fee application filed with the Court.

21.       According to the Debtors' books and records, during the 90-day period before the Petition Date, GLC received the following from the Debtors: $204,166.66 on October 5, 2023; $141,876.00 on November 6, 2023; and $125,000.00 on December 1, 2023.  To the extent that additional pre-petition expenses subsequently come to the attention of GLC, GLC will reduce its Expense Retainer by such amounts.  As of the Petition Date, the balance of the Expense Retainer was $22,047.35.

<u>**INDEMNIFICATION**</u>

22.       As part of the overall compensation payable to GLC under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and reimbursement obligations set forth in the Engagement Letter, including the Indemnification Agreement attached as Schedule I to the Engagement Letter.  Pursuant to the Indemnification Agreement, the Debtors have agreed, among other things, to indemnify, defend, and hold harmless

GLC and its affiliates, and their respective directors, officers, partners, members, trustees, managers, controlling persons, employees, attorneys, and other agents appointed by any of the foregoing representatives and each other person, if any, controlling, controlled by or under common control with GLC or any of its affiliates (each an "Indemnified Person") from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "Liabilities"), and will reimburse each Indemnified Person for all fees and expenses as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party, in each case, arising out of, related to or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Engagement Letter, the transactions contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction.  However, notwithstanding anything to the contrary in the Engagement Letter or any agreements incorporated by reference in the Engagement Letter, upon entry of an order approving this Application, the Debtors' agreement to indemnify and hold GLC harmless will be modified as follows during the pendency of the Chapter 11 Cases:

    a. No Indemnified Person (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

    b. The Debtors shall have no obligation to indemnify any Indemnified Person or provide contribution or reimbursement to any Indemnified Person, for any claim or expense to the extent it is either (i) judicially determined (the determination having become final) to have arisen from the Indemnified Person's gross negligence, bad faith, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege breach of an Indemnified Person's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a

13

judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to sub paragraph (c) hereof to be a claim or expense for which the Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by the Proposed Order; and

c.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by the Proposed Order), including, without limitation, the advancement of defense costs, GLC must file an application before the Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by the Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request fees and expenses by any Indemnified Person for indemnification, contribution, and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify or make contributions or reimbursements to, the Indemnified Persons.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, and/or reimbursement.

23.     The Engagement Letter's indemnification and contribution provisions were fully negotiated by the Debtors and GLC at arm's length and in good faith, and the Debtors respectfully submit that the indemnification and contribution provisions of the Engagement Letter are reasonable, subject to the modifications set forth in the Proposed Order.  The Debtors believe that the indemnification provisions in the Engagement Letter are appropriate and reasonable for investment banking engagements both out-of-court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this District and other jurisdictions.

**GLC'S DISINTERESTEDNESS**

24.     To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Han Declaration: (a) GLC has no relevant connection with the

Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of U.S. Trustee, or any other party with an actual or potential interest in the Chapter 11 Cases (or their respective attorneys or accountants); (b) GLC (and GLC's professionals) are not creditors, equity security holders, or insiders of any of the Debtors; (c) neither GLC nor any of its professionals is or was, within two years of the Petition Date, a director, officer, or employee of any of the Debtors; and (d) neither GLC nor any of its professionals hold or represent an interest materially adverse to any of the Debtors, their estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason.  Accordingly, based upon its review of interested parties in the Chapter 11 Cases, GLC is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and GLC's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.

25.     Given the large number of parties in interest in the Chapter 11 Cases, despite the efforts to identify and disclose GLC's relationships with parties in interest, GLC is unable to state with absolute certainty that every client relationship or other connection has been disclosed in the Han Declaration.  GLC will make continued inquiries following the filing of this Application to monitor for any matters that might affect its disinterested status.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of GLC's retention are discovered or arise, GLC will use reasonable efforts to promptly file a supplemental declaration.

26.     In addition, the Debtors shall use commercially reasonably efforts to coordinate with its professionals, including GLC, to avoid any duplication of services provided by any of its retained professionals in the Chapter 11 Cases.

**BASIS FOR RELIEF**

A.     **Retention and Employment of GLC is Permitted Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code**

27.     The Debtors seek approval of the retention and employment of GLC pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that a debtor "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in carrying out its duties. 11 U.S.C. § 327(a).

28.     In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." *Id.* § 328(a).  Thus, section 328(a) permits the Court to approve the terms of GLC's engagement as set forth in the Engagement Letter, including the Fee and Expense Structure and the indemnification and contribution provisions.

