**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |

**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF GLC
ADVISORS & CO., LLC AND GLC SECURITIES, LLC AS INVESTMENT BANKER
FOR THE DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO 11 U.S.C.
§§ 327(a) AND 328, EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING
CERTAIN INFORMATION REQUIREMENTS IMPOSED BY LOCAL RULE 2016-2,
AND (III) GRANTING RELATED RELIEF**

Upon consideration of the application (the "Application")[2] of the Debtors for entry of an

order (this "Order"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy

Rule 2014, and Local Rule 2014-1 for (i) authority to employ and retain GLC as investment banker

to the Debtors in the Chapter 11 Cases, effective as of the Petition Date, pursuant to the terms of

the Engagement Letter and (ii) a waiver of certain information requirements of Local Rule 2016-

2 and excusing compliance with certain guidelines set forth in the U.S. Trustee Guidelines, all as

more fully set forth in the Application; and upon consideration of the Han Declaration; and this

Court having jurisdiction to consider the Application and the relief requested therein pursuant to

28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware dated February 29, 2012; and consideration of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and this Court having reviewed the Application; and this Court being satisfied that GLC has the capability and experience to provide the services described in the Application and that GLC does not hold an interest adverse to the Debtors or their estates respecting the matters upon which it is to be engaged; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Application is GRANTED to the extent provided herein.

2.      The Debtors are authorized to retain and employ GLC as investment banker to the Debtors in the Chapter 11 Cases, pursuant to the terms and conditions set forth in the Application and the Engagement Letter, as modified by this Order, effective as of the Petition Date.

3.      The Engagement Letter (together with all annexes thereto), including without limitation the Fee and Expense Structure, as modified by this Order, is approved pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, and the Debtors are authorized and directed to perform their payment, reimbursement, contribution, and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Letter.  Subject to Paragraph 7 of this Order, all compensation to GLC under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section

328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review including, but not limited to, that set forth in section 330 of the Bankruptcy Code.

4.      The Debtors are authorized to pay GLC's fees and to reimburse GLC for its reasonable costs and expenses as provided in the Engagement Letter, including, but not limited to reasonable fees and expenses of GLC's outside counsel without the need for such legal counsel to be retained as a professional in the Chapter 11 Cases and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  Pursuant to Local Rule 2016-2(h), Local Rule 2016-2(f) is waived and in the event that during the pendency of the Chapter 11 Cases GLC seeks reimbursement for any attorneys' fees and/or expenses pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys' shall be included in GLC's monthly fee statements and any non-summary interim and final fee applications.

5.      GLC shall file applications for allowance of compensation and reimbursement of expenses pursuant to and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, Local Rules, and any applicable orders of this Court; provided that, notwithstanding anything contained in the foregoing to the contrary, pursuant to Local Rule 2016-2(h), GLC professionals shall be required only to maintain summary time records in half-hour increments describing each professional's tasks on a daily basis, including reasonably detailed descriptions of those services and the individuals who provided those services, and GLC shall not be required to provide or conform to any schedule of hourly rates; provided further that GLC's professionals shall not be required to keep time records on a project category basis and its non-investment banking professionals and personnel in administrative departments (including legal) not be required to maintain any time records.

6.      GLC may be paid its Transaction fee(s) for its services as and when due under the Engagement Letter; provided that all such fees shall remain subject to the subsequent approval of this Court following the filing of a final fee application.

7.      GLC's fees in the Chapter 11 Cases, including the Monthly Advisory Fee, Financing Transaction Fee, Sale Transaction Fee and Restructuring Fee, are hereby approved pursuant to section 328(a) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the fees and expenses payable to GLC pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee.  This Order and the record relating to this Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of GLC's compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code; provided that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in the Chapter 11 Cases to the fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of the time committed or the length of these cases.  Nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of GLC's compensation.

8.      The indemnification, contribution, and reimbursement provisions set forth in Schedule I to the Engagement Letter are approved, subject during the pendency of the Chapter 11 Cases to the following modifications during the pendency of the Chapter 11 Cases:

      a.      No Indemnified Person (as that term is defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the

Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefore are approved by this Court;

b.      The Debtors shall have no obligation to indemnify any Indemnified Person or provide contribution or reimbursement to any Indemnified Person, for any claim or expense to the extent it is either (i) judicially determined (the determination having become final) to have arisen from the Indemnified Person's gross negligence, bad faith, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege breach of an Indemnified Person's contractual obligations, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to sub paragraph (c) hereof to be a claim or expense for which the Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order; and

c.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, GLC or the applicable Indemnified Person must file an application before this Court, and the Debtors may not pay any such amounts to the Indemnified person before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request fees and expenses by any Indemnified Person for indemnification, contribution, and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify or make contributions or reimbursements to, the Indemnified Persons.  All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, and/or reimbursement.

9.      Notwithstanding any provision in the Engagement Letter to the contrary, the contribution obligations of the Indemnified Persons shall not be limited to the aggregate amount of fees actually received by GLC from the Debtors pursuant to the Engagement Letter, this Order or subsequent orders of this Court.  No limitation of liability provision set forth in the Engagement letter shall have any force during the course of the Chapter 11 Cases.

10.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be effective and enforceable immediately upon entry hereof.

11.     None of the fees or expenses payable to GLC under the Fee and Expense Structure shall constitute a "bonus" or fee enhancement under applicable law.

12.     In the event of any inconsistency between the Engagement Letter, the Application, and this Order, this Order shall govern.

13.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14.     Notwithstanding any term in the Engagement Letter to the contrary, this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## EXHIBIT B

**Engagement Letter**



As of December 7, 2023

**Private and Confidential**

Near Intelligence Inc.
100 W Walnut St., 4th Floor
Pasadena, CA 91124
Attention: John Faieta, Chief Financial Officer

Ladies and Gentlemen:

This letter agreement (this "***Agreement***"), effective as of September 18, 2023 (the "***Effective Date***"), amends and restates the letter agreement, effective as of September 18, 2023, between (i) Near Intelligence Inc. (collectively, with its subsidiaries and its controlled affiliates, the "***Company***") and (ii) GLC Advisors & Co., LLC and GLC Securities, LLC (as amended, the "***Original Agreement***"), and confirms the understanding and agreement that Near Intelligence Inc. (collectively, with its subsidiaries and its controlled affiliates, the "***Company***") has engaged GLC Advisors & Co., LLC and GLC Securities, LLC (collectively, "***GLC***") to act as its exclusive investment banker to provide financial advisory and investment banking services as set forth below.

1.  <u>Scope of Engagement</u>.  On the terms and subject to the conditions of this Agreement, GLC will provide to the Company the following financial and capital market related advisory services, as requested by the Company and to the extent necessary and appropriate:

    a)  familiarizing ourselves with the Company's financial condition and business;

    b)  advising and assisting the Company in examining, analyzing, developing, structuring and negotiating the financial aspects of any potential or proposed strategy for a Transaction (as defined below);

    c)  determining a range of enterprise values for the Company in connection with a Transaction;

    d)  preparing offering and/or information materials for, and managing the due diligence process with potential bidders or potential financing parties, in connection with an applicable Transaction;

    e)  assisting the Company in soliciting, coordinating and evaluating indications of interest and proposals, tenders and consents in connection with any Transaction (except in connection with a Transaction intended to comply with the requirements of Section 3(a)(9) of the Securities Act of 1933, as amended (the "***Securities Act***"));

    f)  providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

g) attending meetings of and advising and otherwise communicating with the Company's Board of Directors, creditor groups, and other interested parties, as GLC and the Company determine to be necessary or desirable; and

h) providing such other financial advisory services as may be agreed in writing between GLC and the Company.

As used in this Agreement, the term "***Transaction***" shall mean, the consummation of any of the following whether through one or more transaction(s) or series of transactions, (i) any new debt and/or equity financing, including a rights offering or the issuance or placement, whether public or private, of debt, equity or equity-linked securities, instruments or obligations (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt or other financing, including any "debtor in possession financing" or "exit financing" in connection with a chapter 11 plan or any bankruptcy case ("***Bankruptcy Case(s)***") filed by or against one or more of the entities comprising the Company under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***")), whether from new or existing financing providers (a "***Financing Transaction***"); (ii) any merger, consolidation, joint venture, partnership, spin-off, split-off, business combination, tender or exchange offer, acquisition, sale, distribution, transfer or other disposition of assets or equity interests, or similar transaction, involving all or a material portion of the business, assets or equity interests of the Company, in one or more transactions, including any sale under Section 363 of the Bankruptcy Code (each, a "***Sale Transaction***"); or (iii) any restructuring, reorganization and/or recapitalization, including through a plan of reorganization or liquidation (a "***Plan***") (each, a "***Restructuring***") of a material portion of the Company's outstanding equity, indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), leases (both on and off balance sheet), put rights associated with outstanding securities, or other liabilities or obligations (collectively, the "***Existing Obligations***") that is achieved, without limitation, through (1) a solicitation of material waivers, consents, acceptances or authorizations from the holders of any Existing Obligations; (2) material rescheduling of the maturities or other terms of any Existing Obligations for a period of at least twelve months; (3) a material amendment or modification of the terms of any Existing Obligations applicable for a period of at least twelve months, including, relating to interest rates, repurchase, settlement or forgiveness of Existing Obligations; (4) conversion of any Existing Obligations into equity (other than a conversion on existing terms); (5) an exchange offer involving the issuance of new securities in exchange for any Existing Obligations; (6) any change of control transaction, sale, acquisition or merger; (7) any refinancing or reinstatement; or (8) other similar transaction or series of transactions.

It is expressly agreed that GLC will not evaluate or attest to the Company's internal controls, financial reporting, illegal acts or disclosure deficiencies and GLC shall be under no obligation to provide formal fairness or solvency opinions with respect to any Bankruptcy Case(s), Restructuring or other Transaction contemplated thereby or incidental thereto.

In rendering its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, GLC is not assuming any responsibility for any decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction.  GLC shall not have any obligation or

responsibility to provide legal, regulatory, accounting, tax, audit, "crisis management" or business consultant advice or services hereunder, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

The advisory services and compensation arrangements set forth herein do not encompass other financial advisory services not set forth in this Paragraph 1. If the Company and GLC later determine to expand the scope of services to include other services not otherwise set forth herein, including, if applicable, services required to be performed by a registered investment advisor, such future agreement will be the subject of a separate written agreement between the parties.

