IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 92 |

**DEBTORS' OBJECTION TO MOTION OF
BRIAN NASH FOR RELIEF FROM THE AUTOMATIC STAY**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby submit this objection (this "Objection") to the *Motion of Brian Nash for Relief from Stay Under Section 362 of the Bankruptcy Code* [Docket No. 92] (the "Motion").[2] In support of the Objection, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

No cause exists to justify lifting the automatic stay to allow the New Jersey Action to proceed at this time. The New Jersey Action is in its infancy. Forcing the Debtors, at this juncture, to expend significant time and resources litigating a disputed unsecured claim that, even if ultimately allowed, would only be entitled to an uncertain recovery under the Debtors' proposed Plan, will prejudice the Debtors' estates and provide little (if any) actual benefit to the Movant. The Debtors filed these chapter 11 cases a mere three weeks ago. The Debtors' limited resources should not be diverted to a single disputed unsecured claim, but should instead be focused on the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2] Brian Nash (the "Movant") is the plaintiff in an action pending in the New Jersey Superior Court, Case No. MON-L-0029232-23 (the "New Jersey Action").

myriad tasks necessary to ensure a smooth transition into Chapter 11 and the Sale Process (as defined below), in an effort to maximize value for *all* stakeholders. For these reasons, and as discussed more fully below, the Motion should be denied.

## BACKGROUND

1. On September 18, 2023, the Movant commenced the New Jersey Action. The Movant alleges unlawful retaliation against Debtors Near Intelligence, Inc. and Near North America Inc., as well as against the Debtors' former CEO and COO, and the Movant's direct supervisor. The Movant alleges he was unlawfully terminated for engaging in protected activities under the Conscientious Employee Protection Act, N.J. Stat. Ann. §§ 34:19-1–34:19-14 and seeks back pay, front pay, compensatory and punitive damages, attorneys' fees, and pre- and post-judgment interest. The Debtors dispute the Movant's claims and the allegations in the complaint.

2. On November 27, 2023, the Movant and the Debtors stipulated to an extension of the deadline by which the Debtors were required to answer the Movant's complaint to December 11, 2023.

3. On December 8, 2023 (the "Petition Date"), the Debtors filed these chapter 11 cases. That same day, the Debtors filed the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into the Stalking Horse APA, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 20]

(the "Sale Motion"). Through the Sale Motion, the Debtors are seeking authority to conduct a value-maximizing sale process for the benefit of the Debtors' estates and creditors pursuant to court-approved bidding procedures (the "Sale Process"). The hearing to consider approval of the bidding procedures is currently scheduled for January 5, 2024.

4. Also on the Petition Date, the Debtors filed the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [Docket No. 22] (as amended, modified or supplemented, the "Plan"). The Plan provides that holders of Allowed Class 4 General Unsecured Claims will receive the following treatment: "[i]n the event there is an excess of value remaining in the Litigation Trust Assets after Class 3 Prepetition Loan Claims are Paid in Full, holders of Class 4 General Unsecured Claims shall receive their Pro Rata Share of the Litigation Trust Distribution Proceeds."

5. On December 11, 2023, the Debtors filed the *Notice of Bankruptcy Filing and Imposition of Automatic Stay* in the New Jersey Action. Since the filing of the Complaint, no substantive litigation has occurred in the New Jersey Action. No Answer has been filed. No discovery has been taken.

**ARGUMENT**

6. The Motion should be denied because the Movant has not established (and cannot establish) that "cause" exists to lift the automatic stay to allow the New Jersey Action to proceed.

**A.   The Automatic Stay is a Fundamental Debtor Protection.**

7. Section 362(a)(1) operates as a stay, applicable to all entities, of the commencement or continuation, including the issuance or employment of a process, of a judicial proceeding against a debtor that was, or could have been, commenced prior to the commencement of the debtor's bankruptcy cases. 11 U.S.C. § 362(a)(1). The automatic stay allows a debtor to focus on its restructuring efforts without being distracted by the defense of litigation in a variety of forums.

31101303.5

See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977) ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy.").

8. Further, the automatic stay protects creditors by creating an orderly restructuring process that (i) "centralize[s] all disputes concerning the debtor's estate," In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1992), (ii) prevents an uncoordinated race among creditors to gain preference for their claims, and (iii) "forestall[s] the depletion of the debtor's assets due to legal costs in defending proceedings against it." In re SCO Grp. Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007).[3]

**B.     No Cause Exists to Lift the Automatic Stay.**

9. Section 362(d)(1) states, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay. . . for *cause*[.]" See 11 U.S.C. § 362(d)(1) (emphasis added).

