**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NEAR INTELLIGENCE, INC., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 23-11962 (TMH)<br><br>(Jointly Administered)<br><br>**Hearing Date:**<br>January 23, 2024 at 1:00 p.m. (ET)<br><br>**Objection Deadline:**<br>January 12, 2024 at 4:00 p.m. (ET) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF ERNST & YOUNG LLP AS FINANCIAL ADVISOR TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby file this application (the "Application"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the employment and retention of Ernst & Young LLP ("EY LLP") as the financial advisor, effective as of the Petition Date (as defined below). In support of this Application, the Debtors submit the *Declaration of Philip J. Innes in Support of Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Ernst & Young LLP as Financial Advisor to the Debtors Effective as of the Petition Date* (the "Innes Declaration"), a copy of which is attached hereto as **Exhibit B** and incorporated herein by reference. In further support of this Application, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

1

**RELIEF REQUESTED**

1.  By this Application, the Debtors request authority, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to retain and employ EY LLP to serve as the Debtors' financial advisor, effective as of the Petition Date (as defined below) pursuant to the terms and conditions set forth in the agreements between the Debtors and EY LLP, and in accordance with the terms and conditions set forth in that certain master services agreement, dated as of December 8, 2023 (the "Master Services Agreement"), copies of which are attached to the Innes Declaration as **Exhibit A**, as supplemented pursuant to the statement of work dated as of December 8, 2023 and attached thereto as Appendix 1 (together with the Master Services Agreement, the "Engagement Letters").[2]

**JURISDICTION AND VENUE**

2.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent the consent of

---

[2] The Engagement Letters amend and supersede that certain Master Services Agreement and Statement of Work by and between the Debtors and EY LLP dated September 29, 2023 and effective as of October 1, 2023.

the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief sought herein are section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1.

## BACKGROUND

5. On December 8, 2023 (the "Petition Date"), the Debtors each filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases") in the Court. The Debtors are authorized to operate their business and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On December 22, 2023, the Office of the United States Trustee appointed an official committee of unsecured creditors in these Chapter 11 Cases. *See* Docket No. 85. No request has been made for the appointment of a trustee or an examiner.

7. Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the circumstances leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of John Faieta in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 14].[3]

## EY LLP'S QUALIFICATIONS

8. In consideration of the complexity of their businesses, as well as the exigent circumstances of the Chapter 11 Cases, the Debtors have determined that the services of an experienced financial advisor will substantially enhance their attempts to maximize the value of

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration and/or Engagement Letters, as applicable.

the estates. The Debtors are familiar with the professional standing and reputation of EY LLP. EY LLP is well qualified to provide financial and restructuring advisory services to the Debtors. EY LLP is recognized for its experience in providing these services to financially distressed companies, including advising debtors, creditors, and other constituents in chapter 11 proceedings in numerous cases. Most notably, EY LLP was previously retained as the financial advisor in the chapter 11 cases of *In re Vewd Software USA, LLC*, No. 21-12065 (MEW) (Bankr. S.D.N.Y. 2021); *In re SHL Liquidation Indus.*, No. 20-12024 (LSS) (Bankr. D. Del. 2020); *In re VIVUS, Inc.*, No. 20-11779 (LSS) (Bankr. D. Del. 2020); *In re API Americas Inc.*, No. 20-10239 (CSS) (Bankr. D. Del. 2020); *In re Pernix Sleep, Inc.*, No. 19-10336 (CSS) (Bankr. D. Del. 2019).

9. The EY LLP professionals involved with the Debtors' engagement are familiar with the Debtors' business, financial affairs, and capital structure. Since their initial retention, EY LLP has worked closely with the Debtors' management and other professionals to understand the Debtors' business, analyze the Debtors' liquidity position, advise on the preparation for the Chapter 11 Cases, and provide other financial analysis and advice. Accordingly, the Debtors believe that EY LLP has developed significant relevant experience regarding the Debtors. Therefore, the Debtors submit that the retention of EY LLP on the terms and conditions set forth in the Engagement Letters is necessary and appropriate, is in the best interest of the Debtors' estates and creditors, and should be approved.

## SERVICES TO BE PROVIDED

10. On September 29, 2023, the Debtors engaged EY LLP to provide certain financial advisory services to the Debtors under a master services agreement and statement of work effective as of October 1, 2023 (the "Prior Agreement"). On December 8, 2023, the Debtors and EY LLP

entered into the Engagement Letters, copies of which are attached as **Exhibit A to the Innes Declaration**, which amend and supersede the Prior Agreement.

