# **EXHIBIT A**

## **Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |

## ORDER AUTHORIZING DEBTORS TO RETAIN AND
## EMPLOY ERNST & YOUNG LLP AS FINANCIAL ADVISOR
## TO THE DEBTORS EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of the Debtors for entry of an order (i) authorizing the Debtors to retain and employ Ernst & Young LLP ("EY LLP") as their financial advisor, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Letters and (ii) granting related relief, all as more fully set forth in the Application; and this Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Application and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided under the circumstances, and it appearing that no other or further notice need be provided; and upon the Innes Declaration; and this Court having determined that the legal and factual bases set forth in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Application.

the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Application is granted as set forth herein.

2.      The Debtors are authorized to retain and employ EY LLP as their financial advisor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-1, effective as of the Petition Date, on the terms and conditions set forth in the Engagement Letters, as modified by this Order.

3.      EY LLP is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

4.      The terms of the Engagement Letters are reasonable terms and conditions of employment and are approved in all respects except as limited or modified herein.

5.      EY LLP shall use reasonable efforts to avoid any unnecessary duplication of services provided by any of the Debtors' other retained professionals in the Chapter 11 Cases.

6.      To the extent the Debtors and EY LLP enter into any additional engagement letters or statements of work, the Debtors will file such engagement letters or statements of work with the Court and serve such engagement letters or statements of work upon the U.S. Trustee.  If the U.S. Trustee objects to the additional services to be provided by EY LLP within 14 days of such new engagement letters or statements of work being served, the Debtors will promptly schedule a hearing before the Court.  To the extent no related timely objections are filed, such additional engagement letters or statements of work shall be deemed approved pursuant to this Order.  All additional services will be subject to the provisions of this Order.

7.        Except to the extent set forth herein, the terms of the Engagement Letters, including, without limitation, the Indemnification Provisions set forth therein, are approved, as modified herein.

8.        EY LLP shall file a final fee application for allowance of compensation for services rendered and reimbursement of expenses incurred (including, without limitation, the reasonable fees, disbursements and other charges of EY LLP's counsel (which counsel shall not be required to be retained pursuant to section 327 of the Bankruptcy Code or otherwise)) in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable orders of this Court, and the U.S. Trustee Guidelines; *provided*, that in the event that EY LLP seeks reimbursement from the Debtors for attorneys' fees and expenses consistent with the terms of this Order, the invoices and supporting time records from such attorneys shall be included in EY LLP's own interim and final applications, and they shall be subject to the approval of the Court pursuant to sections 330 and 331 of the Bankruptcy Code.  Notwithstanding the foregoing, anything to the contrary in the Application or any of its attachments, or anything to the contrary in the Engagement Letters, EY LLP will not seek reimbursement of any fees incurred defending any of EY LLP's fee applications in the Chapter 11 Cases.

9.        The Indemnification Provisions set forth in the Engagement Letters are approved, subject during the pendency of the Chapter 11 Cases to the following:

- EY LLP shall not be entitled to indemnification, contribution, or reimbursement of expenses pursuant to the Engagement Letters unless such indemnification, contribution, or reimbursement of expenses are approved by the Court;

- notwithstanding any provision of the Engagement Letters to the contrary, the Debtors shall have no obligation to indemnify or provide contribution or reimbursement of expenses to EY LLP for any claim or expense that is either (a) judicially determined (the determination having become final) to have arisen from EY LLP's gross negligence, willful misconduct, bad faith, self-dealing, or

breach of fiduciary duty (if any); (b) for a contractual dispute in which the Debtors allege the breach of EY LLP's contractual obligations, unless the Court determines that indemnification or reimbursement of expenses would be permissible pursuant to *In re United Artists Theatre Co., et al.*, 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination as to the exclusions set forth at (a) or (b) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which EY LLP should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letters as modified by the Proposed Order; and

- if, before the earlier of (a) the entry of an ordering confirming a chapter 11 plan in the Chapter 11 Cases (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing the Chapter 11 Cases, EY LLP believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letters, as modified by the Proposed Order, including without limitation advancement of defense costs, EY LLP must file an application therefor in this Court, and the Debtors may not pay any such amounts to EY LLP before the entry of an order by this Court approving such payment.  This subparagraph is intended only to specify the period of time during which the Court shall have jurisdiction over any request by EY LLP for indemnification, contribution, or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify.

10.     Notwithstanding anything in the Engagement Letters to the contrary, EY LLP shall apply any remaining amount of its prepetition Retainer as a credit toward postpetition fees and expenses after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to EY LLP.

11.     In the event of any inconsistency between the Engagement Letters, the Application, and this Order, the terms of this Order shall govern.

12.     Notice of the Application is adequate under Bankruptcy Rule 6004(a).

13.     The Debtors are authorized to take all action necessary to effectuate the relief granted in this Order.

14.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

**Exhibit B**

**Innes Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF PHILIP J. INNES IN SUPPORT OF DEBTORS' APPLICATION
FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND
EMPLOYMENT OF ERNST & YOUNG LLP AS FINANCIAL
ADVISOR EFFECTIVE AS OF THE PETITION DATE**

I, Philip J. Innes, hereby declare pursuant to Rule 2014(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") as follows:

1.      I am an Executive Director of Ernst & Young U.S. LLP ("EY US LLP").  I provide

this Declaration on behalf of Ernst & Young LLP ("EY LLP") in support of the application

(the "Application") of the above-captioned debtors (the "Debtors") to retain EY LLP as their

Financial Advisor effective as of December 8, 2023 (the "Petition Date"), pursuant to the terms

and conditions set forth in the agreements between the Debtors and EY LLP attached hereto as

**Exhibit A** (the "Engagement Letters").[2]

2.      The facts set forth in this Declaration are based upon my personal knowledge, upon

information and belief, and upon client matter records kept in the ordinary course of business that

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]     Capitalized terms used but otherwise not defined herein shall have the meanings ascribed to such terms in the Engagement Letters.

31104045.1

were reviewed by me or professionals of EY LLP and EY US LLP (as defined below) or employees of other member firms of EYGL (as defined below) under my supervision and direction.

3.      As set forth in further detail in the Engagement Letters, EY LLP has agreed to provide certain restructuring and financial advisory services[3] (the "Services") to the Debtors in connection with these chapter 11 proceedings.  A description of each of the Services is summarized below and fully described in the Engagement Letters:[4]  Specifically, EY LLP will provide the following services (the "Services"):

- Jordan Fisher[5] to serve as Client's chief transformation advisor[6];

- Work with the Client Board of Directors to advise Client in their restructuring and transformation efforts on a daily basis;

- Advise Client in negotiations or communications with Client's key constituents;

- Assist Client in operating as a debtor in possession in a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as follows and as requested:

  a. Assist with bankruptcy planning, including but not limited to, advising on the preparation of motions, communication plans and cash management procedures;

  b. Assist with the development and revision of a cash flow forecasting tool that incorporates detailed sources and uses of cash (13-week cash flow) and related budget to actual variance analysis;

  c. Assist with identifying risks associated with options and strategies developed by management to deal with critical vendors;

---

[3]   Under the agreement setting out the financial advisory services (Exhibits A-1 through A-2), EY LLP was retained by the Debtors' proposed counsel, Willkie Farr & Gallagher ("Willkie"), and is engaged by both the Debtors and Willkie to perform the financial advisory services under that agreement.

[4]   The summaries of certain terms of the Engagement Letters herein are qualified in their entirety by reference to the provisions of the Engagement Letters themselves.  To the extent there is any discrepancy between the summaries contained in this Declaration and the terms of the Engagement Letters themselves, the terms of the Engagement Letters shall control.

[5]   Jordan Fisher is a Managing Director of EY Turnaround Management Services LLC ("EY TMS").  EY-TMS is a controlled firm of EY US LLP.  Jordan Fisher is the only EY TMS employee who will be working on this engagement.

[6]   EY LLP will not act as an officer of the Client.  The Client shall maintain all management and decision-making responsibilities.

d.  Assist with analysis of potential 503(b)(9) administrative claims (goods supplied in the 20-day period prior to the bankruptcy filing) and reclamation claims;

e.  Assist with analysis of executory contracts and associated impact of rejection (cure claim analysis and classification);

f.  Assist with the development and preparation of the plan of reorganization or liquidation and disclosure statement (hypothetical liquidation analysis, recovery ranges, and other financial information and disclosures as required);

g.  Assist management in the preparation of financial-related disclosures required by the court;

h.  Assist in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which court approval is sought;

i.  Attend meetings and support discussions with third-party stakeholders, including creditors, vendors, employee benefit providers, potential investors, banks, and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the United States Trustee, regulators, other government officials, and other parties in interest and professionals hired by same, as requested;

j.  Assist with claims analysis and resolution process;

k.  Assist with facilitating document production for diligence requests, as needed;

l.  Report to management and/or Board of Directors on the status of the above activities; and,

m.  Additional assistance and advice on the bankruptcy process, as needed;

- Review and assess assumptions related to management's cash forecast and liquidity outlook;

- Review and assess management's existing expense reduction efforts and plans;

- Advise on strategic alternatives and opportunities, including:

  o  Growth considerations,

  o  Cost reductions,

  o  Capital and transactions, and

  o  Turnaround and restructuring alternatives;

- Assess and advise on the feasibility and prioritization of alternatives and opportunities;

- Review and assess management's plan and the associated financial impacts;

- Investigate accounting transactions identified by Debtor;

- Provide such other services as may be requested by the Client Board of Directors and agreed upon by Client and EY LLP.

### EY LLP's Disinterestedness

4.      Based on the connections check process that is described herein, to the best of my knowledge, information and belief, EY LLP (a) does not hold or represent an interest adverse to the Debtors' estates, and (b) is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as required under section 327(a) of the Bankruptcy Code.  Moreover, to the best of my knowledge, information and belief, EY LLP's retention is not prohibited or restricted by Bankruptcy Rule 5002.  Accordingly, I believe that EY LLP is eligible for retention by the Debtors under Section 327(a) of the Bankruptcy Code.

5.      EY LLP received advance retainer payments from the Debtors prior to the Petition Date in the total amount of approximately $847,132.00 (the "Retainer").  As of the Petition Date, the balance of the Retainer was approximately $133,618.50.  EY LLP shall apply the remaining balance of the Retainer toward post-petition fees and expense reimbursements that the Debtors are authorized to pay to EY LLP during these chapter 11 cases.

6.      During the ninety days before the Petition Date, the Debtors paid approximately $1,464,841.35 to EY LLP, of which $847,132.00 constituted the Retainer.

7.      As of the Petition Date, EY LLP was not owed any money by the Debtors in respect of services provided by EY LLP prior to the Petition Date.

31104045.1

4

**Professional Compensation and Reimbursement of Expenses**

8.      EY LLP intends to charge the Debtors fees for the Services, as set forth in the

Engagement Letters.  The current hourly rates, by level of professional are as follows:

| Title / Rank | Hourly Rate |
| --- | --- |
| Partner/Principal | $990 to $1,200 |
| Managing Director | $975 to $1,075 |
| Senior Director | $850 to $975 |
| Director | $695 to $850 |
| Consultant | $525 to $695 |
| Associate/Staff | $295 to $465 |

9.      EY LLP's fees are exclusive of taxes or similar charges, as well as customs, duties

or tariffs imposed in respect of the Services, all of which the Debtors shall pay (other than taxes

imposed on EY LLP's income generally).

10.      In addition to the fees set forth above, the Debtors shall reimburse EY LLP for any

direct expenses incurred in connection with EY LLP's retention in these cases and the performance

of the Services set forth in the Engagement Letters, including all taxes, including value-added

taxes, sales taxes, and other indirect taxes.  EY LLP's direct expenses shall include, but not be

limited to, reasonable and customary out-of-pocket expenses for items such as travel, meals,

accommodations and other expenses (including any fees or reasonable expenses of EY LLP's legal

counsel) related to the Services.

11.      If EY LLP is requested or authorized by the Debtors, or is required by government

regulation, subpoena or other legal process, to produce its documents or personnel as witnesses

with respect to the Services or the Engagement Letters, the Debtors would, so long as EY LLP is

not a party to the proceeding in which the information is sought, reimburse EY LLP for its

professional time and expenses, as well as the fees and expenses of EY LLP's counsel, incurred in

responding to such requests.

12.     EY LLP may receive rebates in connection with certain purchases, which are used to reduce charges that EY LLP would otherwise pass onto its clients.

**Certain Other Terms of the Engagement Letters**

13.     EY LLP's provision of Services to the Debtors is contingent upon this Court's approval of each term and condition set forth in the Engagement Letters.

14.     The Engagement Letters may be terminated by EY LLP or the Debtors in accordance with their terms.  The Debtors or EY LLP may terminate the Engagement Letters at any time in writing, but in any event the Engagement Letters will terminate upon the effective date of the Debtors' confirmed plan of reorganization, or the liquidation of the Debtors' assets under chapter 11 or 7 of title 11 of the United States Code (the "Bankruptcy Code"), or otherwise. Notwithstanding such termination, however, the Debtors' estates will remain obligated to pay all accrued fees and expenses as of the effective date of such termination.  Moreover, certain other terms of the Engagement Letters will continue (either indefinitely or for a specified period of time) following termination.

15.     Copies of the Engagement Letters are submitted with this Declaration for approval.[7] EY LLP's provision of Services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters.  Included among the terms and conditions set forth in the Engagement Letters is language substantially similar to the following:

> Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Client or its subsidiaries or of Ernst & Young) shall be brought in the Bankruptcy Court or the applicable District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the

---

[7]     To the extent that this Declaration and the terms of the Engagement Letters are inconsistent, the terms of the Engagement Letters shall control.

jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits.  The parties to this Agreement, and any all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made.  If the Bankruptcy Court or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in the Appendix 1 to this Agreement.  Judgment on any arbitration award may be entered in any court having proper jurisdiction.  The foregoing is binding upon the Client, Ernst & Young and any all successors and assigns thereof.

