## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 15, 66** |

**FINAL ORDER (I) AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION SENIOR
SECURED FINANCING AND THE USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION,
(III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE
EXPENSE CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY, AND
(V) GRANTING RELATED RELIEF**

**THIS MATTER** having come before the Court (this "**Court**") for a hearing on December 11, 2023 and January 23, 2024, upon the *Motion (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral (II) Granting Adequate Protection, (III) Granting Liens and Superpriority Administrative Expense Claims, (IV) Modifying the Automatic Stay (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 15] (the "**Motion**") filed by the debtors and debtors in possession (the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**") and the Local Rules of Bankruptcy Practice

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

and Procedure of the United States Bankruptcy Court for the District of Delaware (as amended, the "**Local Rules**"), seeking, among other things:

A.  authorization for the Debtors to receive senior secured postpetition financing on a superpriority basis in the form of a senior secured, super priority multiple draw term loan facility (the "**DIP Facility**" and the DIP Lenders' commitments under the DIP Facility, the "**DIP Commitments**") in an aggregate principal amount of up to $16 million (the "**DIP Loans")**, of which $5 million shall be made available in a single draw upon entry of the interim order (the "**Interim Order**") and of which $11 million shall be a made available in a single draw upon entry of this final order (the "**Final Order**"), pursuant to the terms and conditions of this Final Order, and that certain Superpriority Secured Debtor-in-Possession Financing Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, substantially in the form of **Exhibit A** attached hereto, the "**DIP Loan Agreement**"[2] together with the schedules and exhibits attached thereto, and all agreements, documents, instruments and amendments executed and delivered in connection therewith, the "**DIP Loan Documents**"), by and among Near Intelligence LLC, a Delaware limited liability corporation (the "**DIP Borrower**"), the other Loan Parties party thereto from time to time (together with the DIP Borrower, the "**DIP Loan Parties**"), the lenders party thereto from time to time (the "**DIP Lenders**") and Blue Torch Finance LLC, as administrative agent (in such capacity, and together with any successors and assigns thereto, the "**DIP Agent**" and together with the DIP Lenders, the "**DIP Secured Parties**");

B.  approval of the terms of, and authorization for the Debtors to execute, enter into and deliver the DIP Loan Documents, to perform all DIP Obligations (as defined below), and to incur all obligations owing thereunder to the DIP Secured Parties, and to perform such other acts as may be reasonably necessary, desirable, or appropriate in connection with the DIP Loan Documents;

C.  subject to the Carve Out (as defined below), the granting of adequate protection to the Prepetition First Lien Lenders (as defined below), in their capacity as the lenders under that certain Financing Agreement, dated as of November 4, 2022, among the borrowers thereto, the guarantors from time to time party thereto, the lenders from time to time party thereto (the "**Prepetition First Lien Lenders**"), and Blue Torch Finance LLC as administrative agent and collateral agent (collectively, the "**Prepetition First Lien Agent**", and together with the Prepetition First Lien Lenders, the "**Prepetition First Lien Secured Parties**") (as amended, restated, amended and restated, supplemented or otherwise modified through the Petition Date (as defined below), the "**Prepetition First Lien Financing Agreement**" and, together with all related loan documents, the "**Prepetition First**

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the DIP Loan Agreement.

**Lien Loan Documents**" and the outstanding obligations under the Prepetition First Lien Financing Agreement which includes the Deferred Consent Fee and other fees in connection with the Prepetition First Lien Financing Agreement, the "**Prepetition First Lien Obligations**"), and the Debtor obligors on account of the Prepetition First Lien Obligations (the "**Prepetition Secured Obligors**"), for any diminution in value of their respective interests in the applicable Prepetition First Lien Collateral (as defined below), including as a result from the imposition of the automatic stay, the Debtors' use, sale, or lease of the Prepetition First Lien Collateral, including Cash Collateral ("**Diminution in Value**"), subject to the restrictions set forth in the DIP Loan Documents and this Final Order;

D.  subject to the restrictions set forth in the DIP Loan Documents and this Final Order, authorization for the Debtors to use Cash Collateral and all other Prepetition First Lien Collateral in which the Prepetition First Lien Lenders have an interest and the granting of adequate protection to the Prepetition First Lien Lenders with respect to, *inter alia*, such use of Cash Collateral and the other Prepetition First Lien Collateral;

E.  subject to certain challenge rights of parties in interest set forth herein, approval of certain stipulations by the Debtors with respect to the Prepetition First Lien Loan Documents and the liens and security interests arising therefrom;

F.  subject to the Carve-Out, the granting of superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Lenders as well as liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and, subject to the Permitted Liens, priming liens pursuant to section 364(d) of the Bankruptcy Code, as further described herein, on all DIP Collateral (as defined below) and all proceeds thereof (including any Avoidance Actions/Proceeds (as defined below), upon entry of this Final Order) to the DIP Agent for the benefit of the DIP Lenders, including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code (including, without limitation, all cash and cash equivalents and other amounts from time to time on deposit or maintained by the Debtors in any deposit or securities account or accounts as of the Petition Date and any cash or cash equivalents received by the Debtors after the Petition Date as proceeds of the Prepetition First Lien Collateral) (collectively, "**Cash Collateral**") and as more specifically defined below, which liens shall be subject to the priorities set forth below;

G.  effective upon entry of this Final Order, the waiver of the Debtors' right to surcharge the Prepetition First Lien Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception pursuant to section 552(b) of the Bankruptcy Code;

H.  upon entry of a Final Order, a finding that neither the DIP Lenders nor the Prepetition First Lien Lenders, in their respective capacities as such, shall be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition First Lien Collateral, as applicable;

I.    authorization and direction for the Debtors to make non-refundable, irrevocable, and final payments on account of the principal, interest, fees (including, the Closing Fee and Agent Fee, under and as defined in the DIP Loan Agreement), expenses and other amounts payable under the DIP Loan Documents, each as applicable, as such become due and payable, all to the extent provided in, and in accordance with, this Final Order and the applicable DIP Loan Documents;

J.    authorization for the Debtors to use the proceeds of the DIP Facility and the Cash Collateral in accordance with both the Approved Budget (as defined below) and the DIP Loan Documents;

K.    the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Loan Documents; and

L.    authorization and approval of the transactions described in the foregoing clauses and entry of this Final Order in form and substance (including with respect to any subsequent modifications made in response to any objections or comments made by the Court) acceptable to the Debtors and the DIP Agent; and

M.    providing for the immediate effectiveness of this Final Order and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

The Court having reviewed the Motion, the exhibits attached thereto, the *Declaration of John Faieta in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") and the declaration of Abe Han of GLC Advisors & Co. LLC in support of the Motion (the "Han Declaration"), the evidence submitted at the hearing on the Motion held on December 11, 2023 (the "**Interim Hearing**") and the evidence submitted at the hearing on the Motion held on January 23, 2024 (the "**Final Hearing**"); and the Court having entered the Interim Order on December 11, 2023 [Docket No. 66]; and notice of the Motion and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and Local Rules 2002-1, 4001-1 and 4001-2 and no further notice being necessary or required; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is fair and reasonable and in the best interests of the Debtors, their estates, their creditors and all parties in interest; and any objections to the entry of this Final Order

having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A. <u>Debtor-in-Possession Operation</u>.  On December 8, 2023 (the "**Petition Date**"), the Debtors commenced with the Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B. <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334. The Court's consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Chapter 11 Cases and proceeding on the Motion is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. <u>Creditors' Committee</u>.  On December 22, 2023, the United States Trustee for Region 3 (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors (the "<u>Committee</u>") in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 85].

D. <u>Notice</u>.  Appropriate notice of the Motion and the Final Hearing has been provided under the circumstances in accordance with the Bankruptcy Code, the Bankruptcy Rules and the

---

[3]    The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitutes conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order is or shall be required.

E.      Debtors' Stipulations.   Without prejudice or impairment to the rights of the Committee and any other party in interest and subject to the limitations thereon contained in paragraph 13 below, the Debtors, on their behalf and on behalf of their estates, admit, acknowledge, agree, and stipulate to the following, which stipulations shall be binding on the Debtors, their estates, and, subject to paragraph 13 below, all parties in interest (paragraphs E(i) through E(vi) below are referred to herein, collectively, as the "**Debtors' Stipulations**"):

i.      Prior to the Petition Date and pursuant to the Prepetition First Lien Financing Agreement, the Prepetition Secured Obligors were indebted and liable to the Prepetition First Lien Lenders with respect to the outstanding obligations under the Prepetition First Lien Financing Agreement, for term loans in the aggregate principal amount of $76,742,047.02, plus, all accrued but unpaid interest (including interest paid in kind, accrued but unpaid interest payable in cash and interest at the default rate, each as applicable), fees, expenses, and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, guarantee obligations, and all other Prepetition First Lien Obligations expressly provided for under the Prepetition First Lien Loan Documents, or incurred in connection therewith, and the Debtors are unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Prepetition First Lien Obligations.

ii.      The Prepetition First Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the Prepetition Secured Obligors, enforceable in accordance with the terms of the applicable Prepetition First Lien Loan Documents.   No offsets, recoupments,

challenges, objections, defenses to, counterclaims to, or claims or causes of action that could reduce the amount or ranking of, the Prepetition First Lien Obligations exist. No portion of the Prepetition Secured Liens (as defined below) or Prepetition First Lien Obligations (including any interest or fees owed thereunder) is subject to set-off, avoidance, impairment, disallowance, recharacterization, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, defenses, cross-claims or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any person or entity. The Prepetition First Lien Loan Documents are valid and enforceable by the Prepetition First Lien Lenders and Prepetition First Lien Agent against each of the Prepetition Secured Obligors.

        iii.      To secure the Prepetition First Lien Obligations, the Prepetition Secured Obligors entered into various security and collateral documents (including without limitation, in the case of the non-foreign Debtors, that certain Pledge and Security Agreement, dated as of November 4, 2022) in favor of the Prepetition First Lien Agent (for the benefit of the Prepetition First Lien Lenders) and various security and collateral documents in connection with the Prepetition First Lien Loan Documents, pursuant to which the Prepetition First Lien Lenders were granted the benefit of valid, binding, perfected, and enforceable liens and security interests in the Prepetition First Lien Collateral, which such liens and security interests are senior in right, priority, operation and effect to all other interests in the Prepetition First Lien Collateral and subject to the Prepetition Permitted Liens, in all respects (the "**Prepetition Secured Liens**"). The Prepetition Secured Liens provide the Prepetition First Lien Agent, for and on behalf of the Prepetition First Lien Lenders, with valid, binding, properly perfected, enforceable, first-priority liens and security interests in all property described in the Prepetition First Lien Loan Documents, including, without

limitation, Cash Collateral and the "Collateral" (as defined in the applicable Prepetition First Lien

Loan Documents) (collectively, the "**Prepetition First Lien Collateral**"), and were granted to, or

for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably

equivalent value.  All cash of the Debtors and cash proceeds of the Prepetition First Lien Collateral,

including all such cash and cash proceeds of such Prepetition First Lien Collateral held at any time

and from time to time in any of the Debtors' securities accounts and banking, checking, or other

deposit accounts with financial institutions (in each case, other than trust, payroll, and custodial

funds held as of the Petition Date in properly established trust, payroll, and custodial accounts),

are and will be Cash Collateral of the Prepetition First Lien Lenders.

       iv.      The Prepetition Secured Liens (a) are valid, binding, properly perfected,

enforceable and non-avoidable liens on and security interests in the Prepetition First Lien

Collateral; (b) are not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign

or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination

(whether equitable, contractual, or otherwise), attachment, offset, counterclaim, defense, "claims"

(as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person

or entity; (c) subject to paragraph 13, entitle the Prepetition First Lien Lenders to credit bid the

Prepetition First Lien Obligations pursuant to section 363(k) of the Bankruptcy Code and

applicable state or foreign law without further challenges from the Debtors or any other party and

implemented by the Prepetition First Lien Lenders in their absolute discretion; and (d) are subject

and subordinate only to (1) the Carve Out, (2) the DIP Liens (as defined below), (3) the Adequate

Protection Liens (as defined below), and (4) valid and enforceable liens and encumbrances in the

