**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | Ref. Docket No. 20 |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR
THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(II) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (III) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES, (IV) SCHEDULING A SALE HEARING AND APPROVING THE
FORM AND MANNER OF NOTICE THEREOF
AND (V) GRANTING RELATED RELIEF**

Upon the *Motion of the Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into the Stalking Horse APA, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* [Docket No. 20] (the "Motion")[2] filed by the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2] Capitalized terms used but not defined herein shall have the respective meanings given to such terms in the Motion or in the Bidding Procedures, as applicable.

cases (the "Chapter 11 Cases"); and the Court having reviewed the Motion, the First Day Declaration [Docket No. 14], and the Han Declaration [Docket No. 21]; and the Court having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court on January 23, 2024 to consider certain of the relief requested in the Motion (the "Bidding Procedures Hearing"); and after due deliberation, this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion at the Bidding Procedures Hearing is in the best interests of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Local Rules 2002-1, 6004-1, and 9006-1.C. Notice of the Motion and the Bidding Procedures Hearing was sufficient under the circumstances and no other or further notice need be provided.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.     The Bidding Procedures were negotiated in good faith and at arm's length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Debtors' Assets.  The process for selecting the Stalking Horse Bidder (as defined below) was fair and appropriate under the circumstances and in the best interests of the Debtors' estates.  The bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") are fair, reasonable, and appropriate and are designed to maximize the value of the proceeds of the sale the Debtors' assets (the "Assets").

4.     The Bidding Procedures comply with the requirements of Local Rule 6004-1(c)

5.     The procedures set forth herein regarding the Debtors' assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with the sale of the Assets (the "Assumption and Assignment Procedures") are fair, reasonable, and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

6.     The Debtors have articulated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures; (ii) the form and manner of notice of the Bidding Procedures, one or more auctions of the Assets (the "Auction"), and one or more hearings to consider approval of a sale or sales of the Assets (the "Sale Hearing"), substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (a) the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Amounts") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with the sale of the Assets, substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice"); and (iv) the Assumption and Assignment Procedures.

7. The Bidding Procedures are reasonably designed to promote active bidding at and participation in the Auction to ensure that the highest or otherwise best value is generated for the Assets.

8. Good and sufficient notice of the relief sought in the Motion has been provided under the circumstances, and no other or further notice is required except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures. A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

9. The Sale Notice and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the Debtors' proposed Cure Amounts, any proposed assumption of a Contract in connection with the Sale of the Assets, and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Auction, the Sale of the Assets, or the assumption and assignment of Contracts in connection therewith shall be required.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED to the extent set forth herein.

2. All objections to the relief granted in this order (the "Order") that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**A.    The Bidding Procedures**

3. The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved, are incorporated herein by reference, and shall govern the bids and proceedings related to the sale of the Assets and the Auction. The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid," are fair, reasonable and appropriate,

and are designed to maximize recoveries for the benefit of the Debtors' estates, creditors, and other parties in interests. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

4. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being the Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.

5. Subject to this Order and the Bidding Procedures, including the obligations of the Debtors to consult with the Consultation Parties (as defined in the Bidding Procedures), the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, shall have the right to (a) determine which bidders qualify as Qualified Bidders and which bids qualify as Qualified Bids, (b) make final determinations as to Auction Packages (as defined in the Bidding Procedures), (c) select the Baseline Bid for each Auction Package; (d) determine the amount of each Minimum Overbid (as defined in the Bidding Procedures), (e) determine the Leading Bid (as defined in the Bidding Procedures) for each Auction Package; (f) determine which Qualified Bid is the Successful Bid and which Qualified Bid is the Backup Bid (each as defined in the Bidding Procedures) after the Successful Bid for an Auction Package; (g) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of this Order or any other applicable order of the Court, the Bidding Procedures, the Bankruptcy Code or other applicable law, and/or (iii) contrary to the best interests of the Debtors and their estates; (h) schedule and conduct Sub-Auctions for each Auction Package that has at least one Qualified Bid; (i) cancel the Auction with respect to any or all of the Assets in accordance with the Bidding Procedures; and (j) adjourn or reschedule the Sale Hearing with

respect to a Sale Transaction involving any or all of the Assets in accordance with the Bidding Procedures.