29.     Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

30.     Additionally, Local Rule 2014-1 requires an entity seeking approval of employment under section 327(a) of the Bankruptcy Code to file a motion, supporting affidavit, and proposed order, all of which have been satisfied by this Application, the Han Declaration and the Proposed Order.   Further, in accordance with Local Rule 2014-1, GLC acknowledges its continuing duty to supplement the Han Declaration with additional material information relating to the employment of GLC if necessary.

31.     Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases.   Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue.   Local Rule 2016-2(f) requires professionals employed by retained professionals in chapter 11 cases to comply with certain information requirements.   Local Rule 2016-2(h), however, allows a retained professional to request a waiver of these requirements for cause.

32.     The Debtors submit that the Court's approval of the Debtors' retention of GLC in accordance with the terms and conditions of the Engagement Letter is warranted.   First, as discussed above and in the Han Declaration, GLC satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.   GLC was engaged by the Debtors prepetition, has been assisting the Debtors prior to the Petition Date, and has committed a significant amount of time and effort with respect to the transactions to be consummated postpetition.   GLC is needed postpetition to continue to assist with negotiations, as necessary, to provide expert advice (and potentially testimony) regarding financial matters related to the Debtors' sale and restructuring initiatives, and to enable the Debtors to discharge their duties as debtors and debtors in possession.   GLC's

professionals have extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings. GLC has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information and is able to assist the Debtors in their restructuring efforts. The Debtors believe that GLC is well qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

33.     The Fee and Expense Structure is consistent with GLC's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. In particular, the Debtors believe that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees. In addition, the Debtors believe that the Fee and Expense Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Fee and Expense Structure reflects GLC's commitment to the variable level of time and effort necessary to perform the services contemplated by the Engagement Letter, GLC's particular expertise, and the market prices for GLC's services for engagements of this nature both out-of-court and in a chapter 11 context.

34.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, GLC intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications and waivers.

35.       The Debtors request that the requirements of Local Rule 2016-2(d) and the guidelines set forth in the U.S. Trustee Guidelines be tailored to appropriately reflect GLC's engagement and its compensation structure.  GLC has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis.  Additionally, it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys.  As discussed above, however, GLC's restructuring personnel will keep summary time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks.  Apart from the time-recording practices described above, however, GLC's restructuring personnel do not maintain their time records on a "project category" basis.  As such, the Debtors request modification of the requirements pursuant to Local Rule 2016-2(h).  In addition, as GLC is an investment bank and is not a law firm, subject to Court approval, the Debtors agreed to reimburse GLC for its counsel fees and expenses incurred in connection with GLC's engagement.  The Debtors request that the requirements of Local Rule 2016-2(f), which requires GLC's counsel to comply with certain information requirements, be modified such that GLC will include its counsel's detailed time records with its monthly fee statements and any non-summary interim and final fee applications.

36.       Courts in this jurisdiction have approved relief similar to the relief requested in this Application, including similar fixed and contingency fee arrangements and modification of the requirements of Local Rules 2016-2(d) and (f) pursuant to Local Rule 2016-2(h).

**B.       The Indemnification Provisions Contained in the Engagement Letter are Appropriate.**

37.       The indemnification provisions contained in the Engagement Letter, as modified by the Proposed Order, were fully negotiated between the Debtors and GLC.  The Debtors believe that the indemnification provisions are customary and reasonable for investment banking

engagements, both out-of-court and in chapter 11.  See, e.g., In re United Artists Theatre Company, 315 F.3d 217 (3d Cir. 2003) (authorizing the indemnification of Blackstone by the Debtor); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (authorizing the indemnification of Newmark Retail Financial Advisors by the debtor).  The indemnification provisions, as modified, are also similar to other indemnification provisions that have been approved by bankruptcy courts in this District.  Accordingly, the Debtors submit that the terms of the modified indemnification provisions are reasonable and customary and should be approved.

**C.      Retroactive Relief is Appropriate.**

38.      Pursuant to the Debtors' request, GLC has agreed to serve as investment banker on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective as of the Petition Date, so that GLC may be compensated for its pre-Application services.  The Debtors believe that no party in interest will be prejudiced by granting the relief as provided in this Application because GLC has provided and continues to provide valuable services to the Debtors' estates in the interim period.  Accordingly, the Debtors respectfully request entry of an order authorizing the Debtors to retain and employ GLC, effective as of the Petition Date.

**NOTICE**

39.      Notice of this Application will be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Stalking Horse Bidder, prepetition lenders and DIP lenders; (iii) the holders of the thirty (30) largest unsecured claims against the Debtors; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary

WHEREFORE, the Debtors respectfully requests entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  December 15, 2023

/s/ John Faieta

Name: John Faieta
Title: Chief Financial Officer