2. <u>Fees and Expenses</u>. For GLC's services hereunder, the Company agrees to pay to GLC the following non-refundable fees in cash:

a) <u>Monthly Advisory Fees</u>: a monthly advisory fee of $125,000 (each, a "***Monthly Advisory Fee***"), payable in advance for the period commencing on the Effective Date. The initial Monthly Advisory Fee shall be pro-rated based on the commencement of services as of the Effective Date through to the end of the calendar month. Subsequent payments of the Monthly Advisory Fee shall be due and payable in advance on the anniversary of each month. Each Monthly Advisory Fee is earned in full when due. In addition, a one-time credit of 50% of the Monthly Advisory Fees in excess of $375,000 (three (3) Monthly Advisory Fees) actually paid to GLC under this Agreement will be applied once against either the Restructuring Fee, the Financing Transaction Fee, or the Sale Transaction Fee (collectively, the "***Transaction Fees***"), as applicable (in each case earned and payable to GLC), on a dollar for dollar basis up to 100% of the applicable Transaction Fee.

b) <u>Financing Transaction Fee</u>: a fee payable directly out of the gross proceeds of any and all Financing Transactions equal to: (i) 2.00% of the aggregate principal face amount of any secured debt raised, including, without limitation, any debtor-in-possession or exit financing raised; (ii) 3.00% of the aggregate principal face amount of any unsecured debt raised; and (iii) 5.00% of any equity or equity-linked securities raised (each, a "***Financing Transaction Fee***"). As used herein, "raised" shall include all committed amounts. Each Financing Transaction Fee shall be payable in cash in full at the closing of each Financing Transaction. Notwithstanding anything to the contrary in this Agreement, with respect to any debtor-in-possession financing provided by Blue Torch Finance LLC or any of its affiliates in any Bankruptcy Case(s) (such financing, a "***Blue Torch DIP***"), GLC shall be entitled to a Financing Transaction Fee equal to 1.00% of the aggregate principal face amount of any such debt raised.

c) <u>Sale Transaction Fee</u>: a fee equal to (i) 1.75% of the Aggregate Consideration (as defined on ***Schedule II***) for amounts up to and including $250,000,000 *plus* (ii) 4.00% of the amount, if any, of the Aggregate Consideration in excess of $250,000,000 (together, a "***Sale Transaction Fee***"). Notwithstanding the foregoing, in no event shall the Sale Transaction Fee be less than $1,500,000 (*i.e.*, if applicable, GLC shall be entitled to a minimum Sale Transaction Fee of $1,500,000). The Sale Transaction Fee shall be earned and payable promptly upon the consummation of the Sale Transaction and, to the extent applicable, payable directly out of the gross proceeds of the Sale Transaction.

d) <u>Restructuring Fee</u>: a fee of $1,500,000 (payable directly out of the gross proceeds of any Restructuring, if available) upon the consummation of any Restructuring (the "***Restructuring Fee***"), subject to the immediately following two paragraphs and Section 2(e)(i)-(ii) below.

Notwithstanding the foregoing, if the Transaction is to be effectuated as an offer (a "***3(a)(9) Offer***") that is intended to comply with the requirements of Section 3(a)(9) of the Securities Act, whether or not as part of a Prepackaged Plan (as defined below), the Transaction Fee shall be payable on the date that definitive offer documents for the 3(a)(9) Offer are first distributed to creditors whose claims would be affected thereby.

Notwithstanding anything herein to the contrary, if the Transaction is implemented pursuant to a plan that is, in whole or in part, (x) prepackaged (a "***Prepackaged Plan***") under the Bankruptcy Code, the Company shall pay GLC the Restructuring Fee as follows: 50% percent on the date on which sufficient acceptances to confirm the Prepackaged Plan have been received and the balance on the date the applicable bankruptcy court confirms the Prepackaged Plan; or (y) prenegotiated and, if there are sufficient indications of support from the Company's applicable creditors and the Company has determined to file for bankruptcy protection to implement such a plan, then 50% before the filing of the Bankruptcy Case(s) and 50% upon confirmation of such plan (as such plan may be amended, modified or supplemented from time to time) by the applicable bankruptcy court.

e) <u>Other Credits</u>:

i) <u>Multiple Transaction Fees</u>: If a single Transaction that is consummated constitutes both a Sale Transaction and a Restructuring, GLC shall be entitled to the higher of the applicable Sale Transaction Fee and Restructuring Transaction Fee, but not both. In addition, if a Sale Transaction occurs and, subsequently, a Restructuring occurs that is a liquidation of the remaining estate of the Company, a Restructuring Fee shall be payable to GLC only if GLC is materially involved in the Restructuring.

ii) <u>Sale Transaction Fee Credit</u>: Except as set forth in Section 2(e)(i) immediately above, a one-time credit of 50% of any Sale Transaction Fee paid to GLC by the Company will be applied once against any Restructuring Fee earned and payable to GLC on a dollar-for-dollar basis up to 100% of such Restructuring Fee.

iii) <u>Financing Transaction Fee Credit</u>: A one-time credit of 50% of any Financing Transaction Fee (and in the case of a Blue Torch DIP, 100% of any Financing Transaction Fee) paid to GLC by the Company will be applied once against either the Sale Transaction Fee or Restructuring Fee earned and payable to GLC on a dollar-for-dollar basis up to 100% of such Sale Fee or Restructuring Fee.

iv) Notwithstanding anything herein to the contrary, any and all crediting in this Agreement shall be applied once without duplication.

f) <u>Expense Reimbursement</u>: GLC shall be entitled to monthly reimbursement from the Company of reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under this Agreement (including, without limitation, travel fees, document productions fees, GLC's reasonable and documented out-of-pocket fees and expenses for outside legal counsel incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby, and sales, use or similar tax incurred thereon, and including, in connection with any Bankruptcy Case(s), GLC's retention in such case(s) and any fee issues or disputes that may arise, including defending its fee applications), whether or not a Transaction occurs or is consummated. In connection with the foregoing, the Company shall, upon execution of this Agreement, provide GLC with an advance retainer in the amount of $25,000 (the "***Expense Retainer***"). The Expense Retainer will be maintained throughout the engagement and returned to the Company upon completion of GLC's services.  GLC reserves the right to apply the Expense Retainer to outstanding statements if the Company fails to make monthly payments in accordance with this Paragraph 2(f), and the Company shall replenish the Expense Retainer promptly thereafter; provided that GLC shall have provided the Company with an invoice or other similar documentation with reasonable detail of such expenses.  In addition, to the extent GLC establishes an electronic data room in connection with any potential Transaction, a quarterly fee of $1,800 will be payable by the Company for so long as such data room is maintained.

g) <u>Termination Fee</u>:  If, during the term of GLC's engagement or as set forth in the last sentence of Section 4(b), the Company enters into an agreement to effect a Transaction that is subsequently terminated or otherwise is not consummated and the Company receives compensation pursuant to any provision contained in such agreement related thereto (the "***Termination Payment***"), then a cash fee equal to 25% (the "***Termination Fee***") of the Termination Payment, which shall be payable to GLC promptly following the Company's receipt of such Termination Payment, <u>provided</u> that the Termination Fee will not exceed the applicable Transaction Fee that would have been payable had such Transaction been completed, and any Monthly Advisory Fees paid will be credited without duplication and only to the extent not previously credited.  For purposes of calculating the Termination Fee, the Termination Payment shall include any judgment for damages, any amount or other consideration received by the Company or in settlement of any dispute as a result of such termination or other failure to consummate the Transaction, as well as the fair value of any options granted to the Company (pursuant to any cross option agreement, comparable provision or otherwise).

3. <u>Company Information</u>.

(a) The Company will provide GLC with access to management and other representatives of the Company, as reasonably requested by GLC.  The Company will furnish, or cause to be furnished, to GLC with such information as GLC believes appropriate to its assignment (all such information so furnished being the *"Information"*).  The Company recognizes and confirms that GLC:  (i) will use and rely on the accuracy and completeness of the Information and on information available from generally recognized public sources without independently verifying the same; (ii) does not assume responsibility for the

600 Lexington Avenue, 9th FL.
New York, NY 10022

accuracy, completeness or reasonableness of the Information and such other information; and (iii) will not make an appraisal of any assets or liabilities (contingent or otherwise) of the Company or a potential transaction party. Furthermore, the Company recognizes that the actual results of its operations and the actual value of it and its assets may differ from GLC's projections and valuation by no fault of GLC. To the best of the Company's knowledge, the Information to be furnished by or on behalf of the Company, when delivered, will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will promptly notify GLC if it learns of any material inaccuracy or misstatement in, or material omission from, any Information previously delivered to GLC.

(b) The Company authorizes GLC to provide materials regarding the operations, financial status, and legal standing of the business (as such documents may be amended or supplemented and including any information incorporated therein by reference, the "*Information Memorandum*") and other pertinent Information to prospective investors and other purchasers on a confidential basis and agrees not to transmit the Information Memorandum to prospective investors or other purchasers without GLC's prior approval. The Company will be solely responsible for the contents of the Information Memorandum and any and all other written or oral communications provided by or on behalf of the Company to any actual or prospective investor or other purchaser. The Company represents and warrants to GLC that the Information Memorandum and such other communications (whether written or oral) (which shall be deemed to include the Company's public filings), when supplied and through the closing of such Transaction, will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements therein not misleading.

(c) In the event that the Company or its management receives any inquiry regarding a Transaction from any party, the Company shall promptly inform GLC of such inquiry so that GLC can assist the Company in evaluating such party and its interest in a Transaction and in any resulting negotiations.

4. Term of Agreement.

a) This Agreement may be terminated at any time by GLC or the Company on ten (10) business days' prior written notice to the other; provided, that, other than in the case of GLC's bad faith, gross negligence or intentional misconduct (as determined by a court of competent jurisdiction by final non-appealable order), the Company will not terminate this Agreement prior to the date that is three (3) months after the Effective Date, it being understood and agreed that the Company shall be required to pay GLC a minimum of three (3) Monthly Advisory Fees (as defined in Paragraph 2(a) above). Any termination or expiration of this Agreement shall not affect any provisions that survive the termination hereof, including, (i) the indemnification, reimbursement, contribution and other obligations set forth in this Agreement, including *Schedule I*; and (ii) GLC's right to receive payment of fees earned and expenses incurred as of the date of termination by GLC pursuant to Paragraph 2 and any other

applicable provisions hereof, and the Company shall immediately pay or cause to be paid in cash all such fees and expenses due and owing.

b) Additionally, in the event of any termination of this Agreement by a party hereto (other than termination by GLC, unless GLC has terminated the Agreement for non-payment of fees and/or expenses hereunder or the Company has otherwise materially breached its obligations under the Agreement), GLC shall be entitled to payment of the Financing Transaction Fee(s), Sale Transaction Fee(s), and Restructuring Fee, as applicable, if at any time prior to the expiration of twelve (12) months after the termination of GLC's engagement hereunder, (i) a Transaction is consummated or (ii) creditors of the Company agree to a Plan or the Company files a Plan or enters into a letter of intent or any agreement that subsequently results in the consummation of a Transaction at any time (including after the 12-month period).  In addition, if at any time prior to the expiration of twelve (12) months after the termination of GLC's engagement hereunder a Termination Payment related to a Transaction becomes payable, GLC shall be entitled to payment of the Termination Fee as set forth in Paragraph 2.