10. While "cause" is not defined by the Bankruptcy Code, courts in this District "generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." In re Cont'l Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993). Courts consider three factors when balancing competing interests of debtors and movants: "(1) whether any great prejudice to either the bankruptcy estate or the debtor will result from

---

[3] While it does not appear contested, the New Jersey Action is subject to the automatic stay, as it is a judicial proceeding against Debtors Near Intelligence, Inc. and Near North America, Inc. that was commenced prior to the Petition Date.

4

continuation of the civil suit; (2) whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits." In re W.R. Grace & Co., No. 01-01139 (JFK), 2007 WL 1129170, at *2 (Bankr. D. Del. Apr. 13, 2007) (citing In re Cont'l Airlines, Inc., 152 B.R. at 424).

11. To establish cause, the party seeking relief from the stay must show that the "balance of hardships from not obtaining relief tips *significantly* in [its] favor." Alt. Marine Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.), 298 B.R. 222, 225 (D. Del. 2003) (alteration in original) (quoting In re FRG, 115 B.R. 72, 74 (E.D. Pa. 1990)); see also In re DSBI, Inc., 407 B.R. 159, 166 (Bankr. D. Del. 2009) (listing as the second prong "whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor" (internal citations omitted)).

12. As set forth herein, the balance of hardships does not weigh "significantly" in favor of the Movant's request to lift the stay.

I. **The Debtors' Estates and Stakeholders Will be Prejudiced if the Stay is Lifted.**

13. The Debtors commenced these chapter 11 cases less than a month ago. Since the Petition Date, the Debtors have focused their limited resources on the various tasks necessary to ensure a smooth transition into Chapter 11, including obtaining needed first and second-day relief, preparing schedules and statements and complying with their other bankruptcy reporting obligations, and seeking approval of bidding procedures to govern the Sale Process. If the stay is lifted, the Debtors' management and employees, who also continue to run the Debtors' day-to-day operations, as well as the Debtors' professionals, would be required to devote significant time and resources to the New Jersey Action. This would distract the Debtors' management, employees, and professionals from critical tasks at hand necessary to maximize value for the benefit of all

stakeholders. Moreover, it would create additional (and perhaps ultimately unnecessary) expense to the detriment of the Debtors' estates and other creditors and stakeholders.

14. Indeed, if the New Jersey Action is permitted to continue at this juncture, the Debtors will need to prepare an Answer to the Complaint and potentially engage in discovery. This process would require the Debtors' time and attention, and require the Debtors to rely on the advice of counsel and other professionals. The associated costs would also diminish the value of the Debtors' estates. Further still, it is unclear at this time whether lifting the automatic stay would even benefit the Movant. As noted above, recoveries to holders of Allowed General Unsecured Claims under the Debtors' proposed Plan are presently uncertain and will only be benefitted by permitting the Sale Process to be conducted with the Debtors' maximum focus and attention. Thus, if the Motion is granted, the Debtors could be required to incur the expense of litigating the New Jersey Action for no benefit to any party in interest, including the Movant.

**II.     The Movant Would Not be Harmed by the Denial of the Stay Relief Motion.**

15. The Movant has failed to allege any cognizable hardship if the Motion is not granted. First, any asserted hardship on account of delay in the liquidation and satisfaction of the Movant's claim (which the Debtors dispute) is merely a function of the Bankruptcy Code and the claims reconciliation process to which the Debtors' creditors generally will be subject to. Further, as described above, it is presently unclear what recoveries, if any, will be available to satisfy allowed general unsecured claims. The Debtors limited resources are at this time better directed toward the Sale Process, seeking to maximize value for *all* creditors, rather than litigating individual creditors' disputed claims. Further, as noted above, the New Jersey Action is in its very early stages. No Answer has been filed and no discovery has been taken, meaning no substantive progress in the action will be lost if the stay is maintained.

**III.     The Movant Has Not Demonstrated Any Probability of Prevailing on the Merits.**

16.     Finally, the Movant has not carried his burden to demonstrate probable success on the merits in the New Jersey Action.  See In re Aleris Int'l, Inc., 456 B.R. 35, 48 (Bankr. D. Del. 2011) (holding that the automatic stay should not be lifted because movant "made no showing that it is likely to prevail against the Debtor" on the merits of its claim.); see also In re Fairchild Corp., 2009 WL 4546581, at *6 (denying automatic stay relief where "[t]here is no evidence before the Court regarding the probability of success on the merits").  Here, the Motion contains no demonstration or evidence that the Movant is likely to prevail on the merits in the New Jersey Action.  Moreover, the Movant has made no showing of success on the merits in the New Jersey Action itself.  To date, the Movant's only filing in the New Jersey Action is the Complaint, which contains nothing more than unsupported and conclusory allegations against the Debtors.

*[Remainder of Page Left Intentionally Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors submit that no "cause" exists to lift the automatic stay and, therefore, the Motion should be denied.

Dated: December 29, 2023
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Proposed Co-Counsel to the Debtors
and Debtors in Possession*