11.     Pursuant to the terms and conditions of the Engagement Letters, EY LLP has provided and agreed to provide the following restructuring and financial advisory services[4] (the "Services"):[5]

- Jordan Fisher[6] will serve as the Debtors' chief transformation advisor;[7]

- Work with the Debtors' Board of Directors to advise the Debtors in their restructuring and transformation efforts on a daily basis;

- Advise the Debtors in negotiations or communications with key constituents;

- Assist the Debtors in operating as a debtor in possession in a case under chapter 11 of the Bankruptcy Code as follows and as requested:

    a. Assist with bankruptcy planning, including but not limited to, advising on the preparation of motions, communication plans and cash management procedures;

    b. Assist with the development and revision of a cash flow forecasting tool that incorporates detailed sources and uses of cash (13-week cash flow) and related budget to actual variance analysis;

    c. Assist with identifying risks associated with options and strategies developed by management to deal with critical vendors;

    d. Assist with analysis of potential 503(b)(9) administrative claims (goods supplied in the 20-day period prior to the bankruptcy filing) and reclamation claims;

---

[4] Under the agreement setting out the financial advisory services (Exhibit A to the Innes Declaration), EY LLP was retained by the Debtors' proposed counsel, Willkie Farr & Gallagher ("Willkie"), and is engaged by both the Debtors and Willkie to perform the financial advisory services under that agreement.

[5] The summary of the Engagement Letters included in this Application is provided for purposes of convenience only and is qualified in its entirety by reference to the Engagement Letters. To the extent that this Application and the terms of the Engagement Letters are inconsistent, the terms of the Engagement Letters shall control.

[6] Jordan Fisher is a Managing Director of EY Turnaround Management Services LLC ("EY TMS"). EY-TMS is a controlled firm of EY US LLP. Jordan Fisher is the only EY TMS employee who will be working on this engagement.

[7] EY will not act as an officer of the Client. The Client shall maintain all management and decision-making responsibilities.

  e. Assist with analysis of executory contracts and associated impact of rejection (cure claim analysis and classification);

  f. Assist with the development and preparation of the plan of reorganization or liquidation and disclosure statement (hypothetical liquidation analysis, recovery ranges, and other financial information and disclosures as required);

  g. Assist management in the preparation of financial-related disclosures required by the court;

  h. Assist in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which court approval is sought;

  i. Attend meetings and support discussions with third-party stakeholders, including creditors, vendors, employee benefit providers, potential investors, banks, and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the United States Trustee, regulators, other government officials, and other parties in interest and professionals hired by same, as requested;

  j. Assist with claims analysis and resolution process;

  k. Assist with facilitating document production for diligence requests, as needed;

  l. Report to management and/or Board of Directors on the status of the above activities; and

  m. Additional assistance and advice on the bankruptcy process, as needed;

- Review and assess assumptions related to management's cash forecast and liquidity outlook;

- Review and assess management's existing expense reduction efforts and plans;

- Advise on strategic alternatives and opportunities, including (a) growth considerations, (b) cost reductions, (c) capital and transactions, and (d) turnaround and restructuring alternatives;

- Assess and advise on the feasibility and prioritization of alternatives and opportunities;

- Review and assess management's plan and the associated financial impacts;

- Investigate accounting transactions identified by Debtor;

- Provide such other services as may be requested by the Debtors' Board of Directors and agreed upon by the Debtors and EY.

## NO DUPLICATION OF SERVICES

12. The Debtors intend for EY LLP's Services to complement, not duplicate, the services rendered by any other professional retained in the Chapter 11 Cases. EY LLP understands that the Debtors have retained, and may yet retain, additional professionals during the term of the engagement, and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors. EY LLP is providing distinct services as set forth in the Engagement Letters and such services are not expected to duplicate those to be provided by any other professionals.

## EY LLP'S DISINTERESTEDNESS

13. As set forth in the Innes Declaration, EY LLP has represented to the Debtors that it is not engaged by and will not become engaged by any parties in connection with any matter that would be adverse to the Debtors arising from, or related to, the Chapter 11 Cases, except as may be disclosed in the Innes Declaration.

14. To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Innes Declaration and the exhibits thereto: (a) EY LLP is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtors' estates and (b) EY LLP has no connection to the Debtors, their creditors, the U.S. Trustee, or any other party with an actual or potential interest in the Debtors' case or their attorneys or other professionals. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of the Debtors' retention are discovered or arise,

EY LLP will use reasonable efforts to file promptly a supplemental declaration, as required by Bankruptcy Rule 2014(a).

15. During the ninety days before the Petition Date, the Debtors paid approximately $1,464,841.35 to EY LLP, including advance payments and retainer replenishment payments of approximately $847,132.00 (the "Retainer"). As of the Petition Date, the balance of the Retainer is approximately $133,618.50. EY LLP shall apply the remaining balance of the Retainer toward post-petition fees and expense reimbursements that the Debtors are authorized to pay to EY LLP during the Chapter 11 Cases. As of the Petition Date, the Debtors do not owe EY LLP any amounts for Services rendered before the Petition Date.

## PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

16. Sections 327(a) and 328(a) of the Bankruptcy Code authorize the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. S*ee* 11 U.S.C. §§ 327(a) and 328(a). EY LLP intends to apply for compensation for the Services rendered in connection with these cases subject to the approval of this Court and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, any order of this Court, and any guidelines established by the U.S. Trustee regarding the submissions and approval of fee applications (the "U.S. Trustee Guidelines") on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by EY LLP.