### Ernst & Young Global Limited

16.     The Ernst & Young global network comprises independent professional services practices conducted by separate legal entities throughout the world.  Such legal entities are members of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital.  The EYGL member firms have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities.

17.     The particular firm that the Debtors seek to retain in these chapter 11 cases, EY LLP, is a member firm of EYGL in the United States.  EY LLP does not have a parent entity, but rather is 100% owned by its partners.  EY LLP engages in the practice of public accountancy and provides accounting and other professional services.  All partners of EY LLP are Certified Public Accountants ("CPAs").

18.     In addition, EY US LLP, the owners of which are EY LLP CPA partners and non-CPA principals, is another member firm of EYGL in the United States.  EY US LLP provides infrastructure and support services to EY LLP, including the services of CPA and non-CPA

personnel.  In particular, EY LLP uses EY US LLP personnel in providing services to EY LLP's

clients.  Such EY US LLP personnel continue to be employed by EY US LLP, but work under EY

LLP's supervision in EY LLP engagements.

### Disclosure of Connections

19.     In connection with EY LLP's proposed retention by the Debtors, Debtors' counsel

provided a list of names of parties in interest in these cases (the "PIIL").  The specific names that

were set forth on the PIIL that EY LLP received from the Debtors' counsel are referred to herein

as the "Parties in Interest."

20.     EY LLP has access to a computer database (the "Database") that contains

information about actual client engagements and potential engagement activity of all of the

member firms of EYGL.  The Database also includes the names of other parties that the

professionals on the relevant engagement team have identified as also being involved in each

engagement (e.g., adverse parties and co-clients).  Thus, the Database indicates whether any

Debtor entity is involved in an engagement by an EYGL member firm, in which a Party in Interest

is a client.[8]

21.     EY LLP caused the names of the Parties in Interest to be run through the Database.

The disclosure schedule annexed hereto as **Exhibit B** lists the names of the Parties in Interest and

whether a client engagement has been initiated in the Database during the last three years by EY

LLP or any other EYGL member firm.

---

[8]     The information in the Database is populated by the professionals who are providing services under each
engagement.  Therefore, the information in the Database may not be 100% correct with respect to all engagements,
as human errors may occur.  Furthermore, financial information pertaining to engagement activity is the
proprietary and confidential information of each individual EYGL member firm.  EY LLP may not have the right
to access, or if accessed, disclose, such information relating to other EYGL member firms.

31104045.1

22.     To the best of my knowledge, information and belief based on the information set forth in the Database, none of the services rendered to Parties in Interest by EY LLP or any other EYGL member firm have been in connection with the Debtors or these chapter 11 cases, except as otherwise stated herein.

23.     Additionally, EY LLP conducted a search to determine whether EY US LLP (but not any other member firm of EYGL) has paid any person or entity that is specified on the PIIL as being a professional service provider that has been retained by a Party in Interest ("Party-Retained Professionals") to provide professional services during the last three years.  Based on its search of that database, EY LLP has determined that EY US LLP has paid the following Party-Retained Professionals during the last three years for professional services: BNP Paribas and King & Spalding LLP.

24.     EY LLP cannot prohibit any other EYGL member firm from accepting any client engagements, including in matters that may be adverse to the Debtors or their bankruptcy estates. Nevertheless, if EY LLP becomes aware of any such engagement by another EYGL member firm, EY LLP will file a supplemental declaration with the Court that contains the pertinent information that EY LLP is authorized to disclose.[9]  Moreover, if EY LLP becomes aware that another EYGL member firm represents a Party in Interest in a matter that is adverse to the Debtors or their bankruptcy estates, EY LLP will not permit anyone from such non-US EYGL member firm's engagement team who provides services to the Party in Interest in the adverse matter to be involved in the Services that EY LLP provides for the Debtors during these chapter 11 cases.

---

[9]     There may be situations in which EY LLP will be unable to disclose engagements of non-US EYGL member firms.  For example, laws or regulations applicable to a non-US EYGL member firm may preclude that firm from providing information regarding its client engagements to EY LLP, or applicable laws and regulations may prohibit disclosure.  If that issue arises, EY LLP will discuss it with the Office of the United States Trustee to try to reach a resolution.

25.     In the ordinary course of business, certain EYGL member firms ("EY Support Firms") provide various professional, administrative and back office support services for client-facing EYGL member firms throughout the world, as requested, coordinated and directed by such client-facing EYGL member firms (including EY LLP).  An EY Support Firm assisted EY LLP in performing EY LLP's connections check for these chapter 11 cases.  The costs paid by EY LLP to EY Support Firms for such connections check related services will not be billed to the Debtors.  EY Support Firms do not provide client-facing services.  Because the Database against which the names of the Parties in Interest was run for EY LLP's connections check contains client engagement information for all client-facing EYGL member firms, no EY Support Firm will run its own connections check or file a declaration in these chapter 11 cases.

26.     Before the Petition Date, EY Support Firms assisted EY LLP in providing services to the Debtors.

27.     Notwithstanding any use of EY Support Firms, EY LLP shall remain fully and solely responsible for any liabilities and obligations in respect of EY LLP's engagement and Services during these chapter 11 cases.

28.     During these chapter 11 cases, EY LLP may subcontract with other EYGL member firms in various countries, including India, Singapore and France (the "Subcontracting EYGL Member Firms"), to provide services to one or more Debtor entities during these chapter 11 cases.  The fees and expenses of the Subcontracting EYGL Member Firms relating to work performed for the Debtors will be included in EY LLP's fee applications in these chapter 11 cases.  EY LLP will distribute the applicable fees and expenses to the Subcontracting EYGL Member Firms once EY LLP's fee applications are approved by the Court and such fees and expenses are paid by the Debtors.  Because the Database against which the names of the Parties in Interest was run for EY

LLP's connections check contains client engagement information for all EYGL member firms, the Subcontracting EYGL Member Firms will not run their own connections checks or file declarations under Bankruptcy Rule 2014 in these chapter 11 cases.

29.     I am informed that during these chapter 11 cases, an EYGL member firm in India, is expected to be engaged by non-Debtor affiliates of the Debtors to perform certain services, and non-Debtor affiliates will pay such EYGL member firms directly for such services.

30.     EY LLP and other EYGL member firms may perform services for their clients that relate to the Debtors merely because such clients may be creditors or counterparties to transactions with the Debtors and whose assets and liabilities may thus be affected by the Debtors' status.  The disclosures set forth herein do not include specific identification of such services.

31.     As part of its practice, EY LLP appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be parties involved in these chapter 11 cases.

32.     EY LLP may currently be a party or participant in certain litigation matters involving Parties in Interest, which matters are unrelated to the Debtors or these chapter 11 cases.

33.     EY LLP does not directly hold any debt or equity securities of the Debtors.  In addition, none of the professionals who are currently on the engagement team that is providing Services to the Debtors directly hold any securities in the Debtors, but those engagement team members may hold interests in mutual funds or other investment vehicles that may own securities of the Debtors.

34.     It is possible that professionals of EY LLP and EY US LLP who are not currently on the engagement team that is providing Services to the Debtors may directly or indirectly hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own

securities of the Debtors.  Additionally, EY LLP and EY US LLP professionals, whether or not on the engagement team that is providing services to the Debtors, may have economic interests in or business associations with Parties in Interest.

35.     To the best of my knowledge, information and belief, neither the undersigned nor the professionals expected to assist the Debtors in these matters are connected to the Bankruptcy Judges in this District, the United States Trustee for the region in which these chapter 11 cases are pending, or any person employed in the Office of the United States Trustee in the city in which these chapter 11 cases are pending as identified in the PIIL.  Moreover, to the best of my knowledge, information and belief, EY LLP's retention is not prohibited by Bankruptcy Rule 5002.

36.     Despite the efforts described above to identify and disclose connections with Parties in Interest, because the Debtors are a large enterprise with numerous creditors and other relationships, EY LLP is unable to state with certainty that every client representation or other connection with Parties in Interest has been disclosed herein.  If EY LLP discovers additional information that requires disclosure, EY LLP will file supplemental disclosures with the Court.

37.     Certain Parties in Interest are lenders to EY LLP and/or EY US LLP: Citibank, N.A., HSBC Bank USA, N.A., JPMorgan Chase Bank, N.A., and Wells Fargo Bank, National Association participate in EY LLP's and EY US LLP's Revolving Credit Program; EY LLP and EY US LLP have borrowed long-term debt from American International Group UK Limited (AIG) and Metropolitan Life Insurance Company (MetLife).  In addition, Chubb Group of Insurance Company is a surety bond provider on behalf of EY LLP and EY US LLP.

38.     To the best of my knowledge, information and belief, prior to the Petition Date, EY LLP performed certain professional services for the Debtors, including financial restructuring, forensic and people advisory services.

39.    At the Debtors' request following the Petition Date and prior to Court approval of EY LLP's engagement in these cases, EY LLP may provide in its sole discretion certain of the Services described in the Engagement Letters.  Thus, EY LLP requests that its retention be authorized as of the Petition Date.

40.    To the extent required by Section 504 of the Bankruptcy Code, except as otherwise set forth herein (*e.g.*, if another EYGL member firm provides services to the Debtors under a subcontracting arrangement with EY LLP), EY LLP has not shared or agreed to share any of its compensation in connection with this matter with any other person, other than the engagement team and the partners, principals and employees of EY LLP and EY US LLP.

41.    EY LLP intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Court and the Engagement Letters, and pursuant to any additional procedures that may be established by the Court in these cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  December 29, 2023

_____
Philip J. Innes Executive Director
Ernst & Young U.S. LLP

**Exhibit A**

**Engagement Letters**

Willkie Farr & Gallagher LLP                                December 8, 2023
787 Seventh Avenue
New York, NY 10019-6099

Ladies and Gentlemen:

Thank you for choosing Ernst & Young LLP ("EY") to perform professional services (the "Services") for Willkie Farr & Gallagher LLP ("Counsel") as counsel to its client Near Intelligence, Inc. and each of its direct and indirect subsidiaries (collectively, "Client").

The Statement of Work attached hereto as Appendix 1 (the "Statement of Work" or "SOW") describes the particular Services that EY will perform in this engagement (the "Services"), as well as any advice, presentations, or filings to be made, EY related fees and any other arrangements for this engagement. All of the Services will be subject to the terms and conditions of this letter and appendices, including the General Terms and Conditions attached hereto as Appendix 2, the Dispute Resolution Procedures of Appendix 3 and the Statement of Work (collectively, this "Agreement"). Additionally, although EY has made no independent inquiry or determination with respect thereto, EY acknowledges the Counsel's and Client's intent that the Services and Deliverables, or portions thereof, are or may be protected from disclosure by the attorney-client privilege, work product protection, or both. Accordingly, EY shall treat EY's communications, work product and documentation (including Deliverables) arising out of or relating to the Services in a manner consistent with the maintenance of any such privilege or protection, subject to EY's obligations under applicable law or professional requirements. Notwithstanding the foregoing, nothing in this Agreement will require EY to return, discard or destroy documents in contravention of EY's document retention policy, applicable law or professional requirements.

Please sign this letter in the space provided below to indicate your agreement with these arrangements and return it at your earliest convenience. If you have any questions about any of these materials, please do not hesitate to contact Jordan Fisher so that EY can address any issues you identify before EY begins to provide any Services.

Very truly yours,

Ernst & Young LLP


AGREED:


WILLKIE FARR & GALLAGHER LLP          Near Intelligence, Inc.

By: _____          By: _____
Rachel C. Strickland                   Paul Gross
Partner                                General Counsel

**Appendix 1**

**Statement of Work**

This Statement of Work, dated December 8, 2023 (this "SOW"), is made by Ernst & Young LLP ("EY") and Willkie Farr & Gallagher LLP ("Counsel") as counsel to its client Near Intelligence, Inc. ("Client"), pursuant to the Agreement, dated December 8, 2023 (the "Agreement"), between EY and Counsel and Client, which was executed in connection with the Client filing a petition under Chapter 11 of the United States Bankruptcy Code on or about December 8, 2023 with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and describes certain services that EY will perform for Counsel during the Client's Chapter 11 proceedings. This SOW shall be effective as of the date of the Client's filing a Chapter 11 petition with the Bankruptcy Court.

This SOW incorporates the Agreement by reference to form a contract. Capitalized terms used, but not otherwise defined, in this SOW shall have the meanings given to them in the Agreement.

**Scope of services**

EY will provide the following services to Counsel in connection with Counsel's advice to Client regarding Client's proposed assessment of strategic and restructuring alternatives of the business (the "Matter"). Under Counsel's direction, EY will review the facts of the Matter, and consult with Counsel where Counsel requires EY's assistance.