Prepetition First Lien Collateral (if any) that were expressly permitted to be senior to the

Prepetition Secured Liens under the applicable Prepetition First Lien Loan Documents, that are

valid, properly perfected, enforceable, and non-avoidable as of the Petition Date or perfected following the Petition Date pursuant to the Bankruptcy Code and that are not subject to avoidance, reduction, disallowance, disgorgement, counterclaim, surcharge, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (foreign or domestic) (collectively the "**Prepetition Permitted Liens**"), and the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition First Lien Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition First Lien Loan Documents or the Debtors, and the Debtors irrevocably waive, discharge and release, for themselves and their estates, subject to paragraph 13 herein, any right to challenge or contest, in any way, the scope, extent, perfection, priority, validity, non-avoidability, and enforceability of the Prepetition Secured Liens or the validity, enforceability, or priority of payment of the Prepetition First Lien Obligations and the Prepetition First Lien Loan Documents.  The Prepetition Secured Liens were granted to the Prepetition First Lien Lenders for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition First Lien Loan Documents.  Pursuant to and as more particularly described in the Prepetition First Lien Loan Documents, the Prepetition Secured Liens are valid, binding, properly perfected, enforceable, non-avoidable, first-priority liens and security interests in and against the Prepetition First Lien Collateral (including, without limitation, Cash Collateral), and are senior in right, priority, operation and effect to all other interests in the Prepetition First Lien Collateral and subject to the Prepetition Permitted Liens, in all respects.  The

Prepetition First Lien Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

    v.   Events of Default (under and as defined in each of the Prepetition First Lien Financing Agreement) have occurred and are continuing under the Prepetition First Lien Loan Documents.  The Prepetition First Lien Lenders expressly reserve all of their respective rights, powers, privileges, and remedies under the Prepetition First Lien Loan Documents with respect to such existing Events of Default.

    vi.   The liens and security interests granted to the DIP Lenders pursuant to this Final Order shall be valid, binding, properly perfected, enforceable and non-avoidable liens against the Debtors.

    F.  <u>Release</u>.  Subject in all respects to paragraph 13 hereof, upon entry of this Final Order, each of the Debtors and the Debtors' estates on its own behalf and on behalf of its past, present, and future predecessors, successors, heirs, subsidiaries and assigns or any person acting for and on behalf of, or claiming through them, hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge the DIP Secured Parties and the Prepetition First Lien Secured Parties, and each of their respective affiliates, former, current, or future officers, employees, directors, servants, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, heirs, predecessors in interest and each person acting for on behalf of any of them, each in their capacity as such (collectively, the "**Representatives**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type,

whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description in each case that exist on the date hereof and in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have with respect to, relating to or arising from the DIP Obligations, the DIP Liens, the DIP Loan Documents, the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations or the Prepetition Secured Liens, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses or recharacterization claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code in connection with actions or events occurring prior to the Petition Date (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties or the Prepetition First Lien Secured Parties and (iv) any and all claims and causes of action related to other carrying costs, penalties, legal, accounting and other professional costs, and consequential and punitive damages payable to third parties.

G.    <u>Subordination Agreements</u>.  Pursuant to section 510 of the Bankruptcy Code, the Subordination Agreements (as defined in the DIP Loan Agreement) and any other applicable intercreditor or subordination provisions contained in any of the Prepetition First Lien Loan Documents or otherwise (i) shall remain in full force and effect, (ii) shall continue to govern the relative rights, priorities and remedies of the Prepetition First Lien Secured Parties and (iii) shall not be deemed to be amended, altered or modified by the terms of this Final Order, unless as expressly set forth herein.

H.    <u>Prepetition Permitted Liens</u>.  Nothing herein shall constitute a finding or ruling by the Court that any alleged Prepetition Permitted Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.[4] Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the DIP Secured Parties, the Prepetition First Lien Secured Parties, or the Committee, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Lien. The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Lien, rather, any such alleged claim arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority vis-à-vis the Prepetition Permitted Liens as such claims had on the Petition Date.

I.    <u>Cash Collateral</u>.  All of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of Prepetition First Lien Collateral, constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and is DIP Collateral of the DIP Secured Parties and, subject to paragraph 13 below, Prepetition First Lien Collateral of the Prepetition First Lien Secured Parties.

J.    <u>Stipulation Binding on Debtors</u>.    Subject to paragraph 13, the Debtors' acknowledgments, stipulations, waivers, and releases shall be binding on the Debtors and their respective representatives, successors, and assigns, and on each of the Debtors' estates and all entities and persons, including any creditors of the Debtors, and each of their respective representatives, successors, and assigns, including, without limitation, any trustee or other

---

[4]    For the avoidance of doubt, as used in this Final Order or the Interim Order, no reference to the Prepetition Permitted Liens shall refer to or include the Prepetition Secured Liens.

representative appointed in these Chapter 11 Cases or Successor Cases (as defined below), whether such trustee or representative is appointed under chapter 11 or chapter 7 of the Bankruptcy Code.

K.      Findings Regarding the DIP Financing and Cash Collateral.

i.      The Debtors have requested from each of the DIP Secured Parties, and the DIP Secured Parties are willing to provide financing to the Debtors subject to: (a) entry of the Interim Order for the DIP Loans available to the DIP Borrower upon entry of the Interim Order and entry of this Final Order for the DIP Loans available to the DIP Borrower upon entry of this Final Order; (b) Court approval of the terms and conditions of the DIP Facility and the DIP Loan Documents; (c) satisfaction or waiver of the closing conditions set forth in the DIP Loan Documents; and (d) findings by this Court that the DIP Facility is essential to the Debtors' estates, that the DIP Secured Parties are extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided by section 364(e) of the Bankruptcy Code.

ii.      The Debtors have an immediate and critical need to obtain the financing contemplated under the DIP Facility (the "**DIP Financing**") and to continue to use the Prepetition First Lien Collateral (including Cash Collateral).  The Debtors' borrowings from the DIP Lenders under the DIP Facility will be used in a manner consistent with the terms and conditions of the applicable DIP Loan Documents and this Final Order for: (a) working capital and other general corporate purposes of the Debtors and their subsidiaries solely in accordance with the Approved Budget, subject to Permitted Variances (as defined below); (b) payment of amounts due under the DIP Facility, including interest and fees payable thereunder, including the Agent Fee and Closing Fee, and any Adequate Protection Payments (as defined below) payable pursuant to this Final

31208822.1

Order, in accordance with the Approved Budget; (c) payment of the professional fees and expenses of administering the Chapter 11 Cases; (d) funding the wind-down of the Debtors' estates; and (e) other purposes as expressly set forth in this Final Order, orders entered by this Court in the Chapter 11 Cases, the Approved Budget, or as expressly approved by the DIP Agent.  Except with the prior written consent of the DIP Agent, or as otherwise set forth herein, the Debtors shall not be permitted to use the proceeds of the DIP Facility and the proceeds of the Prepetition First Lien Collateral (including the Cash Collateral) in contravention of the provisions of the orders entered in the Chapter 11 Cases (including the Interim Order and this Final Order), including any restrictions or limitations on the use of proceeds contained therein, including the Approved Budget. The Debtors' access to sufficient working capital through the use of Cash Collateral and other Prepetition First Lien Collateral and the incurrence of indebtedness under the DIP Facility are necessary and vital to the preservation and maintenance of the Debtors' estates, to preserve the Debtors' business as a going concern and to maximize value for all parties-in-interest.  The Debtors' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during these chapter 11 cases.  The terms of the DIP Facility are fair and reasonable, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  The adequate protection provided in this Final Order and the other benefits and privileges contained herein are consistent with, and authorized by, the Bankruptcy Code.

iii.      The DIP Facility is the best source of debtor-in-possession financing available to the Debtors.  Given their current financial condition, financing arrangements, capital structure, and the circumstances of these Chapter 11 Cases, the Debtors are unable to obtain financing on terms more favorable than that offered by the DIP Lenders under the DIP Loan

Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without (x) the Debtors granting to the DIP Lenders the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (as defined below) on the terms and conditions set forth herein, or (y) granting to the Prepetition First Lien Secured Parties the rights, remedies, privileges, benefits, and protections provided herein, including the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this Final Order and in the DIP Loan Documents.

iv.     The priming of the Prepetition Secured Liens on the Prepetition First Lien Collateral under section 364(d) of the Bankruptcy Code (as required under the DIP Facility) will enable the Debtors to continue operating their businesses on a postpetition basis, to preserve the Debtors' businesses as a going concern and to maximize value for the benefit of the Debtors' estates, creditors and other constituents. The Prepetition First Lien Lenders have consented to the priming of the Prepetition Secured Liens, entry into the DIP Facility and the terms of this Final Order, which consent would not have been provided absent the restructuring transactions contemplated by the terms of this Final Order and the DIP Loan Documents, including, without limitation, the Adequate Protection Payments, Adequate Protection 507(b) Claim (as defined below) and Adequate Protection Liens set forth below.

v.     As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent, the DIP Lenders, and the Prepetition First Lien Secured Parties require, and the Debtors have agreed, that

proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of this Final Order, the DIP Loan Documents and in accordance with the Approved Budget (as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and this Final Order).

vi.        As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Secured Parties, and the Prepetition First Lien Secured Parties have agreed that, as of, and commencing on the date of entry of this Final Order, the Debtors shall apply the proceeds of DIP Collateral in accordance with this Final Order and the DIP Loan Documents and consistent with the Approved Budget.

vii.        Based on the Motion, the First Day Declaration, the Han Declaration, and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations, and the terms on which the Debtors may continue to use the Prepetition First Lien Collateral (including Cash Collateral) pursuant to this Final Order and the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

viii.        The Prepetition First Lien Lenders have consented to the use of Cash Collateral and the other Prepetition First Lien Collateral, the priming of the Prepetition Secured Liens pursuant to section 364(d)(1) of the Bankruptcy Code, the incurrence by the Debtors of the DIP Obligations under the DIP Facility, and the Debtors' entry into the DIP Loan Documents in accordance with and subject to the terms of this Final Order and the DIP Loan Documents.  The Prepetition First Lien Lenders are each entitled to receive adequate protection as set forth herein

to the extent of any Diminution in Value of their respective interests in the Prepetition First Lien Collateral; *provided that* any adequate protection granted or paid hereunder and under the operative documents on account of the Prepetition First Lien Obligations or Prepetition Secured Liens that is the subject of a successful Challenge commenced before expiration of the Challenge Period may also be challenged to the extent of such Challenge and shall be subject to disgorgement or recharacterization to the extent of and consistent with a successful Challenge.

        ix.      The DIP Financing, as well as the terms of the Adequate Protection Obligations, and the use of the Prepetition First Lien Collateral (including Cash Collateral), have been negotiated in good faith and at arm's length among the Debtors, the DIP Lenders, the Prepetition First Lien Lenders, and their respective advisors, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Loan Documents, including: (a) the DIP Loans and (b) any "Obligations" (as defined in the DIP Loan Agreement) of the Debtors owing to the DIP Secured Parties or any of their affiliates, in accordance with the terms of the DIP Loan Documents and any obligations, to the extent provided for in the DIP Loan Documents, to indemnify the DIP Secured Parties and to pay any interest, fees (including the Agent Fee and Closing Fee), expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Loan Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under the Interim Order, this Final Order or the DIP Loan Documents (the foregoing in clauses (a) and (b) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and

31208822.1

assigns thereof) shall be entitled to the protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  In providing the DIP Loans and consenting to the use of Cash Collateral, the DIP Lenders, the Prepetition First Lien Lenders and their respective Representatives have acted in the best interests of the Debtors' estates, for the benefit of all stakeholders, to preserve and enhance the value of the Prepetition First Lien Collateral and maximize recoveries for stakeholders.  The Prepetition First Lien Lenders and the DIP Lenders have acted in good faith regarding the DIP Financing and the Debtors' continued use of the Prepetition First Lien Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition First Lien Lenders (and their Representatives) and the DIP Lenders (and their Representatives) shall be entitled to the protection of section 363(m) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

x.      Until the applicable Prepetition First Lien Obligations are Paid in Full,[5] the Prepetition First Lien Lenders are entitled to the adequate protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition First Lien Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment

---

[5] "**Paid in Full**" or "**Payment in Full**" shall have the meaning set forth in the DIP Loan Agreement and the Prepetition First Lien Financing Agreement, as applicable.