6. The Stalking Horse Bidder is a Qualified Bidder and the bid reflected in the Stalking Horse Bid (including as it may be increased at the Auction (if any)) is a Qualified Bid, as set forth in the Bidding Procedures.

7. Without prejudice to the rights of the Stalking Horse Bidder under the Stalking Horse APA (attached hereto as **Exhibit 4**), the Debtors shall have the right to, in their reasonable business judgment, in consultation with the Consultation Parties, and in a manner consistent with their fiduciary duties and applicable law, modify the Bidding Procedures, including to, among other things, (a) extend or waive deadlines or other terms and conditions set forth therein, (b) adopt new rules and procedures for conducting the bidding and Auction process, (c) if applicable, provide reasonable accommodations to a Qualified Bidder, or (d) otherwise modify the Bidding Procedures to further promote competitive bidding for and maximizing the value of the Assets; provided, that such extensions, waivers, new rules and procedures, accommodations and modifications (i) do not conflict with and are not inconsistent with this Order, the Bidding Procedures, the DIP Orders, the Bankruptcy Code or any order of the Bankruptcy Court, (ii) are promptly communicated to each Qualified Bidder and (iii) do not extend the Bid Deadline, the date of the Auction, the closing of the Auction, or any other Sale Milestones (as defined in the Stalking Horse APA), without prior consultation with the Consultation Parties; provided further, that the Debtors may not offer bidding protections unless otherwise approved by an order of the Court.

**B.    The Stalking Horse Bid**

8.    BTC Near HoldCo LLC, together with each of its permitted successors, assigns and designees, is approved as the Stalking Horse Bidder for the Assets pursuant to the terms of the Stalking Horse APA.

9.    The automatic stay provided by section 362 of the Bankruptcy Code shall be automatically lifted and/or vacated to permit any Stalking Horse Bidder action expressly permitted or provided in the Stalking Horse APA, without further action or order of the Court.

10.    The Debtors are authorized to perform any obligations under the Stalking Horse APA that are required to be performed prior to the entry of the Sale Order.

**C.    Bid Deadline and Auction**

11.    Any Prospective Bidder (as defined in the Bidding Procedures) that intends to participate in the Auction must submit in writing to the Bid Notice Parties (as defined in Section X.A of the Bidding Procedures) a Bid on or before **February 8, 2024 at 4:00 p.m. (ET)** (the "Bid Deadline").

12.    Subject to the terms of the Bidding Procedures, if the Debtors receive more than one Qualified Bid for an Asset, the Debtors shall conduct an Auction for such Asset.  With respect to Assets for which the Debtors only receive one Qualified Bid, the Debtors, in their reasonable business judgment, and in consultation with the Consultation Parties, may determine to consummate a Sale Transaction with the Qualified Bidder (subject to Court approval).

13.    The Auction, if required, will be conducted on **February 10, 2024 at 9:00 a.m. (ET)**, either (i) at the offices of Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, or (ii) at such other date, time or location as designated by the Debtors.  If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants or other attendees via electronic mail.  The Debtors will provide notice

7

(via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and the Consultation Parties. If held, the Auction proceedings shall be transcribed or video recorded.

14. Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction, subject to any other limitations as the Debtors may reasonably impose in accordance with the Bidding Procedures. Qualified Bidders participating in the Auction must appear virtually at the Auction or through a duly authorized representative. The Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of or accompany each Qualified Bidder at the Auction. Notwithstanding the foregoing, the Auction shall be conducted openly and all creditors shall be permitted to attend.

15. Each Qualified Bidder participating in the Auction shall confirm in writing on the record at the Auction that (a) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets and (b) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction constitutes a binding, good-faith and *bona fide* offer to purchase the Assets identified in such bids.

16. In the event the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the website maintained by Kroll Restructuring Administration LLC, at www.cases.ra.kroll.com/Near (the "Claims Agent Website"), a notice containing the following information: (a) a description of the Assets available for sale in accordance with the Bidding Procedures, (b) the date, time and location of the Sale Hearing, (c) the Sale Objection Deadline and Post-Auction Objection Deadline (each as defined in Section X.D of the Bidding Procedures)

and the procedures for filing such objections, and (d) a summary of the material terms of the Stalking Horse APA to be provided thereunder of the date of the Sale Notice.