5.  <u>Bankruptcy Court Approval</u>.  In connection with any Bankruptcy Case(s), the Company will use its commercially reasonable efforts to obtain an order of the applicable bankruptcy court (the "***Retention Order***") authorizing the Company to retain GLC pursuant to the terms of this Agreement effective as of the bankruptcy petition filing date, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code.  The Company shall submit GLC's employment application as soon as reasonably practicable and use its commercially reasonable efforts to cause such application to be considered on the most expedited basis.  The employment application and the proposed Retention Order shall be provided to GLC in advance of filing, and must be acceptable to GLC in its sole discretion.  The Company shall use commercially reasonable efforts to include in the Retention Order, among other things, (i) GLC shall be authorized to keep time records in half hour increments for work performed hereunder, and (ii) GLC's time records identify only general categories of work performed and indicate the amount of time expended by GLC's professionals in connection with each such category.  GLC shall have no obligation to provide services under this Agreement unless GLC's retention under this Agreement is approved pursuant to Section 328(a) of the Bankruptcy Code by final, non-appealable order of the applicable bankruptcy court and the Retention Order is otherwise reasonably acceptable to GLC.  GLC acknowledges that in the event that the applicable bankruptcy court approves its retention by the Company pursuant to the application process described in this paragraph, payment of GLC's fees and expenses shall be subject to:  (i) the jurisdiction and approval of the bankruptcy court under Section 328(a) of the Bankruptcy Code and any Retention Order; (ii) any applicable fee and expense guidelines and/or orders of the bankruptcy court; and (iii) any requirements governing applications for approval of payment of interim and final fees.  The Company agrees that GLC's fees and expenses hereunder shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in the Bankruptcy Case(s) pursuant to one or more financing orders entered by the Bankruptcy Court.  Prior to commencing any Bankruptcy Case(s), the Company shall pay all invoiced amounts due and owing, whether for fees or expense reimbursements or otherwise, to GLC by wire transfer of immediately available funds.  For the avoidance of doubt, notwithstanding anything contained in this Agreement to the contrary, in the event of any Bankruptcy

600 Lexington Avenue, 9th FL.
New York, NY 10022

Case(s), GLC shall be entitled to payment of its expenses, including its reasonable and documented outside counsel fees and expenses, incurred post termination or post effective date of any Plan in connection with its fee application(s) to the applicable bankruptcy court.

6. <u>Reasonableness of Fees</u>. The Company acknowledges that it believes that GLC's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of GLC's services derives in substantial part from that experience and expertise and that, accordingly, the structure and amount of the advisory fees to be paid to GLC hereunder are reasonable regardless of the number of hours to be expended by GLC's professionals in the performance of the services to be provided hereunder.  Each of the parties hereto acknowledges that a substantial professional commitment of time and effort will be required of GLC and its professionals hereunder, and that such commitment may foreclose other opportunities for GLC.  Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for GLC.  Given the numerous issues which may arise in engagements such as this, GLC's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of GLC that will be required in this engagement, and the market rate for GLC's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates GLC, and provides the requisite certainty to the Company.

7. <u>Confidential Information</u>.  GLC acknowledges that, in connection with the services to be provided pursuant to this Agreement, certain confidential, non-public and proprietary information concerning the Company and any Transaction ("***Confidential Information***") has been or may be disclosed by the Company, or its employees, directors, officers, affiliates, attorneys, agents, subcontractors and advisors (collectively, "***Representatives***") to GLC or its Representatives.  GLC agrees that, without the Company's prior consent, no Confidential Information will be disclosed, in whole or in part, to any other person (other than to Representatives of GLC or the Company, persons that are participating in the process and have executed a confidentiality agreement with the Company, or as may be required by law, legal process, or regulatory authority).  The term "*Confidential Information*" does not include any information: (i) that was already in the possession of GLC or any of its Representatives, or that was available to GLC or any of its Representatives on a non-confidential basis, prior to the time of disclosure to GLC or such Representatives; (ii) obtained by GLC or any of its Representatives from a third person which, insofar as is known to GLC or such Representatives, is not subject to any prohibition against disclosure; (iii)  which was or becomes generally available to the public through no fault of GLC or any of its Representatives; and (iv) which was or is independently developed by GLC or any of its Representatives without violating any confidentiality obligations under this paragraph.  If GLC becomes required by legal process or regulatory authority to disclose any Confidential Information, if permitted, GLC will use commercially reasonable efforts to provide the Company prompt notice thereof.  In addition, neither GLC nor any of its Representatives will oppose action by the Company to obtain an appropriate protective order or other reliable assurance that such confidential treatment will be so accorded and GLC and its Representatives shall cooperate, at the Company's expense, with the Company to obtain such order or other assurance.  GLC's obligations under this paragraph shall remain in effect for a period of one (1) year after the Effective Date of this Agreement.

8.  <u>Nature of Services; Use of Advice</u>.

(a)  The Company acknowledges and agrees that GLC has been retained to act solely as an advisor to the Company, and not as an advisor to any other person, and the Company's engagement of GLC is not intended to and does not confer rights upon any person or entity (including shareholders, employees or creditors of the Company) not a party hereto as against GLC or its affiliates, or their respective directors, officers, employees or agents, successors or assigns. GLC shall act as an independent contractor under this Agreement, and not in any other capacity including as a fiduciary, and any obligations arising out of its engagement shall be owed solely to the Company and only in accordance with this Agreement. Any advice rendered pursuant to this Agreement is intended solely for the use of the Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose.

(b)  Any advice rendered by or materials prepared by, or any communication from, GLC may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner, without the prior written consent of GLC. In addition, the terms of this Agreement shall not be referred to without GLC's prior written consent unless required to be disclosed as part of the Bankruptcy Case.

9.  <u>Indemnification</u>.  The Company, jointly and severally, shall provide indemnification, contribution and reimbursement to each Indemnified Person (defined in ***Schedule I***) as set forth in ***Schedule I*** hereto. The terms and provisions of ***Schedule I*** are an integral part hereof, are hereby incorporated by reference, are subject in all respects to the provisions hereof and shall survive any termination or expiration of this Agreement. In addition, if an Indemnified Person (as defined in ***Schedule I***) is requested or required to appear as a witness in any Action (as defined in ***Schedule I***) that is brought by or on behalf of or against the Company or that otherwise relates to this Agreement or the services rendered by GLC to the Company hereunder, the Company, jointly and severally, shall reimburse GLC and the Indemnified Person for all documented, actual out of pocket expenses incurred by them in connection with such Indemnified Person appearing or preparing to appear as such a witness, including without limitation, the fees and disbursements of legal counsel.

10. <u>Entire Agreement; Amendments</u>.  This Agreement (including ***Schedule I and Schedule II***) represents the entire agreement between the parties, supersedes all previous agreements relating to the subject matter hereof, including the Original Agreement, and may not be modified or amended except in writing signed by all of the parties hereto. This Agreement may be executed in counterparts (and by facsimile or other electronic means), each of which shall constitute an original and all of which together will be deemed to be one and the same document. The invalidity or unenforceability of any provision of this Agreement (including ***Schedule I and Schedule II***) shall not affect the validity or enforceability of any other provision.

11. <u>Announcements</u>.  Subject to and upon receipt of the Company's consent (which will not be unreasonably withheld), following the public announcement of a Transaction, GLC may, at its option and expense, place customary announcements (including a customary "tombstone" advertisement) in such newspapers and periodicals as it may choose, or make similar announcements describing its

services for the Company in connection with any Transaction contemplated herein.  With the Company's consent (which will not be unreasonably withheld), GLC shall be entitled to identify the Company and use the Company's name and logo in connection therewith.  In addition, if requested by GLC, the Company agrees that in any press release announcing any Transaction, the Company will include in such press release a mutually acceptable reference to GLC's role as investment banker (or other role) to the Company with respect to such Transaction.

12. <u>Governing Law; Jury Trial Waiver; Jurisdiction</u>.  THIS AGREEMENT WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED ENTIRELY IN SUCH STATE.  EACH OF GLC AND THE COMPANY HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF OR IN CONNECTION WITH THE ENGAGEMENT OF GLC PURSUANT TO, OR THE PERFORMANCE BY GLC OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN ANY FEDERAL COURT OR STATE COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY OF NEW YORK IN THE STATE OF NEW YORK, WHICH COURTS SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS; <u>PROVIDED</u>, <u>HOWEVER</u>, THE PARTIES AGREE THAT IN THE EVENT THE COMPANY FILES FOR BANKRUPTCY PROTECTION, THE APPLICABLE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS.  BY EXECUTION AND DELIVERY OF THIS AGREEMENT, EACH PARTY HERETO FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON-CONVENIENS.  EACH PARTY HERETO AGREES THAT A FINAL NON-APPEALABLE JUDGMENT IN ANY SUCH ACTION BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IT BY SUIT UPON SUCH JUDGMENT.  EACH PARTY HERETO IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE NOTICE ADDRESS FOR EACH SUCH PERSON AS SET FORTH IN THE "NOTICES" PARAGRAPH IMMEDIATELY FOLLOWING THIS PARAGRAPH.  EACH OF THE PARTIES HERETO HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF ANY OTHER PARTY HERETO HAS REPRESENTED EXPRESSLY OR OTHERWISE THAT SUCH PARTY WOULD NOT SEEK TO ENFORCE THE PROVISIONS OF THIS WAIVER.  EACH OF THE PARTIES HERETO HEREBY ACKNOWLEDGES THAT IT HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY AND IN RELIANCE UPON, AMONG OTHER THINGS, THE PROVISIONS OF THIS PARAGRAPH.

13. <u>Notices</u>.  Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be sent by overnight courier or personally delivered: (i) if to the Company, at the address set forth in the Company's signature block below (with a copy to the Company's outside counsel at the same address), and (ii) if to GLC, at 600 Lexington Avenue, 9th Floor, New York, NY 10022, to the attention of J. Soren Reynertson.

600 Lexington Avenue, 9th FL.
New York, NY 10022

14. <u>Miscellaneous</u>.

(a) Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the parties hereto, the Indemnified Persons (as such term is defined in **_Schedule I_**) and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by GLC hereunder.

(b) The Company agrees that it will be solely responsible for ensuring that any Transaction complies with applicable law.

(c) Global Leveraged Capital Holdings, LLC (_**"GLCH"**_, the parent of GLC) and its subsidiaries and affiliates (collectively with GLCH, the _**"GLCH Group"**_) are involved in a wide range of investment banking and other activities (including investment management, corporate finance, securities and loan trading, commercial banking and financial advisory services, principal investment, financial planning, benefits counseling, risk management, hedging, financing, brokerage activities, and other financial and non-financial activities and services for various persons and entities) from which conflicting interests, or duties, may arise. Information which is held elsewhere within GLCH or within the GLCH Group but is not publicly available will not for any purpose be taken into account in determining GLC's responsibilities to the Company under this Agreement. Neither GLCH nor any other part of the GLCH Group will have any duty to disclose to the Company or any other party or utilize for the benefit of the Company or any other party any such information or the fact that the GLCH Group is in possession of such information, acquired in the course of providing services to any other person, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, GLC and/or its affiliates may trade or effect transactions in the equity, debt, and other securities and financial instruments of the Company, any potential participant in a transaction, customers, or competitors of the Company, or persons who have other relationships with the Company for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. GLC and/or its affiliates may provide investment banking, commercial banking, underwriting, and financial advisory services to such other entities and persons unrelated to the Bankruptcy Cases. GLC recognizes its responsibility for compliance with federal securities laws in connection with such activities.

(d) No: (i) direct or indirect holder of any equity interests or securities of GLC whether such holder is a limited or general partner, member, stockholder or otherwise; (ii) affiliate of GLC; or (iii) director, officer, employee, representative, or agent of GLC, or of an affiliate of GLC or of any such direct or indirect holder of any equity interests or securities of GLC (collectively, the _**"Party Affiliates"**_) shall have any liability or obligation of any nature whatsoever in connection with or under this Agreement or the transactions contemplated hereby, and the Company waives and releases all claims against such Party Affiliates related to any such liability or obligation.

(e) In the event that the Company fails to pay any amounts due to GLC under this Agreement, including any fees or reimbursement of expenses (including any indemnification, contribution and reimbursement as set forth in **_Schedule I_**) for services performed under this Agreement, the Company shall and hereby agrees to pay GLC its reasonable attorneys' fees and expenses in connection with any and all efforts on GLC's behalf to collect any amounts due and owing to GLC.