17. Subject to the Court's approval and pursuant to the terms and conditions of the Engagement Letters, the Debtors intend to compensate EY LLP for the Services rendered in the Chapter 11 Cases based on the time that its professionals spend performing such Services. The current hourly rates, by level of professional, are as follows:

| Title | Hourly Rate Range |
|---|---|
| Partner/Principal | $990-$1,200 |
| Executive Director | $975-$1,075 |
| Senior Manager | $850-$975 |
| Manager | $695-$850 |
| Senior | $525-$695 |
| Staff | $295-$465 |

18.    EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties, or tariffs imposed in respect of the Services, all of which the Debtors shall pay (other than taxes imposed on EY LLP's income generally).

19.    In addition to the hourly rates set forth above, the Debtors and EY LLP have agreed that EY LLP shall be reimbursed for any reasonable direct expenses incurred in connection with EY LLP's retention in the Chapter 11 Cases and the performance of the Services set forth in the Engagement Letters, including all potential value-added taxes (VAT), sales taxes, and other indirect taxes. EY LLP's direct expenses shall include, but not be limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations, the fees or reasonable expenses of EY LLP's legal counsel related to EY LLP's engagement, and other expenses including taxes and related administrative costs that result from billing arrangements that are requested by the Debtors.

20.    If EY LLP is requested or authorized by the Debtors, or is required by government regulation, subpoena, or other legal process, to produce its documents or personnel as witnesses with respect to the Services or the Engagement Letters, the Debtors would, so long as EY LLP is not a party to the proceeding in which the information is sought, reimburse EY LLP for its professionals' time and expenses, as well as the fees and expenses of EY LLP's legal counsel, incurred in responding to such requests.

21. EY LLP may receive rebates in connection with certain purchases, which are used to reduce charges that EY LLP would otherwise pass on to its clients.

22. The Debtors believe that the fee structure is reasonable and comparable to that generally charged by financial advisors of similar stature to EY LLP, both in and out of chapter 11. The fee structure as described fully in the Engagement Letters are consistent with EY LLP's normal and customary billing practices for comparably sized and complex cases, both in and out of court. EY LLP and the Debtors submit that the fee structure is fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## INDEMNIFICATION PROVISIONS

23. The Engagement Letters provide that the Debtors will indemnify and hold harmless EY LLP under certain circumstances (the "Indemnification Provisions").

24. The Indemnification Provisions are customary and reasonable for advisors that provide the types of services described in the Engagement Letters. The terms of the Engagement Letters were fully negotiated between the Debtors and EY LLP at arm's-length and the Debtors respectfully submit that the Indemnification Provisions are reasonable and in the best interests of the Debtors, their estates, and creditors.

25. Accordingly, as part of the Application, the Debtors request that the Court approve the Indemnification Provisions, as outlined in the Engagement Letters, subject during the pendency of the Chapter 11 Cases to the modifications as outlined in the Proposed Order.

## RELIEF REQUESTED SHOULD BE GRANTED

26. The Debtors submit that the retention of EY LLP under the terms described herein is appropriate pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. In light of the size and complexity of the Chapter 11 Cases, the Debtors respectfully submit that retaining and

employing EY LLP pursuant to the terms of the Engagement Letters is necessary and in the best interests of the Debtors' estates and all parties in interest.  The services being provided to the Debtors by EY LLP in connection with the Chapter 11 Cases are necessary to assist the Debtors in preserving the value of the Debtors' estates for the benefits of all of the Debtors' stakeholders.  The resources, capabilities and experience of EY LLP in advising the Debtors related to their business and operations are critical to these efforts.  Moreover, a highly qualified financial advisor, such as EY LLP, complements the services offered by the Debtors' other restructuring professionals.

27. The Debtors respectfully submit that the terms and conditions of EY LLP's retention as described herein, including the proposed compensation and indemnification terms, are reasonable and in keeping with the terms and conditions typical for engagements of this size and character.  Since the Debtors will require substantial assistance with the reorganization process, it is reasonable for the Debtors to seek to retain and employ EY LLP to serve as their financial advisor on the terms and conditions set forth herein.

28. The Debtors further request approval of EY LLP's retention effective as of the Petition Date.  The Debtors needed EY LLP to continue its work on the Petition Date and immediately thereafter to respond to urgent matters including, but not limited to, assisting as required with a variety of issues arising and expected to arise as a result of the chapter 11 filing.  This has not resulted, and will not result, in any prejudice to the administration of the Debtors' estates, their creditors, or any party in interest.  Accordingly, the Debtors respectfully submit that approving EY LLP's retention effective as of the Petition Date is appropriate and warranted.

29. Accordingly, the Debtors respectfully request that the Court enter an order appointing EY LLP as the Debtors' financial advisor pursuant to sections 327(a), 330, and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## NOTICE

30. Notice of this Application will be provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Stalking Horse Bidder, prepetition lenders and DIP lenders; (iii) counsel to the Official Committee of Unsecured Creditors; and (iv) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request entry of the Proposed Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 29, 2023

*/s/ John Faieta*
Name: John Faieta
Title: Chief Financial Officer