Specifically, EY, under Counsel's direction, will provide the following services (the "Services"):

- Jordan Fisher to serve as Client's chief transformation advisor[1];
- Work with the Client Board of Directors to advise Client in their restructuring and transformation efforts on a daily basis;
- Advise Client in negotiations or communications with Client's key constituents;
- Assist Client in operating as a debtor in possession in a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as follows and as requested:
    a. Assist with bankruptcy planning, including but not limited to, advising on the preparation of motions, communication plans and cash management procedures;

    b. Assist with the development and revision of a cash flow forecasting tool that incorporates detailed sources and uses of cash (13-week cash flow) and related budget to actual variance analysis;

    c. Assist with identifying risks associated with options and strategies developed by management to deal with critical vendors;

    d. Assist with analysis of potential 503(b)(9) administrative claims (goods supplied in the 20-day period prior to the bankruptcy filing) and reclamation claims;

---

[1] EY will not act as an officer of the Client, the Client shall maintain all management and decision-making responsibilities.

e. Assist with analysis of executory contracts and associated impact of rejection (cure claim analysis and classification);

f. Assist with the development and preparation of the plan of reorganization or liquidation and disclosure statement (hypothetical liquidation analysis, recovery ranges, and other financial information and disclosures as required);

g. Assist management in the preparation of financial-related disclosures required by the court;

h. Assist in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which court approval is sought;

i. Attend meetings and support discussions with third-party stakeholders, including creditors, vendors, employee benefit providers, potential investors, banks, and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the United States Trustee, regulators, other government officials, and other parties in interest and professionals hired by same, as requested;

j. Assist with claims analysis and resolution process;

k. Assist with facilitating document production for diligence requests, as needed;

l. Report to management and/or Board of Directors on the status of the above activities; and,

m. Additional assistance and advice on the bankruptcy process, as needed;

- Review and assess assumptions related to management's cash forecast and liquidity outlook;
- Review and assess management's existing expense reduction efforts and plans;
- Advise on strategic alternatives and opportunities, including:
  - o Growth considerations,
  - o Cost reductions,
  - o Capital and transactions, and
  - o Turnaround and restructuring alternatives;
- Assess and advise on the feasibility and prioritization of alternatives and opportunities;
- Review and assess management's plan and the associated financial impacts;
- Provide such other services as may be requested by the Client Board of Directors and agreed upon by Client and EY.

**Limitations on scope**

Counsel has retained EY to act solely as an advisor and not in any fiduciary or agency capacity, for Client, any other entity, or on Client's behalf.

EY will not, in connection with the performance of the Services or otherwise, (i) act as a broker for the sale of any securities, (ii) solicit any potential buyer or seller (including Client) to engage in any transaction, or (iii) act as a negotiator of a transaction.

**Other provisions**

Counsel and Client will not, and Counsel and Client will not permit others to, quote or refer to any Reports, any portion, summary or abstract thereof, or to EY or any other EY Firm, in any document filed or distributed in connection with (i) a purchase or sale of securities to which United States or state securities laws ("Securities Laws") are applicable, or (ii) periodic reporting obligations under Securities Laws. Counsel and Client will not contend that any provisions of Securities Laws could invalidate any provision of this Agreement.

Client assumes full responsibility for any financial statement and tax reporting issues relating to Client's business or assets.

Where EY's written consent under the Agreement is required for Counsel or Client to disclose to a third party any of EY's Reports (other than Tax Advice), EY will also require that third party to execute a non-reliance and release letter acceptable to EY in form and substance.

Counsel shall assign a qualified person to oversee the Services. Counsel and Client are responsible for all management decisions relating to the Services and for determining whether the Services are appropriate for its purposes.

Counsel or Client, as applicable, shall notify EY promptly in writing upon becoming aware of (A) changes in the status of the Matter or any suit in connection with which the Services are provided, or (B) objections or issues with respect to the performance of the Services.

EY cannot and does not provide any assurance that EY's work and findings will either support or contradict any particular position. Counsel and Client each agree that, because the Services are limited in nature and scope, they cannot be relied upon to discover all documents and other information, or provide all analyses, that may be important to Counsel, Client or any proceeding.

If the performance of the Services is challenged (i) on the basis of an alleged conflict of interest or alleged violation of independence requirements, including the requirements of the Sarbanes-Oxley Act of 2002 and the regulations promulgated thereunder; or (ii) by motions to prohibit or restrict EY's testimony, Counsel will promptly notify EY, and EY may engage EY's own legal counsel to contest any such challenge. In the case of item (ii) above, Client shall pay all fees, including reasonable attorneys' fees, expenses and costs, EY incurs in connection with any such motion.

The Services are advisory in nature. None of the Services or any Deliverables will constitute any legal opinion or legal advice.

Notwithstanding anything to the contrary in the Agreement or this SOW, EY does not assume any responsibility for any third-party products, programs or services selected by Counsel or Client, their performance or compliance with Client's specifications or otherwise.

EY and other EY Firms may render professional services to other clients (including a potential buyer of the Business or any of Client's business or assets), which services may include, without limitation, services related to, or in connection with, Client proposed restructuring, the Business or otherwise. Counsel and Client agree that any EY Firm may render services to such other clients; provided, that except with Counsel and Client's prior consent: (a) no member of the EY team performing Services under this SOW (the "EY Team") is part of any other EY team serving a buyer in connection with the proposed transaction or restructuring contemplated by this SOW and involving Client or the Business while Services under this SOW are being performed, and (b) the EY Team does not disclose to any other such team any confidential information relating to Client or the Business (except as required by applicable law, regulation or professional obligation). Where and to the extent required by applicable professional standards, EY will ask Counsel and Client specifically to confirm that it consents to EY's performance of such services for such buyer.

Client's ability to achieve any business plan, estimates of future cash flow, and/or any restructuring plan depends upon a variety of factors, including, without limitation, (a) future market conditions for Client's products, (b) future capital market conditions, (c) the cost and availability of financing, (d) the ability of Client's management to implement Client's business plan successfully, (e) Client's ability to retain and attract key management personnel, (f) Client's reputation among Client's customers and suppliers, and (g) the cost and availability of materials and services. EY makes no representation or warranty, and assumes no responsibility with respect to any of these factors or with respect to Client's estimated cash flows, fair values or business plans or the assumptions underlying any thereof. Client assumes full responsibility for all such assumptions, as well as for their reasonableness, and for the implementation and ultimate achievability of any of Client's business plans, strategies, or estimates.

EY is not the responsible party for any prospective financial information (PFI) in the Deliverables. EY did not apply any procedures to the PFI in accordance with attestation standards established by the AICPA. EY has not provided any opinion, conclusion, or any type of assurance about specific assumptions or components of the PFI or on the PFI as a whole.

EY may raise factual findings and recommendations about specific assumptions and components of the PFI herein, where EY had sufficient evidence to provide a reasonable basis for them. There will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material. EY takes no responsibility for the achievement of projected results.

EY and other EY Firms may retain and use Client Information for benchmarking, analytics, research and development, thought leadership and related purposes, and to enhance their services, provided that any use does not externally identify, or make reference to Client. In all such matters, EY and other EY Firms will comply with applicable law and professional obligations.

Client shall not, while EY is performing the Services hereunder and for a period of 12 months after the Services are completed, solicit for employment, or hire, any EY personnel involved in the performance of the Services, provided, that Client may generally advertise available positions and hire EY personnel

who either respond to such advertisements or who come to Client on their own initiative without direct or indirect encouragement from Client.

**Contacts**

Counsel has identified Rachel Strickland and Andrew Mordkoff as primary contacts for this engagement. Client has identified Paul Gross as Client's contact with whom EY should communicate about these Services. Client's contact at EY for these Services will be Jordan Fisher.

**Fees and expenses**

The Services described above will be delivered for this Statement of Work for fees based on EY's standard hourly rates outlined below, plus any reasonable, documented and customary out-of-pocket expenses. For reference, the hourly rate for Jordan Fisher will be $975.

| Title / Rank | Hourly Rate |
|---|---|
| Partner/Principal | $990 to $1,200 |
| Managing Director | $975 to $1,075 |
| Senior Director | $850 to $975 |
| Director | $695 to $850 |
| Consultant | $525 to $695 |
| Associate/Staff | $295 to $465 |

These rates are subject to adjustment annually; provided that the Client shall have received not less than 60 days' prior written notice of any increase to such fees.

Client shall reimburse EY for reasonable and documented expenses incurred in connection with the performance of the Services, including reasonable and customary out-of-pocket expenses such as travel, meals accommodations and other expenses specifically related to this engagement, as well as costs of purchasing data and proprietary technology costs; provided that EY shall provide Client with an invoice or other similar documentation with reasonable detail of such expenses. EY may receive rebates in connection with certain purchases, which are used to reduce charges that EY would otherwise pass on to its clients.

The Client shall also pay all applicable taxes incurred in connection with the delivery of the Services (except for taxes imposed on EY's income).

Payment is due upon receipt of EY's invoice for these amounts.

Client shall also pay all applicable taxes (including VAT and others imposed) incurred in connection with the delivery of the Services or the Deliverables (except for taxes imposed on EY's income). EY reserves the right to suspend the Services if any invoices are more than 60 days overdue.

Client's obligation to pay EY's fees and expenses is not contingent upon the results of the Services or the outcome of the Matter.

For the avoidance of doubt, Counsel shall in no event be obligated to pay any compensation, expense reimbursement, indemnification, or any other amount payable pursuant to this SOW or in connection with EY's services hereunder. EY is being retained by Counsel to provide advice to assist Counsel in its provision of legal services to the Client and will report to and take direction from Counsel, notwithstanding that EY's fees and expenses will be paid by the Client. EY and the Client each acknowledge that Counsel has requested that EY bill the Client directly and that the Client pay EY directly for any amounts owed hereunder, and both EY and the Client have agreed to such request.

In witness whereof, the parties have executed this SOW as of the date set forth above.

Ernst & Young LLP

By: _____

    Gaurav Malhotra
    Principal

WILLKIE FARR & GALLAGHER LLP

By: _____

Name:  Rachel C. Strickland
Title:  Partner

Near Intelligence, Inc.

By: _____

    Paul Gross
    General Counsel

## Appendix 2

## General Terms and Conditions

**Structure**

1.  This Agreement sets out the contractual structure for the provision of services ("Services") by EY to Counsel subsequent to Client filing a petition under Chapter 11 ("Chapter 11") of the United States Bankruptcy Code ("Bankruptcy Code") on or about December 8, 2023 with the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). EY's performance of Services is contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms and conditions that are set forth in this Agreement. This Agreement shall be effective as of December 8, 2023 (the "Effective Date"). EY will perform the Services described in separate Statements of Work entered into between the parties that incorporate the terms of this Agreement as well as the terms of any applicable Module(s) to form a separate and independent contract ("Contract"), which shall be subject to approval of the Bankruptcy Court.

2.  For the purposes of any Contract, (a) "Client" in such Contract (including in this Agreement and the applicable Module(s) as incorporated into such Contract) means the Client Entity that executes the applicable Statement of Work, and (b) "party" means either EY or such Client Entity.

3.  If there is any inconsistency between provisions in different parts of a Contract, those parts shall have precedence as follows (unless expressly agreed otherwise): (a) the applicable Statement of Work and any annexes thereto, (b) any applicable Module, (c) this Agreement, and (d) other annexes to a Contract.

**Definitions**

4.  The following terms are defined as specified below:

    (a)  "AICPA" means the American Institute of Certified Public Accountants.

    (b)  "Client Affiliate" means an entity that controls, is controlled by, or is under common control with, Client.

    (c)  "Client Entity" means Client or a Client Affiliate.

    (d)  "Client Information" means information obtained by EY from Client or Counsel or from a third party on Client's behalf.

    (e)  "Deliverables" means any advice, communications, information, technology or other content that EY provides under this Agreement.

    (f)  "EY Firm" means a member of the EY network and any entity operating under a common branding arrangement with a member of the EY network.

    (g)  "EY Persons" means EY's or any other EY Firm's subcontractors, members, shareholders, directors, officers, partners, principals or employees.

    (h)  "Internal Support Services" means internal support services utilized by EY, including but not limited to: (a) administrative support, (b) accounting and finance support, (c) network coordination, (d) IT functions including business applications, system management, and data security, storage and recovery, and (e) conflict checking, risk management and quality reviews.

    (i)  "Module" means a module, supplemental to this Agreement, entered into by the parties and containing further terms applicable to a particular type of Services.

    (j)  "Personal Data" means Client Information relating to identified or identifiable natural persons or that is otherwise considered to be "personal data," "personal information" or similar term under applicable data protection laws.

    (k)  "Report" means a Deliverable (or any portion of a Deliverable) issued on EY letterhead or under the EY brand or otherwise identifiable as being prepared by or in association with EY, any other EY Firm or EY Person.

(l) "Statement of Work" means a document, incorporating this Agreement and any applicable Module, entered into by the parties describing particular Services that EY will perform.

(m) "Support Providers" means external service providers of EY and other EY Firms and their respective subcontractors.

(n) "Tax Advice" means tax matters, including tax advice, tax opinions, tax returns or the tax treatment or tax structure of any transaction to which the Services relate.

**Provision of the Services**

5.   EY will provide the Services using reasonable skill and care in accordance with applicable professional standards, including those established by the AICPA.

6.   Subject to Bankruptcy Court approval, EY may subcontract a portion of the Services to one or more EY Firms, as well as to other third parties, who may deal with Client directly. EY will remain solely responsible to Client for the performance of the Services. From time to time, non-CPA personnel may perform the Services.

7.   EY will act as an independent contractor and not as Counsel or Client's employee, agent or partner. Client and Counsel will remain solely responsible for management decisions relating to the Services and for determining whether the Services are appropriate for its purposes. Counsel and Client shall assign qualified personnel to oversee the Services, as well as the use and implementation of the Services and Deliverables.

8.   Client and Counsel agree to promptly provide to EY (or cause others to so provide) Client Information, resources and assistance (including access to records, systems, premises and people) that EY reasonably requires to perform the Services.

9.   Client Information will be accurate and complete in all material respects. EY will rely on Client Information and, unless EY expressly agrees otherwise in writing, EY will have no responsibility to verify it. The provision of Client Information (including Personal Data), resources and assistance to EY will be in accordance with applicable law and will not infringe any copyright or other third-party rights.

**Deliverables**

10.   All Deliverables are intended for Counsel's and Client's use in accordance with the Contract under which they are provided.

11.   Neither Counsel nor Client may rely on any draft Deliverable. EY shall not be required to update any final Deliverable as a result of circumstances of which EY becomes aware, or events occurring, after its delivery.