31208822.1

and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided*, *however*, nothing in this Final Order or the other DIP Loan Documents shall (a) be construed as the affirmative consent by the Prepetition First Lien Lenders for the use of Cash Collateral, other than on the terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order, (b) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition First Lien Collateral (whether senior or junior), or (c) prejudice, limit or otherwise impair the rights of the Prepetition First Lien Lenders to seek new, different or additional adequate protection or assert the interests of any of the Prepetition First Lien Lenders.

xi.    The Debtors have prepared and delivered to the DIP Lenders, and the DIP Lenders have approved, the proposed current budget (such budget, the "**Current DIP Budget**"), a copy of which is attached to the Final Order as **Exhibit B**, which, for the avoidance of doubt, constitutes an "Approved Budget." The Current DIP Budget reflects the Debtors' anticipated net cash flow and anticipated disbursements for each week during the period from January 6, 2024 through and including March 15, 2024. The Current DIP Budget may be modified, amended and updated from time to time in accordance with the DIP Loan Agreement (and, solely as to fees payable to Committee Professionals, with the consent of the Committee), and once approved by, and in form and substance satisfactory to, the DIP Agent (and, solely as to fees payable to the Committee Professionals, the Committee), in accordance with the DIP Loan Agreement, shall supplement and replace the Current DIP Budget (the Current DIP Budget, following entry of this Final Order, and each subsequently approved budget, shall each constitute without duplication, an "**Approved Budget**"). The Current DIP Budget is reasonable under the facts and circumstances. The DIP Lenders are relying, in part, upon the Debtors' agreement to comply with

the Approved Budget, the other DIP Loan Documents, and this Final Order in determining to enter into the postpetition financing arrangements provided for in this Final Order.

xii.    The relief granted by this Final Order will minimize disruption of the Debtors' business and permit the Debtors to meet payroll, continue operating their business in the ordinary course, run a marketing process consistent with the Debtors' proposed Bid Procedures (as defined herein) and Milestones (as defined herein) and pay other expenses necessary to maximize the value of the Debtors' estates for all parties in interest.  Consummation of the DIP Financing and the use of Prepetition First Lien Collateral, including Cash Collateral, in accordance with this Final Order and the DIP Loan Documents are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.

L.    Prepetition First Lien Lenders' Good Faith.  By virtue of the stipulations and findings in this Final Order related to the Prepetition First Lien Obligations and the DIP Financing, and the Prepetition First Lien Lenders agreeing to provide the DIP Financing in their capacity as DIP Lenders, effective upon entry of this Final Order, no "cause" has been shown to limit or otherwise impair the Prepetition First Lien Lenders' right to credit bid the Prepetition First Lien Obligations pursuant to section 363(k) of the Bankruptcy Code.

M.    Sections 506(c) and 552(b).  In light of, among other things, (i) the DIP Agent's and the DIP Lenders' agreement that their liens and super-priority claims shall be subject to the Carve Out and (ii) the Prepetition First Lien Lenders' agreement to subordinate the Prepetition Secured Liens and Prepetition First Lien Obligations to the DIP Liens, and to permit the use of the DIP Facility and Cash Collateral for payments made in accordance with the terms of this Final Order and the other DIP Loan Documents, including the Approved Budget, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders are entitled

31208822.1

to a waiver of (i) the provisions of Bankruptcy Code section 506(c), (ii) any "equities of the case" claims under Bankruptcy Code section 552(b), and (iii) the equitable doctrine of "marshaling" or any similar doctrine.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    <u>DIP Financing Approved</u>.  The Motion is granted to the extent provided herein. The Debtors' entry into the DIP Facility and the DIP Loan Documents is authorized and approved, and the use of Cash Collateral is authorized, in each case, on a final basis and subject to the terms and conditions set forth in this Final Order, the DIP Loan Documents and the Approved Budget.

2.    <u>Objections Overruled</u>.  Any objections, reservations of rights, or other statements with respect to entry of this Final Order, to the extent not withdrawn, waived, settled or resolved, are overruled on the merits.  This Final Order shall become effective immediately upon its entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062 and 9014.

3.    <u>Authorization of the DIP Financing and the DIP Loan Documents</u>.

(a)    The Debtors are hereby authorized and empowered, on a final basis, to (a) execute, enter into and deliver, and perform the DIP Loan Documents, (b) incur and perform all obligations under the DIP Loan Documents and this Final Order and (c) execute, enter into, deliver and perform under all instruments, certificates, agreements, and documents that may be required or necessary for the Debtors' performance under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order and the DIP Loan Documents.  Upon entry of this Final Order, the DIP Loan Agreement, and other DIP Loan Documents shall govern and control the DIP Facility.  The DIP Agent is hereby authorized to

execute and enter into its respective obligations under the DIP Loan Documents, subject to the terms and conditions set forth therein and in this Final Order. To the extent there exists any conflict among the terms and conditions of the DIP Loan Documents and this Final Order, the terms and conditions of this Final Order shall govern and control.

(b)     Upon entry of this Final Order, the Debtors are hereby authorized to borrow, and the DIP Loan Parties are hereby authorized to guarantee, the DIP Loans pursuant to the DIP Loan Agreement in, to the extent not already made available pursuant to the Interim Order, an aggregate principal or face amount not to exceed $16 million under the DIP Facility, which DIP Loans shall be used for all purposes permitted under the DIP Loan Documents (and subject to the terms and conditions set forth herein and therein) and in accordance with the Approved Budget, subject to Permitted Variances.

(c)     The Debtors are hereby authorized and empowered to pay, in accordance with this Final Order, the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents and all other documents comprising the DIP Facility as such become due, including, without limitation, any fees due and payable thereunder, the DIP Agent's fees, and the reasonable and documented fees and disbursements of the DIP Secured Parties' attorneys, advisors, accountants and other consultants, whether or not such fees arose before, on or after the Petition Date, whether or not the transactions contemplated hereby are consummated, and to take any other actions that may be necessary or appropriate, all to the extent provided in this Final Order or the DIP Loan Documents, as applicable; *provided, however*, that, other than in connection with the fees and expenses incurred and payable at the closing of the DIP Facility, including, without limitation, fees and expenses incurred before the Petition Date, the payment of the fees and expenses of the Professional Persons (as defined below) shall be subject to the provisions of

paragraph 14 of this Final Order.  All collections, consideration and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Loan Documents.

(d)     Each officer and director of the Debtors acting individually is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such individual's respective authority to act in the name of and on behalf of the Debtors.

(e)     In furtherance of the foregoing subsections (a)-(d), and without further approval of the Court, the Debtors are hereby authorized and empowered to perform all such acts and execute and deliver all such documents and instruments, which for the avoidance of doubt shall include:

(i)     Amendments.  The execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents, in each case, in such form as the Debtors and the DIP Agent may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Loan Documents that (A) do not (i) shorten the maturity of the extensions of credit thereunder, (ii) increase the principal amount of, the rate of interest on, or the fees payable in connection with the DIP Facility, or (iii) change any event of default, add any covenants, or amend the covenants to be materially more restrictive or (B) are (i) immaterial or non-adverse to the Debtors and (ii) in accordance with the DIP Loan Documents; *provided*, *however*, that no waiver,

modification or amendment of any of the provisions of the DIP Loan Documents shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the DIP Lenders or the DIP Agent (as applicable)) and, to the extent required herein, approved by the Court;

(ii)  Repayment.  The incurrence of, and the non-refundable payment to the DIP Lenders, of any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Loan Agreement and this Final Order, and the costs and expenses as may be due from time to time, including fees and expenses of the Lender Professionals (as defined below), in each case, as provided for in the DIP Loan Documents, shall be without the need to file retention or fee applications or to provide notice to any party, other than as provided in paragraph 14 hereof; and

(iii)  Performance.  The performance of all other acts required under or in connection with the DIP Loan Documents, including the granting of the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection 507(b) Claim and perfection of the DIP Liens and Adequate Protection Liens as permitted herein and therein.

(f)  The DIP Loan Parties are hereby authorized to jointly, severally, and unconditionally guarantee, and upon entry of this Final Order shall be deemed to have guaranteed, in full, all of the DIP Obligations of the DIP Borrower.

31208822.1

(g)     Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents, the DIP Obligations, and the DIP Liens shall constitute valid, binding and unavoidable obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing, in accordance with the terms of the DIP Loan Documents and this Final Order (collectively, the "**Successor Cases**").  Upon entry of this Final Order, and subject to the Carve Out, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may now, or from time to time, be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders, including, without limitation, all principal, accrued interest, costs, charges, fees (including the Agent Fee and Closing Fee), expenses, obligations in respect of indemnity claims (contingent or otherwise) and other amounts under the DIP Loan Documents, without the need to obtain further Court approval (except as otherwise provided herein or in the DIP Loan Documents).  No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Order to the DIP Secured Parties (as to the DIP Agent, for the benefit of the DIP Lenders) shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date, except as provided in paragraphs 10 and 11 hereof.

(h)     The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit, amendment or renewal under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the DIP Agent in accordance with the terms of the DIP Loan Agreement.

(i)      From and after the Petition Date, the Debtors shall use proceeds of the DIP Loans only for the purposes specifically set forth in the Interim Order, this Final Order, and the DIP Loan Documents, and in compliance with the Approved Budget, subject to the Permitted Variances, and the terms and conditions in the Interim Order, this Final Order and the DIP Loan Documents.

(j)      No DIP Lender or DIP Agent shall have any obligation or responsibility to monitor any DIP Loan Party's use of the DIP Facility and each DIP Lender, and the DIP Agent may rely upon each DIP Loan Party's representation that the use of the DIP Facility at any time is in accordance with the requirements of this Final Order and the DIP Loan Documents.

(k)     The Current DIP Budget is approved in its entirety.  The use of proceeds from the DIP Facility and the use of Cash Collateral under this Final Order shall be in accordance with the Approved Budget, subject to Permitted Variances and the terms and conditions set forth in the DIP Loan Documents and this Final Order.  Not later than 5:00 PM (Eastern Standard Time) beginning on the fourth Thursday following the Petition Date and on every Thursday following the end of each Testing Period (as defined below), the Debtors shall deliver to the DIP Agent (along with its professionals) the DIP Lenders, and the Committee (a) an updated budget, in form and substance satisfactory to the DIP Agent, for the subsequent 13 week period consistent with the Approved Budget, and such updated budget shall become the Approved Budget for the purposes of this Final Order upon approval of the DIP Agent; *provided*, that until a new Approved Budget has been so

approved, the most recent Approved Budget shall govern and (b) beginning on the Thursday following a full calendar week after the Petition Date (by no later than 5:00 PM (Eastern Standard Time)) and on every Thursday thereafter (by not later than 5:00 PM (Eastern Time)), a variance report (the "**Variance Report**") setting forth actual cash receipts and disbursements and cash flows of the Debtors for the prior Testing Period and setting forth all disbursement and receipt variances, on a line-item and aggregate basis, from the amount set forth for such period as compared to the applicable Approved Budget, in each case, for the applicable Testing Period (and each such Variance Report shall include explanations for all material variances and shall be certified by the Chief Financial Officer of the Debtors).