17. Within one day after the conclusion of the Auction, the Debtors will file with the Court, serve on the Sale Notice Parties and cause to be published on the Claims Agent Website, a notice setting forth the results of the Auction (the "Notice of Auction Results"), which shall (i) identify each Successful Bidder and each Backup Bidder, (ii) include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts (as defined in the Bidding Procedures) contemplated thereby, and (iii) set forth the Post-Auction Objection Deadline, the date, time and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Sale Notice Parties of the outcome of the Auction.

**D.    Credit Bidding**

18. Any bidder holding a perfected security interest in any of the Assets may seek to credit bid all, or a portion of, such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "Credit Bid"); provided, that such Credit Bid complies with the terms of the Bidding Procedures.

19. Pursuant to the terms and conditions of the DIP Loan Agreement (as defined in the DIP Motion), the DIP Agent (acting at the direction of the Required DIP Lenders) and the Prepetition Agent (acting at the direction of the required lenders) (each as defined in the DIP Motion), acting on behalf of the Stalking Horse Bidder, are entitled, but not required, to credit bid up to the full amount of the Prepetition Secured Loan Obligations, Adequate Protection Obligations and/or the DIP Obligations (each as defined in the DIP Motion), pursuant to section 363(k) of the Bankruptcy Code. Further, any credit bids by the Stalking Horse Bidder shall be

deemed a Credit Bid in compliance with the requirements of the Bidding Procedures, and any such credit bids and Adequate Protection Obligations are subject to Challenge (as defined in the DIP Orders). In the event that the amount, validity, perfection, enforceability, priority or extent of any liens or claims (including such liens or claims) of the Prepetition Lenders or the DIP Lenders are subject to a Challenge (as defined in the DIP Orders) or a pending motion seeking standing to file a Challenge, or any other action or challenge (or a motion seeking standing with respect thereto) by any party, the Stalking Horse Bidder (1) shall not be obligated to close the transactions set forth in the Stalking Horse APA until any such Challenge is resolved in its entirety to the satisfaction of the Prepetition Lenders or the DIP Lenders, as applicable, and (2) may (with the consent of the Debtors) modify the terms of the Stalking Horse APA prior to the Sale Hearing, including, without limitation, the structure or amount of the Credit Bid Amount (as defined in the Stalking Horse APA).

**E.      Sale Hearing and Objection Procedures**

20.     Consummation of any Sale Transaction pursuant to a Successful Bid shall be subject to Court approval. The Sale Hearing shall be held before the Court on **February 16, 2024, at 10:00 a.m. (ET)**, subject to the availability of the Court; <u>provided</u>, that the Debtors may seek an adjournment or rescheduling of the Sale Hearing, consistent with the Bidding Procedures and without prejudice to the rights of the Stalking Horse Bidder under the Stalking Horse APA.

21.     All general objections to any Sale Transaction (each, a "<u>Sale Objection</u>") shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (ii) be filed with the Court, and (iii) served on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) by no later than **February 6, 2024, at 4:00 p.m. (ET)** (the "<u>Sale Objection Deadline</u>"). The Debtors shall, in

consultation with the Consultation Parties, file a form of order approving any Sale Transaction one week before the Sale Objection Deadline, in form and substance acceptable to the Debtors and the Stalking Horse Bidder.

22. Following service of the Notice of Auction Results, parties with requisite standing may object to the conduct of the Auction and/or the particular terms of the Sale to a Successful Bidder (each such objection, a "Post-Auction Objection"). Objections to the Sale to the Stalking Horse Bidder shall filed and served so as to be actually received by no later than the Sale Objection Deadline. Any Post-Auction Objection shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (b) be filed with the Court, and (c) served on the Objection Notice Parties (as defined in Section X.D of the Bidding Procedures) by no later than **February 12, 2024, at 4:00 p.m. (ET)** (the "Post-Auction Objection Deadline").

23. Any party who fails to file and serve a timely Sale Objection or Post-Auction Objection in accordance with the terms of this Order shall be forever barred from asserting, at the Sale Hearing or thereafter, any objection to the relief requested in the Motion, or to the consummation or performance of the Sale Transaction, including the transfer of Assets to the Successful Bidder free and clear of liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

**F.     Notice of Sale Transaction**

24.     The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is approved, and no other or further notice of the proposed sale of the Assets, the Auction, the Sale Hearing, the Sale Objection Deadline or the Post-Auction Objection Deadline shall be required.