(f) The USA PATRIOT Act requires that GLC obtain, verify and record information pertaining to entities that enter into certain business relationships with GLC as well as certain beneficial owners of such entities.  The Company agrees to provide certain identifying information, such as tax identification numbers and charter documents, upon request of GLC.  The effectiveness of this Agreement is conditioned upon the completion, to the reasonable satisfaction of GLC, of such review in accordance with the requirements of applicable law.

(g) Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder.  Each party hereto further represents and warrants that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each such party and constitutes the legal, valid and binding agreement of each such party, enforceable in accordance with its terms.

(h) The terms of this Agreement have been negotiated in good faith by the parties hereto, who have each been represented by counsel.  The provisions of this Agreement shall not be construed adverse to any party as "drafter" in the event of a contention of ambiguity in this Agreement, and the parties hereto waive any statute or rule of law to such effect.

(i) This Agreement may not be assigned by any party hereto without the prior written consent of the other parties.  Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning parties.

(j) Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  All references to "including" shall be construed as meaning "including without limitation."

(k) Upon any termination of this Agreement, Paragraphs 2 (subject to Paragraph 4), 4-14 and **_Schedule I_** hereto shall survive such termination and shall remain in effect.

600 Lexington Avenue, 9th FL.
New York, NY 10022

If the foregoing correctly sets forth our understanding, please indicate your acceptance thereof in the space provided below, whereupon, as of the Effective Date, this Agreement and your acceptance shall constitute a binding agreement between us.

*GLC Advisors & Co., LLC*

By: _____

　　Name: Soren Reynertson
　　Managing Director

By: _____

　　Name: Abe Han
　　Managing Director

[Additional signature pages follow.]

600 Lexington Avenue, 9th FL.
New York, NY 10022

Accepted and agreed to as of the Effective Date:

**COMPANY:**

Near Intelligence Inc.

By: _John Faieta_ _____
Name:  John Faieta
Title:  Chief Financial Officer
Address:  100 W Walnut St., 4th Floor
          Pasadena, CA 91124

### Schedule I

This **_Schedule I_** is a part of and is incorporated into that certain amended and restated letter agreement (the "**_Agreement_**") between Near Intelligence Inc. (collectively, with its subsidiaries and controlled affiliates, the "**_Company_**") and GLC Advisors & Co., LLC and GLC Securities, LLC (collectively, "**_GLC_**") attached herewith.  Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.  For the avoidance of doubt, notwithstanding anything herein to the contrary, this Schedule I shall be effective as of September 18, 2023.

As a material part of the consideration for the agreement of GLC to furnish its services under the Agreement, the Company, jointly and severally, agrees that it shall defend, indemnify and hold harmless GLC and its affiliates and their respective directors, officers, partners, members, trustees, managers, controlling persons, employees, attorneys and other agents, advisors and representatives of any of the foregoing and each other person, if any, controlling, controlled by or under common control with GLC or any of its affiliates (GLC and each such person and entity being referred to as an "**_Indemnified Person_**"), from and against any losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "**_Liabilities_**"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable and documented fees and expenses of counsel) (collectively, "**_Expenses_**") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation, whether or not any Indemnified Person is a party, whether or not brought by the Company, the Company's equityholders, the Company's affiliates, creditors or any other third parties (collectively, "**_Actions_**"), in each case, arising out of, related to or in connection with (a) (i) any oral or written information provided by or at the request of the Company, its affiliates or their respective directors, officers, partners, members, trustees, managers, controlling persons, employees, attorneys, advisors, representatives or agents which information either they provide to GLC or they or GLC provide to any third parties or (ii) any other action or failure to act by the Company, its affiliates or their respective directors, officers, employees or agents, or by any Indemnified Person at the request, direction, or with the consent of the Company or one or more members of its board of directors, or (b) the Agreement, any actual or potential Transaction, any advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement or any actual or potential Transaction, the transactions contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "**_Services_**"); <u>provided</u> that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted primarily from such Indemnified Person's bad faith, gross negligence or willful misconduct in connection with any of the advice, actions, inactions or Services referred to above other than an action or failure to act undertaken at the request or with the consent of the Company.  The Company shall reimburse each Indemnified Person for all Expenses, including reasonable and documented fees and expenses of counsel, incurred in connection with enforcing such Indemnified Persons' rights under the Agreement, including without limitation, all rights to payment of fees and expenses and all indemnification, contribution and reimbursement rights under this **_Schedule I_**.

Indemnified Persons shall reasonably cooperate, at the Company's sole cost and expense, with the defense of any Actions brought against the Company or GLC by any third party. In such circumstance, the Company shall, if requested by GLC, assume the defense of any such Action including the employment of counsel reasonably satisfactory to GLC and the Company. The Company will not, without prior written consent of GLC, settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination (i) includes an unconditional release of such Indemnified Person from all Liabilities arising out of such Action, (ii) does not include any admission or assumption of wrongdoing, failure to act, fault or culpability on the part of any Indemnified Person, and (iii) includes payment of any amounts relating to such settlement, compromise, consent or termination.

In the event that the foregoing indemnity is not available, for any reason, to an Indemnified Person in accordance with the Agreement, the Company shall contribute to the Liabilities and Expenses paid or payable by such Indemnified Person in such proportion as is appropriate to reflect: (i) the relative benefits to the Company, on the one hand, and to GLC, on the other hand, of the matters contemplated by the Agreement; or (ii) if the allocation provided by the immediately preceding clause (i) is not permitted by applicable law, not only such relative benefits but also the relative fault of the Company, on the one hand, and GLC, on the other hand, in connection with the matters as to which such Liabilities or Expenses relate, as well as any other relevant equitable considerations. Relative benefits received by the Company, on the one hand, and GLC, on the other hand, shall be deemed to be in the same proportion as (x) the total value of the aggregate cash consideration, securities or any other property paid or received or contemplated to be paid or received by the Company, and its security holders, creditors or other affiliates, as the case may be, pursuant to the Transaction(s) or proposed Transaction(s) (whether or not consummated) contemplated by the engagement under the Agreement, bears to (y) the fees received or contemplated to be received by GLC under the Agreement. Notwithstanding the foregoing, in no event shall any Indemnified Persons be required to contribute an aggregate amount in excess of the amount of fees actually received by GLC from the Company pursuant to the Agreement.

No Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its respective owners, parents, affiliates or security holders for or in connection with advice or Services rendered or to be rendered by any Indemnified Person pursuant to the Agreement, the transactions contemplated thereby or any Indemnified Person's actions or inactions in connection with any such advice, Services or transactions except for Liabilities (and related Expenses) of the Company that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted primarily from such Indemnified Person's bad faith, gross negligence or willful misconduct in connection with any such advice, actions, inactions or Services, provided that, in no event shall any Indemnified Person be liable to the Company in an aggregate amount in excess of the amount of fees actually received by GLC pursuant to the Agreement.

The Company shall not enter into any agreement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale,

exchange, dividend or other distribution or liquidation of all or a significant portion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not, in each case, directly or indirectly provide for the assumption of the obligations of the Company to GLC as set forth in this Agreement, unless such agreement provides for the assumption of such obligations by another party, insurance, surety bonds, the creation of an escrow, or other arrangements, in each case in an amount and upon terms and conditions reasonably satisfactory to, and approved in writing by, GLC.

These indemnification, contribution and other provisions of this *Schedule I* shall: (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by GLC; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of each Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.

600 Lexington Avenue, 9th FL.
New York, NY 10022

**Schedule II**

For the purposes hereof, the term "Aggregate Consideration" shall mean the total amount of all cash plus the total value (as determined pursuant hereto) of all securities, contractual arrangements (including, without limitation, any lease arrangements or put or call agreements) and other consideration, including, without limitation, any contingent or earned consideration, paid or payable, directly or indirectly, in connection with a Sale Transaction (including, without limitation, amounts paid (i) pursuant to covenants not to compete, employment contracts, employee benefit plans, management fees or other similar arrangements, and (ii) to holders of any warrants, stock purchase rights or convertible securities of the Company and to holders of any options or stock appreciation rights issued by the Company, whether or not vested). Aggregate Consideration shall also include the amount of any short-term liabilities (including, without limitation, any trade or ordinary course liabilities) and any long-term liabilities of the Company (including without limitation, the principal amount of any indebtedness for borrowed money and capitalized leases and the full amount of any off-balance sheet financings) (x) repaid, defeased or retired, directly or indirectly, in connection with or in anticipation of a Sale Transaction or (y) existing on the Company's balance sheet at the time of a Sale Transaction (if such Sale Transaction takes the form of a merger, consolidation or a sale of stock or partnership interests) or assumed in connection with a Sale Transaction (if such Sale Transaction takes the form of a sale of assets). For purposes of calculating the amount of revolving credit debt in the preceding sentence, the arithmetic mean of the amount of revolving credit debt outstanding on the last day of each month during the 12 months preceding the closing of the Sale Transaction will be used. In the event such Sale Transaction takes the form of a sale of assets, Aggregate Consideration shall include (i) the value of any current assets not purchased, minus (i) the value of any current liabilities not assumed. In the event such Sale Transaction takes the form of a recapitalization, restructuring, spin-off, split-off or similar transaction, Aggregate Consideration shall include the fair market value of (i) the equity securities of the Company retained by the Company's security holders following such Sale Transaction and (ii) any securities received by the Company's security holders in exchange for or in respect of securities of the Company following such Sale Transaction (all securities received by such security holders being deemed to have been paid to such security holders in such Sale Transaction). Any securities (other than a promissory note) will be valued as follows (i) if such securities are traded on a stock exchange, the securities will be valued (as reported in The Wall Street Journal or other reputable source reasonably designated by GLC if The Wall Street Journal does not publish such closing prices) at the average last sale or closing price for the 5 trading days immediately prior to the announcement of the Sale Transaction; (ii) if such securities are traded primarily in over-the-counter transactions, the securities will be valued at the mean of the closing bid and asked quotations similarly averaged over a 5-trading-day period immediately before the announcement of the Sale Transaction; and (iii) if such securities have not been traded before the announcement of the Sale Transaction, the value of such securities shall be as determined in good faith by GLC and the Company. Notwithstanding the foregoing (i)-(iii), if such securities are granted and issued as Consideration as part of the Sale Transaction, then in lieu of the foregoing (i)-(iii), the value of such securities will be the value directly ascribed to such securities in the definitive agreements, or if not so ascribed, then this sentence shall not apply. Warrants and options shall be valued using the treasury stock method without giving effect to tax implications; and any other non-cash

consideration shall be valued at the fair market value thereof as determined in good faith by GLC. Notwithstanding anything to the contrary contained herein, debt securities shall be valued at their stated principal amount without applying a discount thereto. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. Aggregate Consideration shall also include (aa) the face amount of any liabilities tendered as purchase price in connection with any credit bid; (bb) amounts paid into escrow at the time such escrow is established (without future adjustment); and (cc) in the case of compensation attributable to any part of the Aggregate Consideration which is contingent upon some future event (*e.g.*, the realization of earnings projections), amounts paid to the selling party(ies) (at the time such amounts are paid). As used in this Agreement, the terms "payment," "paid" or "payable" shall be deemed to include, as applicable, the issuance or delivery of securities or other property other than cash.