12.   Unless otherwise provided for in a Contract, neither Client nor Counsel may disclose a Report (or any portion or summary of a Report), or refer to EY or to any other EY Firm or EY Person in connection with the Services, except:

(a) to a Client Affiliate (subject to these disclosure restrictions);

(b) to Client's lawyers (subject to these disclosure restrictions), who may review it only in connection with advice relating to the Services;

(c) to Client's independent auditors (subject to these disclosure restrictions) who may review it only in connection with their audit;

(d) to the extent, and for the purposes, required by applicable law (and Client or Counsel, as applicable, will promptly notify EY of such legal requirement to the extent Client is permitted to do so);

(e) to other persons (with EY's prior written consent), who may use it only as specified in such consent; or

(f) to the extent it contains Tax Advice.

If Client or Counsel discloses a Report (or a portion thereof), neither Client nor Counsel shall alter, edit or modify it from the form provided by EY. Client or Counsel (as applicable) shall inform those to whom it discloses a Report (other than disclosure of Tax Advice to tax authorities) that they may not rely on it for any purpose without EY's prior

written consent. Subject to the foregoing, Client and Counsel are not prohibited by this Section 12 from using Deliverables that do not qualify as Reports in communication with third parties provided that: (i) there is no reference to, or communication of, EY's or any other EY Firm's involvement in the development of such Deliverables, and (ii) Client or Counsel (as applicable) assumes sole responsibility for such use and communication.

**Limitations**

13. As part of the parties' arrangements, the parties have mutually agreed to the following limitations of liability (which also apply to others for whom Services are provided under any Contract):

    (a) Neither party will be responsible, in contract or tort, under statute or otherwise, for any amount with respect to loss of profit, data or goodwill, or any other consequential, incidental, indirect, punitive or special damages in connection with claims arising out of a Contract or otherwise relating to the Services, whether or not the likelihood of such loss or damage was contemplated**.**

    (b) Client (and any others for whom Services are provided, including Counsel) may not recover from EY, in contract or tort, under statute or otherwise, aggregate damages in excess of the fees actually paid for the Services that directly caused the loss under the respective Contract during the twelve (12) months preceding the date of the event giving rise to the loss. This cap is an aggregate cap across all claims under such Contract prior to such date.

    (c) Client and/or Counsel (as applicable) shall make any claim relating to the Services or otherwise under a Contract no later than one (1) year after Client became aware (or ought reasonably to have become aware) of the facts giving rise to any alleged such claim and in any event, no later than two (2) years after the completion of the particular Services.

14. The limitations set out in Sections 13(b) and (c) above will not apply to losses or damages caused by EY's fraud, bad faith, gross negligence, or willful misconduct or to the extent prohibited by applicable law or professional regulations.

15. Client (and any others for whom Services are provided under a Contract, including Counsel) may not make a claim or bring proceedings relating to the Services or otherwise under a Contract against any other EY Firm or EY Person. Client or Counsel (as applicable) shall make any claim or bring proceedings only against EY.

**No Responsibility to Third Parties**

16. Unless specifically otherwise agreed with Client in writing, EY's responsibility for performance of the Services is to Counsel and Client alone. Should any Deliverable be disclosed, or otherwise made available, by or through Client or Counsel (or at Client's or Counsel's request) to a third party (including but not limited to permitted disclosures to third parties under Section 12), Client agrees to indemnify EY, as well as the other EY Firms and the EY Persons, against all claims by third parties, and resulting liabilities, losses, damages, costs and expenses (including reasonable external and internal legal costs) arising out of such disclosure.

**Intellectual Property Rights**

17. Each party retains its rights in its pre-existing intellectual property. Except as set out in the applicable Contract, any intellectual property developed by EY, and any working papers compiled in connection with the Services (but not Client Information contained in them), shall be the property of EY.

18. Client's and Counsel's right to use Deliverables under a Contract arises following payment for the Services.

**Confidentiality, Data Protection & Security**

19. Except as otherwise permitted by a Contract, neither party may disclose to third parties any information (other than Tax Advice) provided by or on behalf of the other that ought reasonably to be treated as confidential (including, in the case of EY, Client Information). Any party may, however, disclose such information to the extent that it:

    (a) is or becomes public other than through a breach of a Contract;

    (b) is subsequently received by the recipient from a third party who, to the recipient's knowledge, owes no obligation of confidentiality to the disclosing party with respect to that information;

    (c) was known to the recipient at the time of disclosure or is thereafter created independently;

    (d) is disclosed as necessary to enforce the recipient's rights under this Agreement; or

(e)  must be disclosed under applicable law, legal process or professional regulations.

20.  EY uses other EY Firms, EY Persons and Support Providers who may have access to Client Information in connection with delivery of Services as well as to provide Internal Support Services. EY shall be responsible for any use or disclosure of Client Information by other EY Firms, EY Persons or Support Providers to the same extent as if EY had engaged in the conduct itself.

21.  Client and Counsel agree that Client Information, including Personal Data, may be processed by EY, other EY Firms, EY Persons and their Support Providers in various jurisdictions in which they operate (EY office locations are listed at www.ey.com). Client Information, including any Personal Data, will be processed in accordance with laws and professional regulations applicable to EY, and appropriate technical and organizational security measures designed to protect such information will be implemented. EY will also require any Support Provider that processes Personal Data on its behalf to provide at least the same level of protection for such Personal Data as is required by such legal and regulatory requirements. If Personal Data relating to a data subject in the UK, European Union or Switzerland (collectively, "European Personal Data") is required for EY to perform the Services, the parties agree to negotiate in good faith a data transfer addendum intended to validate the transfer of such European Personal Data by Client to EY prior to such transfer. Transfer of Personal Data among members of the EY network is subject to the EY Binding Corporate Rules Program available at www.ey.com/bcr. Further information about EY's processing of Personal Data is available at www.ey.com/privacy.

22.  To the extent permitted by applicable law, regulation or governmental directive, EY will notify Counsel and Client without undue delay in the event of loss, unauthorized disclosure or unauthorized or unlawful processing of Personal Data and provide Client with relevant information about the nature and extent of the event.

23.  In certain circumstances, individuals may have the right under applicable data protection law to access, correct, erase, port, restrict or object to the processing of their personal data. Such requests may be sent to privacy.office@ey.com. To the extent permitted by law, regulation or governmental directive, EY will notify Counsel and Client without undue delay upon receipt of any verifiable request from a data subject or supervisory authority relating to a Personal Data right.  If EY is required to provide Personal Data in response to such verifiable request, or to a request from Client, providing that data will be part of the Services and, to the extent permitted by applicable law, Client will be responsible for EY's reasonable charges incurred in doing so.

24.  As a professional services firm, EY is required to exercise its own judgment in determining the purposes and means of processing any Personal Data when providing the Services. Accordingly, unless otherwise specified in a Contract, when processing Personal Data subject to the General Data Protection Regulation or other applicable data protection law (including, without limitation, state data protection (e.g., the California Consumer Privacy Act)), EY acts as an independent controller (or similar status that determines the purposes and means of processing), and not as a processor under Counsel's or Client's control (or similar status acting on behalf of Counsel or Client) or as a joint controller with Client. For Services where EY acts as a processor processing Personal Data on Client's behalf, the parties will agree appropriate data processing terms in the applicable Statement of Work.

25.  EY and other EY Firms may retain and use Client Information for benchmarking, analytics, research and development, thought leadership and related purposes, and to enhance their services, provided that any use does not externally identify, or make reference to, Client. In all such matters, EY and other EY Firms will comply with applicable law and professional obligations.

26.  If Counsel or Client requires EY to access or use Client or third-party systems or devices, EY shall have no responsibility for the confidentiality, security or data protection controls of such systems or devices, or for their performance or compliance with Client requirements or applicable law.

27.  EY may provide Counsel or Client access to use certain data, software, designs, utilities, tools, models, systems and other methodologies and know-how that EY owns or licenses for the purpose of Counsel's or Client's receipt of the Services or as otherwise expressly agreed in writing by EY ("EY Tools"). Client shall be responsible for compliance by all Client personnel and third parties acting on Client's behalf with the terms applicable to the use of such EY Tools. As between EY and Client, EY (or another EY Firm) owns all right, title, interest, and all intellectual property rights in and to the EY Tools, including any enhancements, modifications, and derivative work thereof.

*License to EY Tools During the Statement of Work Term:* To the extent that EY provides Counsel or Client access to any EY Tools during the term of an applicable Statement of Work, EY hereby grants to Counsel or Client a nonexclusive, paid-up, internal license, during the term of the applicable Statement of Work, to use, execute, and

display the EY Tools, for the sole purpose of Counsel's or Client's receipt of the Services from EY under the applicable Statement of Work.

*License to EY Tools After the Statement of Work Term:* EY may allow Counsel or Client to use certain EY Tools, after the term of an applicable Statement of Work, for the sole purpose of Counsel's or Client's use and receipt of the benefit of the Services provided by EY under such Statement of Work. Any EY Tools that EY allows Client to use after the term of such Statement of Work will be identified in the Statement of Work as a "Leave Behind EY Tool." With respect to such an identified Leave Behind EY Tool, to the extent permitted by applicable law and professional regulations, EY hereby grants to Counsel and Client a nonexclusive, paid-up, internal license, to use, execute, and display the Leave Behind EY Tool, after the term of the Statement of Work, for the sole purpose of Counsel's or Client's use and receipt of the benefit of the Services provided by EY under the Statement of Work.

*EY Tools Disclaimers and Acknowledgments:* Counsel's or Client's use of any EY Tools may be subject to additional terms, which EY will provide to Counsel and Client in writing. Counsel and Client acknowledge that EY may at any time, modify, replace, direct Counsel and Client to discontinue use of any EY Tools, or otherwise revoke, limit or condition Client's access and right to use any EY Tools. ALL EY TOOLS ARE PROVIDED "AS IS" AND WITHOUT ANY WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF TITLE, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR ANY WARRANTY THAT THE OPERATION OF EY TOOLS WILL BE UNINTERRUPTED, ERROR FREE OR THAT EY TOOLS WILL BE OR REMAIN COMPATIBLE WITH ANY OF CLIENT'S HARDWARE OR SOFTWARE. IN NO EVENT SHALL EY BE LIABLE FOR LOSS OF OR DAMAGE TO CLIENT'S DATA RESULTING FROM THE CLIENT'S USE OF THE EY TOOLS. Counsel and Client shall not decompile, disassemble or otherwise reverse engineer the EY Tools, unless authorized by law or the relevant regulatory agency. Counsel and Client shall not sell, lease, assign or otherwise transfer any portion of the EY Tools.

**Compliance**

**28.**   In connection with the performance of its respective rights and obligations under a Contract, EY, Counsel and Client each will comply with all laws and regulations of any jurisdiction applicable to it from time to time concerning or relating to bribery or corruption, including, without limitation, the U.S. Foreign Corrupt Practices Act ("FCPA").

**Fees and Expenses Generally**

**29.**   Client shall be solely responsible for paying EY's professional fees and specific, reasonable, and documented expenses in connection with the Services as detailed in the applicable Contract. Client shall also reimburse EY for other reasonable and documented expenses incurred in performing the Services. EY's fees are exclusive of taxes or similar charges, as well as customs, duties or tariffs imposed in respect of the Services, all of which Client shall pay (other than taxes imposed on EY's income generally).

**30.**   Subject to Bankruptcy Court approval, if necessary, EY may charge additional professional fees if events beyond its control (including Client's acts or omissions) affect EY's ability to perform the Services as agreed in the applicable Contract, or if Client asks EY to perform additional tasks.

**31.**   If EY is required by applicable law, legal process or government action to produce information or personnel as witnesses with respect to the Services or a Contract, Client shall reimburse EY for any professional time and expenses (including reasonable and documented external and internal legal costs) incurred to respond to the request, unless EY is a party to the proceeding or the subject of the investigation.

**Force Majeure**

**32.**   Neither party shall be liable for breach of a Contract (other than payment obligations) caused by circumstances beyond such party's reasonable control.

**Term and Termination**

**33.**   A Contract applies to all Services associated with such Contract whenever performed after the date of Client's filling of a Chapter 11 petition (including before the date of the applicable Contract).

34. A Contract shall terminate on the completion of the Services associated with such Contract. This Agreement and/or any or all Contracts may be terminated at any time by Client, Counsel or EY, but in any event this Agreement including all Statements of Work will expire upon the effective date of Client's confirmed plan of reorganization, or liquidation of Client's assets under Chapter 11 or 7 of the Bankruptcy Code, or otherwise.

35. Client shall pay EY for all work-in-progress, Services already performed, and reasonable and documented expenses incurred by EY up to and including the effective date of the termination or expiration of a Contract, as well as any applicable termination fees set forth in the applicable Contract. Payment is due within thirty (30) days following the date of the invoice for these amounts or as quickly as the Bankruptcy Code, Bankruptcy Rules, Local Rules and any relevant orders of the Bankruptcy Court allow.

36. The term of this Agreement will expire five (5) years following the Effective Date (the "Term"), unless the parties mutually agree to renew or extend it, provided Client continue to operate under Chapter 11 bankruptcy protection. For clarity, this Agreement shall survive with respect to any Contract entered into during the Term, even if such Contract remains in effect beyond the Term.

37. The provisions of this Agreement, including Section 12 and Section 38 otherwise with respect to Deliverables and Reports, that give either party rights or obligations beyond its termination shall continue indefinitely following the termination of this Agreement or applicable Contract and shall survive completion of the Client's bankruptcy whether through a confirmed plan of reorganization under Chapter 11, liquidation of the Client's assets under Chapter 7 of the Bankruptcy Code, or otherwise.