(l)    For purposes hereof, the term "Permitted Variances" shall mean, for (a) the period commencing on the Petition Date through and including the two week period ending on the second Friday following the Petition Date, but calculated on a cumulative two (2) week basis to account for timing of payment variances, (b) the period commencing on the Petition Date through and including the three week period ending on the third Friday following the Petition Date, but calculated on a cumulative three (3) week basis to account for timing of payment variances, and (c) each Friday thereafter (each week commencing on the Saturday of such week), but calculated on a rolling four (4) week basis to account for timing of payment variances, unless otherwise agreed by the DIP Agent (the applicable "**Testing Period**") (i) any favorable disbursement variance, and (ii) any unfavorable disbursement variance (other than disbursements for professional fees of the DIP Lenders, the DIP Agent, the Prepetition First Lien Lenders, the Prepetition First Lien Agent, the Committee, and the fees of the Office of the United States Trustee) or receipts variance of no more than: (x) 25% for each of actual disbursements and actual receipts (on a line-item and an aggregate basis) during the two week Testing Period; and (y) 15%

for each of actual disbursements and actual receipts (on an aggregate basis) during the three and four week Testing Periods thereafter, as compared to the budgeted disbursements and receipts set forth in the Approved Budget with respect to the applicable Testing Period, exclusive of professional fees.  The Permitted Variances with respect to each Testing Period shall be determined and reported to the DIP Agent and the Prepetition First Lien Agent, not later than 5:00 PM (Eastern Standard Time) on each Thursday immediately following the end of each such Testing Period. Additional variances, if any, from the prior Approved Budget, and any proposed changes to the budget, shall be subject to the approval of the DIP Agent and the Prepetition First Lien Agent (and, solely as to fees payable to Committee Professionals, with the consent of the Committee).

4.      DIP Superpriority Claims.  Upon entry of this Final Order, subject only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims of the DIP Secured Parties against each of the Debtors in each of these Chapter 11 Cases and any Successor Cases (without the need to file any proof of claim) with priority over any and all claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including all administrative expense claims, priority and other unsecured claims against the Debtors or their estates in any of the Chapter 11 Cases and any Successor Cases, including, without limitation, administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 or 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under

section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from to all pre- and postpetition property of the Debtors and all proceeds thereof (including, effective upon entry of this Final Order, the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code and the proceeds thereof (collectively, the "**Avoidance Actions/Proceeds**")). The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code to the extent provided therein in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

5.    <u>DIP Liens</u>.    As security for the DIP Obligations, effective and perfected immediately upon entry of this Final Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent or DIP Lenders of, or over, any DIP Collateral, the following continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition first priority security interests and liens are hereby granted to the DIP Agent, for the benefit of the DIP Lenders (all presently owned and hereafter acquired property identified in clauses (a), (b) and (c) below being collectively referred to as the "**DIP Collateral**", and all such liens and security interests granted to the DIP Agent, for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Loan Documents, the "**DIP Liens**"):

(a)    <u>First Lien on Unencumbered Property</u>.    Subject only to the Carve Out, pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and

postpetition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively, the "**Unencumbered Property**"), including any and all unencumbered cash of the Debtors and any investment of such cash, cash equivalents, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, insurance proceeds, products, rents and profits, in each case, with respect to any and all of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, including the Avoidance Actions/Proceeds;

(b) <u>Priming Liens on Prepetition First Lien Collateral</u>. Subject only to the Carve Out and any Prepetition Permitted Liens, pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of the Debtors (including any and all cash, cash equivalents and Cash Collateral and any investment of such cash, cash equivalents and Cash Collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including post-petition intercompany claims against any Debtor), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, insurance proceeds, products, rents and profits of any and all of the foregoing), whether now existing or hereafter

acquired, that is subject to the Prepetition Secured Liens, which lien shall be senior in all respects to such Prepetition Secured Liens. Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition First Lien Lenders arising from current and future liens of the Prepetition First Lien Lenders (including the Adequate Protection Liens granted hereunder);

(c)    <u>DIP Liens Junior to Certain Other Liens</u>. Subject only to the Carve Out, pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Debtors subject to Prepetition Permitted Liens on the Petition Date or subject to a Prepetition Permitted Lien in existence on the Petition Date that is perfected subsequent thereto pursuant to the Bankruptcy Code; and

(d)    <u>DIP Liens Senior to Certain Other Liens</u>. Except for the Carve Out and otherwise provided in this paragraph 5, the DIP Liens shall not be (i) subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (b) unless otherwise provided for in the DIP Loan Documents or in this Final Order, any liens or security interests arising after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors, (c) any intercompany or affiliate liens of the Debtors, or (d) any orders of attachment or judicial liens; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code heretofore or hereinafter granted in these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of the Chapter

11 Cases or Successor Cases.  The DIP Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code.

6.    <u>Use of Cash Collateral</u>.  The Debtors are hereby authorized, subject to the terms and conditions of this Final Order, the DIP Facility and the other DIP Loan Documents and in accordance with the Approved Budget, subject to Permitted Variances, to use all Cash Collateral; *provided,* that (a) the Prepetition First Lien Lenders are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Final Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

7.    <u>Adequate Protection of Prepetition First Lien Lenders</u>.  Subject to the Carve Out, the Prepetition First Lien Lenders are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition First Lien Collateral, including the Cash Collateral, solely to the extent of and in an amount equal to the aggregate Diminution in Value, if any, of the Prepetition First Lien Lenders' interests in the Prepetition First Lien Collateral (including Cash Collateral) from and after the Petition Date, for any reason provided for under the Bankruptcy Code, including any such diminution resulting from the depreciation, sale, lease or use by the Debtors (or other decline in value) of the Prepetition First Lien Collateral (including Cash Collateral), the priming of the Prepetition First Lien Lenders' security interests and liens on the Prepetition First Lien Collateral (including Cash Collateral) by the DIP Lenders pursuant to the DIP Loan Documents and this Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Adequate Protection Claim**"); provided that any adequate protection granted or paid hereunder and under the operative documents on account of the Prepetition First Lien Obligations or Prepetition Secured Liens that

is the subject of a successful Challenge commenced before expiration of the Challenge Period may also be challenged to the extent of such Challenge and shall be subject to disgorgement or recharacterization to the extent of and consistent with a successful Challenge.  In consideration of the foregoing, the Prepetition First Lien Lenders, as applicable, shall receive the following (collectively, the "**Adequate Protection Obligations**"):

(a)    Adequate Protection Liens.  The Prepetition First Lien Lenders are hereby granted (effective and perfected and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Adequate Protection Claim, a valid, binding, enforceable, non-avoidable and automatically and properly perfected replacement security interest in and lien upon all of the DIP Collateral including all Unencumbered Property upon the date of this Final Order, including the Avoidance Actions/Proceeds, in each case subject and subordinate only to (i) the DIP Liens and any liens to which the DIP Liens are junior, including the Prepetition Permitted Liens, if any, and (ii) the Carve Out (the "**Adequate Protection Liens**").  Except as provided herein, the Adequate Protection Liens shall not be made subject to, or *pari passu* with, any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  Subject to Paragraph 13 of this Final Order, the Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Adequate Protection Liens.

(b)     Adequate Protection Section 507(b) Claim.  The Prepetition First Lien Lenders are hereby granted, subject to the DIP Superpriority Claims and the Carve Out, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any Successor Cases as provided for in section 507(b) of the Bankruptcy Code in the amount of the Adequate Protection Claim with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (other than the DIP Superpriority Claims) (the "**Adequate Protection 507(b) Claim**"), which Adequate Protection 507(b) Claim shall be payable from all of the DIP Collateral (including Unencumbered Property) in accordance with the priorities set forth herein, including the Avoidance Actions/Proceeds.  Except to the extent expressly set forth in this Final Order or the DIP Loan Documents, the Prepetition First Lien Lenders shall not receive or retain any payments, property or other amounts in respect of the Adequate Protection 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims, including claims that benefit from the Carve Out, have been Paid in Full and all DIP Commitments have been terminated.

(c)     Adequate Protection Payments.  Subject to the Carve Out, as further adequate protection, the Debtors are authorized and directed to pay, in accordance with the terms of paragraph 14 of this Final Order, all reasonable and documented out-of-pocket fees and expenses of the Prepetition First Lien Secured Parties (the "**Adequate Protection Fees**"), whether incurred before or after the Petition Date, including all reasonable and documented out-of-pocket fees and expenses of the Prepetition First Lien Secured Parties and for the counsel and other professionals retained as provided for in the Prepetition First Lien Loan Documents and this Final Order,

including (a) King & Spalding LLP, as counsel to the DIP Agent and the Prepetition First Lien Agent and (b) Morris, Nichols, Arsht & Tunnell LLP, as local counsel to the DIP Agent and the Prepetition First Lien Agent; *provided*, that, immediately upon entry of this Final Order, the Debtors are authorized and directed to pay all such Adequate Protection Fees incurred prior to and through the Petition Date that remain outstanding upon entry of this Final Order to the Prepetition First Lien Agent and/or the Prepetition First Lien Lenders, as applicable ("**Adequate Protection Payments**").  None of the Adequate Protection Fees shall be subject to separate approval by the Court, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(d)    <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition First Lien Lenders is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition First Lien Collateral during the Chapter 11 Cases or any Successor Cases.  The receipt by the Prepetition First Lien Lenders of the adequate protection provided for herein shall not be deemed an admission that the interests of the Prepetition First Lien Lenders are adequately protected.  Further, this Final Order shall not prejudice or limit the rights of the Prepetition First Lien Lenders to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection in a manner consistent with the Prepetition First Lien Loan Documents.

8.    <u>Application of Proceeds of Collateral</u>.  As a condition to entry into the DIP Loan Agreement, the extension of funds under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Lenders, and the Prepetition First Lien Lenders, in their respective capacities, have agreed that as of and commencing on the date of entry of this Final Order, and to the extent

set forth herein, the Debtors shall apply the proceeds of DIP Collateral and Prepetition First Lien

Collateral solely in accordance with this Final Order, the DIP Loan Documents, the Prepetition

First Lien Loan Documents, and the Approved Budget.

9.      <u>Milestones</u>.  As a condition to the use of the DIP Facility and Cash Collateral, and

as further adequate protection to the Prepetition First Lien Lenders, the DIP Lenders and

Prepetition First Lien Lenders are hereby entitled to performance of the following milestones by

the dates set forth below (or such later date as may be agreed by the DIP Agent) (the "**Milestones**"),

and for the avoidance of doubt, absent the consent of the DIP Lenders, the failure of the Debtors

to comply with any of the Milestones shall constitute an immediate Event of Default under the

DIP Loan Agreement and this Final Order and permit the DIP Agent and the Prepetition First Lien

Agent to exercise their respective rights and remedies provided for in this Final Order and the DIP

Loan Documents:

a.      No later than two (2) business days after the Petition Date, the Debtors shall file an appropriate motion with the Bankruptcy Court for entry of (i) an order providing for bid procedures for the sale of all or substantially all of the Debtors' assets (as identified in the stalking horse asset purchase agreement, the "**Acquired Assets**") and establishing a date that is no later than February 8, 2024 as the deadline for the submission of binding bids with respect to their assets (the "**Bid Procedures**") and (ii) an order providing for the sale of any of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code (the "**Sale Motion**");

b.      No later than three (3) business days after the Petition Date, the Bankruptcy Court shall have entered the Interim Order;

c.      No later than January 24, 2024, the Bankruptcy Court shall have entered this Final Order, subject to the availability of the Bankruptcy Court to conduct a Final Hearing on the DIP Facility;

d.      No later than January 24, 2024, the Bankruptcy Court shall have entered an order approving the Bid Procedures (the "**Bid Procedures Order**"), which order shall be in form and substance acceptable to the Debtors, in consultation with the Committee, and the DIP Agent;

e.    No later than February 10, 2024, the Debtors shall commence an auction for the Acquired Assets, in accordance with the Bid Procedures; provided that if there is no higher or better offer submitted in comparison to the stalking horse bid(s), no auction shall be held;

f.    No later than seventy (71) calendar days after the Petition Date, the Bankruptcy Court shall have entered an order (which shall be in form and substance acceptable to the Debtors and the DIP Agent) approving the winning bid and the ultimate sale of the Acquired Assets (the "**Sale Order**");

g.    Consummation of the sale of the Acquired Assets, shall occur no later than the date that is eighty-five (85) calendar days after the Petition Date;

10.    <u>Events of Default</u>.  With respect to (a) the DIP Lenders and the DIP Facility or (b) the Prepetition First Lien Lenders and the Debtors' use of Cash Collateral, for purposes of this Final Order, an "**Event of Default**" means an "Event of Default" as defined in the DIP Loan Agreement and as expressly provided for in this Final Order.  Notwithstanding anything in this Final Order, following an Event of Default, the Prepetition First Lien Lenders shall be stayed from enforcing any rights and remedies under this Final Order unless and until the DIP Agent has delivered a Carve Out Trigger Notice (as defined below) and has complied with its obligations in connection with the issuance thereof or consents to such enforcement.  Notwithstanding anything to the contrary in the DIP Loan Agreement, the Event of Default provided in Section 9.01(e) of Article IX of the DIP Loan Agreement shall be modified as follows:

any Loan Party or its Subsidiaries shall fail to pay when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise) any principal, interest or other amount payable in respect of Indebtedness (excluding Indebtedness evidenced by this Agreement or the Prepetition Loan Documents) having an aggregate amount outstanding in excess of $500,000, and such failure shall continue after the applicable grace period, if any, specified in the agreement or instrument relating to such Indebtedness, or any other default under any agreement or instrument relating to any such Indebtedness, or any other event, shall occur and shall continue after the applicable grace period, if any, specified in such agreement or instrument, if the effect of such default or event is to accelerate, or to permit the acceleration of, the maturity of such Indebtedness; or any such Indebtedness shall be declared to be due and payable, or required to be prepaid (other than by a regularly scheduled required prepayment), redeemed, purchased or defeased or an offer to prepay, redeem, purchase or defease such Indebtedness shall be required to

be made, in each case, prior to the stated maturity thereof; provided that this Section 9.01(e) shall not apply to any Permitted Indebtedness outstanding on the Petition Date unless such Permitted Indebtedness has been accelerated and the enforcement of remedies with respect to such Permitted.  Indebtedness shall not have been stayed by the commencement of the Chapter 11 Cases.