25.     The Debtors shall serve and publish the Sale Notice in the manner provided in the Bidding Procedures and this Order.

26.     Within two (2) business days, or as soon as reasonably practicable after the entry of this Order, the Debtors shall file with the Court, serve on the Sale Notice Parties and cause to be published on the Claims Agent Website, the Sale Notice.

27.     Within four (4) business days, or as soon as reasonably practicable after the entry of this Order, the Debtors shall cause the information contained in the Sale Notice to be published once in the national edition of *USA Today* (or such other national publication selected by the Debtors) (the "Publication Notice").

28.     The Publication Notice complies with the provisions of Bankruptcy Rule 9008 and is deemed sufficient and proper notice of the proposed sale of the Assets, the Auction, the Sale Hearing, the Sale Objection Deadline, and the Post-Auction Objection Deadline to any other interested parties whose identities are unknown to the Debtors.

**G.     Assumption and Assignment Procedures**

29.     The Assumption and Assignment Procedures are reasonable and appropriate under the circumstances, fair to all non-Debtor parties, comply in all respects with the Bankruptcy Code, Bankruptcy Rules and Local Rules, and are approved.

30.     The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, is approved, and no other or further notice of the Debtors' proposed Cure Amounts

(as defined below) with respect to Contracts listed on an Assumption and Assignment Notice is necessary or required.

31. Within **three (3) business days after the entry of this Order**, or as soon as reasonably practicable thereafter, the Debtors shall file with the Court, serve of the Counterparties, and cause to be published on the Claims Agent Website, the Assumption and Assignment Notice. In the event that the Debtors later identify any Counterparty which was not served with the Assumption and Assignment Notice, the Debtors may subsequently serve such Counterparty with the Assumption and Assignment Notice substantially in the form attached hereto as **Exhibit 3** (each, a "Supplemental Assumption Notice"), and the Assumption and Assignment Procedures will nevertheless apply to such Counterparty; provided, that the Contract Objection Deadline (as defined below) with respect to such Counterparty listed on a Supplemental Assignment Notice shall be the later of the Contract Objection Deadline or fourteen (14) days following the date of service of a Supplemental Assignment Notice (each, a "Supplemental Contract Objection Deadline"). Each Supplemental Assignment Notice shall (i) identify the relevant Contract(s), (ii) set forth a good faith estimate of the Cure Amount(s), (iii) include a statement that assumption and assignment of each such Contract is not required nor guaranteed, and (iv) inform such Counterparty of the requirement to file any Contract Objection(s) by the Supplemental Contract Objection Deadline.

32. Any objection to the Debtors' proposed Cure Amounts or assumption and assignment on any basis (each such objection, a "Contract Objection") (except objections solely related to adequate assurance of future performance by a Successful Bidder other than the Stalking Horse Bidder) shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (b) be filed with the Court, and (c)

13

served on the Objection Notice Parties by no later than the date that is **14 calendar days after service of the Assumption and Assignment Notice** (the "<u>Contract Objection Deadline</u>").

33.     The Debtors and any objecting Counterparty shall first confer in good faith to attempt to resolve the Contract Objection without Court intervention.  If the parties are unable to consensually resolve the Contract Objection prior to the commencement of the Sale Hearing, the Court shall make all necessary determinations relating to the Cure Amounts or assumption and assignment and the Contract Objection at a hearing scheduled pursuant to paragraph 45 of this Order.  If a Contract Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the Sale Transaction, the Debtors may determine that any Contract subject to such resolved Contract Objection no longer will be assumed and assigned in connection with the Sale Transaction (subject to the terms of the Sale Transaction).  All other objections to the Debtors' proposed assumption and assignment of the Debtors' right, title and interest in, to and under a Contract shall be heard at the Sale Hearing.

34.     No later than three (3) business days prior to the Sale Hearing, the Debtors will file with the Court a "<u>Closing Assignment Notice</u>," which shall (i) identify the Successful Bidder, and (ii) list all Cure Amounts and corresponding Contracts which are proposed to be assumed and assigned in the Successful Bid at the closing of the sale (the "<u>Closing Assigned Contracts</u>") which may exclude contracts which were previously the subject of an Assumption and Assignment Notice or Supplemental Assignment Notice.  For the avoidance of doubt, the Closing Assignment Notice may include Contracts that were not previously designated as Contracts that may be assumed and assigned (such contracts, a "<u>Previously Omitted Contract</u>") and may exclude Contracts that were previously the subject of an Assumption and Assignment Notice; <u>provided</u>

14

that the Closing Assignment Notice shall serve as a Supplemental Assignment Notice for each Previously Omitted Contract Counterparty pursuant to the terms in paragraph 44 of this Order.