## EXHIBIT C

**Han Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |

## DECLARATION OF ABRAHAM T. HAN IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF GLC ADVISORS & CO., LLC AND GLC SECURITIES, LLC AS INVESTMENT BANKER FOR DEBTORS AND DEBTORS IN POSSESSION, PURSUANT TO 11 U.S.C. §§ 327(a) AND 328, EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING CERTAIN INFORMATION REQUIREMENTS IMPOSED BY LOCAL RULE 2016-2, AND (III) GRANTING RELATED RELIEF

I, Abraham T. Han, declare under penalty of perjury:

1.      I am a Managing Director at GLC Advisors & Co., LLC and GLC Securities, LLC (collectively, "GLC"), and one of the lead restructuring advisors involved in these chapter 11 cases (together, the "Chapter 11 Cases").  GLC is the proposed exclusive investment banker to the above-captioned debtors and debtors in possession (together, the "Debtors").  GLC was retained by the Debtors on or about September 18, 2023.  I submit this declaration (this "Declaration") in support of the *Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of GLC Advisors & Co., LLC and GLC Securities, LLC as Investment Banker for the Debtors and Debtors in Possession, Pursuant to 11 U.S.C. §§ 327(a) and 328, Effective as of the*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

*Petition Date, (II) Waiving Certain Information Requirements Imposed By Local Rule 2016-2, and*

*(III) Granting Related Relief*, filed contemporaneously herewith (the "<u>Application</u>").[2]

2.      Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with the Debtors' senior management, members of the GLC team, or other interested parties, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs. If I were called to testify, I would testify competently to the facts set forth below.  To the extent that any information disclosed herein requires subsequent amendment or modification upon GLC's completion of further analysis or as additional creditor information becomes available to it, one or more supplemental declarations will be submitted to the Court reflecting the same.

## QUALIFICATIONS

3.      I have approximately 25 years of investment banking experience with a focus on bankruptcy reorganization, mergers and acquisitions, and financing transactions.  I have been employed by GLC since 2009, when I co-founded the firm.  Prior to joining GLC, I was a Principal at GLC Investment Advisors where I focused on distressed investing.  Prior to GLC Investment Advisors, I was an Executive Director in the Restructuring and Leveraged Finance Group at UBS, and prior to that, I was the Steel Division Manager for Hyundai Corp. (USA). I have completed FINRA Administered Qualification Exams including Series 7, 24, and 63.  I hold a B.A. degree from Rutgers University and an M.B.A. from the Kellogg School of Management at Northwestern University.

---

[2]    Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Application.

4.      My restructuring experience includes engagements for City of Detroit, Michigan; Jefferson County, Alabama; The Commonwealth of Puerto Rico; Colt Holding Company, Visteon Corporation; UCI International, LLC; RCS Capital Corporation, LLC; Fallbrook Technologies Inc. and Invacare Corporation.

5.      GLC is a leading independent investment banking firm, with offices in New York, Los Angeles, San Francisco, and Denver.   GLC is consistently ranked among the top ten restructuring advisors in the United States by Refinitiv (f.k.a. Thomason Reuters).   GLC's professionals include those who have previously served as the heads of restructuring and leveraged finance teams at: Credit Suisse First Boston LLC; Donaldson, Lufkin & Jenrette Securities Corporation; Morgan Stanley & Co. International PLC; Smith Barney Inc.; and UBS Investment Bank.

6.      GLC has extensive experience and an excellent reputation in providing high-quality investment banking services in financial reorganizations and restructurings. GLC and the professionals it employs are highly qualified to advise the Debtors on the matters for which GLC is proposed to be employed in a cost-effective, efficient, and expert manner. GLC has advised the Debtors since on or about September 18, 2023, and is familiar with the Debtors' business.

7.      GLC and its professionals have worked with financially-troubled companies and their stakeholders in a variety of industries in complex financial restructurings, both in chapter 11 cases and out-of-court proceedings. GLC's business reorganization professionals have served as financial advisors to companies and creditors in numerous restructurings, including, acting as the investment banker and/or financial advisor to debtors, creditors, including ad hoc groups, and creditors' committees, including:  In re Invacare Corporation, et al., No. 23-90068, (Bankr. S.D. Tex.); In re Carestream Health, Inc., et al., No. 22-10778, (Bankr. D. Del.); In re Stimwave

Technologies Incorporated, No. 22-10541, (Bankr. D. Del.); In re Riverbed Technology, Inc., et al., No. 21-11503, (Bankr. D. Del.); In re Greensill Capital Inc., No. 21-10561, (Bankr. S.D.N.Y.); In re Alpha Media Holdings LLC, et al., No. 21-30209, (Bankr. E.D. Va.); In re Guitar Center, Inc., et al., No. 20-34656, (Bankr. E.D. Va.); In re Southern Foods Group, LLC, et al., No. 19-36313, (Bankr. S.D. Tex.); In re uBiome, Inc., No. 19-11938, (Bankr. D. Del.); In re FirstEnergy Solutions Corp., et al., No. 18-50757, (Bankr. N.D. Ohio); In re iHeartMedia, Inc., et al., No. 18-31274, (Bankr. S.D. Tex.); In re Brookstone Holdings Corp., et al., No. 18-11780, (Bankr. D. Del.); In re Toys "R" Us, Inc., et al., No. 17-34665, (Bankr. E.D. Va.); In re The Financial Oversight and Management Board for Puerto Rico, No. 17-3283, (D. Puerto Rico); In re Fallbrook Technologies Inc., et al., No. 18-10384, (Bankr. D. Del.); In re Basic Energy Services, Inc., et al., No. 16-12320, (Bankr. D. Del.); In re UCI International, LLC, et al., No. 16-11354, (Bankr. D. Del.); In re RCS Capital Corporation, et al., No. 16-10223, (Bankr. D. Del.); In re Essar Steel Algoma Inc., et al., No. 15-12271, (Bankr. D. Del.); In re Colt Holding Company LLC, et al., No. 15-11296, (Bankr. D. Del.); In re RadioShack Corporation, et al., No. Case 15-10197, (Bankr. D. Del.); In re Caesars Entertainment Operating Company, Inc., et al., No. 15-01145, (Bankr. N.D. Ill.); In re Lightsquared Inc., et al., No. 12-12080, (Bankr. S.D.N.Y.); In re Ahern Rentals, Inc., No. 11-53860, (Bankr. D. Nev.).

## SERVICES TO BE PROVIDED[3]

8.      Subject to further order of the Court, and as more fully described in and consistent with the Engagement Letter, GLC's services prior to and in the Chapter 11 Cases may include the following:

---

[3]    The summary of the Engagement Letter in this Declaration is qualified in its entirety by reference to the provisions of the Engagement Letter.  Capitalized terms used but not otherwise defined in this section shall have the meanings ascribed to them in the Engagement Letter.

a.      becoming familiar with the Debtors' financial condition and business;

b.      advising and assisting the Debtors in examining, analyzing, developing, structuring and negotiating the financial aspects of any potential or proposed strategy for a Transaction;[4]

c.      determining a range of enterprise values for the Debtors in connection with a Transaction;

d.      preparing offering and/or information materials for, and managing the due diligence process with potential bidders or potential financing parties, in connection with an applicable Transaction;

e.      assisting the Debtors in soliciting, coordinating and evaluating indications of interest and proposals, tenders and consents in connection with any Transaction;

f.      providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary;

g.      attending meetings of and advising and otherwise communicating with the Debtors' Board of Directors, creditor groups, and other interested parties, as GLC and the Debtors determine to be necessary or desirable; and

---

[4]    For purposes of the Engagement Letter, "Transaction" shall mean, the consummation of any of the following whether through one or more transaction(s) or series of transactions, (i) any new debt and/or equity financing, including a rights offering or the issuance or placement, whether public or private, of debt, equity or equity-linked securities, instruments or obligations (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt or other financing, including any "debtor in possession financing" or "exit financing" in connection with a chapter 11 plan or any bankruptcy case ("Bankruptcy Case(s)") filed by or against one or more of the entities comprising the Company under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")), whether from new or existing financing providers (a "Financing Transaction"); (ii) any merger, consolidation, joint venture, partnership, spin-off, split-off, business combination, tender or exchange offer, acquisition, sale, distribution, transfer or other disposition of assets or equity interests, or similar transaction, involving all or a material portion of the business, assets or equity interests of the Company, in one or more transactions, including any sale under Section 363 of the Bankruptcy Code (each, a "Sale Transaction"); or (iii) any restructuring, reorganization and/or recapitalization, including through a plan of reorganization or liquidation (a "Plan") (each, a "Restructuring") of a material portion of the Company's outstanding equity, indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness), leases (both on and off balance sheet), put rights associated with outstanding securities, or other liabilities or obligations (collectively, the "Existing Obligations") that is achieved, without limitation, through (1) a solicitation of material waivers, consents, acceptances or authorizations from the holders of any Existing Obligations; (2) material rescheduling of the maturities or other terms of any Existing Obligations for a period of at least twelve months; (3) a material amendment or modification of the terms of any Existing Obligations applicable for a period of at least twelve months, including, relating to interest rates, repurchase, settlement or forgiveness of Existing Obligations; (4) conversion of any Existing Obligations into equity (other than a conversion on existing terms); (5) an exchange offer involving the issuance of new securities in exchange for any Existing Obligations; (6) any change of control transaction, sale, acquisition or merger; (7) any refinancing or reinstatement; or (8) other similar transaction or series of transactions.

h.      providing such other financial advisory services as may be agreed in writing between GLC and the Company.

9.      It is necessary that the Debtors employ GLC to render the foregoing professional services.  The terms of the Engagement Letter were negotiated at arm's length between the Debtors and GLC and reflect the parties' mutual agreement as to the substantial efforts that have been and will continue to be required in this engagement.  GLC will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in the Chapter 11 Cases to avoid any unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

10.      GLC's decision to advise and assist the Debtors in connection with the Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter, as modified by the Proposed Order, pursuant to section 328(a), and not section 330, of the Bankruptcy Code.  As more fully described in the Engagement Letter, in consideration of the services provided by GLC, the Debtors have agreed to pay GLC during the Chapter 11 Cases according to the following terms (the "Fee and Expense Structure"):[5]

a.      **Monthly Advisory Fees**:  a monthly advisory fee of $125,000 (each, a "Monthly Advisory Fee"), payable in advance for the period commencing on the Petition Date. The initial Monthly Advisory Fee shall be pro-rated based on the commencement of services as of the Petition Date through to the end of the calendar month. Subsequent payments of the Monthly Advisory Fee shall be due and payable in advance on the anniversary of each month. Each Monthly Advisory Fee is earned in full when due. In addition, a one-time credit of 50% of the Monthly Advisory Fees in excess of $375,000 (three (3) Monthly Advisory Fees) actually paid to GLC under this Agreement will be applied once against either the Restructuring Fee, the Financing Transaction Fee, or the Sale Transaction Fee (collectively, the "Transaction Fees"), as applicable (in each case earned and payable to

---

[5]   The summary of the Fee and Expense Structure in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter.  To the extent there is any discrepancy between the summary contained in the Application and this Declaration and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall govern.