**Governing Law and Dispute Resolution**

38. This Agreement, any Contract under this Agreement, and any non-contractual matters or obligations arising out of a Contract or the Services, shall be governed by, and construed in accordance with, the laws of the state of New York applicable to agreements made, and fully to be performed, therein by residents thereof. Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of Client or its subsidiaries or of EY) shall be brought in the Bankruptcy Court or the applicable district court (if such district court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the bankruptcy court, or the district court upon withdrawal of the reference, does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to nonbinding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures as set forth in Appendix 3 to these Terms and Conditions. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Counsel, Client, EY and any all successors and assigns thereof.

**United States Specific Terms**

39. The U.S. Department of Labor (DOL) regulations, at 20 CFR § 655.734(a)(1)(ii)(A), require the posting of notice of a Labor Condition Application (LCA) in instances where individuals holding certain visas (e.g., H-1B) will be working onsite. Where applicable, EY and the Client will work together to develop an appropriate notice to enable compliance with this requirement.

**Miscellaneous**

40. A Contract constitutes the entire agreement between the parties as to the Services and the other matters it covers, and supersedes all prior agreements, understandings and representations with respect thereto, including any previously agreed confidentiality agreements. Except as expressly provided otherwise herein, this Agreement does not modify the terms or provisions for other professional services executed prior to Client's filing of a Chapter 11 petition in the Bankruptcy Court.

41. Each party may execute this Agreement or a Contract, as well as any modifications to them, by electronic means, and each party may sign a different copy of the same document. Both parties must agree in writing to modify this Agreement or a Contract, subject to Bankruptcy approval, if necessary.

42. Each of Counsel and Client agree that EY and the other EY Firms may, subject to professional obligations, act for other clients, including Client's competitors.

43. Neither party shall assign any of its rights or obligations under this Agreement or a Contract in whole or in part without the prior written consent of the other party; provided, however, that EY may assign or novate any of its rights and obligations under this Agreement or a Contract in whole or in part to (i) any other EY Firm and/or (ii) any entity resulting from, or established as part of, a restructuring, sale or transfer of an EY Firm, in whole or in part, provided further that any such assignment or novation does not materially affect continuity of the Services. EY shall provide Counsel and Client with notice of any such assignment or novation.

44. If any provision of this Agreement or a Contract (in whole or part) is held to be illegal, invalid or otherwise unenforceable, the other provisions shall remain in full force and effect.

45. Counsel and Client acknowledges that the U.S. Securities and Exchange Commission regulations indicate that, where auditor independence is required, certain confidentiality restrictions related to tax structure may render the auditor to be deemed to be non-independent or may require specific tax disclosures. Accordingly, if and only to the extent that U.S. Securities and Exchange Commission auditor independence regulations apply to the relationship between Counsel, Client or any of Client's associated entities and any EY Firm, with respect to the tax treatment or tax structure of any transaction to which the Services relate, Client represents, to the best of its knowledge, as of the date of a Contract, that neither Counsel, Client nor any Client Affiliate has agreed, either orally or in writing, with any other advisor to restrict Counsel's or Client's ability to disclose to anyone such tax treatment or tax structure. Counsel and Client agree that the impact of any such agreement is its responsibility.

46. Counsel, EY and Client acknowledge that Client or a Client Affiliate (the "Local Client") may seek to enter into an agreement with another EY Firm (the "Local EY Firm") for the provision of services in another country (the "Local Services"). The parties agree that the Local Client and the Local EY Firm may enter into a local country agreement (the "Local Agreement") for Local Services that incorporates the terms and conditions of this Agreement, subject to any modifications they deem appropriate under local law, regulation, professional standard, or local custom and practice. For clarity, in such event, (i) the Local Agreement shall govern all Local Services; and (ii) neither the Local Client nor the Local EY Firm will be deemed to be parties to this Agreement in connection with the Local Services.

47. Client represents that Client Affiliates for whom Services are performed by EY in connection with a Contract shall be bound by the terms of such Contract.

48. Neither party may use or reference the other's name, logos or trademarks without its prior written consent, provided that EY, after obtaining written consent from Client, may use Client's name publicly to identify Client as a client in connection with specific Services or otherwise.

49. The limitations in Sections 13 and 15 and the provisions of Sections 16, 20, 22 and 37 are intended to benefit the other EY Firms and all EY Persons, who shall be entitled to enforce them.

50. By agreement to the provision of the Services, EY is not providing a guarantee to Client or Counsel that EY's performance of those services pursuant to the terms and conditions set forth in this Agreement will guarantee Client's successful reorganization under Chapter 11.

**Additional Provisions**

51. EY will provide the Services as described in the applicable Statement of Work to Counsel and Client, contingent upon the Bankruptcy Court's approval of EY's retention in accordance with the terms of this Agreement.

52. The Services may be modified from time to time by the parties mutual written agreement and approval of the Bankruptcy Court, if required.

53. Counsel and Client acknowledge and agree that, whether or not the Statement of Work has been approved by the Bankruptcy Court at the time any Deliverable is rendered, any such Deliverable rendered by EY prior to the delivery of its final Deliverable is preliminary in nature and cannot be relied upon for any purpose, including penalty protection.

54. Any activities not described in the applicable Statement of Work are not covered by the fees stated therein. These services will be considered outside the scope of such Statement of Work and are the responsibility of Counsel or Client to perform on a timely basis unless otherwise agreed by the parties in writing (in an amendment or a separate Statement of Work) and approved by the Bankruptcy Court.

55.   Each Statement of Work will identify the individuals who will lead the EY engagement team in providing the Services. If any of these individuals ceases to provide the Services to the Client pursuant to such Statement of Work, EY will so advise Counsel and Client and, if that person is replaced, provide Counsel and Client with the name of the professional's replacement.  Other staff, not identified therein, may be utilized as required to conduct EY's work in an efficient manner.

56.   EY will submit an itemized and detailed billing statement for each applicable Statement of Work, and EY will request payment of EY's fees and expenses, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules for the Bankruptcy Court and any relevant administrative orders. EY will submit EY's invoices as the work progresses and payment of them will be made upon receipt, or as quickly as the Bankruptcy Code, the Bankruptcy Rules, Local Rules and any relevant administrative orders allow.

57.   EY acknowledges that payment of EY's fees and expenses is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of EY and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications.

IN WITNESS WHEREOF, EY, Counsel and Client have each caused this Agreement to be signed and delivered by its duly authorized representative.

Ernst & Young LLP

By: _____
        Gaurav Malhotra
        Principal

WILLKIE FARR & GALLAGHER LLP

By: _____
Name:  Rachel C. Strickland
Title:  Partner

Near Intelligence, Inc.

By: _____
        Paul Gross
        General Counsel

**Appendix 3**

**Dispute Resolution Procedures**

**Mediation**

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties and must confirm in writing that the mediator is not, and will not become during the term of the mediation, an employee, partner, executive officer, director, of or beneficial owner with significant influence over any EY Firm audit client.

The mediator shall conduct the mediation as the mediator determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate, and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

**Arbitration**

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless the arbitrator has agreed in writing to these procedures and has confirmed in writing that the arbitrator is not, and will not become during the term of the arbitration, an employee, partner, executive officer, director, of or beneficial owner with significant influence over any EY Firm audit client.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort or to make an award or impose a remedy that (i) is inconsistent with the agreement to which these procedures are attached or any other agreement relevant to the dispute, or (ii) could not be made or imposed by a court deciding the matter in the same jurisdiction.  In deciding the dispute, the arbitration panel shall apply the limitations period that would be applied by a court deciding the matter in the same jurisdiction, and shall have no power to decide the dispute in any manner not consistent with such limitations period.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**Exhibit B**

**Names of Parties in Interest and whether a Client Engagement has been Initiated by EYGL Member Firms During the Last Three Years**