11.    Remedies Upon Event of Default.  The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the DIP Secured Parties to enforce all of their respective rights under the DIP Loan Documents and, upon the occurrence and during the continuance of an Event of Default and the giving of five (5) days' prior written notice (the "**Remedies Notice Period**") (which shall run concurrently with any notice required to be provided under the DIP Loan Documents) via email to counsel to the Debtors, counsel to the Committee, and the U.S. Trustee, all rights and remedies provided for in the DIP Loan Documents and this Final Order, including, without limitation, to (i) immediately terminate consent to the Debtors' continued use of Cash Collateral and/or the DIP Facility, (ii) cease making any DIP Loans under the DIP Facility to the Debtors, (iii) declare all DIP Obligations to be immediately due and payable, (iv) freeze monies or balances in the Debtors' accounts (and, with respect to the DIP Loan Agreement and the DIP Facility, sweep all funds contained in the Controlled Accounts, under and as defined in the DIP Loan Agreement, which, for the avoidance of doubt, shall not include the Carve Out Reserves), (v) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Agent or the DIP Lenders against the DIP Obligations, or otherwise enforce any and all rights against the DIP Collateral in the possession of any of the applicable DIP Lenders, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations, (vi) take any other actions or exercise any other rights or remedies permitted under the Interim Order and this Final Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations and (vii) exercise, subject to the rights of the Prepetition First Lien Secured Parties, all other rights and remedies provided for in the DIP Loan Documents

31208822.1

and under applicable law.  The Debtors shall cooperate fully with the DIP Agent and the DIP Lenders in their exercise of rights and remedies, whether against the DIP Collateral or otherwise. Notwithstanding anything in this Final Order, upon the occurrence and during the continuance of an Event of Default, notwithstanding any Remedies Notice Period, (i) the Debtors may only use Cash Collateral in accordance with the terms of this Final Order and the Approved Budget solely to make payroll and fund critical expenses necessary to preserve prepetition collateral or otherwise with the express written consent of the DIP Agent and the Prepetition First Lien Lenders in their respective capacities, and (ii) the DIP Lenders shall not be obligated to make any DIP Loans to the DIP Borrower under the DIP Facility.  For the avoidance of doubt, interest, including, where applicable, default interest, shall accrue and be paid as set forth in the DIP Loan Documents upon the occurrence and during the continuation of an Event of Default.  Prior to the DIP Lenders' enforcement of remedies, the Debtors shall have the right within the Remedies Notice Period to, among other things, challenge the existence or occurrence of an Event of Default by seeking emergency relief from the Bankruptcy Court.  If the Bankruptcy Court finds that an Event of Default has occurred, and is continuing, the DIP Lenders' right to enforce the remedies provided in this Final Order and in the DIP Loan Documents is subject to the DIP Lenders satisfying their obligations occasioned by the issuance of a Carve Out Trigger Notice in accordance paragraph 15 below.  No rights, protections or remedies of the DIP Secured Parties and the Prepetition First Lien Secured Parties granted by the provisions of this Final Order, the DIP Loan Documents, or Prepetition First Lien Loan Documents shall be limited, modified or impaired in any way by: (a) any actual or purported withdrawal of the consent of any party to the Debtors' authority to continue to use Cash Collateral; (b) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (c) except as provided herein or in this Final Order, the terms

of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

12.  <u>Marshaling</u>.  Neither the DIP Lenders nor the Prepetition First Lien Lenders shall be subject to (a) the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Prepetition First Lien Collateral, as applicable, or (b) the "equities of the case" exception in section 552(b) of the Bankruptcy Code.

13.  <u>Effect of Stipulations on Third Parties</u>.  Subject to the Challenge Period, the Debtors' Stipulations, admissions, releases, and agreements contained in this Final Order, including in paragraphs D and E of this Final Order, shall be binding upon the Debtors and any successor thereto (including any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtors) in all circumstances and for all purposes.  The Debtors' Stipulations, admissions, releases, and agreements contained in this Final Order, including in paragraphs D and E of this Final Order, shall be binding upon all other parties in interest, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases (including the Committee) and any other person or entity acting or seeking to act on behalf of the Debtors' estates in all circumstances and for all purposes unless, and only to the extent that: (a) such committee, or any other party in interest, with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter under the Bankruptcy Rules (subject to the limitations contained herein, including, among others, in this paragraph 13), by the earlier of (i)(x) with respect to parties in interest with requisite standing other than the Committee, seventy-five (75) calendar days after entry of the Interim Order and (y) with respect to the Committee, sixty (60) calendar days after the appointment of the Committee, and (ii) the Sale Hearing (as

defined in the Bid Procedures) (the time period established by the foregoing clauses (i) and (ii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of any of the Prepetition First Lien Obligations or the Prepetition Secured Liens, including any liens on commercial tort claims or the proceeds thereof, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against either the Prepetition First Lien Lenders or their respective Representatives in connection with matters related to the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, the Prepetition Secured Liens and the Prepetition First Lien Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such Challenge or claim and any Challenges or claims not so specified before the expiration of the Challenge Period shall be deemed forever waived, released and barred; *provided*, *further*, that the timely filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion and the specific subject matter of such standing motion until such motion is resolved or adjudicated by the Court; *provided*, *further*, that for the avoidance of doubt, notwithstanding anything else to the contrary in this Final Order, any chapter 7 or chapter 11 trustee appointed or elected in these Chapter 11 Cases, until the expiration of the Challenge Period, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to paragraph 13 to the extent such action is commenced prior to

expiration of the Challenge Period (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates with the requisite standing), shall be deemed to be a party to such action other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and Stipulations of the Debtors in this Final Order. The Challenge Period may only be extended with the prior written consent of the Prepetition First Lien Agent, or pursuant to an order of the Bankruptcy Court. If (x) no such Challenge is timely and properly filed during the Challenge Period, or (y) the Court does not rule in favor of the plaintiff in any such proceeding then, for all purposes in these Chapter 11 Cases and any Successor Cases (and after the dismissal of these Chapter 11 Cases or any Successor Cases): (i) the Debtors' stipulations, admissions, releases, and agreements contained in this Final Order, including those contained in paragraphs D and E of this Final Order, shall be binding on all parties in interest, including the Committee; (ii) the obligations of the Debtors under the Prepetition First Lien Loan Documents, including the Prepetition First Lien Obligations, shall constitute allowed claims (without the need to file a proof of claim) not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases and any Successor Cases; (iii) the Prepetition Secured Liens on the Prepetition First Lien Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, properly perfected, security interests and liens on the Prepetition First Lien Collateral, not subject to recharacterization, subordination, avoidance or other defense; and (iv) the Prepetition First Lien Obligations and the Prepetition Secured Liens on the Prepetition First Lien Collateral shall not be subject to any other or further claim or challenge by the Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including any

31208822.1

successor thereto (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including any successor thereto (including any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for the Debtor), whether arising under the Bankruptcy Code or otherwise, against the Prepetition First Lien Lenders and their Representatives arising out of or relating to any of the Prepetition First Lien Loan Documents shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, releases, and agreements contained in this Final Order, including those contained in paragraphs D and E of this Final Order, shall nonetheless remain binding and preclusive (as provided in this paragraph) on any statutory or non-statutory committee appointed or formed in the Chapter 11 Cases or any Successor Cases, including the Committee, and on any other person or entity, except to the extent that such stipulations, admissions, releases, and agreements were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction.  The Challenge Period may be extended only (i) with respect to the Prepetition First Lien Financing Agreement, with the consent of the applicable Prepetition First Lien Agent or (ii) by order of the Court for good cause shown.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee or any non-statutory committees appointed or formed in the Chapter 11 Cases or any Successor Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including Challenges with respect to the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, or the Prepetition Secured Liens.  The failure

of any party in interest, including the Committee, to obtain an order of the Court prior to the termination of the Challenge Period granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the termination of the Challenge Period as required under this paragraph 13 or to require or permit an extension of the Challenge Period. For the avoidance of doubt, the investigation and Challenge rights afforded to the Committee and any other party-in-interest hereunder shall not be deemed a recognition, consent or agreement not to object to such Committee's or party-in-interest's, as applicable, standing to assert any such claim or cause of action.

14.    <u>Fees & Expenses</u>.  The Debtors are authorized and directed, without any further order of the Court, to pay any and all reasonable and documented fees and expenses of the DIP Lenders, the DIP Agent, the Prepetition First Lien Lenders and the Prepetition First Lien Agent in connection with the DIP Financing, the Chapter 11 Cases and the Adequate Protection Obligations, as applicable, including the reasonable and documented fees and expenses of attorneys, advisors, accountants and other consultants and professionals (the "**Lender Professionals**"), whether incurred before, on or after the Petition Date and whether or not the transactions contemplated hereby are consummated, including, but not limited to, the Agent Fee (each under and as defined in the DIP Loan Agreement), and any other reasonable and documented fees and expenses incurred in connection with (a) the preparation, negotiation and execution of the DIP Orders, the DIP Loan Documents, and the Adequate Protection Obligations in connection with the Chapter 11 Cases; (b) the creation, perfection or protection of the DIP Liens, the Prepetition Secured Liens and the Adequate Protection Liens (including, without limitation, all search, filing and recording fees); (c) the on-going administration of the DIP Loan Documents (including, without limitation, the preparation, negotiation and execution of any amendments, consents, waivers, assignments,

restatements or supplements thereto) and the Chapter 11 Cases and any Successor Cases (including, without limitation, the filing of any proofs of claim); (d) the enforcement of the DIP Loan Documents, the DIP Orders, the Prepetition First Lien Loan Documents or the Adequate Protection Obligations; and (e) any legal proceeding relating to or arising out of the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, the DIP Facility or the other transactions contemplated by the DIP Loan Documents, the DIP Orders or the Chapter 11 Cases, including, subject to and in accordance with the Bid Procedures Order (once entered), the credit bid of the Prepetition First Lien Obligations and/or the DIP Obligations. The Lender Professionals shall not be required to file formal retention or fee applications with the Court. Solely with respect to any fees and expenses of the Lender Professionals incurred subsequent to the Petition Date, the Lender Professionals shall forward copies of summary invoices submitted to the Debtors' counsel, to the Debtors, to the U.S. Trustee, counsel for the Committee and such other parties as the Court may direct. The summary invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses; *provided*, *however*, that such summary invoices shall not be required to contain time entries but shall include a general, brief description of the nature of the matters for which services were performed, and may be redacted to the extent necessary to protect any information subject to the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege. If the Debtors, U.S. Trustee or the Committee objects to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten (10) Business Days of receipt of such invoices (the "**Review Period**"), then the Debtors, the U.S. Trustee, or the Committee, as the case may be, shall file with the Court and serve on such Lender Professional an objection (the "**Fee Objection**"), and any failure by any such party to file a Fee Objection within the Review Period

shall constitute a waiver of any right of such party to object to the applicable invoice. Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of a Lender Professional shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection.  If no written objection is received by 5:00 PM (Eastern Standard Time), on the last day of the Review Period, the Debtors shall pay such invoices promptly and in no event later than one (1) Business Day thereafter.  If an objection to a Lender Professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice, and in no event later than two (2) Business Days of such request, and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Such reasonable and documented fees and expenses paid by the Debtors in accordance with this paragraph 14 shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