35. If a timely Contract Objection cannot otherwise be resolved by the parties, the Contract Objection may be heard at the Sale Hearing or, at the Debtors' option and with the consent of the Successful Bidder, be adjourned to a subsequent hearing (each such Contract Objection, an "<u>Adjourned Contract Objection</u>"). An Adjourned Contract Objection may be resolved after the closing date of the Sale Transaction, and may also be resolved by the Debtors and the Counterparty meeting and conferring in good faith to attempt to resolve any such objection without Court intervention. Upon resolution of an Adjourned Contract Objection and the payment of the Cure Amount or resolution of the assumption and assignment issue, if any, the Contract that was the subject of such Adjourned Contract Objection shall be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale Transaction.

36. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Contract Objection, the Counterparty forever shall be barred from asserting any objection with regard to the proposed assumption and assignment of such Contract and the cost to cure any defaults under the applicable Contract and shall be deemed to have consented to the assumption and assignment of the Contract in connection therewith. The Cure Amounts set forth in the Closing Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Amounts.

37. In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in the Bidding Procedures).

38. Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is: a Successful Bidder's (or any other relevant assignee's) proposed form of adequate assurance of future performance with respect to the Contract (each, such objection, an "<u>Adequate Assurance Objection</u>"), shall (a) be in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, (b) be filed with the Court, and (c) served on the Objection Notice Parties by no later than the Post-Auction Objection Deadline.

39. The Debtors and any Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder shall be determined by the Court at the Sale Hearing.

40. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance. The Successful Bidder (or any other relevant assignee) shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code and, if applicable, section 365(b)(3) of the Bankruptcy Code, notwithstanding anything to the contrary in the Contract or any other document.

41. Successful Bidders (including the Stalking Horse Bidder or Backup Bidder ultimately named a Successful Bidder) may, pursuant to the terms of the asset purchase agreement

executed with the Debtors (including the Stalking Horse APA), designate (a) for assumption and assignment Contracts that were not originally included in the Assets to be acquired in connection with the Successful Bid and (b) Contracts that previously were included among the Assets to be acquired in connection with the Successful Bid as "excluded assets" that will not be assigned to or otherwise acquired by the Successful Bidder.  The Debtors shall use commercially reasonable efforts to, as soon as reasonably practicable after the Debtors receive notice of any such designation, file with the Court, serve on the Counterparties and cause to be published on the Claims Agent Website, a notice of such designation containing sufficient information to apprise Counterparties of the designation of their respective Contracts.

42. As soon as reasonably practicable after the closing of a Sale Transaction, the Debtors will file with the Court, serve on the Counterparties and cause to be published on the Claims Agent Website, a notice containing the list of Contracts that the Debtors assumed and assigned pursuant to any asset purchase agreement with a Successful Bidder.

43. The inclusion of a Contract or Cure Amounts with respect to any Contract on any Assumption and Assignment Notice or any Notice of Auction Results, shall not constitute or be deemed a determination or admission by the Debtors, any Successful Bidder or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned.  The Debtors reserve all of their rights, claims and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

H.     **Other Related Relief**

44. All persons and entities that participate in the Auction or bidding for any Asset during the Sale Transaction process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures,

the Auction or any other relief requested in the Motion or granted in this Order, (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

45. The Debtors are authorized to take all steps and pay all amounts necessary or appropriate to implement the relief granted in this Order.

46. This Order shall be binding on the Debtors and their successors and assigns, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

47. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

48. To the extent any provisions of this Order are inconsistent with the Motion or the Bidding Procedures, the terms of this Order shall control.

49. Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014 or any other provisions of the Bankruptcy Rules or the Local Rules stating the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

50. The Debtors are authorized to make non-substantive changes to the Bidding Procedures, the Assumption and Assignment Procedures, and any related documents, including

the notices approved by this Order, without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors.

51. This Court shall, to the extent permitted by applicable law, retain jurisdiction over any and all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

**Dated: January 23rd, 2024**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**