GLC), on a dollar for dollar basis up to 100% of the applicable Transaction Fee.

b.   **Financing Transaction Fee**: a fee payable directly out of the gross proceeds of any and all Financing Transactions equal to: (i) 2.00% of the aggregate principal face amount of any secured debt raised, including, without limitation, any debtor-in-possession or exit financing raised; (ii) 3.00% of the aggregate principal face amount of any unsecured debt raised; and (iii) 5.00% of any equity or equity-linked securities raised (each, a "Financing Transaction Fee"). As used herein, "raised" shall include all committed amounts. Each Financing Transaction Fee shall be payable in cash in full at the closing of each Financing Transaction. Notwithstanding anything to the contrary in this Agreement, with respect to any debtor-in-possession financing provided by Blue Torch Finance LLC or any of its affiliates in any Bankruptcy Case(s) (such financing, a "Blue Torch DIP"), GLC shall be entitled to a Financing Transaction Fee equal to 1.00% of the aggregate principal face amount of any such debt raised.

c.   **Sale Transaction Fee**: a fee equal to (i) 1.75% of the Aggregate Consideration (as defined on Schedule II of the Engagement Letter) for amounts up to and including $250,000,000 *plus* (ii) 4.00% of the amount, if any, of the Aggregate Consideration in excess of $250,000,000 (together, a "Sale Transaction Fee"). Notwithstanding the foregoing, in no event shall the Sale Transaction Fee be less than $1,500,000 (*i.e.*, if applicable, GLC shall be entitled to a minimum Sale Transaction Fee of $1,500,000). The Sale Transaction Fee shall be earned and payable promptly upon the consummation of the Sale Transaction and, to the extent applicable, payable directly out of the gross proceeds of the Sale Transaction.

d.   **Restructuring Fee**: a fee of $1,500,000 (payable directly out of the gross proceeds of any Restructuring, if available) upon the consummation of any Restructuring (the "Restructuring Fee").

e.   Credits:

   i.   Multiple Transaction Fees: If a single Transaction that is consummated constitutes both a Sale Transaction and a Restructuring, GLC shall be entitled to the higher of the applicable Sale Transaction Fee and Restructuring Fee, but not both. In addition, if a Sale Transaction occurs and, subsequently, a Restructuring occurs that is a liquidation of the remaining estate of the Debtors, a Restructuring Fee shall be payable to GLC only if GLC is materially involved in the Restructuring.

   ii.   Sale Transaction Fee Credit: Except as set forth in clause (e)(i) immediately above, a credit of 50% of any Sale Transaction Fee paid to GLC by the Debtors will be applied once against any

Restructuring Fee on a dollar-for-dollar basis up to 100% of such Restructuring Fee. Notwithstanding the foregoing, each applicable credit shall be applied once without duplication.

iii.      <u>Financing Transaction Fee Credit</u>: A credit of 50% of any Financing Transaction Fee (and in the case of a Blue Torch DIP, 100% of any Financing Transaction Fee) paid to GLC by the Debtors will be applied once against the either the Sale Transaction Fee or the Restructuring Fee on a dollar-for-dollar basis up to 100% of such Sale Transaction Fee or Restructuring Fee.

iv.      For the avoidance of doubt, each applicable credit shall be applied once without duplication.

f.      **Expense Reimbursement**: GLC shall be entitled to monthly reimbursement from the Debtors of reasonable and documented out-of-pocket expenses incurred in connection with the services to be provided under the Engagement Letter (including, without limitation, travel fees, document productions fees, GLC's reasonable and documented out-of-pocket fees and expenses for outside legal counsel incurred in connection with the performance of the Engagement Letter and the matters contemplated thereby, and sales, use or similar tax incurred thereon, and including, in connection with the Chapter 11 Cases, GLC's retention in such case(s) and any fee issues or disputes that may arise, including defending its fee applications), whether or not a Transaction occurs or is consummated.[6] In addition, to the extent GLC establishes an electronic data room in connection with any potential Transaction, a quarterly fee of $1,800 will be payable by the Debtors for so long as such data room is maintained.

g.      **Termination Fee**: If, during the term of GLC's engagement or as set forth in the last sentence of Section 4(b), the Debtors enters into an agreement to effect a Transaction that is subsequently terminated or otherwise is not consummated and the Debtors receives compensation pursuant to any provision contained in such agreement related thereto (the "<u>Termination Payment</u>"), then a cash fee equal to 25% (the "<u>Termination Fee</u>") of the Termination Payment, which shall be payable to GLC promptly following the Debtors' receipt of such Termination Payment, provided that the Termination Fee will not exceed the applicable Transaction Fee that would have been payable had such Transaction been completed, and any Monthly Advisory Fees paid will be credited without duplication and only to the extent not previously credited. For purposes of calculating the Termination Fee, the Termination Payment shall include any judgment for damages, any amount or other consideration received by the Debtors or in settlement of any dispute as a result of such termination or other failure to consummate

---

[6]      In connection with signing the Engagement Letter, the GLC was provided with an expense retainer of $25,000.

the Transaction, as well as the fair value of any options granted to the Debtors (pursuant to any cross option agreement, comparable provision or otherwise).

11.     The Fee and Expense Structure is consistent with GLC's typical compensation for work of this nature.  It is GLC's policy to charge its clients for all disbursements and expenses incurred in the rendition of services, including reasonable fees and expenses of its outside counsel. Further, the Fee and Expense Structure is comparable to those generally charged by investment banking firms of similar stature to GLC and for comparable engagements, both in and out-of-court, and reflect a balance between a fixed, monthly fee and a contingency amount that is tied to the consummation and closing of certain transactions as contemplated in the Engagement Letter.

12.     The Engagement Letter was negotiated at arm's length and in good faith, and I believe that the provisions contained therein are reasonable terms and conditions of GLC's employment by the Debtors.

13.     With respect to the Engagement Letter's indemnification provisions, as summarized in the Application and more fully described in Schedule I of the Engagement Letter, indemnification is a standard term of the market for investment bankers.  The indemnity, moreover, is comparable to those generally obtained by investment banking firms of similar stature to GLC and for comparable engagements, both in and out-of-court.   The Engagement Letter's indemnification and contribution provisions were fully negotiated by the Debtors and GLC at arm's-length and in good faith, and I respectfully submit that these indemnification and contribution provisions of the Engagement Letter are reasonable, subject to the modifications set forth in the Proposed Order.

14.     Other than as set forth above, there is no proposed arrangement between the Debtors and GLC for compensation to be paid in the Chapter 11 Cases.  GLC has no agreement with any other entity to share any compensation received, nor will any be made, except as

permitted under section 504(b)(1) of the Bankruptcy Code.  GLC is willing to be retained by the Debtors as their investment banker and will, subject to the waivers requested in the Application and herein, submit appropriate monthly, interim, and final fee applications for compensation and reimbursement of out-of-pocket expenses in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders of the Court.

15.     GLC will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in the Chapter 11 Cases.  However, because: (a) it is not the general practice of investment banking firms such as GLC to keep detailed time records similar to those customarily kept by attorneys; (b) GLC does not ordinarily keep time records on a "project category" basis; and (c) GLC's compensation is based on a fixed rate and/or fixed-percentage, GLC respectfully requests that GLC's restructuring professionals only be required to maintain summary records in half-hour increments describing each professional's tasks on a daily basis, including reasonably detailed descriptions of those services and the individuals who provided those services.  Moreover, GLC respectfully requests that (a) GLC's professionals not be required to keep time records on a "project category" basis, (b) its non-investment banking professionals and personnel in administrative departments (including legal) not be required to maintain any time records, and (c) it not be required to provide or conform to any schedule of hourly rates.  To the extent that GLC would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable procedures and orders of the Court, or encouraged to do so by the U.S. Trustee Guidelines, GLC respectfully requests that the Court waive such requirements.  GLC also requests authorization for the Debtors to pay GLC's Transaction fee(s) for its services as and when due

10

under the Engagement Letter *provided that* all such fees shall remain subject to the subsequent approval of the Court following the filing of a final fee application.

16.     In addition, GLC does not have in-house counsel and requests a waiver of Local Rule 2016-2(f) (reimbursement of payments made to other professionals).  GLC intends to use its outside counsel in respect of retention and fee related matters and will include its counsel's time records with its monthly fee statements and any non-summary interim and final fee application filed with the Court.

17.     During the 90-day period before the Petition Date, GLC received the following payments from the Debtors:  $204,166.66 on October 5, 2023, $141,876.00 on November 6, 2023; and $125,000.00 on December 1, 2023.  To the extent that additional pre-petition expenses subsequently come to the attention of GLC, GLC will reduce its Expense Retainer by such amounts.  As of the Petition Date, the balance of the Expense Retainer was $22,047.35.

## GLC'S DISINTERESTEDNESS

18.     GLC has performed a conflict search of the list of parties-in-interest provided by the Debtors attached hereto as <u>Schedule 1</u> (the "<u>Parties-In-Interest</u>") and parties that have signed non-disclosure agreements with the Debtors.  Based on the results, to the best of my knowledge, other than as set forth below:  (a) GLC has no relevant connection with any of the Parties-In-Interest, including the Debtors, the Debtors' creditors, the U.S. Trustee, any person employed in the office of U.S. Trustee; (b) GLC is not a creditor, equity security holder, or insider of any of the Debtors; (c) neither GLC nor any of its professionals is or was, within two years of the Petition Date, a director, officer, or employee of any of the Debtors; and (d) GLC does not hold or represent an interest materially adverse to any of the Debtors, their estates, or any class of creditors or equity

security holders by reason of any direct or indirect relationship to, connection with, or interest in any of the Debtors, or for any other reason known to GLC.

19.     As a result of GLC's conflict search, I have thus far ascertained that, in each case, upon information and belief, GLC has the following connections with the Parties-In-Interest set forth on Schedule 2 hereto:

     a.   As part of its diverse practice, GLC appears in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants, investment bankers, and financial consultants, some of which may represent claimants and parties in interest in the Chapter 11 Cases.  In addition, GLC has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated thereto.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors or their estates herein, and none are in connection with the Chapter 11 Cases.

     b.   In the ordinary course of business, GLC utilizes the services of certain of the Parties-In-Interest set forth on Schedule 2.  Based on GLC's current knowledge of the Parties-In-Interest, and to the best of my knowledge, none of these ordinary course business relationships constitute interests materially adverse to the Debtors or their estates.[7]

20.     In addition, Global Leveraged Capital Holdings, LLC ("GLCH," together with its subsidiaries, the "Company"), the parent company of GLC, is a private investment and advisory firm and, together with its subsidiaries and affiliates, is involved in a wide range of investment banking and other activities, focused on the middle market.  GLCH engages in two key activities: investment banking through GLC Advisors & Co., LLC ("GLC Advisors") and private capital investments through GLC Investment Advisors, LLC ("GLCIA").

---

[7]   GLC may provide services to, or has provided services to, committees, ad hoc groups of noteholders or creditors in connection with certain restructuring engagements, which committees or groups include, or included, entities that appear on the Parties-In-Interest list, including those that signed non-disclosure agreements with the Debtors. GLC believes that none of these business relationships constitute interests adverse to the interests of the Debtors' estate or any class of creditors or equity security holders in matters upon which GLC is to be employed.

21.    GLC Advisors' securities transactions are conducted through GLC Securities, LLC ("GLC Securities"), GLC Advisors' broker-dealer affiliate, which is a member of FINRA and SIPC. Only GLC Advisors and GLC Securities are being retained in this matter. GLCIA is an exempt registered investment advisor and invests debt and equity capital in leveraged buyouts, strategic acquisitions, recapitalizations, restructurings and growth financings. GLCIA also invests in distressed companies and acts as lead arranger in leveraged transactions. GLCIA and GLC Securities are subject to regulation by U.S. federal and state regulatory agencies and securities exchanges and by regulators and exchanges in major markets where they each conducts their respective businesses.