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 1 | Debtors and Non-Debtor Affiliates | KludeIn I Acquisition Corp. | X | |
| 2 | Debtors and Non-Debtor Affiliates | Near Americas Inc. | X | |
| 3 | Debtors and Non-Debtor Affiliates | Near Holdings Pte. Ltd. | X | |
| 4 | Debtors and Non-Debtor Affiliates | Near Intelligence Holdings Inc. | X | |
| 5 | Debtors and Non-Debtor Affiliates | Near Intelligence LLC | X | |
| 6 | Debtors and Non-Debtor Affiliates | Near Intelligence Pte. Ltd. | X | |
| 7 | Debtors and Non-Debtor Affiliates | Near Intelligence Pty. Ltd. | X | |
| 8 | Debtors and Non-Debtor Affiliates | Near Intelligence Pvt. Ltd. | X | |
| 9 | Debtors and Non-Debtor Affiliates | Near Intelligence SAS | X | |
| 10 | Debtors and Non-Debtor Affiliates | Near Intelligence, Inc. | X | |
| 11 | Debtors and Non-Debtor Affiliates | Near North America, Inc. | X | |
| 12 | Debtors and Non-Debtor Affiliates | Near Pte. Ltd. | X | |
| 13 | Debtors and Non-Debtor Affiliates | Paas Merger Sub 2 LLC | X | |
| 14 | Debtors and Non-Debtor Affiliates | UberMedia, Inc. | X | |
| 15 | Current and Former Directors & Officers | Andrea Chee Yuen Li | | X |
| 16 | Current and Former Directors & Officers | Anil Matthews | | X |
| 17 | Current and Former Directors & Officers | Gene Eubanks | | X |
| 18 | Current and Former Directors & Officers | Gladys Kong | | X |
| 19 | Current and Former Directors & Officers | Jay Angelo | | X |
| 20 | Current and Former Directors & Officers | John Faieta | | X |
| 21 | Current and Former Directors & Officers | Justin Joseph | | X |
| 22 | Current and Former Directors & Officers | Kathryn T. Petralia | | X |
| 23 | Current and Former Directors & Officers | Madhusudan Therani | | X |
| 24 | Current and Former Directors & Officers | Mark N. Greene | | X |
| 25 | Current and Former Directors & Officers | Michelle Zhou | | X |
| 26 | Current and Former Directors & Officers | Mini Krishnamoorthy | | X |
| 27 | Current and Former Directors & Officers | Paul Gross | | X |
| 28 | Current and Former Directors & Officers | Rahul Agarwal | | X |
| 29 | Current and Former Directors & Officers | Richard J. Salute | | X |
| 30 | Current and Former Directors & Officers | Ronald Steger | | X |
| 31 | Current and Former Directors & Officers | Scott Slipy | | X |
| 32 | Current and Former Directors & Officers | Sherman Edmiston III | | X |
| 33 | Current and Former Directors & Officers | Shobhit Shukla | | X |
| 34 | Current and Former Directors & Officers | Vijay Kuppili | | X |
| 35 | Lenders & Professionals | Avidbank | | X |
| 36 | Lenders & Professionals | Blue Torch Credit Opportunities Fund III LP | X | |
| 37 | Lenders & Professionals | Blue Torch Finance LLC | X | |
| 38 | Lenders & Professionals | BNP Paribas | X | |
| 39 | Lenders & Professionals | Bpifrance Financing | | X |
| 40 | Lenders & Professionals | BTC Holdings Fund II LLC | X | |
| 41 | Lenders & Professionals | BTC Holdings KRS Fund LLC | X | |
| 42 | Lenders & Professionals | BTC Holdings SBAF Fund LLC | X | |
| 43 | Lenders & Professionals | King & Spalding LLP | X | |
| 44 | Lenders & Professionals | KPG BTC Management LLC | X | |
| 45 | Professionals | AEI Legal LLC | | X |
| 46 | Professionals | Drew & Napier LLC | X | |
| 47 | Professionals | GLC Advisors & Co., LLC | | X |
| 48 | Professionals | GLC Securities, LLC | | X |
| 49 | Professionals | Kroll Restructuring Administration | | X |
| 50 | Professionals | Willkie Farr & Gallagher LLP | | X |
| 51 | Professionals | Young Conaway Stargatt & Taylor, LLP | | X |
| 52 | Banks | Avid Bank | | X |
| 53 | Banks | BNP Paribas | X | |
| 54 | Banks | Citibank | X | |
| 55 | Banks | HSBC | X | |
| 56 | Banks | ICICI Bank | X | |
| 57 | Banks | MonFX | X | |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 58 | Benefit Providers | Aetna | X | |
| 59 | Benefit Providers | Aflac | X | |
| 60 | Benefit Providers | Blue Cross and Blue Shield of Minnesota | X | |
| 61 | Benefit Providers | Blue Cross and Blue Shield of North Carolina | X | |
| 62 | Benefit Providers | Blue Shield of California | X | |
| 63 | Benefit Providers | CIGNA Global Health | | X |
| 64 | Benefit Providers | Delta Dental | X | |
| 65 | Benefit Providers | Empire Blue Cross | | X |
| 66 | Benefit Providers | Farmers Group | X | |
| 67 | Benefit Providers | Florida Blue | | X |
| 68 | Benefit Providers | Guardian Dental | | X |
| 69 | Benefit Providers | Kaiser Permanente | X | |
| 70 | Benefit Providers | MetLife Dental | | X |
| 71 | Benefit Providers | MetLife Life Insurance | | X |
| 72 | Benefit Providers | The Hartford | X | |
| 73 | Benefit Providers | TriNet Group | | X |
| 74 | Benefit Providers | Tufts Health Plan | X | |
| 75 | Benefit Providers | UnitedHealthcare | X | |
| 76 | Benefit Providers | Vision Service Plan (VSP) | X | |
| 77 | Insurers | Ace American Insurance Company (Chubb) | X | |
| 78 | Insurers | AIG | X | |
| 79 | Insurers | Allied World | X | |
| 80 | Insurers | Associated Industries Insurance Co., Inc. | X | |
| 81 | Insurers | Berkshire Hathaway | X | |
| 82 | Insurers | Chubb European Group SE | X | |
| 83 | Insurers | Chubb Insurance Australia Ltd. | | X |
| 84 | Insurers | Chubb Insurance Singapore Ltd. | | X |
| 85 | Insurers | ICICI Lombard GIC Ltd. | X | |
| 86 | Insurers | National Union Fire Insurance Company of Pittsburgh, PA | | X |
| 87 | Insurers | Sentinel Insurance Company Ltd. (Hartford) | | X |
| 88 | Insurers | Vantage Risk Assurance Company | | X |
| 89 | Insurers | XL Specialty Insurance Company | X | |
| 90 | Judges / Court Employees | Amanda Hrycak | | X |
| 91 | Judges / Court Employees | Cacia Batts | | X |
| 92 | Judges / Court Employees | Catherine Farrell | | X |
| 93 | Judges / Court Employees | Claire Brady | | X |
| 94 | Judges / Court Employees | Demitra Yeager | | X |
| 95 | Judges / Court Employees | Jill Walker | | X |
| 96 | Judges / Court Employees | Joan Ranieri | | X |
| 97 | Judges / Court Employees | Judge Ashley M. Chan | | X |
| 98 | Judges / Court Employees | Judge Brendan L. Shannon | | X |
| 99 | Judges / Court Employees | Judge Craig T. Goldblatt | | X |
| 100 | Judges / Court Employees | Judge J. Kate Stickles | | X |
| 101 | Judges / Court Employees | Judge John T. Dorsey | | X |
| 102 | Judges / Court Employees | Judge Karen B. Owens | | X |
| 103 | Judges / Court Employees | Judge Laurie Selber Silverstein | | X |
| 104 | Judges / Court Employees | Judge Mary F. Walrath | | X |
| 105 | Judges / Court Employees | Judge Thomas B. Horan | | X |
| 106 | Judges / Court Employees | Laura Haney | | X |
| 107 | Judges / Court Employees | Paula Subda | | X |
| 108 | Judges / Court Employees | Una O'Boyle | | X |
| 109 | Landlord / Sublessee | CIT Bank, N.A. | | X |
| 110 | Landlord / Sublessee | First-Citizens Bank & Trust Company | X | |
| 111 | Landlord / Sublessee | Parsons Services Company | X | |
| 112 | Landlord / Sublessee | SM10000 PROPERTY, LLC | | X |
| 113 | Litigation Parties | Anil Matthews | | X |
| 114 | Litigation Parties | Jonathan Zorio | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 115 | Litigation Parties | Nash Brian | | X |
| 116 | Material Contracts | Accenture | X | |
| 117 | Material Contracts | Activate Holdings Ltd. | | X |
| 118 | Material Contracts | Adlakha Kukreja & Co. | | X |
| 119 | Material Contracts | Admatik Sdn Bhd | | X |
| 120 | Material Contracts | Advanced Contributors Pvt. Ltd. | | X |
| 121 | Material Contracts | Aelius Exploitation Technologies, LLC | | X |
| 122 | Material Contracts | Agoop Corp | | X |
| 123 | Material Contracts | Ailevon Pacific Aviation Consulting | | X |
| 124 | Material Contracts | Airbiz Offshore Private Limited (SG) | | X |
| 125 | Material Contracts | Alexander Babbage, Inc. | | X |
| 126 | Material Contracts | Alight Public Relations, LLC | | X |
| 127 | Material Contracts | Altometer Business Intelligence | | X |
| 128 | Material Contracts | AltScore Inc. | | X |
| 129 | Material Contracts | Amberoon | X | |
| 130 | Material Contracts | Analysis | X | |
| 131 | Material Contracts | Aramark Refreshment Services, LLC | X | |
| 132 | Material Contracts | ARInsights, LLC | | X |
| 133 | Material Contracts | ASLF Media Pty Ltd | | X |
| 134 | Material Contracts | Asset Strategies Group (ASG) | | X |
| 135 | Material Contracts | AudienceQ Limited | | X |
| 136 | Material Contracts | Australian United Retailers Limited | | X |
| 137 | Material Contracts | Avarisoft Pty Ltd | | X |
| 138 | Material Contracts | Avison Young (USA) Inc. | | X |
| 139 | Material Contracts | Baker Tilly US, LLP | | X |
| 140 | Material Contracts | Big Mobile Group Pty. Ltd. | | X |
| 141 | Material Contracts | Bisnow, LLC | | X |
| 142 | Material Contracts | Black C Media Istanbul | | X |
| 143 | Material Contracts | Blue Genie Art Bazaar | | X |
| 144 | Material Contracts | BMT commercial Aus. PTY Ltd. | | X |
| 145 | Material Contracts | Bonzai Digital | X | |
| 146 | Material Contracts | Boston Consulting Group | X | |
| 147 | Material Contracts | Bowling Green State Univ (BGSU) | | X |
| 148 | Material Contracts | BP Australia Pty Ltd | X | |
| 149 | Material Contracts | Break Media Pte Ltd | | X |
| 150 | Material Contracts | Brentwood Associates | X | |
| 151 | Material Contracts | Brisbane City Council | X | |
| 152 | Material Contracts | Brookfield Properties (BPR REIT Services LLC) | X | |
| 153 | Material Contracts | Business Wire Inc. | X | |
| 154 | Material Contracts | Caravan Industry Assoc. of AU | | X |
| 155 | Material Contracts | CBRE limited | X | |
| 156 | Material Contracts | Central Counties Tourism | | X |
| 157 | Material Contracts | Chick-fil-A, Inc. | X | |
| 158 | Material Contracts | ChurnZero | | X |
| 159 | Material Contracts | CircleK-TAS | | X |
| 160 | Material Contracts | City of Apache Junction | | X |
| 161 | Material Contracts | City of Cleveland | X | |
| 162 | Material Contracts | City of El Paso | | X |
| 163 | Material Contracts | City of Kingman Tourism Division | | X |
| 164 | Material Contracts | City of Perth | X | |
| 165 | Material Contracts | City of Prescott Tourism Office AZ | | X |
| 166 | Material Contracts | City of Québec | | X |
| 167 | Material Contracts | Claires European Services | | X |
| 168 | Material Contracts | Coca-Cola Canada Bottling Ltd. | X | |
| 169 | Material Contracts | Cochise County Tourism Council | | X |
| 170 | Material Contracts | cohort.ID, Inc. | | X |
| 171 | Material Contracts | Columbia Distributing ESRI | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 172 | Material Contracts | Complementics | | X |
| 173 | Material Contracts | Container Exchange (QLD) Limited | | X |
| 174 | Material Contracts | Continental Stock Transfer & Trust Co. | | X |
| 175 | Material Contracts | CREtech | | X |
| 176 | Material Contracts | D Chain FZ LLC | | X |
| 177 | Material Contracts | Dai Nippon Printing Co., Ltd | X | |
| 178 | Material Contracts | Daijogo & Pedersen, LLP | | X |
| 179 | Material Contracts | Dakota Worldwide | | X |
| 180 | Material Contracts | Dallimore & Co. | | X |
| 181 | Material Contracts | Datagence, Inc. d/b/a V12 Group | | X |
| 182 | Material Contracts | Dean Runyan | | X |
| 183 | Material Contracts | Decathlon SE | X | |
| 184 | Material Contracts | Deep End Services Pty Ltd | | X |
| 185 | Material Contracts | Delaware North | | X |
| 186 | Material Contracts | Deloitte Financial Advisory Services LLP | | X |
| 187 | Material Contracts | Design Workshop, Inc. | | X |
| 188 | Material Contracts | Destination Analysts | | X |
| 189 | Material Contracts | Dietrich-Pepper, LLC | | X |
| 190 | Material Contracts | Digital Commons Limited | X | |
| 191 | Material Contracts | Digital Envoy, Inc. | | X |
| 192 | Material Contracts | DNP Media Art Co. Ltd. | | X |
| 193 | Material Contracts | Dollar General Corp. | X | |
| 194 | Material Contracts | DOMO, Inc. | X | |
| 195 | Material Contracts | Driti Advisors LLP | | X |
| 196 | Material Contracts | DuPage CVB | | X |
| 197 | Material Contracts | E*TRADE Financial Corporate Services Inc. | | X |
| 198 | Material Contracts | Earth Economics | | X |
| 199 | Material Contracts | ECRA Pte Ltd | X | |
| 200 | Material Contracts | Eddy Alexander | | X |
| 201 | Material Contracts | Element Advisory Pty Ltd | | X |
| 202 | Material Contracts | Entrata | X | |
| 203 | Material Contracts | Environics | | X |
| 204 | Material Contracts | ePrivacy GmbH | | X |
| 205 | Material Contracts | Epsilon Data Management, LLC | | X |
| 206 | Material Contracts | ESRI (Environmental Systems Research Institute) | X | |
| 207 | Material Contracts | Ethos Urban Pty Ltd. | | X |
| 208 | Material Contracts | Fernridge Solutions Pty Ltd | | X |
| 209 | Material Contracts | Fiction Tribe, Inc | | X |
| 210 | Material Contracts | Finity Consulting Pty Ltd. | | X |
| 211 | Material Contracts | Flare Aviation Consulting | | X |
| 212 | Material Contracts | Foot Locker Retail, Inc. | X | |
| 213 | Material Contracts | Fresh Information Limited | | X |
| 214 | Material Contracts | Fresno / Clovis CVB | | X |
| 215 | Material Contracts | GapMaps, LTD | | X |
| 216 | Material Contracts | GEO marketing Solutions Group | | X |
| 217 | Material Contracts | Geografia Pty Ltd | | X |
| 218 | Material Contracts | Geoscience Australia | X | |
| 219 | Material Contracts | GHD Pty Ltd | X | |
| 220 | Material Contracts | Global Planning Solutions | | X |
| 221 | Material Contracts | Google Asia Pacific Pte Ltd | X | |
| 222 | Material Contracts | Grant Thornton Bharat LLP | | X |
| 223 | Material Contracts | Greater Palm Springs | | X |
| 224 | Material Contracts | Grosvenor | X | |
| 225 | Material Contracts | Guam Vistors Bureau | | X |
| 226 | Material Contracts | H2R Market Research | | X |
| 227 | Material Contracts | Hamilton City Council | X | |
| 228 | Material Contracts | Haynes and Boone, LLP | X | |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 229 | Material Contracts | Herrmann Global | | X |
| 230 | Material Contracts | Highspot Inc. | | X |
| 231 | Material Contracts | HKS, Inc. | X | |
| 232 | Material Contracts | Hobart City Council | | X |
| 233 | Material Contracts | Houston First Corporation | | X |
| 234 | Material Contracts | Houston Kemp Pty Ltd | | X |
| 235 | Material Contracts | Idealab | | X |
| 236 | Material Contracts | Idemitsu Kosan Co. Ltd. | X | |
| 237 | Material Contracts | Ikano Insight Ltd. | | X |
| 238 | Material Contracts | Incubeta Australia Pty Ltd | | X |
| 239 | Material Contracts | InfoSum Ltd | | X |
| 240 | Material Contracts | InMobi Pte. Ltd. | X | |
| 241 | Material Contracts | Innity China Co., Limited | | X |
| 242 | Material Contracts | Inretail Management | X | |
| 243 | Material Contracts | Integral Ad Science, Inc. | X | |
| 244 | Material Contracts | Intelligent Direct, Inc. | | X |
| 245 | Material Contracts | Intermarché Alimentaire International | | X |
| 246 | Material Contracts | Intersection Media | | X |
| 247 | Material Contracts | Intervistas Consulting | X | |
| 248 | Material Contracts | Intrado Digital Media LLC Digital Media Innovation | | X |
| 249 | Material Contracts | InvestorBrandNetwork (IBN) | | X |
| 250 | Material Contracts | IRB Holding Corp. | X | |
| 251 | Material Contracts | Irys, Inc. | | X |
| 252 | Material Contracts | Jackson County Visitors Bureau | | X |
| 253 | Material Contracts | Jarrell Chalmers – Marketing Consulting | | X |
| 254 | Material Contracts | Jason Wu – Digital Marketing Services | | X |
| 255 | Material Contracts | JCDecaux Australia Trading Pty Ltd | | X |
| 256 | Material Contracts | JKH Business and Property Consulting (PTY) Ltd | | X |
| 257 | Material Contracts | Johnston County | X | |
| 258 | Material Contracts | Kelley Drye & Warren LLP | | X |
| 259 | Material Contracts | KFC Pty Ltd. | X | |
| 260 | Material Contracts | Knowledge Support Systems, Inc. d/b/a Kallibrate | | X |
| 261 | Material Contracts | Kollaborations Ltd | | X |
| 262 | Material Contracts | Kwik Trip, Inc. | | X |
| 263 | Material Contracts | Lasalle Investment Management | X | |
| 264 | Material Contracts | Legend Partners - Beau Niblock | | X |
| 265 | Material Contracts | Leggo Studio Pty Ltd | | X |
| 266 | Material Contracts | LES MOUSQUETAIRES | X | |
| 267 | Material Contracts | Lex Connect Consulting Private Limited | | X |
| 268 | Material Contracts | Linkedin Corporation | X | |
| 269 | Material Contracts | Little Caesar Enterprises, Inc. | X | |
| 270 | Material Contracts | Localis Technologies Australia | | X |
| 271 | Material Contracts | LocationIQ Pty Ltd | | X |
| 272 | Material Contracts | Longwoods International | | X |
| 273 | Material Contracts | Lumos Law | | X |
| 274 | Material Contracts | M2K Advisors Pte Ltd | | X |