15.    Carve Out.

(a)    Carve Out. As used in this Final Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (in each case, including any restructuring, sale, success or other transaction fee of any investment

31208822.1

bankers or financial advisors of the Debtors or any Committee when earned: (a) upon the completion or consummation of any transaction in these Chapter 11 Cases that occurs on or prior to the date that is 180 calendar days after the Petition Date, and (b) pursuant to the terms and conditions of an engagement letter approved by the Court in these Chapter 11 Cases) (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice and, with respect to Committee Professionals not to exceed the aggregate amounts set forth for the Committee Professionals in the Approved Budget; and (iv) Allowed Professional Fees of Debtor Professionals in an amount not to exceed $500,000 and Allowed Professional Fees of Committee Professionals in an amount not to exceed $200,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (or, after the DIP Obligations have been Paid in Full, the Prepetition First Lien Agent under the Prepetition First Lien Loan Documents), to the Debtors, their lead restructuring counsel, the U.S. Trustee, and lead counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of

the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Delivery of Weekly Fee Statements.  Not later than 7:00 p.m. New York time on the Wednesday (or next business day if the Wednesday is not a business day) of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "**Estimated Fees and Expenses**") incurred during the preceding week by such Professional Person (through Saturday of such week, the "**Calculation Date**"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "**Weekly Statement**"); provided, that, within one (1) Business Day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "**Final Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date to the DIP Agent and Prepetition First Lien Agent.  If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve Out Trigger Notice Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period may be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)    <u>Carve Out Reserves</u>.  Commencing with the week ended December 15, 2023, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of (a) the greater of (x) the aggregate amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the immediately prior Wednesday to the Debtors and the DIP Agent, and (y) the aggregate amount of Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (b) the Post Carve Out Trigger Notice Cap, plus (c) an amount equal to the amount of Allowed Professional Fees set forth in the Budget for the week occurring after the most recent Calculation Date.  The Debtors shall deposit such amounts into a segregated account not subject to the control of the DIP Agent in trust, exclusively for the payment of Allowed Professional Fees (such account, the "**Pre-Carve Out Trigger Notice Reserve Account**") to pay such Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserves**") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Pre-Carve Out Trigger Notice Reserve Account.  For the avoidance of doubt, the DIP Lenders shall have no obligation to fund aggregate fees and expenses (a) other than with respect to Debtor and Committee Professionals, in excess of the amounts set forth in the Approved Budget and (b) in excess of the DIP Commitments.  Other than with respect to Debtor and the Committee Professionals, Professional Person's entitlement (if any) to any funds in the Pre-Carve Out Trigger Notice Reserves shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such Professional Person.

(d)    On the day on which a Carve Out Trigger Notice is given by the DIP Agent to the Debtors with a copy to counsel to the Committee and the U.S. Trustee  (the "**Termination**

**Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to, and the Debtors shall, utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund, to the extent not already funded, (A) the Pre-Carve Out Trigger Notice Reserve Account in an amount equal to the aggregate amount of all Estimated Fees and Expenses reflected in the Final Statements delivered to the Debtors and the DIP Agent plus the amounts set forth in (a)(i) and (a)(ii) of this paragraph above, and (B) after funding the Pre-Carve Out Trigger Notice Reserve Account, a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.

(e)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until indefeasibly paid in full. If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, subject to clause (iii), below, all remaining funds shall be distributed first to the DIP Agent for the benefit of the DIP Lenders on account of the applicable DIP Obligations until Paid in Full, and thereafter to the Prepetition First Lien Secured Parties. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been Paid in Full, in which case any such excess shall be paid to the Prepetition First Lien Lenders. Notwithstanding anything to the contrary in the DIP Loan Documents, Prepetition First Lien Loan Documents, or this Final Order, if either of the Carve Out Reserves is

not funded in full in the amounts set forth in this paragraph 15, then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively (subject to the limits contained in the Post-Carve Out Trigger Notice Cap), shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 15, prior to making any payments to the DIP Agent or the Prepetition First Lien Secured Parties, as applicable.  Notwithstanding anything to the contrary in the DIP Loan Documents, Prepetition First Lien Loan Documents, or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition First Lien Agent shall not sweep or foreclose on cash (including cash received as a result of a sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the DIP Loan Documents.  Further, notwithstanding anything to the contrary in this Final Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute Loans (as defined in the DIP Loan Agreement) or increase or reduce the DIP Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (iii) in no way shall the Current DIP Budget, any subsequent Approved Budget, the Carve Out, the Post Carve Out Trigger Notice Cap or the Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of Allowed Professional Fees due and payable by the Debtors to the Debtor Professionals nor as a cap or limitation on the amount of fees described in clause (i) of the definition of Carve Out set forth above.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens,

and the DIP Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition First Lien Obligations.

(f)     Payment of Allowed Professional Fees.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(g)     No Direct Obligation to Pay Allowed Professional Fees.  None of the DIP Agent, DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition First Lien Agent or the Prepetition First Lien Lenders, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement. Nothing in this Final Order or otherwise (including in connection with the approval of any Approved Budget) shall be construed as consent or approval by the DIP Agent, the DIP Lenders, or the Prepetition First Lien Agent or the Prepetition First Lien Lenders to any fees and expenses incurred by Committee Professionals in connection with any pleadings filed in connection with any Challenge, the prosecution of any such Challenge, any pleadings seeking standing to file a Challenge before the expiration of the Challenge Period, or otherwise in contravention of this Final Order, the DIP Loan Documents or the Prepetition First Lien Loan Documents, and the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders reserve all rights with respect to objecting to or otherwise contesting the allowance of any fees and expenses of any Professional Persons, including the fees and expenses of any Committee

Professionals incurred in connection with any pleadings filed in connection with any Challenge, the prosecution of any such Challenge, any pleadings seeking standing to file a Challenge before the expiration of the Challenge Period, or otherwise in contravention of this Final Order, the DIP Loan Documents or the Prepetition First Lien Loan Documents.

(h)    <u>Payment of Allowed Professional Fees on or After the Termination Declaration Date</u>.    Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall constitute part of the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code, and applicable law.

16.    <u>Protection of DIP Lenders' Rights</u>.

(a)    To the extent the Prepetition First Lien Secured Parties have possession of any Prepetition First Lien Collateral or DIP Collateral or have control with respect to any Prepetition First Lien Collateral or DIP Collateral, or have been noted as a secured party on any certificate of title for a titled good constituting Prepetition First Lien Collateral or DIP Collateral, then the applicable Prepetition First Lien Agent and/or the Prepetition First Lien Lenders, as applicable, shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders, and shall comply with the instructions of the DIP Agent (acting on behalf of the DIP Lenders) with respect to the exercise of such control.

(b)    Other than as expressly consented to in writing by the DIP Agent, any proceeds of Prepetition First Lien Collateral received by the Prepetition First Lien Lenders in connection with

the exercise of any right or remedy (including setoff) relating to the Prepetition First Lien Collateral or otherwise received by the Prepetition First Lien Lenders (other than on account of the Adequate Protection Obligations) shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Lenders in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.

17.    Access to DIP Collateral.   Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing, the DIP Agent shall, subject to the applicable notice provisions in this Final Order, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlord thereunder; *provided*, that the DIP Agent shall be obligated only to pay rent of the Debtors that first accrues after the written notice referenced above is delivered and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis.   Upon the Payment in Full of the DIP Obligations, the Prepetition First Lien Agent shall inure to all rights provided under this paragraph 17.  Nothing contained herein shall require the DIP Agent or any other DIP Loan Party to assume any lease as a condition to the rights afforded in this paragraph 17.

18.    Limitation on Charging Expenses Against Collateral.   No costs or expenses of administration of the Chapter 11 Cases or any Successor Cases, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered

from the DIP Collateral (including Cash Collateral) or the Prepetition First Lien Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lenders or the Prepetition First Lien Lenders, in their respective capacities, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lenders or the Prepetition First Lien Lenders and nothing contained in this Final Order shall be deemed to be a consent by the DIP Lenders or the Prepetition First Lien Lenders to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

19.     <u>Payments Free and Clear</u>.  Any and all payments or proceeds remitted to the DIP Agent or DIP Lenders or subject to paragraph 13, the Prepetition First Lien Agent or Prepetition First Lien Lenders pursuant to the provisions of this Final Order or the DIP Loan Documents shall be irrevocable and received free and clear of any claim, charge, assessment or other liability, whether asserted or assessed by, through or on behalf of the Debtors.

20.     <u>Rights of Prepetition First Lien Lenders Adequately Protected</u>.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition First Lien Lenders.

21.     <u>Prepetition Secured Lender Consent; Right to Seek Additional Adequate Protection; No Admission</u>.  The Prepetition First Lien Lenders are deemed to have consented to the Adequate Protection Obligations, the priming of the Prepetition Secured Liens by the DIP Liens, and the use of Cash Collateral provided for herein; *provided*, *however*, that such consent is expressly conditioned upon the entry of this Final Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession

financing other than the DIP Facility provided under the DIP Loan Documents; *provided*, *further*, that such consent shall be of no force and effect in the event this Final Order is reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition First Lien Agent) or the DIP Loan Documents and DIP Facility as set forth herein are not approved.  The Adequate Protection Obligations provided to the Prepetition First Lien Lenders hereunder adequately protects the Prepetition First Lien Lenders as of the date hereof; *provided*, *however*, this Final Order: (a) is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition First Lien Lenders to request additional or alternative forms of adequate protection from the Debtors; and (b) shall not be deemed an admission, acknowledgement, or stipulation by the Prepetition First Lien Lenders that the Prepetition First Lien Lenders are in fact adequately protected by the terms and conditions of this Final Order or otherwise following the date of this Final Order.

22.    Perfection of DIP Liens and Adequate Protection Liens.

(a)    This Final Order shall be sufficient and conclusive evidence of the creation, validity, perfection and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, deed of trust, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens or to entitle the DIP Agent, the DIP Lenders and the Prepetition First Lien Secured Parties to the priorities granted herein; *provided that* any adequate protection granted or paid hereunder and under the operative documents on account of the Prepetition First Lien Obligations or Prepetition

Secured Liens that is the subject of a successful Challenge commenced before expiration of the Challenge Period may also be challenged to the extent of such Challenge and shall be subject to disgorgement or recharacterization to the extent of and consistent with a successful Challenge.

(b)     The DIP Agent, DIP Lenders, Prepetition First Lien Agent and Prepetition First Lien Lenders are hereby authorized, but not required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, deposit account control agreements or to take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, including, without limitation, with respect to the DIP Liens and the Adequate Protection Liens.  Whether or not the DIP Lenders or the Prepetition First Lien Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, deposit account control agreements or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, properly perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Final Order, without the necessity of filing or recording any financing statement, trademark filing, copyright filing, mortgage, notice of lien, deposit account control agreement or similar perfection document in any jurisdiction.  Notwithstanding the foregoing, upon the request of the DIP Agent or the Prepetition First Lien Agent, the Debtors, without any further consent of any party, are authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Lenders and the Prepetition

First Lien Lenders to further validate, perfect, preserve and enforce the DIP Liens and Adequate Protection Liens, as applicable; *provided that* any adequate protection granted or paid hereunder and under the operative documents on account of the Prepetition First Lien Obligations or Prepetition Secured Liens that is the subject of a successful Challenge commenced before expiration of the Challenge Period may also be challenged to the extent of such Challenge and shall be subject to disgorgement or recharacterization to the extent of and consistent with a successful Challenge.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(c)      A certified copy of this Final Order may, in the discretion of the DIP Lenders and the Prepetition First Lien Lenders, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit the DIP Agent, DIP Lenders, Prepetition First Lien Agent and Prepetition First Lien Lenders to take all actions, as applicable, referenced in this subparagraph (c) and the immediately preceding subparagraph (b).