22.    Each of GLC's businesses are separate from GLCIA's business. There is an information barrier between GLC and GLCIA and, among other things, no electronic files or servers are shared, and no GLCIA personnel have access to GLC's files related to the Debtors and no GLC personnel working on this matter have access to GLCIA files. Further, notwithstanding anything to the contrary contained in the Engagement Letter, GLC has not used and shall not use the services of GLCIA in respect of its engagement by the Debtors.

23.    In addition, the Company's internal procedures include protecting any confidential information received in the course of its business activities and maintaining separation of personnel through the use of internal information barriers. The Company's personnel may only communicate any confidential information on a "need to know" basis to other personnel who (i) have a legitimate business justification in connection with their duties to know the confidential information and (ii) have no responsibilities or duties that are likely to give rise to a conflict of interest or appearance thereof or any misuse of such confidential information. In general, the Company's

personnel may not use any confidential information obtained in the course of any business activity for any other purposes or for any other clients.

24.     GLC (through personnel that are permitted to wall-cross) reviewed connections for at least the past three years between GLCH and its subsidiaries, including GLC, relating to each of their respective practices, against the list of parties-in-interest provided by the Debtors to GLC attached hereto as Schedule 1. Based on the results, to the best of my knowledge, other than as set forth herein or on Schedule 2: (i) GLCH and its subsidiaries, including GLC, are not creditors, equity security holders, or insiders of the Debtors; (ii) GLCH and its subsidiaries, including GLC, and its respective professionals, are not and were not, within two years of the Petition Date, a director, officer, or employee of the Debtors; (iii) GLCH and its subsidiaries, including, GLC, do not hold or represent an interest materially adverse to any of the Debtors, their estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason known to GLC; and (iv) none of the principals or employees of GLCH or its subsidiaries, including GLC, is a relative of or has any known connection with the United States Trustee for Region 3, any known employee in the Office of the United States Trustee for the District of Delaware, or any United States Bankruptcy Judge for the District of Delaware (other than having appeared in the Bankruptcy Court on behalf of GLC's clients from time to time).

25.     I do not believe that any of the representations or relationships recited above would give rise to a finding that GLC represents or holds an interest adverse to the Debtors or their estates. Accordingly, based upon GLC's current knowledge of the Parties-In-Interest and GLC's review of its files, I believe that GLC is a "disinterested person" and that GLC's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.  However, given the large

number of parties in interest in the Chapter 11 Cases, and despite GLC's efforts to identify and disclose its relationships with the Parties-In-Interest, I am unable to state with absolute certainty that every client relationship or other connection has been disclosed in this Declaration.  GLC, therefore, has informed the Debtors that GLC will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, GLC will use reasonable efforts to promptly file a supplemental declaration with the Court as required by Local Rule 2014-1(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 15, 2023

*/s/ Abraham T. Han*
Abraham T. Han
Managing Director
GLC Advisors & Co., LLC and GLC
Securities, LLC

## SCHEDULE 1

**List of Parties in Interest**

**Near Intelligence**
**Parties in Interest List**

**Debtors and Non-Debtor Affiliates**
**(including f/k/a, d/b/a, a/k/a)**
KludeIn I Acquisition Corp.
Near Americas Inc.
Near Holdings Pte. Ltd.
Near Intelligence Holdings Inc.
Near Intelligence LLC
Near Intelligence Pte. Ltd.
Near Intelligence Pty. Ltd.
Near Intelligence Pvt. Ltd.
Near Intelligence SAS
Near Intelligence, Inc.
Near Pte. Ltd.
Near North America, Inc.
Paas Merger Sub 2 LLC
UberMedia, Inc.

**Insurers**
Ace American Insurance Company (Chubb)
AIG
Allied World
Associated Industries Insurance Co., Inc.
Berkshire Hathaway
Chubb European Group SE
Chubb Insurance Australia Ltd.
Chubb Insurance Singapore Ltd.
ICICI Lombard GIC Ltd.
National Union Fire Insurance Company of Pittsburgh, PA
Sentinel Insurance Company Ltd. (Hartford)
Vantage Risk Assurance Company
XL Specialty Insurance Company

**Material Contracts**
Accenture
Activate Holdings Ltd.
Admatik Sdn Bhd
Advanced Contributors Pvt. Ltd.
Aelius Exploitation Technologies, LLC
Agoop Corp
Ailevon Pacific Aviation Consulting
Airbiz Offshore Private Limited (SG)
Analysis

Alexander Babbage, Inc.
Alight Public Relations, LLC
Altometer Business Intelligence
AltScore Inc.
Amberoon
Aramark Refreshment Services, LLC
ARInsights, LLC
ASLF Media Pty. Ltd.
Asset Strategies Group (ASG)
Australian United Retailers Limited
Avarisoft Pty. Ltd.
AudienceQ Limited
Avison Young (USA) Inc.
Big Mobile Group Pty. Ltd.
Bisnow, LLC
Black C Media Istanbul
Blue Genie Art Bazaar
BMT commercial Aus. PTY. Ltd.
Bonzai Digital
Boston Consulting Group
Bowling Green State Univ (BGSU)
BP Australia Pty. Ltd.
Break Media Pte. Ltd.
Brentwood Associates
Brisbane City Council
Brookfield Properties (BPR REIT Services LLC)
Business Wire Inc.
Caravan Industry Assoc. of AU
CBRE limited
Central Counties Tourism
Chick-fil-A, Inc.
ChurnZero
CircleK-TAS
City of Apache Junction
City of Cleveland
City of El Paso
City of Kingman Tourism Division
City of Perth
City of Prescott Tourism Office AZ
City of Québec
Claires European Services
Coca-Cola Canada Bottling Ltd.

Cochise County Tourism Council
cohort.ID, Inc.
Columbia Distributing ESRI
Complementics
Container Exchange (QLD) Limited
CREtech
D Chain FZ LLC
Dai Nippon Printing Co., Ltd.
Dakota Worldwide
Dallimore & Co.
Datagence, Inc. d/b/a V12 Group
Dean Runyan
Decathlon SE
Deep End Services Pty. Ltd.
Delaware North
Deloitte Financial Advisory Services LLP
Design Workshop, Inc.
Destination Analysts
Dietrich-Pepper, LLC
Digital Commons Limited
Digital Envoy, Inc.
DNP Media Art Co. Ltd.
Dollar General Corp.
DOMO, Inc.
DuPage CVB
Earth Economics
ECRA Pte. Ltd.
Eddy Alexander
Element Advisory Pty. Ltd.
Entrata
Environics
ePrivacy GmbH
Epsilon Data Management, LLC
ESRI (Environmental Systems Research Institute)
Ethos Urban Pty. Ltd.
E*TRADE Financial Corporate Services Inc.
Fernridge Solutions Pty. Ltd.
Fiction Tribe, Inc
Finity Consulting Pty. Ltd.
Flare Aviation Consulting
Foot Locker Retail, Inc.
Fresh Information Limited
Fresno / Clovis CVB
GapMaps, LTD.

GEO marketing Solutions Group
Geografia Pty. Ltd.
Geoscience Australia
GHD Pty. Ltd.
Global Planning Solutions
Google Asia Pacific Pte. Ltd.
Greater Palm Springs
Grosvenor
Guam Vistors Bureau
H2R Market Research
Hamilton City Council
Haynes and Boone, LLP
Herrmann Global
Highspot Inc.
HKS, Inc.
Hobart City Council
Houston First Corporation
Houston Kemp Pty. Ltd.
Idealab
Idemitsu Kosan Co. Ltd.
Ikano Insight Ltd.
Incubeta Australia Pty. Ltd.
InfoSum Ltd.
Innity China Co., Limited
InMobi Pte. Ltd.
Inretail Management
Integral Ad Science, Inc.
Intelligent Direct, Inc.
Intermarché Alimentaire International
Intersection Media
Intervistas Consulting
Intrado Digital Media LLC Digital Media Innovation
InvestorBrandNetwork (IBN)
IRB Holding Corp.
Irys, Inc.
Jackson County Visitors Bureau
Jarrell Chalmers – Marketing Consulting
Jason Wu – Digital Marketing Services
JCDecaux Australia Trading Pty. Ltd.
JKH Business and Property Consulting (PTY.) Ltd.
Johnston County
Knowledge Support Systems, Inc. d/b/a Kallibrate
KFC Pty. Ltd.

Kollaborations Ltd.
Kwik Trip, Inc.
Lasalle Investment Management
Legend Partners - Beau Niblock
Leggo Studio Pty. Ltd.
LES MOUSQUETAIRES
Lex Connect Consulting Private Limited
Linkedin Corporation
Little Caesar Enterprises, Inc.
Localis Technologies Australia
LocationIQ Pty. Ltd.
Longwoods International
Mabrain Technologies
MACROPLAN HOLDINGS PTY. LTD.
Madden Media
Manistee County Visitors Bureau
mapIT (PTY.) Ltd.
Market Economics Ltd.
Masahiro Matsui – Consulting Services
Marsh USA LLC
MBI International
McDonalds
McElhanney Ltd.
Mead & Hunt
Measurement of Outdoor Visibility and
Exposure Pty. Ltd.
MediaOne North America
Media Quest Plus FZ LLC
Mediatiks Limited
Melbourne City Council
MeMob
Meta Platforms Technologies, LLC
METAVERSO, S.A.
Metayage Inc.
MMP Worldwide FZ LLC
Monash University
Moreton Bay Regional Council
Morey Consulting
Motivation Holdings
My Equity Comp, LLC
National Retail Federation, Inc.
Nationwide News Pty. Ltd.
NaviRetail Inc.
nContext, LLC
New Balance Athletics, Inc.
Nexcore Group

Nexpansion Inc.
Nike
Nissin Shoukai Inc.
North Land Capital Markets
NWAP II Inc.
NYC & Company
O2 Design
Off Madison Ave
Office of Spot
On The Run Pty. Ltd.
OpenX Technologies, Inc. (V)
Orange142
Oracle Corporation Singapore Pte. Ltd.
Oracle Corporation UK Limited
Osaka Metro Adera Co., Ltd.
Oxford Economics
Pacific Consultants
PandaDoc, Inc.
Pearl Meyer & Partners
Pelmorex Corp.
Perception Media
Pickwell SP Zoo
PiinPoint Inc.
Pinal County
Pinchhitters BV
Placewise Media
Point72, L.P.
Popeyes Louisiana Kitchen Inc. (RBI)
Precisely.com (Syncsort)
PricewaterhouseCoopers Public Accountants
PropertyGuru Pte. Ltd.
Propmodo Inc.
Propulso
PublicNSA, LLC dba BIGDBM
PubMatic, Inc.
PwC Advisory sp. z o.o. sp.k.
PwC Middle East
Q1Media, Inc.
Quantify Strategic Insights
QuikTrip Corporation
Reach Media New Zealand Limited
Redland City Council
Restaurant Brands International US Services
LLC
Rexall Pharmacy Group LLC
RMG Advertising

Rockport Analytics
Rove Marketing Inc.
Roy Morgan
RRC Associates
Rural Press Pty. Ltd.
SC Tristone Production Impex SRL
S.M.EG.I.T TURISTICAS S.A.M.P.
SA1 Property Holdings Pty. Ltd.
SDI Realty Advisors
Seychelles Tourism
Shell International
Shivaami Cloud Services Pvt Ltd.
Sight & Sound Film, LLC
Simpleview
Singapore Press Holdings Limited
SiteZeus
Sky Synergy, LLC
SMRT Commercial Pte. Ltd.
Southern Methodist University
Spatial.AI
Stellar Lifestyle Pte. Ltd.
StreetMetrics, Inc.
Subskribe
Sunlife
Sync Media
Tango Analytics LLC
Takeshi Yamamoto - Consulting Services
Taubman Centers, Inc.
Taymax
TD Bank, N.A.
Tetrad Computer Operations Applications Inc.
The Coca-Cola Company
The Executive Centre Singapore Pte. Ltd.
The Benchmark Company, LLC
The Trust for Public Land
Think Economics
Tomorrow's Tourism Ltd. (GBP)
Tourism Economics
Tourist Tracka Pty. Ltd.
Town of Pinetop-Lakeside
Town of Superior
Transport for NSW
TrueData Solutions, Inc.
TrueGrit Communications, LLC
TrustArc Inc.