| 275 | Material Contracts | Mabrain Technologies | | X |
| 276 | Material Contracts | MACROPLAN HOLDINGS PTY LTD | | X |
| 277 | Material Contracts | Madden Media | | X |
| 278 | Material Contracts | Manistee County Visitors Bureau | | X |
| 279 | Material Contracts | mapIT (PTY) Ltd | | X |
| 280 | Material Contracts | Market Economics Ltd. | | X |
| 281 | Material Contracts | Marsh USA LLC | | X |
| 282 | Material Contracts | Masahiro Matsui – Consulting Services | | X |
| 283 | Material Contracts | MBI International | | X |
| 284 | Material Contracts | McDonalds | X | |
| 285 | Material Contracts | McElhanney Ltd. | X | |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 286 | Material Contracts | Mead & Hunt | | X |
| 287 | Material Contracts | Measurement of Outdoor Visibility and Exposure Pty Ltd. | | X |
| 288 | Material Contracts | Media Quest Plus FZ LLC | | X |
| 289 | Material Contracts | MediaOne North America | | X |
| 290 | Material Contracts | Mediatiks Limited | | X |
| 291 | Material Contracts | Melbourne City Council | X | |
| 292 | Material Contracts | MeMob | | X |
| 293 | Material Contracts | Meta Platforms Technologies, LLC | | X |
| 294 | Material Contracts | METAVERSO, S.A. | | X |
| 295 | Material Contracts | Metayage Inc. | | X |
| 296 | Material Contracts | MMP Worldwide FZ LLC | | X |
| 297 | Material Contracts | MobileFuse, LLC | | X |
| 298 | Material Contracts | Monash University | X | |
| 299 | Material Contracts | Moreton Bay Regional Council | X | |
| 300 | Material Contracts | Morey Consulting | | X |
| 301 | Material Contracts | Motivation Holdings | | X |
| 302 | Material Contracts | My Equity Comp, LLC | | X |
| 303 | Material Contracts | Natarajan & Swaminathan | | X |
| 304 | Material Contracts | National Retail Federation, Inc. | X | |
| 305 | Material Contracts | Nationwide News Pty. Ltd. | | X |
| 306 | Material Contracts | NaviRetail Inc. | | X |
| 307 | Material Contracts | nContext, LLC | | X |
| 308 | Material Contracts | New Balance Athletics, Inc. | | X |
| 309 | Material Contracts | Nexcore Group | | X |
| 310 | Material Contracts | Nexpansion Inc. | | X |
| 311 | Material Contracts | Nike | X | |
| 312 | Material Contracts | Nissin Shoukai Inc. | | X |
| 313 | Material Contracts | North Land Capital Markets | | X |
| 314 | Material Contracts | NWAP II Inc. | | X |
| 315 | Material Contracts | NYC & Company | | X |
| 316 | Material Contracts | O2 Design | | X |
| 317 | Material Contracts | Off Madison Ave | | X |
| 318 | Material Contracts | Office of Spot | | X |
| 319 | Material Contracts | On The Run Pty Ltd | X | |
| 320 | Material Contracts | OpenX Technologies, Inc. (V) | X | |
| 321 | Material Contracts | Oracle Corporation Singapore Pte Ltd | X | |
| 322 | Material Contracts | Oracle Corporation UK Limited | X | |
| 323 | Material Contracts | Orange142 | | X |
| 324 | Material Contracts | Osaka Metro Adera Co., Ltd. | | X |
| 325 | Material Contracts | Oxford Economics | | X |
| 326 | Material Contracts | Pacific Consultants | X | |
| 327 | Material Contracts | PandaDoc, Inc. | X | |
| 328 | Material Contracts | Pearl Meyer & Partners | | X |
| 329 | Material Contracts | Pelmorex Corp. | | X |
| 330 | Material Contracts | Perception Media | | X |
| 331 | Material Contracts | Pickwell SP Zoo | | X |
| 332 | Material Contracts | PiinPoint Inc. | | X |
| 333 | Material Contracts | Pinal County | | X |
| 334 | Material Contracts | Pinchhitters BV | | X |
| 335 | Material Contracts | Placewise Media | | X |
| 336 | Material Contracts | Point72, L.P. | X | |
| 337 | Material Contracts | Popeyes Louisiana Kitchen Inc. (RBI) | | X |
| 338 | Material Contracts | Pragmatica Law LLP | | X |
| 339 | Material Contracts | Precisely.com (Syncsort) | | X |
| 340 | Material Contracts | PricewaterhouseCoopers Public Accountants | X | |
| 341 | Material Contracts | PropertyGuru Pte Ltd | X | |
| 342 | Material Contracts | Propmodo Inc. | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 343 | Material Contracts | Propulso | | X |
| 344 | Material Contracts | PublicNSA, LLC dba BIGDBM | | X |
| 345 | Material Contracts | PubMatic, Inc. | | X |
| 346 | Material Contracts | PwC Advisory sp. z o.o. sp.k. | | X |
| 347 | Material Contracts | PwC Middle East | | X |
| 348 | Material Contracts | Q1Media, Inc. | | X |
| 349 | Material Contracts | Quantify Strategic Insights | | X |
| 350 | Material Contracts | QuikTrip Corporation | X | |
| 351 | Material Contracts | Reach Media New Zealand Limited | X | |
| 352 | Material Contracts | Redland City Council | X | |
| 353 | Material Contracts | Restaurant Brands International US Services LLC | X | |
| 354 | Material Contracts | Rexall Pharmacy Group LLC | | X |
| 355 | Material Contracts | RMG Advertising | | X |
| 356 | Material Contracts | Rockport Analytics | | X |
| 357 | Material Contracts | Rove Marketing Inc. | | X |
| 358 | Material Contracts | Roy Morgan | | X |
| 359 | Material Contracts | RRC Associates | | X |
| 360 | Material Contracts | Rural Press Pty. Ltd. | X | |
| 361 | Material Contracts | S.M.EG.I.T TURISTICAS S.A.M.P. | | X |
| 362 | Material Contracts | SA1 Property Holdings Pty Ltd | | X |
| 363 | Material Contracts | SC Tristone Production Impex SRL | | X |
| 364 | Material Contracts | SDI Realty Advisors | | X |
| 365 | Material Contracts | Seychelles Tourism | | X |
| 366 | Material Contracts | Shell International | X | |
| 367 | Material Contracts | Shivaami Cloud Services Pvt Ltd | | X |
| 368 | Material Contracts | Sight & Sound Film, LLC | | X |
| 369 | Material Contracts | Simpleview | X | |
| 370 | Material Contracts | Singapore Press Holdings Limited | X | |
| 371 | Material Contracts | SiteZeus | | X |
| 372 | Material Contracts | Sky Synergy, LLC | | X |
| 373 | Material Contracts | SMRT Commercial Pte Ltd | | X |
| 374 | Material Contracts | Southern Methodist University | X | |
| 375 | Material Contracts | Spatial.AI | | X |
| 376 | Material Contracts | Stellar Lifestyle Pte Ltd | | X |
| 377 | Material Contracts | StreetMetrics, Inc. | | X |
| 378 | Material Contracts | Subskribe | | X |
| 379 | Material Contracts | Sunlife | X | |
| 380 | Material Contracts | Sync Media | | X |
| 381 | Material Contracts | Takeshi Yamamoto - Consulting Services | | X |
| 382 | Material Contracts | Tango Analytics LLC | | X |
| 383 | Material Contracts | Taubman Centers, Inc. | | X |
| 384 | Material Contracts | Taymax | | X |
| 385 | Material Contracts | TD Bank, N.A. | X | |
| 386 | Material Contracts | Tetrad Computer Operations Applications Inc. | | X |
| 387 | Material Contracts | The Benchmark Company, LLC | | X |
| 388 | Material Contracts | The Coca-Cola Company | X | |
| 389 | Material Contracts | The Executive Centre Singapore Pte Ltd | X | |
| 390 | Material Contracts | The Trust for Public Land | | X |
| 391 | Material Contracts | Think Economics | | X |
| 392 | Material Contracts | Tomorrow's Tourism Ltd (GBP) | | X |
| 393 | Material Contracts | Tourism Economics | | X |
| 394 | Material Contracts | Tourist Tracka Pty Ltd | | X |
| 395 | Material Contracts | Town of Pinetop-Lakeside | | X |
| 396 | Material Contracts | Town of Superior | | X |
| 397 | Material Contracts | Transport for NSW | X | |
| 398 | Material Contracts | TrueData Solutions, Inc. | | X |
| 399 | Material Contracts | TrueGrit Communications, LLC | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 400 | Material Contracts | TrustArc Inc. | | X |
| 401 | Material Contracts | Unify Technologies Pvt Ltd. | | X |
| 402 | Material Contracts | Unisource Solutions, Inc. | | X |
| 403 | Material Contracts | University of Canterbury | X | |
| 404 | Material Contracts | University of Montana | | X |
| 405 | Material Contracts | Unruly Group LLC | | X |
| 406 | Material Contracts | Urban Studies | | X |
| 407 | Material Contracts | Urban Systems Ltd | | X |
| 408 | Material Contracts | Urbis Pty. Ltd. | X | |
| 409 | Material Contracts | V12 (fka DataMentors, LLC) | | X |
| 410 | Material Contracts | Valvoline | X | |
| 411 | Material Contracts | Veraset LLC | | X |
| 412 | Material Contracts | Vercara, LLC | X | |
| 413 | Material Contracts | Vietch Lister Consulting Pty. Ltd. (VLC) | | X |
| 414 | Material Contracts | VIOOH Ltd | X | |
| 415 | Material Contracts | Visit Canton - Stark County CVB | | X |
| 416 | Material Contracts | Visual Approach | | X |
| 417 | Material Contracts | W E Upjohn Institute for Employment Research | | X |
| 418 | Material Contracts | Wahl & Case EQIQ K.K. | | X |
| 419 | Material Contracts | Walmart | X | |
| 420 | Material Contracts | Wawa, Inc. | X | |
| 421 | Material Contracts | Weedmaps | | X |
| 422 | Material Contracts | Wendy's International, LLC | X | |
| 423 | Material Contracts | Workaletta Inc. | | X |
| 424 | Material Contracts | XLocations, Inc. | | X |
| 425 | Material Contracts | Zartico, Inc. | | X |
| 426 | Material Contracts | Zoom Video Communications, Inc. | X | |
| 427 | Material Contracts | ZoomInfo Technologies LLC | | X |
| 428 | Office of the United States Trustee | Andrew R. Vara | | X |
| 429 | Office of the United States Trustee | Benjamin Hackman | | X |
| 430 | Office of the United States Trustee | Christine Green | | X |
| 431 | Office of the United States Trustee | Diane Giordano | | X |
| 432 | Office of the United States Trustee | Dion Wynn | | X |
| 433 | Office of the United States Trustee | Edith A. Serrano | | X |
| 434 | Office of the United States Trustee | Hannah M. McCollum | | X |
| 435 | Office of the United States Trustee | Holly Dice | | X |
| 436 | Office of the United States Trustee | James R. O'Malley | | X |
| 437 | Office of the United States Trustee | Jane Leamy | | X |
| 438 | Office of the United States Trustee | Jonathan Lipshie | | X |
| 439 | Office of the United States Trustee | Jonathan Nyaku | | X |
| 440 | Office of the United States Trustee | Joseph Cudia | | X |
| 441 | Office of the United States Trustee | Joseph McMahon | | X |
| 442 | Office of the United States Trustee | Juliet Sarkessian | | X |
| 443 | Office of the United States Trustee | Lauren Attix | | X |
| 444 | Office of the United States Trustee | Linda Casey | | X |
| 445 | Office of the United States Trustee | Linda Richenderfer | | X |
| 446 | Office of the United States Trustee | Nyanquoi Jones | | X |
| 447 | Office of the United States Trustee | Richard Schepacarter | | X |
| 448 | Office of the United States Trustee | Rosa Sierra-Fox | | X |
| 449 | Office of the United States Trustee | Shakima L. Dortch | | X |
| 450 | Office of the United States Trustee | Timothy J. Fox, Jr. | | X |
| 451 | Shareholders | Abhijit Hubli | | X |
| 452 | Shareholders | Abhishek Ranjan | | X |
| 453 | Shareholders | Aditi Sheel | | X |
| 454 | Shareholders | Amelie Nisus | | X |
| 455 | Shareholders | Amod Chopra | | X |
| 456 | Shareholders | Amrita De La Penna | | X |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 457 | Shareholders | Aniket Suresh Chougule | | X |
| 458 | Shareholders | Anuj Dayal Bharti | | X |
| 459 | Shareholders | Anurag S | | X |
| 460 | Shareholders | Arjun Divecha | | X |
| 461 | Shareholders | Ashish Gupta | | X |
| 462 | Shareholders | Ashok Vemuri | | X |
| 463 | Shareholders | Asuri Narayanan Srikeshav | | X |
| 464 | Shareholders | Aswathi C C | | X |
| 465 | Shareholders | Axel Ferrier | | X |
| 466 | Shareholders | Balaji Rajan | | X |
| 467 | Shareholders | Bazile Cecille | | X |
| 468 | Shareholders | BTIG, LLC | | X |
| 469 | Shareholders | C Krithika Lakshmi | | X |
| 470 | Shareholders | Camilo Mauricio Fonseca | | X |
| 471 | Shareholders | Cantor Fitzgerald & Co | X | |
| 472 | Shareholders | Carlin Tam Yan Fu | | X |
| 473 | Shareholders | Cecil Capital Pte. Ltd. | | X |
| 474 | Shareholders | Cede & Co | | X |
| 475 | Shareholders | Chandrakumar Manoj | | X |
| 476 | Shareholders | Charles-Antoine Dreyfus | | X |
| 477 | Shareholders | Charu Sethi | | X |
| 478 | Shareholders | Christian Freeman | | X |
| 479 | Shareholders | Christina Michelle Handal | | X |
| 480 | Shareholders | Cindy Olivier | | X |
| 481 | Shareholders | CMDB II | | X |
| 482 | Shareholders | David Michael Raitt | | X |
| 483 | Shareholders | Dhivya B H | | X |
| 484 | Shareholders | Edward Locksley Lowther-Harris | | X |
| 485 | Shareholders | Febu P Mirza | | X |
| 486 | Shareholders | First Asian Investments, Inc. | | X |
| 487 | Shareholders | Geraldine Lei Vigilia | | X |
| 488 | Shareholders | Ghali Vamsi Sai Krishna Murthy | | X |
| 489 | Shareholders | Godspeed Investments Pte. Ltd. | | X |
| 490 | Shareholders | Gokul Krishnan Rathakrishnan | | X |
| 491 | Shareholders | Gopal Srinivasan | X | |
| 492 | Shareholders | GPC NIV Ltd. | | X |
| 493 | Shareholders | Gulshan Singh | | X |
| 494 | Shareholders | Gurupramodha S G | | X |
| 495 | Shareholders | Harish Ganesh | | X |
| 496 | Shareholders | Himanish Shah | | X |
| 497 | Shareholders | Himanshu Nigam | | X |
| 498 | Shareholders | Hisashi Inotani | | X |
| 499 | Shareholders | Ho Yi Hong | | X |
| 500 | Shareholders | Honeih Etemadi Eydgahi | | X |
| 501 | Shareholders | James Norman Blau | | X |
| 502 | Shareholders | Jayson W Ayers | | X |
| 503 | Shareholders | Jennifer-Jane Roszak | | X |
| 504 | Shareholders | Jon Michael Atterbury | | X |
| 505 | Shareholders | Jonathan Tang Wei Lin | | X |
| 506 | Shareholders | Joseph Jing-Fong Chen | | X |
| 507 | Shareholders | Juliette Barthe | | X |
| 508 | Shareholders | Kamal Chhetri | | X |
| 509 | Shareholders | Karen Steele | | X |
| 510 | Shareholders | Kelsey Rae Waite | | X |
| 511 | Shareholders | Kesav M | | X |
| 512 | Shareholders | Kevin King-Tung Kwan | | X |
| 513 | Shareholders | Kiran Kumar Venugopala | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|--------------------------------------|------------|---------------|
| 514 | Shareholders | Kosaraju Ramya | | X |
| 515 | Shareholders | Krishnan Rajagopalan | | X |
| 516 | Shareholders | Kshama Keshav Zingade | | X |
| 517 | Shareholders | Kumar Anish | | X |
| 518 | Shareholders | Laxman B Nidagundi | | X |
| 519 | Shareholders | Lindsay Kinuyo Yamaoka | | X |
| 520 | Shareholders | Lola Millet-Bourgogne | | X |
| 521 | Shareholders | Madhavan Rangaswami | | X |
| 522 | Shareholders | Madhu Prasad N | | X |
| 523 | Shareholders | Mahesh V Chalil | | X |
| 524 | Shareholders | Manmeet Kaur | | X |
| 525 | Shareholders | Mark Bailey | | X |
| 526 | Shareholders | Mary Krishnamoorthy | | X |
| 527 | Shareholders | Mathieu Saadat | | X |
| 528 | Shareholders | Melissa Catherine Coates | | X |
| 529 | Shareholders | Michael Radford | | X |
| 530 | Shareholders | Mn Nagaraj | | X |
| 531 | Shareholders | Mohamed Farouk Souissi | | X |
| 532 | Shareholders | Mohit Chhajer | | X |
| 533 | Shareholders | Moumita Sarkar | | X |
| 534 | Shareholders | Murali Veeraiyan | | X |
| 535 | Shareholders | Narayan Ramachandran | | X |
| 536 | Shareholders | Naveen Kottigegollahalli Siddagangaiah | | X |
| 537 | Shareholders | Navin Kesavan | | X |
| 538 | Shareholders | Navneet Anand | | X |
| 539 | Shareholders | Neha Gupta | | X |
| 540 | Shareholders | Nguyen Anh Ngoc Tran | | X |
| 541 | Shareholders | Nicolas Proust | | X |
| 542 | Shareholders | Nisarga Pal | | X |
| 543 | Shareholders | Nishanth Chandrasekaran | | X |
| 544 | Shareholders | Northland Securities, Inc. | | X |
| 545 | Shareholders | Ocean Capital Enterprises Co., Ltd. | | X |
| 546 | Shareholders | Oriental Investment Advisors Pte. Ltd. | | X |
| 547 | Shareholders | Paul Benoist | | X |
| 548 | Shareholders | Penumutchu Vittal Kumar | | X |
| 549 | Shareholders | Peter Lenz | | X |
| 550 | Shareholders | Polar Multi-Strategy Master Fund | | X |
| 551 | Shareholders | Pothukurchi Naga Santhosh Kumar | | X |
| 552 | Shareholders | Prajakta Pandurang Sutar | | X |
| 553 | Shareholders | Pranesh Sharma | | X |
| 554 | Shareholders | Preethesh Loknath Shetty | | X |
| 555 | Shareholders | Preethish | | X |
| 556 | Shareholders | Pritha Dilip Das | | X |
| 557 | Shareholders | Priya Raghavan | | X |
| 558 | Shareholders | Rahul Saria | | X |
| 559 | Shareholders | Raja A | | X |
| 560 | Shareholders | Rajkumar Velagapudi | | X |
| 561 | Shareholders | Ramapriya Kyathanahally Janardhan | | X |
| 562 | Shareholders | Rashmi Vinitha R | | X |
| 563 | Shareholders | Relentless Zen, LLC | | X |
| 564 | Shareholders | Renuka Parthiban | | X |
| 565 | Shareholders | Ricardo Rojas Ruiz | | X |
| 566 | Shareholders | Richard Douglas Shaddle | | X |
| 567 | Shareholders | Ronanki Dinesh Kumar | | X |
| 568 | Shareholders | Rushikesh Namdeo Tapre | | X |
| 569 | Shareholders | Sahil Vaid | | X |
| 570 | Shareholders | Saksham Kahol | | X |