(d)      Notwithstanding anything to the contrary in the Motion, the DIP Loan Documents or this Final Order, for purposes of this Final Order, in no event shall the DIP Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract or agreement or other property right to which the Debtors are a party, or any such relevant Debtors' rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in:  (i) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of the Debtors therein or (ii) a breach or termination pursuant to the terms of, or a default

under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (i) and (ii), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts or agreements or other property rights are collectively referred to as the "**Specified Contracts**"); *provided*, *however*, the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims and Adequate Protection 507(b) Claim shall in all events attach to and be payable all proceeds, products, offspring or profits from any and all Specified Contracts (including from the sale, transfer, disposition or monetization thereof).

23.    Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner, any responsible officer or any other estate representative subsequently appointed in these Chapter 11 Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) or in violation of the DIP Loan Documents at any time before the Payment in Full of (a) all DIP Obligations and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, and (b) all Prepetition First Lien Obligations, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such financing is secured by any DIP Collateral or Prepetition First Lien Collateral, then all of the cash proceeds derived from such credit or debt shall immediately be turned over first to the DIP Agent, to be applied as set forth the DIP Loan Documents, and second to the Prepetition First Lien Agent to be applied as set forth in the Prepetition First Lien Loan Documents, except as provided under such confirmed plan (if applicable).

24.    Disposition of DIP Collateral; Rights of DIP Lenders.

(a)    The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any DIP Collateral or Prepetition First Lien Collateral other than in the ordinary course of business

without bankruptcy court approval and the prior written consent of the DIP Agent and the Prepetition First Lien Agent, each as applicable (and no such consent shall be implied, from any other action, inaction or acquiescence), except as expressly permitted in the DIP Loan Documents, Prepetition First Lien Loan Documents, the Interim Order and this Final Order, including budgets attached thereto, as applicable.

(b)    The Debtors will (i) maintain books, records and accounts to the extent, and as required by, the DIP Loan Documents, (ii) cooperate with, consult with, and provide to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders, all such information and documents that any or all of the Debtors are obligated to provide under the DIP Loan Documents or the provisions of this Final Order or as otherwise reasonably requested by the DIP Agent or the Prepetition First Lien Agent, (iii) permit consultants, advisors and other representatives (including third party representatives) of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders (as applicable) to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees, independent public accountants and other professional advisors as, and to the extent required by, the DIP Loan Documents or the Prepetition First Lien Loan Documents, (iv) permit the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders and their respective consultants, advisors and other representatives, to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, and (v) permit the DIP Agent and the Prepetition First Lien Agent to

conduct, at their reasonable direction and at the Debtors' sole cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals in respect of any or all of the DIP Collateral and the Prepetition First Lien Collateral, in each case, in accordance with the applicable DIP Loan Documents and the Prepetition First Lien Loan Documents.

(c)     No Debtor shall object to the DIP Agent and/or the Prepetition First Lien Agent submitting a credit bid with respect to any sale of the Debtors' assets in accordance with paragraph 31 hereunder and subject to the rights preserved in paragraph 13 hereof and in accordance with the Court approved bidding procedures.

25.     <u>Maintenance of DIP Collateral</u>.  Until all DIP Obligations and Prepetition First Lien Obligations are Paid in Full and all Adequate Protection Obligations are indefeasibly paid in full and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, the Debtors shall (a) insure the DIP Collateral as required under the DIP Loan Documents and the Prepetition First Lien Loan Documents, as applicable; and (b) maintain the cash management system consistent with the terms and conditions of the Cash Management Order (as defined below), or as otherwise required by the DIP Loan Documents.

26.     <u>Preservation of Rights Granted Under This Final Order</u>.

(a)     Other than the Carve Out and other claims and liens expressly granted or permitted by this Final Order and the DIP Loan Documents, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the DIP Lenders or the Prepetition First Lien Lenders shall be permitted while any of the DIP Obligations, Adequate Protection Obligations or Prepetition First Lien Obligations remain outstanding.  No lien or security interest shall be granted to any other party in any of the Specified Contracts without first granting such lien or security interest to the DIP Lenders or the Prepetition First Lien Lenders, as applicable.  It shall be an Event

of Default under this Final Order if, in any of these Chapter 11 Cases or any Successor Cases, any order is entered granting any claim or lien in contravention of this paragraph 26(a).

(b)    Notwithstanding any order that may be entered dismissing the Chapter 11 Cases or any Successor Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered and subject to the Carve Out: (i) the DIP Superpriority Claims, the Adequate Protection 507(b) Claim, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations are Paid in Full and Adequate Protection Obligations shall have been indefeasibly paid in full (and that such DIP Superpriority Claims, Adequate Protection 507(b) Claim, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) the Court shall, to the extent permitted by applicable law, retain exclusive jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(c)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred before the actual receipt of written notice by the DIP Lenders or the Prepetition First Lien Lenders, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred or granted by the Debtors to or for the benefit of the DIP Agent, the DIP Lenders, the

Prepetition First Lien Agent or the Prepetition First Lien Lenders, as the case may be, before the actual receipt of written notice by the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Lenders and the Prepetition First Lien Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order, and the DIP Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)　　Except as expressly provided in this Final Order or in the DIP Loan Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Secured Parties and the Prepetition First Lien Secured Parties granted by the provisions of this Final Order and the DIP Loan Documents shall survive, and shall not be modified, impaired or discharged by: (i) subject to the Carve Out, the entry of an order converting the Chapter 11 Cases to a case under chapter 7, dismissing the Chapter 11 Cases or any Successor Cases, or by any other act or omission; (ii) the entry of an order approving the sale of any DIP Collateral or Prepetition First Lien Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Loan Documents); or (iii) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Loan Documents shall continue in these Chapter 11 Cases, in any Successor Cases or following dismissal of the Chapter 11 Cases or any Successor Cases, as applicable, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection

Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Lenders and the Prepetition First Lien Lenders granted by the provisions of this Final Order and the DIP Loan Documents shall continue in full force and effect until the DIP Obligations are Paid in Full and Adequate Protection Obligations are indefeasibly paid in full, as set forth herein and in the DIP Loan Documents, and the DIP Commitments have been terminated.

(e)     The entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the right of any party (including, but not limited to, the DIP Secured Parties and the Prepetition First Lien Secured Parties) to object to the allowance of any professional fees or expenses of any Professional Person, which rights are expressly preserved, (b) the DIP Secured Parties' and Prepetition First Lien Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (c) any of the rights of any of the DIP Secured Parties and the Prepetition First Lien Secured Parties under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (d) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the DIP Secured Parties or Prepetition First Lien Secured Parties.

27.     <u>Cash Management</u>.    Unless otherwise agreed by the DIP Lenders and the Prepetition First Lien Lenders, in their respective capacities, the Debtors shall maintain their cash management arrangements in all material respects in a manner consistent with that described in the applicable "first-day" order and the related motion seeking authorization to continue the

31208822.1

64

Debtors' cash management arrangements (the "**Cash Management Order**").  Subject to this Final Order, the Debtors and the financial institutions where the Debtors maintain deposit accounts (as identified in the Cash Management Order), are authorized and directed to remit, without offset or deduction, funds in such deposit accounts upon receipt of any direction to that effect from the DIP Agent in accordance with the DIP Loan Documents.

28.    <u>Limitation on Use of DIP Loans and DIP Collateral</u>.  Notwithstanding any other provision of this Final Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition First Lien Collateral or any portion of the Carve Out, may be used directly or indirectly by the Debtors, the Committee, or any trustee appointed in the Chapter 11 Cases or any Successor Cases, or any other person, party or entity (a) to seek authorization to obtain liens or security interests that are senior to, or *pari passu* with, the DIP Liens or the Prepetition Secured Liens (except to the extent expressly set forth herein); (b) in connection with the investigation (including by way of examination or discovery proceeding), preparation, assertion, initiation, joinder, support for, or prosecution of any claims, counter-claims, causes of action, adversary proceedings, applications, motions, objections, defenses or other litigation or contested matter (x) against, or adverse to the interests of, in any capacity, the DIP Lenders or the Prepetition First Lien Lenders or their respective Representatives with respect to any transaction, occurrence, omission, action or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, (i) any claims or causes of action arising under chapter 5 of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the DIP Superpriority Claims, the DIP Liens, the DIP Loan Documents, the liens of the Prepetition First Lien Agent and Prepetition First Lien Lenders, the Prepetition First

Lien Loan Documents and the Prepetition First Lien Obligations; (iv) any action seeking to invalidate, modify, set aside, avoid or subordinate, in whole or in part, the DIP Obligations or the Prepetition First Lien Obligations; or (v) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either (A) the DIP Agent or the DIP Lenders hereunder or under any of the DIP Loan Documents, or (B) the Prepetition First Lien Agent or the Prepetition First Lien Lenders under any of the Prepetition First Lien Loan Documents (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Agent's or the DIP Lenders' assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents, the Interim Order, and this Final Order), or any action purporting to do the foregoing in respect of the Prepetition First Lien Obligations, liens on the Prepetition First Lien Collateral, DIP Obligations, DIP Liens on the DIP Collateral, DIP Superpriority Claims, or the Adequate Protection Obligations, Adequate Protection Liens and Adequate Protection 507(b) Claim granted to the Prepetition First Lien Lenders, as applicable, under the Interim Order and this Final Order, as applicable, or (y) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition First Lien Obligations, the Adequate Protection Obligations, the DIP Obligations, or the liens, claims, rights, or security interests granted under this Final Order and the DIP Loan Documents, including, in each case for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided*, *however*, advisors to any Committee may investigate any potential challenges with respect to the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, or the Prepetition Secured Liens during the Challenge Period at an aggregate expense for such investigation, but not litigation,

prosecution, objection or challenge thereto, not to exceed $100,000.00 in the aggregate; (c) to prevent, hinder, or otherwise delay the Prepetition First Lien Lenders or the DIP Lenders, as applicable, in the enforcement or realization on the Prepetition First Lien Obligations, Adequate Protection Obligations, Prepetition First Lien Collateral, DIP Obligations, DIP Collateral, and the liens, claims, and rights granted to such parties under this Final Order, each in accordance with the DIP Loan Documents, the Prepetition First Lien Loan Documents, the Interim Order or this Final Order, other than, and subject to the notice period set forth in paragraph 11 hereof, to seek a determination that an Event of Default has not occurred or is not continuing; (d) to seek to modify any of the rights and remedies granted to the Prepetition First Lien Secured Parties or the DIP Secured Parties under this Final Order, the Prepetition First Lien Loan Documents or the DIP Loan Documents, as applicable; (e) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the Carve Out or the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection 507(b) Claim granted to the Prepetition First Lien Lenders and the DIP Lenders unless all DIP Obligations, Adequate Protection Obligations and claims granted to the DIP Lenders or Prepetition First Lien Lenders under this Final Order, have been indefeasibly paid in full or otherwise agreed to in writing by the DIP Lenders and the Prepetition First Lien Lenders; or (f) to seek to pay any amount on account of any claims arising before the Petition Date unless such payments are agreed to in writing by the DIP Lenders, authorized in "first day" orders or as otherwise approved by the Court or are otherwise included in the Approved Budget, subject to Permitted Variances.  For the avoidance of doubt, nothing in this paragraph 28 shall prohibit the Debtors from responding to, objecting to, or complying with discovery requests by a statutory unsecured creditors' committee (if any) appointed in the chapter 11 cases, in whatever form, made

in connection with any such investigation, the payment of any Debtor Professionals fees related thereto, or from contesting or challenging whether an Event of Default, as applicable, has in fact occurred, from the proceeds of the DIP Loans.