Unify Technologies Pvt Ltd.
Unisource Solutions, Inc.
University of Canterbury
University of Montana
Unruly Group LLC
Urban Studies
Urban Systems Ltd.
Urbis Pty. Ltd.
V12 (fka DataMentors, LLC)
Valvoline
Veraset LLC
Vercara, LLC
Vietch Lister Consulting Pty. Ltd. (VLC)
VIOOH Ltd.
Visit Canton - Stark County CVB
Visual Approach
W E Upjohn Institute for Employment Research
Walmart
Wawa, Inc.
Wahl & Case EQIQ K.K.
Weedmaps
Wendy's International, LLC
Workaletta Inc.
XLocations, Inc.
Zartico, Inc.
ZoomInfo Technologies LLC
Zoom Video Communications, Inc.

**Lenders & Professionals**
Avidbank
Blue Torch Credit Opportunities Fund III LP
Blue Torch Finance LLC
BNP Paribas
Bpifrance Financing
BTC Holdings Fund II LLC
BTC Holdings KRS Fund LLC
BTC Holdings SBAF Fund LLC
King & Spalding LLP
KPG BTC Management LLC

**Shareholders**
Abhijit Hubli
Abhishek Ranjan
Aditi Sheel
Amelie Nisus

Amod Chopra
Amrita De La Penna
Aniket Suresh Chougule
Anuj Dayal Bharti
Anurag S
Arjun Divecha
Ashish Gupta
Ashok Vemuri
Asuri Narayanan Srikeshav
Aswathi C C
Axel Ferrier
Balaji Rajan
Bazile Cecille
BTIG, LLC
C Krithika Lakshmi
Camilo Mauricio Fonseca
Cantor Fitzgerald & Co
Carlin Tam Yan Fu
Cecil Capital Pte. Ltd.
Cede & Co
Chandrakumar Manoj
Charles-Antoine Dreyfus
Charu Sethi
Christian Freeman
Christina Michelle Handal
Cindy Olivier
CMDB II
David Michael Raitt
Dhivya B H
Edward Locksley Lowther-Harris
Febu P Mirza
First Asian Investments, Inc.
Geraldine Lei Vigilia
Ghali Vamsi Sai Krishna Murthy
Godspeed Investments Pte. Ltd.
Gokul Krishnan Rathakrishnan
Gopal Srinivasan
GPC NIV Ltd.
Gulshan Singh
Gurupramodha S G
Harish Ganesh
Himanish Shah
Himanshu Nigam
Hisashi Inotani
Ho Yi Hong

Honeih Etemadi Eydgahi
James Norman Blau
Jayson W Ayers
Jennifer-Jane Roszak
Jon Michael Atterbury
Jonathan Tang Wei Lin
Joseph Jing-Fong Chen
Juliette Barthe
Kamal Chhetri
Karen Steele
Kelsey Rae Waite
Kesav M
Kevin King-Tung Kwan
Kiran Kumar Venugopala
Kosaraju Ramya
Krishnan Rajagopalan
Kshama Keshav Zingade
Kumar Anish
Laxman B Nidagundi
Lindsay Kinuyo Yamaoka
Lola Millet-Bourgogne
Madhavan Rangaswami
Madhu Prasad N
Mahesh V Chalil
Manmeet Kaur
Mark Bailey
Mary Krishnamoorthy
Mathieu Saadat
Melissa Catherine Coates
Michael Radford
Mn Nagaraj
Mohamed Farouk Souissi
Mohit Chhajer
Moumita Sarkar
Murali Veeraiyan
Narayan Ramachandran
Naveen Kottigegollahalli Siddagangaiah
Navin Kesavan
Navneet Anand
Neha Gupta
Nguyen Anh Ngoc Tran
Nicolas Proust
Nisarga Pal
Nishanth Chandrasekaran
Northland Securities, Inc.

Ocean Capital Enterprises Co., Ltd.
Oriental Investment Advisors Pte. Ltd.
Paul Benoist
Penumutchu Vittal Kumar
Peter Lenz
Polar Multi-Strategy Master Fund
Pothukurchi Naga Santhosh Kumar
Prajakta Pandurang Sutar
Pranesh Sharma
Preethesh Loknath Shetty
Preethish
Pritha Dilip Das
Priya Raghavan
Rahul Saria
Raja A
Rajkumar Velagapudi
Ramapriya Kyathanahally Janardhan
Rashmi Vinitha R
Relentless Zen, LLC
Renuka Parthiban
Ricardo Rojas Ruiz
Richard Douglas Shaddle
Ronanki Dinesh Kumar
Rushikesh Namdeo Tapre
Sahil Vaid
Saksham Kahol
Sakshi Ganesh Asange
Sanaldev Vasudevan Meloottparambil
Sanjana Fernandes
Sarah Jayanetti
Sean Knight
Seema
Sequoia Capital India III Ltd.
Shikha Singh
Shreya Bande
Simon D Caballero
Smriti Kataria
Smyth Jules
Sriram Raghavan
Sudeep Charles
Sugandha Rai
Sumanth N
Suryabir Singh
Syed Rizwan Hashmi
Tejas Dhansukhbhai Panchal

The Benchmark Company, Llc
Timothy Coxon
Uday Kumar
Venkat Sai Giridhar Reddy Karam
Victoria Louise Heely
Vignesh V
Vijay Kumar Kuppili
Vinay Kumar Vemula
Vinayak Navale
Vinayaka Kulkarni Prabhakar

**Banks**
Avid Bank
BNP Paribas
Citibank
HSBC
ICICI Bank
MonFX

**Taxing / Regulatory Authorities / Government Agencies**
California Franchise Tax Board
City of Pasadena
City of Los Angeles
Commonwealth of Massachusetts
Country of Singapore
Delaware Division of Corporations
District of Columbia
Internal Revenue Service
New York Department of Taxation & Finance Corporation
New York City Department of Finance
State of California
State of Colorado
State of Delaware
State of Florida
State of Georgia
State of Hawaii
State of Indiana
State of Illinois
State of Kansas
State of Massachusetts
State of Maryland
State of Missouri
State of New Hampshire
State of New Jersey

State of New York
State of North Carolina
State of Oregon
State of Tennessee
State of Texas
State of Utah
State of Vermont
State of Virginia
State of Washington
State of Wisconsin

**Utilities**
ACC Business
Zayo Group, LLC
8x8 Inc.

**Litigation Parties**
Jonathan Zorio
Nash Brian
Anil Matthews

**Current and Former Directors & Officers**
Gladys Kong
Jay Angelo
John Faieta
Kathryn T. Petralia
Mark N. Greene
Michelle Zhou
Richard J. Salute
Sherman Edmiston III
Vijay Kuppili
Anil Matthews
Shobhit Shukla
Mini Krishnamoorthy
Ronald Steger
Gene Eubanks
Scott Slipy
Paul Gross
Madhusudan Therani
Justin Joseph
Andrea Chee Yuen Li

**Professionals**
Adlakha Kukreja & Co.
AEI Legal LLC
Baker Tilly US, LLP

Continental Stock Transfer & Trust Co.
Daijogo & Pedersen LLP
Drew & Napier LLC
Driti Advisors LLP
Ernst & Young LLP
GLC Advisors & Co., LLC
GLC Securities, LLC
Grant Thornton Bharat LLP
Kelley Drye & Warren LLP
Kroll Restructuring Administration
Lumos Law
M2K Advisors Pte Ltd
Natarajan & Swaminathan
Pragmatica Law LLP
Taylor Wessing LLP
Willkie Farr & Gallagher LLP
Young Conaway Stargatt & Taylor, LLP

**Benefit Providers**
Aetna
Aflac
Blue Cross and Blue Shield of Minnesota
Blue Cross and Blue Shield of North
Carolina
Blue Shield of California
CIGNA Global Health
Delta Dental
Empire Blue Cross
Farmers Group
Florida Blue
Guardian Dental
Kaiser Permanente
MetLife Dental
MetLife Life Insurance
The Hartford
TriNet Group
Tufts Health Plan
UnitedHealthcare
Vision Service Plan (VSP)

**Landlord / Sublessee**
CIT Bank, N.A.
First-Citizens Bank & Trust Company
Parsons Services Company
SM10000 PROPERTY, LLC

**Top 30 Creditors**
Akama Holdings Fz-LLC
Amazon Web Services, Inc.
Cantor Fitzgerald & Co.
Investments LLC
Digital Envoy, Inc.
EdgarAgents, LLC
EGS Inc.
Greater Pacific Capital Management Ltd.,
GPC NIV LTD.
Gopal Srinivasan
Haynes and Boone, LLP
HERE Europe B.V.
ICR LLC
Interxion Ireland DAC Limited
Kirkland & Ellis LLP
KludeIn Prime, LLC
Magnite, Inc.
Palisades Media Group, Inc.
Polar Multi Strategy Master Fund
Polar Asset Management Partners Inc.
Sequoia Capital India III Ltd.
Smaato, Inc.
Star Labs LLC
Talent Hunt USA
Taylor Wessing LLP
Telstra Ventures Fund II, L.P
Titan Columbus Ventures
The Benchmark Company, LLC
The Ebinger Family Trust
Venable LLP
Verve Group Europe GmbH
YA II PN, Ltd. c/o Yorkville Advisors
Global, LLC

**Judges / Court Employees**
Amanda Hrycak
Cacia Batts
Catherine Farrell
Claire Brady
Demitra Yeager
Jill Walker
Joan Ranieri
Judge Ashley M. Chan
Judge Brendan L. Shannon
Judge Craig T. Goldblatt

Judge J. Kate Stickles
Judge John T. Dorsey
Judge Karen B. Owens
Judge Laurie Selber Silverstein
Judge Mary F. Walrath
Judge Thomas B. Horan
Laura Haney
Paula Subda
Una O'Boyle

**Office of the United States Trustee**
Andrew R. Vara
Benjamin Hackman
Christine Green
Diane Giordano
Dion Wynn
Edith A. Serrano
Hannah M. McCollum
Holly Dice
James R. O'Malley
Jane Leamy
Jonathan Lipshie
Jonathan Nyaku
Joseph Cudia
Joseph McMahon
Juliet Sarkessian
Lauren Attix
Linda Casey
Linda Richenderfer
Nyanquoi Jones
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch
Timothy J. Fox, Jr.

**<u>SCHEDULE 2</u>**

**Parties in Interest
with Connections to GLC**

1. Adobe
2. AIG
3. Baker Tilly US, LLP
4. CBRE limited
5. CT Corporation
6. Fedex
7. Godaddy.com LLC
8. MICROSOFT Corporation
9. TriNet Group
10. Zoom Video Communications, Inc.
11. 8x8 Inc.
12. Aetna
13. MetLife Dental
14. UnitedHealthcare