**Results of Connections Check**

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|---|---|---|---|---|
| 571 | Shareholders | Sakshi Ganesh Asange | | X |
| 572 | Shareholders | Sanaldev Vasudevan Meloottparambil | | X |
| 573 | Shareholders | Sanjana Fernandes | | X |
| 574 | Shareholders | Sarah Jayanetti | | X |
| 575 | Shareholders | Sean Knight | | X |
| 576 | Shareholders | Seema | | X |
| 577 | Shareholders | Sequoia Capital India III Ltd. | | X |
| 578 | Shareholders | Shikha Singh | | X |
| 579 | Shareholders | Shreya Bande | | X |
| 580 | Shareholders | Simon D Caballero | | X |
| 581 | Shareholders | Smriti Kataria | | X |
| 582 | Shareholders | Smyth Jules | | X |
| 583 | Shareholders | Sriram Raghavan | | X |
| 584 | Shareholders | Sudeep Charles | | X |
| 585 | Shareholders | Sugandha Rai | | X |
| 586 | Shareholders | Sumanth N | | X |
| 587 | Shareholders | Suryabir Singh | | X |
| 588 | Shareholders | Syed Rizwan Hashmi | | X |
| 589 | Shareholders | Tejas Dhansukhbhai Panchal | | X |
| 590 | Shareholders | The Benchmark Company, Llc | | X |
| 591 | Shareholders | Timothy Coxon | | X |
| 592 | Shareholders | Uday Kumar | | X |
| 593 | Shareholders | Venkat Sai Giridhar Reddy Karam | | X |
| 594 | Shareholders | Victoria Louise Heely | | X |
| 595 | Shareholders | Vignesh V | | X |
| 596 | Shareholders | Vijay Kumar Kuppili | | X |
| 597 | Shareholders | Vinay Kumar Vemula | | X |
| 598 | Shareholders | Vinayak Navale | | X |
| 599 | Shareholders | Vinayaka Kulkarni Prabhakar | | X |
| 600 | Taxing / Regulatory Authorities / Government Agencies | California Franchise Tax Board | | X |
| 601 | Taxing / Regulatory Authorities / Government Agencies | City of Los Angeles | X | |
| 602 | Taxing / Regulatory Authorities / Government Agencies | City of Pasadena | | X |
| 603 | Taxing / Regulatory Authorities / Government Agencies | Commonwealth of Massachusetts | X | |
| 604 | Taxing / Regulatory Authorities / Government Agencies | Country of Singapore | | X |
| 605 | Taxing / Regulatory Authorities / Government Agencies | Delaware Division of Corporations | | X |
| 606 | Taxing / Regulatory Authorities / Government Agencies | District of Columbia | X | |
| 607 | Taxing / Regulatory Authorities / Government Agencies | Internal Revenue Service | | X |
| 608 | Taxing / Regulatory Authorities / Government Agencies | New York City Department of Finance | | X |
| 609 | Taxing / Regulatory Authorities / Government Agencies | New York Department of Taxation & Finance Corporation | | X |
| 610 | Taxing / Regulatory Authorities / Government Agencies | State of California | X | |
| 611 | Taxing / Regulatory Authorities / Government Agencies | State of Colorado | X | |
| 612 | Taxing / Regulatory Authorities / Government Agencies | State of Delaware | X | |
| 613 | Taxing / Regulatory Authorities / Government Agencies | State of Florida | X | |
| 614 | Taxing / Regulatory Authorities / Government Agencies | State of Georgia | X | |
| 615 | Taxing / Regulatory Authorities / Government Agencies | State of Hawaii | X | |
| 616 | Taxing / Regulatory Authorities / Government Agencies | State of Illinois | X | |
| 617 | Taxing / Regulatory Authorities / Government Agencies | State of Indiana | X | |
| 618 | Taxing / Regulatory Authorities / Government Agencies | State of Kansas | | X |
| 619 | Taxing / Regulatory Authorities / Government Agencies | State of Maryland | X | |
| 620 | Taxing / Regulatory Authorities / Government Agencies | State of Massachusetts | | X |
| 621 | Taxing / Regulatory Authorities / Government Agencies | State of Missouri | X | |
| 622 | Taxing / Regulatory Authorities / Government Agencies | State of New Hampshire | | X |
| 623 | Taxing / Regulatory Authorities / Government Agencies | State of New Jersey | X | |
| 624 | Taxing / Regulatory Authorities / Government Agencies | State of New York | X | |
| 625 | Taxing / Regulatory Authorities / Government Agencies | State of North Carolina | X | |
| 626 | Taxing / Regulatory Authorities / Government Agencies | State of Oregon | X | |
| 627 | Taxing / Regulatory Authorities / Government Agencies | State of Tennessee | X | |

| No. | Category | Entity Name (Full Name as per PIIL) | Connection | No Connection |
|-----|----------|-------------------------------------|------------|---------------|
| 628 | Taxing / Regulatory Authorities / Government Agencies | State of Texas | X | |
| 629 | Taxing / Regulatory Authorities / Government Agencies | State of Utah | X | |
| 630 | Taxing / Regulatory Authorities / Government Agencies | State of Vermont | | X |
| 631 | Taxing / Regulatory Authorities / Government Agencies | State of Virginia | | X |
| 632 | Taxing / Regulatory Authorities / Government Agencies | State of Washington | X | |
| 633 | Taxing / Regulatory Authorities / Government Agencies | State of Wisconsin | X | |
| 634 | Utilities | 8x8 Inc. | X | |
| 635 | Utilities | ACC Business | | X |
| 636 | Utilities | Zayo Group, LLC | X | |
| 637 | Top 30 Creditors | Akama Holdings Fz-LLC | | X |
| 638 | Top 30 Creditors | Amazon Web Services, Inc. | X | |
| 639 | Top 30 Creditors | Cantor Fitzgerald & Co. | X | |
| 640 | Top 30 Creditors | Digital Envoy, Inc. | | X |
| 641 | Top 30 Creditors | EdgarAgents, LLC | | X |
| 642 | Top 30 Creditors | EGS Inc. | | X |
| 643 | Top 30 Creditors | Gopal Srinivasan | X | |
| 644 | Top 30 Creditors | Greater Pacific Capital Management Ltd, GPC NIV LTD. | X | |
| 645 | Top 30 Creditors | Haynes and Boone, LLP | X | |
| 646 | Top 30 Creditors | HERE Europe B.V. | | X |
| 647 | Top 30 Creditors | ICR LLC | X | |
| 648 | Top 30 Creditors | Interxion Ireland DAC Limited | X | |
| 649 | Top 30 Creditors | Investments LLC | X | |
| 650 | Top 30 Creditors | Kirkland & Ellis LLP | X | |
| 651 | Top 30 Creditors | KludeIn Prime, LLC | | X |
| 652 | Top 30 Creditors | Magnite, Inc. | X | |
| 653 | Top 30 Creditors | Palisades Media Group, Inc. | | X |
| 654 | Top 30 Creditors | Polar Asset Management Partners Inc. | X | |
| 655 | Top 30 Creditors | Polar Multi Strategy Master Fund | | X |
| 656 | Top 30 Creditors | Sequoia Capital India III Ltd | | X |
| 657 | Top 30 Creditors | Smaato, Inc. | X | |
| 658 | Top 30 Creditors | Star Labs LLC | | X |
| 659 | Top 30 Creditors | Talent Hunt USA | | X |
| 660 | Top 30 Creditors | Taylor Wessing LLP | | X |
| 661 | Top 30 Creditors | Telstra Ventures Fund II, L.P | X | |
| 662 | Top 30 Creditors | The Benchmark Company, LLC | | X |
| 663 | Top 30 Creditors | The Ebinger Family Trust | | X |
| 664 | Top 30 Creditors | Titan Columbus Ventures | | X |
| 665 | Top 30 Creditors | Venable LLP | X | |
| 666 | Top 30 Creditors | Verve Group Europe GmbH | | X |
| 667 | Top 30 Creditors | YA II PN, Ltd c/o Yorkville Advisors Global, LLC | | X |