29.    <u>Exculpation; Loss or Damage to Collateral</u>.    Subject to paragraph 13 hereof, nothing in this Final Order, the DIP Loan Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition First Lien Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.    The DIP Secured Parties and the Prepetition First Lien Secured Parties shall not, in any way or manner, be liable or responsible for (a) the safekeeping of the DIP Collateral or the Prepetition First Lien Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any Diminution in Value thereof, or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral and the Prepetition First Lien Collateral shall be borne by the Debtors.

30.    <u>Indemnification</u>.  The Debtors shall indemnify and hold harmless the DIP Secured Parties and the Prepetition First Lien Secured Parties in accordance with the terms and conditions of the DIP Loan Documents and the Prepetition First Lien Loan Documents, as applicable.  For the avoidance of doubt, indemnification obligations (if any) arising under the Prepetition First Lien Loan Documents shall not be postpetition obligations of the Debtors, whether or not disputed by the Debtors.

31.    <u>Credit Bidding</u>.  Subject to section 363(k) of the Bankruptcy Code, upon entry of this Final Order, (a) the DIP Agent shall have the right to credit bid, in accordance with the DIP

Loan Documents, on a dollar for dollar basis, up to the full amount of the DIP Obligations in any sale of the DIP Collateral in accordance with section 363(k) of the Bankruptcy Code and (b) subject to paragraph 13 of this Final Order, the Prepetition First Lien Agent shall have the right to credit bid up to the full amount of the Adequate Protection Obligations and the Prepetition First Lien Obligations in the sale of any Prepetition First Lien Collateral whether (with respect to both (a) and (b) above) pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or a plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for the Debtors under section 725 of the Bankruptcy Code, and each of the DIP Agent and the Prepetition First Lien Agent, in their respective capacities as such, shall be deemed a qualified bidder (or such analogous term or capacity) in connection with any such sale.

32.    <u>Application of Sale Proceeds</u>.  Notwithstanding anything herein to the contrary: (a) the right of the DIP Lenders to consent to the sale of any portion of the DIP Collateral, on terms and conditions acceptable to the DIP Lenders, are hereby expressly reserved and not modified, waived or impaired and (b) unless otherwise ordered by the Court, including without limitation pursuant to the Sale Order or pursuant to paragraph 13 above, all cash proceeds generated from the sale of any assets secured by the Prepetition Secured Liens or the DIP Liens shall be paid to the DIP Lenders and the Prepetition First Lien Lenders upon the closing of such sale, or in the case of a credit bid, reduced on a dollar for dollar basis, for permanent application against the obligations owing by the Debtors under the DIP Loan Documents in accordance with the terms and conditions of the DIP Orders, the DIP Loan Documents and the Prepetition First Lien Loan Documents, each as applicable, until such time as all DIP Obligations and the Prepetition First Lien Obligations have been Paid in Full and all Adequate Protection Obligations have been indefeasibly paid in full.

33.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate the terms and provisions of this Final Order to the extent necessary to perform all acts and to make, execute, and deliver all instruments and documents (including the DIP Loan Agreement, any security and pledge agreement, and any mortgage to the extent contemplated thereby), and to pay all fees (including all amounts owed to the DIP Lenders and the DIP Agent under the DIP Loan Documents) that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation, to (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection 507(b) Claim; (b) permit the Debtors to perform such acts as the DIP Agent and the Prepetition First Lien Agent may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition First Lien Secured Parties under the DIP Loan Documents, the DIP Facility and this Final Order; and (d) authorize the Debtors to pay, and the DIP Secured Parties and the Prepetition First Lien Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order, the DIP Loan Documents and the Approved Budget.

34.    <u>Final Order Governs</u>.  In the event of any inconsistency between the provisions of this Final Order, on the one hand, and the DIP Loan Documents, the Prepetition First Lien Loan Documents or any other order entered by the Court (other than this Final Order), on the other hand, the provisions of this Final Order shall govern.  Notwithstanding anything to the contrary in any other order entered by the Court, any payment made pursuant to, and any authorization contained in any other order entered by the Court shall be subject to the Approved Budget.

31208822.1

35.    <u>No Modification of Final Order</u>.   Until and unless the DIP Obligations, and Prepetition First Lien Obligations have been Paid in Full and the Adequate Protection Obligations have been indefeasibly paid in full, and all commitments to extend credit under the DIP Facility have been terminated, the Debtors shall not seek or consent to, directly or indirectly, without the prior written consent of (A) the DIP Agent and (B) with respect to any provisions that impact the legal or economic rights of the Prepetition First Lien Secured Parties, the applicable Prepetition First Lien Agent, any material modification, stay, vacatur or amendment to this Final Order.

36.    <u>Binding Effect; Successors and Assigns</u>.   Subject to paragraph 13 of this Final DIP Order, the DIP Loan Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases and any Successor Cases, including the Debtors, the DIP Secured Parties, the Prepetition First Lien Secured Parties, the Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estates of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors), and shall inure to the benefit of the DIP Lenders, the Prepetition First Lien Lenders, and the Debtors and their respective successors and assigns; *provided*, *however*, excluding the Carve Out, the DIP Lenders and the Prepetition First Lien Lenders shall have no obligation to permit the use of the DIP Collateral or Prepetition First Lien Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

37.     <u>No Liability to Third Parties</u>.  Except as explicitly provided for herein or in any of the DIP Loan Documents, the Debtors stipulate and the Court finds that the DIP Lenders and the Prepetition First Lien Lenders, in their respective capacities as such, shall not (a) be deemed to have liability to any third party or be deemed to be in control of the operation of any of the Debtors or to be acting as a "controlling person," "responsible person," "owner or operator," or "participant" with respect to the operation or management of any of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any other federal, state, or applicable international statute or regulation) as a result of their consent to the use of Cash Collateral hereunder, (b) be liable to any current or former employee of the Debtors under any applicable law, including, without limitation, the Workers Adjustment and Retraining Notification Act and similar state laws, or (c) owe any fiduciary duty to any of the Debtors, their creditors or estates, or shall constitute or be deemed to constitute a joint venture or partnership with any of the Debtors as a result of their extension of credit under the DIP Loan Documents or the Prepetition First Lien Loan Documents.

38.     <u>No Standing Granted</u>.  Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any committee appointed in the Chapter 11 Cases or any Successor Cases, including the Committee, standing or authority to pursue any challenge or other cause of action belonging to the Debtors or their estates with respect to the Prepetition First Lien Loan Documents or the Prepetition First Lien Obligations.

39.     <u>Proofs of Claim</u>.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or any Successor Cases to the contrary, neither the Prepetition First Lien Secured Parties nor the DIP Lenders or DIP Agent shall be

required to file proofs of claim in the Chapter 11 Cases or any Successor Cases to assert claims on behalf of themselves for payment of the Prepetition First Lien Obligations or the DIP Obligations, including any principal, unpaid interest (including default interest therein), fees, expenses, and other amounts under the Prepetition First Lien Loan Documents or the DIP Loan Documents, as applicable.  The statements of claim in respect of the Prepetition First Lien Obligations or the DIP Obligations, as set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Final Hearing, are deemed sufficient to, and do, constitute proofs of claim in respect of such debt and such secured status.  Subject to the preservation rights provided in paragraph 13 of this hereof, the Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition First Lien Secured Parties in respect of all of the Prepetition First Lien Obligations and for the DIP Lenders and DIP Agent in respect of all of the DIP Obligations. In addition, the Prepetition First Lien Secured Parties and the DIP Lenders and DIP Agent shall not be required to file any request for allowance or payment of any administrative expenses, and this Final Order shall be deemed to constitute a timely filed request for allowance or payment of any Prepetition First Lien Obligation or DIP Obligation constituting administrative expenses, as applicable.

40.     No Third-Party Rights.  Except as explicitly provided for herein or in any of the DIP Loan Documents, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.

41.     No Waiver.  No delay or failure by the Prepetition First Lien Agent, Prepetition First Lien Lenders, DIP Agent or DIP Lenders in the exercise of their respective rights and remedies under the DIP Loan Documents, the Prepetition First Lien Loan Documents or this Final

31208822.1

Order, as applicable, shall constitute a waiver, in whole or in part, of any of such party's rights hereunder or otherwise.

42.   <u>Insurance</u>.  Upon entry of this Final Order and to the fullest extent provided by applicable law, to the extent that the Prepetition First Lien Lenders and/or the Prepetition First Lien Agent are listed as loss payee(s) under the Debtors' insurance policies, including any directors and officers insurance policy, that in any way relate to the DIP Collateral, the DIP Lenders and/or DIP Agent, as appropriate, are also deemed to be the loss payee(s) under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in the order of priorities set forth herein.

43.   <u>No Superior Rights of Reclamation</u>.  The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Lien; rather, any such alleged claims arising or asserted as a right of reclamation (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) shall have the same rights and priority with respect to the Prepetition Secured Liens as such claim had on the Petition Date.

44.   <u>Joint and Several Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates; *provided*, *however*, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations and Adequate Protection Obligations in accordance with the terms hereof and the DIP Loan Documents.

45.   <u>Effectiveness</u>.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable as of the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be

immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

46.    <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

47.    <u>Payments Held in Trust</u>.  Except as expressly permitted in this Final Order or the DIP Loan Documents, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source before Payment in Full of all DIP Obligations and indefeasible payment in full of the Adequate Protection Obligations under the DIP Loan Documents and termination of the DIP Commitments in accordance with the DIP Loan Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Lenders and the Prepetition First Lien Lenders and shall immediately turn over such proceeds to the DIP Lenders and/or the Prepetition First Lien Lenders, as applicable, or as otherwise instructed by the Court, for application in accordance with the DIP Loan Documents and this Final Order.

48.    <u>Bankruptcy Rules</u>.  The requirements of the Local Rules and Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

49.    <u>Necessary Action</u>.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

50.    <u>Release of DIP Secured Parties and Prepetition First Lien Secured Parties</u>.  Upon entry of this Final Order, subject to paragraph 13 of this Final Order, the Debtors, on their own behalf and their estates, and any successor forever and irrevocably, to the maximum extent

permitted by applicable law: (i) release, discharge, and acquit, each of the DIP Secured Parties and

Prepetition First Lien Secured Parties and each of their former or current officers, employees,

directors, agents, representatives, owners, members, partners, financial advisors, legal advisors,

shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors-in-

interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies,

causes of action, indebtedness and obligations, of every type, including, without limitation, any

so-called "lender liability" or equitable subordination claims or defenses, solely with respect to or

relating to the negotiation and entry into the DIP Loan Documents and the use of Cash Collateral;

and (ii) waive, discharge and release any and all defenses (including, without limitation, offsets

and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability, and

avoidability of the DIP Liens and the DIP Obligations.

51.    <u>Discharge</u>.  Except as otherwise agreed in writing by the DIP Agent and the

Prepetition First Lien Agent, the DIP Obligations, Prepetition First Lien Obligations and Adequate

Protection Obligations shall not be discharged by the entry of an order confirming any plan of

reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d)

of the Bankruptcy Code, unless such obligations have been Paid in Full, on or before the effective

date of such confirmed plan.  If any of the Debtors propose or support any plan of reorganization

or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving

such sale, that is not conditioned upon the Payment in Full (including by credit bid) of the DIP

Obligations, Prepetition First Lien Obligations, and Adequate Protection Obligations (a

"<u>Prohibited Plan or Sale</u>") without the prior written consent of the DIP Agent and the Prepetition

First Lien Agent, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an

order with respect thereto, shall constitute an Event of Default under the DIP Loan Documents and

such date shall constitute a Termination Date; provided that the DIP Agent and DIP Lenders have agreed that the plan and sale documents filed with the Court on the Petition Date are acceptable and shall not include a Prohibited Plan or Sale.

52.     <u>Assignment of DIP Obligations</u>.   The DIP Lenders may assign any or all of their rights or obligations under the DIP Loan Agreement at any time, to any other person, without the consent of any DIP Loan Party.   Each DIP Lender shall have the right to sell participations in its DIP Loans, subject to any limitations set forth in the DIP Loan Documents, without the consent of any DIP Loan Party.

53.     <u>Retention of Jurisdiction</u>.   The Court shall, to the extent permitted by applicable law, retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

**Dated: January 23rd, 2024**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**

31208822.1