## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*, [1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 148** |
| | <u>Objection Deadline</u>: February 9, 2024 at 4:00 p.m. (ET) |

### NOTICE OF FILING OF DECLARATION
### OF DISINTERESTEDNESS OF ORDINARY COURSE
### <u>PROFESSIONAL, DREW & NAPIER LLC</u>

**PLEASE TAKE NOTICE** that on January 9, 2024, the Court entered the *Order Authorizing (I) the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Effective as of the Petition Date and (II) Waiving Certain Information Requirements of Local Rule 2016-2* [Docket No. 148] (the "OCP Order").[2] The OCP Order provides that each ordinary course professional shall file with the Court a Declaration of Disinterestedness prior to the receipt of payment of fees and reimbursement of expenses incurred for postpetition services rendered to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the procedures set forth in the OCP Order, the Debtors hereby file the Declaration of Disinterestedness (the "Declaration") of Drew & Napier LLC (the "OCP"), a copy of which is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the procedures set forth in the OCP Order, any objections to the Declaration must be filed and served on or before **February 9, 2024 at 4:00 p.m. (ET)**. If no timely objection is filed and served, the Debtors shall be authorized to retain the OCP on a final basis without further order of the Court.

*[Signature page follows]*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]  All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the OCP Order.

Dated: January 26, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Declaration of Disinterestedness**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | <u>Objection Deadline</u>: **February 9, 2024 at 4:00 p.m. (ET)** |

## <u>DISCLOSURE DECLARATION OF ORDINARY COURSE PROFESSIONAL</u>

I, <u>Mohan Gopalan</u>, do hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.      This declaration (this "<u>Declaration</u>") is submitted in accordance with that certain Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business [Docket No. 76] (the "<u>OCP Order</u>"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the OCP Order.

2.      The Debtors have requested that Drew & Napier LLC (the "<u>Firm</u>") provide legal services to the Debtors, and the Firm has agreed to provide such services.

3.      The Firm may have performed services in the past, may currently perform services, and may perform services in the future, in matters unrelated to these chapter 11 cases for persons that are parties in interest in these Chapter 11 Cases.  The Firm does not perform services for any

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

such person in connection with these Chapter 11 Cases or have any relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates.

4.      As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be retained by the Debtors, claimants, and parties in interest in these Chapter 11 Cases.

5.      Neither I nor any principal, partner, director, or officer of, or professional employed by, the Firm has agreed to share, or will share, any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Firm.

6.      Neither I nor any principal, partner, director, or officer of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Firm is to be retained.

7.      The Debtors owe the Firm $8,986.61 for prepetition services, the payment of which is subject to limitations contained in the Bankruptcy Code.

8.      As of the Petition Date, the Firm was party to an agreement for indemnification with certain of the Debtors. A copy of such agreement is attached hereto as **Exhibit 1**.

9.      The Firm has read the OCP Order and understands the limitations on compensation and reimbursement of expenses under the OCP Order.  Specifically, the Firm understands that in the event that it exceeds the OCP Cap, the Firm will be required to file with the Court a fee application for its fees and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

10.      The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its retention,

if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration.

11.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


*Mohan Gopalan*

Mohan Gopalan
c/o Drew & Napier LLC
10 Collyer Quay
#10-01 Ocean Financial Centre
Singapore 049315

# EXHIBIT 1

**Engagement Agreement**





23 November 2023

**BY EMAIL**
No. of pages: 21

Near Intelligence Pte. Ltd.
1 Phillip Street
#05-01
Royal One Phillip
Singapore 048692

*We do not accept service
of court documents by fax*

Direct Lines
T : sushil.nair@drewnapier.com
E : +65 6531 2410

T : mohan.gopalan@drewnapier.com
E : +65 6531 2755

T : ian.choo@drewnapier.com
E : +65 6531 3607

Our Ref
SN/MGN/ICJY 282791

Your Ref
-

Dear Sirs

**Advice in Connection with Potential restructuring**

**Appointment Letter**

We refer to the email from Willkie Farr & Gallagher LLP to us dated 21 November 2023. Thank you for giving us the opportunity to work with you on this matter. We are very pleased to be able to assist you.

This letter sets out who we are acting for, the scope of our services to you, the lawyers who will be working with you, how we will charge you, and the terms of our appointment.

**1.      Client**

Drew & Napier LLC will be acting for Near Intelligence Pte. Ltd. and Mr Andrew Mordkoff or Mr Joseph Brandt (each of Willkie Farr & Gallagher LLP) or any other authorised person will give us instructions on behalf of Near Intelligence Pte. Ltd.

**2.      Scope of Our Services**

We have been engaged to advise and represent Near Intelligence Pte. Ltd. and its affiliates on Singapore law issues arising out of or in connection with a potential restructuring.

**3.      The Legal Team Working With You**

The lawyers who will be working for you on this matter are Sushil Nair (Director), Mohan Gopalan (Director) and Ian Choo (Associate).

Where necessary, we will also enlist the help of our other lawyers and paralegals.

**4.      Terms of Our Appointment**

DREW & NAPIER LLC      10 Collyer Quay, #10-01 Ocean Financial Centre, Singapore 049315
T:+65 6535 0733   T:+65 9726 0573 (After Hours)   F:+65 6535 4906   E: mail@drewnapier.com   www.drewnapier.com
Drew & Napier LLC (UEN 200102509E) is a law corporation with limited liability.

**DREW & NAPIER**

The terms of our appointment are contained in:

(a)  this Appointment Letter;

(b)  Drew & Napier LLC's Standard Terms and Conditions of Appointment ("**Standard Terms and Conditions**"), which are attached.

Please read and familiarise yourself with the Standard Terms and Conditions, as they contain important additional information.

The Standard Terms and Conditions may be revised periodically. If the Standard Terms and Conditions are revised, you will be provided with the revised Standard Terms and Conditions and the revised Standard Terms and Conditions will come into effect and apply upon your receipt of them.

If there is any inconsistency between the Appointment Letter and the Standard Terms and Conditions or the revised Standard Terms and Conditions, the terms of the Letter of Appointment shall override the Standard Terms and Conditions and/or the revised Standard Terms and Conditions.

This Appointment Letter and the Terms and Conditions are drafted in the English language. If on the client's request, the Appointment Letter and the Terms and Conditions have been translated into Mandarin, in the event of any inconsistency between the terms of the English language version and the Mandarin version of this Appointment Letter and/or the Terms and Conditions, the English language version of this Appointment Letter and the Terms and Conditions shall prevail.

## 5.   Our Fees (General)

As a general rule, our charges will be based on the time spent on your matter. This may include, but is not limited to, time spent on taking instructions from you and on your matter (and, where required by any applicable law, rule or regulation, making enquiries on or in relation to any person or other entity related to or otherwise associated or concerned with you or your matter), drafting, reviewing and engrossing documents, correspondence, advice, conferences, attendance at meetings, attendance in court, reading materials, conducting searches, travelling, telephone calls, research, providing confirmation letters where requested by you or your auditor and any other legal services ordinarily and reasonably associated with your matter which we are requested to and agree to provide.  We charge on the basis of hourly rates, unless we agree to charge on some other formula.  If you engage Senior Counsel, they may, in addition to the hourly rates of the other lawyers in the team handling your matter, charge on the basis of a brief fee and refresher instead.

The hourly rates of the lawyers representing you in this matter are:

| | |
|---|---|
| Sushil Nair (Director): | S$1,200 per hour |
| Mohan Gopalan (Director): | S$990 per hour |
| Ian Choo (Associate): | S$340 per hour |

More information on our fees is set out in section 6 (Professional fees and costs and expenses) of the attached Standard Terms and Conditions.

## 6.   Anti-Money Laundering Regulations

All lawyers in Singapore are, pursuant to anti-money laundering regulations, required to perform certain identity and transaction risk checks in respect of their clients before accepting instructions to act in any matter and on an on-going basis during the course of so acting.

As such, our appointment and continued representation of you under this letter are subject to the completion to our satisfaction of the required checks on you and your intended transaction, both prior to accepting instructions and on an on-going basis.

Please note that we are required to maintain all documents and records (original or otherwise) relating to the above-mentioned identity and transaction risk checks for at least five (5) years after the

completion of the matter. These documents and records will be made available to the Council for the Law Society or any person appointed by the Council for the Law Society, where such disclosure is required for compliance with any of the anti-money laundering regulations.

Please note that if we are required to carry out any checks, searches or verification from independent sources, we will endeavour, as far as is practicable, to inform you in advance of the third party fees and charges involved (if any). All third party fees and charges in connection with any checks, searches or other measures taken in compliance with any of the anti-money laundering regulations will be charged as disbursements to your account.

### 7.     Funds to Account

We will in the course of representing you be incurring various costs and expenses on your behalf. It would be greatly appreciated if you would let us have the sum of **S$10,000** to account so that we may begin acting or continue acting for you. We may from time to time request further funds to account.

For more details, please refer to the section on Funds to Account in our attached Standard Terms and Conditions.

### 8.     Quality of Service and Feedback

We aim to provide you with the best possible legal service. We welcome your feedback on how we are doing and how our services can be improved. If at any time or for any reason you have cause to be less than satisfied with our services, we would also ask you to bring it to our attention immediately so that we can take steps to address your concerns.

### 9.     Subscription to Drew & Napier's Mailing List

Drew & Napier clients and their directors, employees, officers or representatives may have subscribed to the firm's mailing list and may receive legal updates, articles, newsletters, announcements, seminar and event invites from time to time.

Such persons may amend their business contact information or unsubscribe from our mailing list at any time by emailing us at publications@drewnapier.com. Please type "unsubscribe" in the subject field, and allow us at least one month to effect the change.

### 10.    Acceptance

Please confirm your acceptance of the terms of our appointment by signing the duplicate copy of this letter. We require the executed documents in order to act for you, and look forward to receiving the executed documents at your earliest convenience.

We look forward to working with you and hope that we will have a long and mutually satisfactory relationship.

Yours faithfully

Drew & Napier LLC

**DREW & NAPIER**

**Acceptance of Terms of Appointment**

We have read and agree to the terms set out above.

Signature:  _Paul Gross_

Name:  Paul Gross

Designation:  General Counsel

For and on behalf of Near Intelligence Pte. Ltd.



**DREW & NAPIER LLC**

**TERMS AND CONDITIONS OF APPOINTMENT**

*Thank you for appointing us to represent you. Our aim is to give you the best possible legal representation.*

*As we will be working together with you, it is important that you have an understanding of Drew & Napier LLC's terms of appointment. The following terms and conditions will apply to our appointment, unless and until they are revised. If the terms and conditions are revised, we will provide you with the revised terms and conditions of appointment and the revised terms and conditions of appointment will come into effect and apply upon your receipt of them.*

*Unless otherwise stated, the term "costs" includes professional fees, charges, disbursements, expenses and remuneration.*

**1.    OUR CLIENT**

1.1     In the course of working for a client, it is often necessary for us to deal with various individuals, especially if the client is a company. Occasionally, we also have to deal with people from affiliated, related or other companies. This can sometimes cause confusion as to who the client actually is.

1.2     To avoid doubt or dispute as to the identity of our client, for the purposes of our appointment, the client is the person(s), entity or entities identified in the Appointment Letter. This is of course always subject to any variation in writing by mutual agreement.

1.3     Unless expressly agreed in writing, we are not undertaking the representation of any related or affiliated person(s), company or entity, nor of any of your officers, directors, agents, parties or employees.

1.4     Our duty of care is to our client named in the Appointment Letter. Apart from this, we do not owe any duty of care or liability to any other person.

1.5     Advice given is to our clients only, and no other person should rely on our advice without our express consent.

1.6     The advice and services provided by us are strictly in relation to legal matters only. We do not advise on commercial, financial or other matters.

1.7     Except when specific instructions to advise on tax issues have been accepted by our tax department, the scope of our work does not include advising on the tax implications of any transaction.

**2.    TAKING INSTRUCTIONS**

We will take instructions from the client or the agent or person whom the client authorizes or nominates to give instructions on the client's behalf. However, our client will be the person(s), entity or entities named in the Appointment Letter as provided above.

**3.    WHO AT DREW & NAPIER LLC WILL WORK WITH YOU?**

3.1     Drew & Napier LLC is a full service company with specialist business groups. We will select a legal team with the requisite experience and expertise to meet your needs and will always be pleased to discuss the staffing of the legal team with you.



DREW & NAPIER

TERMS AND CONDITIONS OF APPOINTMENT

3.2     The Director in charge of and responsible for your matter will be indicated in the Appointment Letter. He/she may also enlist the help of our other lawyers, including professional support lawyers (i.e. lawyers from our knowledge management department), international lawyers (i.e. lawyers qualified in other jurisdictions) as well as paralegals employed by Drew & Napier LLC.

**4.     SCOPE OF OUR SERVICES**

4.1     Our understanding of the scope of our services to you is set out in the Appointment Letter. We will not undertake any other tasks unless specified in the Appointment Letter or in subsequent written instructions which are accepted by us. When additional tasks or subsequent instructions are accepted by us, these Terms & Conditions will apply to them.

4.2     To deliver our best service to you, we need you to give us complete instructions at every stage in your matter.

4.3     Written instructions are most helpful. We need you to give us all relevant information. Otherwise, there is a risk that the legal advice is given based on an incorrect understanding.

**5.     COURT ATTENDANCE**

We should mention, in relation to contentious matters, that our lawyers' ability to attend Court on a specific date is subject to the Court not having fixed the lawyer with another hearing date on the same day. Court hearing dates are fixed by the Court Registry and are not within our control. Should any of our lawyers be unable to attend on a particular day by reason of a prior date being fixed by the Court on another matter, we will ensure that another lawyer will attend to the matter.

**6.     PROFESSIONAL FEES AND COSTS**

***Professional fees***

6.1     If the basis of our charges are hourly rates, please note that they are only a general basis for determining the fees for our work. Our lawyers do record time and dollar amounts are assigned to them for a number of internal purposes. The actual time spent in connection with the matter by the lawyers having conduct of your matter may include, but is not limited to, the time spent on taking instructions on your matter (and, where required by any applicable law, rule or regulation, making enquiries on or in relation to any person or other entity related to or otherwise associated or concerned with you or your matter); in meetings with you and others; on internal discussions/meetings; preparing, reviewing and working on papers including pleadings and correspondence; research; reviewing and/or drafting documents including research or advisory memos, emails, letters, opinions, representations and submissions, including drafts thereof; making and receiving telephone calls to or from you and others; preparing for and attending court/meetings on your behalf; travelling and waiting time; and the overall management of this matter. Urgent work and work performed after normal office hours, on weekends and on public holidays may be billed at an increased rate (based on the relevant lawyer's hourly rate x 1.5).

6.2        Our current rates are as follows:

| | | | |
|---|---|---|---|
| • | Senior Counsel | : | from S$1000 per hour or, depending on the matter, a brief fee and refresher to be agreed. |
| • | Director | : | S$650 – S$1050 per hour |
| • | Consultant | : | S$550 – S$940 per hour |
| • | Senior Associate | : | S$490 – S$700 per hour |
| • | Associate | : | S$280 – S$550 per hour |

*Page 2*

 **DREW & NAPIER**

6.3 If we had initially agreed on a fixed fee but the scope of the work later increases beyond that which was originally instructed, it may be necessary for us to revise our fee upwards.

6.4 For overseas assignments, unless we have agreed an alternative formula with you, we will charge the relevant lawyer's hourly rate x 1.5 for actual time spent in connection with the matter (including travelling time by air, if any work is done during that time), and disbursements including cost of air travel, taxes, accommodation, meals, transport etc.

### Changes in rates

6.5 Our rates are reviewed periodically and may change during the course of your matter. If they are revised, the revised rate will apply from the date of the change. We will provide updated ranges upon request.

### Costs of ancillary services and disbursements

6.6 Apart from professional fees, there are other costs which may be incurred on your behalf. These can generally be divided into two broad categories:

(a) payments for services supplied by others; and

(b) payments for ancillary services supplied by us.

- For services supplied by others, we will generally charge you the amount charged to us. Such services will include postage, transport costs, courier and postal charges, filing fees and expert witness' and consultants' fees.

- For ancillary services supplied by us, we will usually charge you on the basis of use for services. These include photocopying charges, telephone charges for overseas calls, facsimile and telex charges, search fees and administrative fees.

6.7 Our billing policies on our main ancillary services and disbursements are set out below.

### Word processing and secretarial time

6.8 We do not charge for equipment usage or word processing or secretarial services during normal working hours. However, we do charge for overtime services of our word processing staff and secretaries and their meals and transport if your matter requires work after normal office hours including weekends and public holidays.

### Photocopying and printing

6.9 We have a substantial investment in duplicating equipment. We bill our clients at a flat rate of S$0.15 per page for all in-house copying. This rate is in accordance with the directions of the Law Society of Singapore. However, if the copying is contracted out, we will only charge you for the actual cost of any outside photocopying that we do on your matter.

6.10 We bill our clients at a flat rate of S$0.15 per page for selected in-house printing done on our multi-function devices. In general, we only bill for copies of documents which need to be printed and provided to our clients, the Courts or some other external party for the purposes of carrying out our engagement. We generally do not bill for copies of documents printed for our own internal working purposes.



**DREW & NAPIER**

### Legal research

6.11   In order to ensure that you benefit from the best research facilities, our lawyers have access to online computerized research engines (such as Lexis-Nexis and Lawnet). We charge for on-line computer research time based on the number of searches made. These charges vary according to the on-line research services used and are allocated by us from an internal schedule of rates drawn up and revised from time to time. It is generally based on an aggregate of our subscription rates for those services. For certain on-line services where vendors bill us according to the number of licences available, we may charge for online computer research based on login basis.

### Accounting and Corporate Regulatory Authority ("ACRA") Bizfile Filings and Other ACRA Transactions

6.12   DrewCorp Services Pte Ltd ("**DrewCorp**") may carry out ACRA Bizfile filings or other ACRA transactions that may be necessary for your matter. ACRA Bizfile filings or other ACRA transactions performed on an urgent basis or after normal office hours, on weekends and on public holidays, may be billed at an increased rate of 1.5x. DrewCorp may bill you directly for the costs of such ACRA Bizfile filings or other ACRA transactions. In the event that DrewCorp charges us for the costs of ACRA Bizfile filings or other ACRA transactions carried out for your matter, we will charge you the amount charged to us by DrewCorp.

### Overnight and local deliveries

6.13   We will charge you for overnight deliveries and local deliveries by outside messenger services at the actual cost.

### File storage

6.14   We will not charge you for file storage except when we are obliged to store documents on your behalf with outside storage companies, in which case, we will charge you only the actual cost of storage.

### Office supplies

6.15   We will not charge you for routine quantities of office supplies. However, if your matter requires substantial and unusual orders of office supplies, this will be charged to you.

### Travel and subsistence

6.16   We will bill you for all travel and subsistence expenses at actual cost. Air travel is (i) on first class for equity directors and (ii) on business class for others unless otherwise agreed. Please see clause 6.4 for our professional fee for overseas assignments.

### Transportation

6.17   We will charge you for our transportation costs so long as these are incurred as part of your file expenses, which may include taxi-fares if your matter requires work after normal office hours, on weekends and/or public holidays.

### Meetings and meals

6.18   We may bill you for meal-related costs in meetings held for your benefit.

6.19   On occasion, our lawyers may have to work overtime on your file. In such cases, meal provisions are granted to the lawyers who work past 8 pm, on weekends and on public holidays, and incurred costs may be applied to your bill, capped at a sum of $11 per lawyer.



### Stamp Duty

6.20   We will normally ask you to place with us in advance the amount of any stamp duty which is to be paid on your behalf.

### Court Fees

6.21   In contentious matters, court hearing fees will constitute a substantial expense if the matter is proceeded with. Where a matter proceeds for a hearing or trial, the court hearing fees presently payable are as follows:

|  | District Court $ | Magistrate's Court $ |
|---|---|---|
| For each day or part thereof after the first day | 500 | 250 |

|  |  | High Court with value of up to $1 million $ | High Court with value of more than $1 million $ |
|---|---|---|---|
| (a) | For first to third day | Free | Free |
| (b) | For the whole or part of the fourth day | 6,000 per day or part thereof | 9,000 per day or part thereof |
| (c) | For the whole or part of the fifth day | 2,000 per day or part thereof | 3,000 per day or part thereof |
| (d) | For each day or part thereof of the sixth to tenth days | 3,000 per day or part thereof | 5,000 per day or part thereof |
| (e) | For each day or part thereof subsequent | 5,000 per day or part thereof | 7,000 per day or part thereof |

6.22   If you are the Plaintiff in an action, you will have to make payment of these court hearing fees in advance before the hearing. If you win, these amounts are recoverable from the Defendant as disbursements incurred. If you are the Defendant, you will usually not be required to pay this in advance but will as a general rule have to reimburse the Plaintiff for these disbursements if you are unsuccessful at the end of the day.

### Goods and services tax

6.23   Our professional fees and certain disbursements are subject to a Goods & Services Tax ("**GST**"). The GST rate is fixed by the government and may vary from time to time. The current GST rate is 7%. The applicable GST will be included in our charges to you unless the services provided by us fall within GST-exempt or GST-excluded categories.

### 7.   Costs of foreign lawyers and other professionals

7.1     In the course of representing you it may be necessary to engage other lawyers and professionals on your behalf. We will of course consult you before doing so.

7.2     Should it be necessary to engage such other lawyers or professionals, you would be solely responsible for payment of the costs of any foreign lawyers or other professionals (such as expert witnesses) whom we engage on your behalf. We will ask that you contract directly with them and for



DREW & NAPIER

their costs be billed to you directly. We do not undertake to be responsible for their costs. If they require funds to account (please see clause 8 below), these should be provided by you.

**8.    FUNDS TO ACCOUNT**

8.1    We may ask you for funds to account to cover our costs or the costs of foreign lawyers or other professionals. In particular, for contentious matters, we will generally require funds to account for court hearing fees or for the provision of any security for costs for the other side's costs or for appeals as these are usually substantial sums.

8.2    When funds to account are requested, payment of those funds must be made in order for us to begin acting for you, or if we have already begun to act, for us to continue acting for you. If for any reason those funds are not provided, then it will be a basis for us to cease our representation of you upon giving the requisite notice as provided below.

8.3    Funds to account should be remitted to our bank, details of which will be notified to you upon request.

8.4    Funds paid to account will be held in trust in our clients' account. All monies held in our clients' account may be set off against our costs as and when we render the bill, or against any other monies which may be due from you to us. As such, we may uplift any of your monies placed in fixed deposits by us, whether at or before the time of the maturity of the fixed deposits. If these monies to account are set off for our costs, we may ask you to pay in more monies to keep us in funds.

8.5    We will refund you, or such other person(s) that you may direct in writing, any excess funds in your account after our final bill is rendered and paid. If such funds remain unclaimed by you, we may apply under the Trustees Act for such funds to be paid into Court, following which, we will be discharged from any further obligations to you in respect of these funds. In the event such application is necessary, you hereby authorise us to deduct from such funds our administrative costs of making such application.

**9.    BILLING ARRANGEMENTS**

9.1    It is our practice to issue bills periodically. If you would like to be billed at specific intervals, please let us know. In any event, we shall if you request in writing provide you with an estimate of the costs incurred every six months if we do not bill you. While we make every effort to include fees, disbursements, and charges in the bills (including final bills) for the period in which they were incurred, those which have for any reason not been included will be included in a later bill.

Our bills are payable immediately. In the event of late payment of bills, we reserve the right to impose interest at 5.33% per annum from the 15th day of the date of the bill.

9.2    If our bills remain unpaid within fourteen days of their issue, we may terminate our representation of you.

9.3    If you have any grievances or queries regarding a particular bill that has been issued to you, please do bring this to our attention immediately so that we may have your queries answered and grievances resolved promptly.  If you would like to receive a detailed itemised bill, you may request for one to be provided to you.

9.4    Under Section 120 of the Legal Profession Act ("**LPA**") (Cap 161), you have a right to apply to the Court for a formal assessment or taxation of the legal bill delivered by us.  However, this order for taxation must be obtained within twelve months from the delivery of the bill to you. If an application is made to the Court after the expiration of 12 months from the delivery of the bill or after payment of the bill, the Court will only grant an extension of time to have the bill taxed if it is satisfied that there are special circumstances which justify such an extension.



9.5    You also have a right to apply to the Court for review of a fee agreement made between us under Section 109 of the LPA (agreement with respect to remuneration for non-contentious business) and Section 111 of the LPA (agreement as to costs for contentious business).

### *Payment in Foreign Currency*

9.6    Our general practice is to issue our bills in local currency and require payment in that currency to be made to a bank account nominated by us. We may elect to accept payment in another currency. In the event that we agree to accept payment in another currency, we will use a fixed rate of exchange that will be specified at the time of billing. This is to insulate both you and us from exchange rate fluctuations in the event of late payment of our bill.

### *Withholding Tax*

9.7    All our bills are issued on the basis that we receive the amount billed. If you are required to pay withholding tax or any other tax in respect of our bill, that amount must not be deducted from our bill.

### *Bank or remittance charges*

9.8    All bank or remittance charges incurred in relation to payment of our bills will be borne by you and our bill should be paid net of all bank or remittance charges.

### 10. Costs in Contentious Matters

10.1    For contentious matters, it is our duty under the Legal Profession (Professional Conduct) Rules 2015 to draw your attention to the fact that as our client, you are obliged to pay our costs in full regardless of any order for costs made against any other party in the legal proceedings.

### *Costs in civil proceedings*

10.2    Further, if you are unsuccessful in civil proceedings, you may have to pay your opponent's costs (or a substantial portion thereof), as well as your own.

10.3    Even if you are successful, your opponent may not be ordered to pay the full amount of your own costs and may not be capable of paying what has been ordered in your favour. The amount of costs that your opponent may be ordered to pay you if you are successful in civil proceedings may be a very small fraction of the full amount of the costs that you have incurred.

### *Costs in criminal proceedings*

10.4    In criminal proceedings, even if you are successful, costs orders are not usually made by the Court against the Prosecution. This means that you will be obliged to pay our costs and will not receive an indemnity or any contribution or reimbursement from the Prosecution.

### 11.    No guarantee of outcome

As you will appreciate, it is not possible to predict the outcome of a matter with absolute certainty, as the outcome depends on many variable factors. In the circumstances, we cannot and do not guarantee the outcome of any matter.

### 12.    Related proceedings

### *Cost of Related Claims*

12.1    If we have to testify as a result of our representation of you, or if we must defend the confidentiality of your communications in any proceeding, or if we are otherwise required to be involved in claims related to your matter ("**Related Claims**"), you agree to pay us for any resulting costs even if



we have ceased representing you. These resulting costs include our time spent, calculated at our lawyers' hourly rates.

### Indemnity against Adverse Claims

12.2    Should we or our personnel be exposed to any claims, actions, liabilities or damages (hereafter "**Adverse Claims**") arising from or in connection with our representation of you (excluding those which are finally judicially determined to have resulted from professional malpractice, gross negligence or wilful misconduct on our part) you agree to indemnify us and our officers and employees in respect of such Adverse Claims.

### Reimbursement of costs

12.3    In the event of our having to be involved in any Related Claims or Adverse Claims, we would also have to seek reimbursement from you of costs which we may incur in investigating, preparing for or defending such Related Claims or Adverse Claims. Examples of such reimbursable costs would include attorneys' fees, experts' fees, disbursements and compensation for the time expended by our lawyers in connection with any such action or claim, calculated at the hourly rate for the relevant lawyers involved. This would apply whether or not in connection with pending or threatened litigation in which we are a party or potential party.

### 13.    LIMITATION OF LIABILITY

### General limitation on liability

Drew & Napier LLC and any individual lawyer will not be liable to you in connection with our representation of you except for losses, claims, damages, liabilities or expenses incurred by you that result directly from Drew & Napier LLC's or that particular lawyer's professional negligence or wilful misconduct. This clause is applicable to the extent permitted by law.

### 14.    CONFLICT OF INTEREST

14.1    We maintain a computerised conflict of interest database to assist us in avoiding representation of parties with conflicts of interest.

14.2    To allow us to conduct a conflict check, it is important that you should identify for us all persons and entities that are or may become involved in this matter. These include all persons and entities that are affiliated with you and the other involved or potentially involved parties (such as parent corporations, subsidiaries and other affiliates, officers, directors and principals). You also agree to notify us promptly if you become aware of any other persons or entities that are or may become involved in this matter.

14.3    If you do not provide us with this information and if a conflict is subsequently discovered, we may decline to represent, or to continue representing, you.

### 15.    DOCUMENTS

15.1    In the course of our dealings with you, we are likely to obtain possession of copies or originals of documents or other materials belonging to you or others. We will make arrangements to return the documents or materials to you, retain them in our storage facilities or dispose them after the matter is over.

15.2    If there are no other arrangements made with you, our policy is that we may at our discretion return all materials in your file to you, or destroy them at the end of seven years after the closing of your file. We will not do so if the lawyer in charge of your matter decides it is inappropriate or impermissible to destroy all or any portion of the materials in the file.



---

15.3    Upon closure of a file, we will direct all correspondence from third parties to you. For bankruptcy or winding-up matters, you further confirm that after closure of your file, we may inform the Official Assignee or Official Receiver or Liquidator to communicate directly with you. If there are funds forwarded to us by them, we will return such funds to them so that they may deal with you directly.

***Information on discovery of documents***

15.4    It is our duty to advise you that you must not deliberately destroy documents (including electronic documents) relevant to the issue in this matter that are in your possession, custody or power. Documents that are "relevant" to the issues in this matter include documents that do not support or adversely affect your case, or are confidential or informal. A party "deliberately" destroys relevant documents if he intends to put these documents out of reach of the other party in pending or anticipated litigation. If a party is found to have deliberately destroyed relevant documents, the Court may strike out that party's claim (if he is the Plaintiff) or defence (if he is the Defendant), even if a fair trial is still possible. It may therefore be necessary for you to suspend any corporate document destruction programme immediately. From now on, you should not destroy any document which could conceivably be relevant, however unimportant it may appear to you.

15.5    If you have already destroyed relevant documents before instructing us in this matter, you are still required by the Rules of Court to disclose to your opponent that these documents were once in your possession, custody or power. As stated above, the Court has the power to impose severe sanctions if the destruction was deliberate.

15.6    Your obligation to preserve evidence continues until this matter is finally resolved. The same obligation applies to your opponent. After action is commenced, you will in due course have to list, and then produce for your opponent's inspection, relevant documents that are not privileged (including new documents that you create through internal discussion or otherwise) and which are in your possession, custody or power. We would therefore wish to be involved in the formulation of anything relevant to this matter which you may wish to commit to writing.

15.7    Please ensure that every individual in your organization who may be affected by your discovery obligations in this matter is made aware of the need to preserve relevant documents, whether or not those documents are privileged. If you have any questions about this advice or any other discovery-related topic not covered by this advice, please feel free to contact us.

**16.    PROCEEDINGS BEFORE THE COURTS IN SINGAPORE**

***Ongoing court cases***

16.1    As a result of the practice direction in Supreme Court Practice Directions Amendment No. 6 of 2014, which came into effect on 1 December 2014, you and your directors, employees, officers or representatives should not make any comments in public about cases which are before any court in Singapore, where such comments may affect the outcome of a decision by the court or contravene any existing law or order of court. In particular, you must not publish, report or comment on any confidential statements (whether expressly stated to be confidential or impliedly confidential) made in Chambers by anyone.

***Court documents***

16.2    In addition, please ensure that you and your directors, employees, officers or representatives do not publish, report or comment on the following court documents in public:

(a)    any affidavit or statutory declaration which has not been adduced as evidence or referred to in any hearing in open Court or in Chambers; and

(b)    any court document (other than an affidavit or statutory declaration) which has not been served on the relevant party or parties in court proceedings.



16.3    Please bear this practice direction in mind when you are discharging any duty in law or in the SGX Listing Rules to make announcements.

16.4    Please do not hesitate to contact us if you have any questions on publishing, reporting or commenting publicly on ongoing court proceedings or court documents.

## 17.    DATA PROTECTION

17.1    We may collect, use and/or disclose personal data from you for the purposes of providing legal services and/or in the ordinary course of our work. We may disclose such personal data to our affiliated entities, third party service providers and agents, other professional advisors and consultants with whom we are dealing on your behalf, any necessary governmental authorities and other third parties including counsel for an opposing party. Details about how we process personal data are set out in our personal data protection policy (as updated from time to time), a copy of which is available at: http://www.drewnapier.com/Footers/Personal-Data-Protection-Practice.

17.2    Where you provide us with any personal data of third parties, you confirm that you have obtained all necessary consents to do so, and that we may collect, use and disclose such personal data for the purposes set out above, in accordance with the Personal Data Protection Act 2012.

## 18.    REVISIONS TO THE TERMS AND CONDITIONS OF APPOINTMENT

Our terms and conditions of appointment are reviewed periodically and may be revised during the course of our representation of you. If they are revised, we will provide you with the revised terms and conditions of appointment and the revised terms and conditions of appointment will come into effect and apply upon your receipt of them.

## 19.    COMPLETE AGREEMENT

19.1    Our Agreement overrides all other prior and contemporaneous written and oral agreements and understandings between us. They constitute the entire and complete agreement between us.

19.2    Our Agreement may only be modified by subsequent written agreement between us.

## 20.    PARTIAL INVALIDITY

If any provision or portion of our Agreement is wholly or partly unenforceable, the remainder of that provision will still remain in effect.

## 21.    SUBSEQUENT MATTERS

Our Agreement applies to our present representation of you and to any subsequent matters which we agree to undertake for you, unless we mutually agree in writing to a different arrangement.

## 22.    TERMINATION

22.1    Our services may be terminated by either party before completion of the work for which our services were engaged.

### Termination by you

22.2    You may bring our appointment as your lawyers to an end for any reason by giving us seven (7) days' notice.

### Termination by us



22.3    We may bring our appointment as your lawyers to an end for the reasons set out in Rule 26 of the Legal Profession (Professional Conduct) Rules 2015 (enclosed) and by giving you seven (7) days' notice.

22.4    In addition, we may also bring our appointment as your lawyers to an end by giving seven (7) days' notice if either funds to account requested by us or our professional fees and/or disbursements are not paid within fourteen (14) days of our request for such funds, or the issuance of our bills.

### Continuing payment obligations

22.5    Even though our appointment as your lawyers may come to an end, you will still be responsible for payment of our costs accrued and/or incurred up to the date of the termination or which are reasonably necessary after that.

### Lien

22.6    We shall have a lien over all documents and money held on account until you pay our costs. We will release these documents to your new solicitors if they undertake to us to protect our lien on costs.

### Retention of our property

22.7    Our own files, work papers, records and other documents generated by us internally pertaining to the matter are our property and shall be retained by us at all times. These will include, for example, minutes of meetings, administrative records, time and expense reports, personnel and staffing materials, internal correspondence, accounting records, and lawyers' work papers such as drafts, notes, memoranda, research materials etc.

### Miscellaneous

22.8    After the termination of the solicitor-client relationship, you agree to compensate us at our regular hourly rates plus expenses for post-representation activity that we may later agree, in our sole discretion, to undertake, such as responding to subpoenas, searching for and producing files or documents, preparing for testimony, testifying, performing transition work etc. It is also agreed that to the extent allowed by law, we will have no obligation to provide files or documents if all past fees and expenses are not paid in full, and that we will not under any circumstances have an obligation to grant interviews or testimony.

22.9    You are engaging us to provide legal services in a specific matter(s). After completion of the matter(s), changes may occur in laws or regulations which may have an impact on your future rights or responsibilities. Unless you engage us after completion of the matter(s) to provide additional services arising after completion, it is understood and agreed that we will have no continuing obligation to advise you or any other person or entity with respect to future developments.

### 23.    GOVERNING LAW AND JURISDICTION

Our Agreement shall be governed by the laws of the Republic of Singapore.

### 24.    LANGUAGE

This Appointment Letter and the Terms and Conditions are drafted in the English language. If on the client's request, the Appointment Letter and the Terms and Conditions have been translated into Mandarin, in the event of any inconsistency between the terms of the English language version and the Mandarin version of this Appointment Letter and/or the Terms and Conditions, the English language version of this Appointment Letter and the Terms and Conditions shall prevail.



### 25.   DISPUTE RESOLUTION

***Disputes or disagreements in relation to our fees for work done by us on your behalf to be submitted to mediation before taxation***

25.1   If there are any disputes or disagreements in relation to our legal fees or legal bills ("**Fee Dispute**"), before proceedings are commenced to assess the legal fees or legal bills and with your written consent, we may submit the Fee Dispute to the Singapore Mediation Centre ("**SMC**") for resolution by mediation in accordance with the Mediation Procedure in force at the time of submission of the Fee Dispute to mediation at the SMC. You further agree to participate in such SMC mediation that you may consent to in good faith and undertake to abide by the terms of any settlement agreement reached.

25.2   Should mediation proceed under clause 25.1, only in the event that the Fee Dispute cannot be resolved or settled through mediation under clause 25.1 within sixty (60) days after the mediation has commenced before the appointed mediator(s), may you apply to the Court for a formal assessment of the legal bills delivered by us in accordance with clause 9.4.

25.3   Should mediation proceed under clause 25.1, you agree that you will not commence proceedings in relation to any Fee Dispute until and unless you have in good faith attempted to settle the Fee Dispute by mediation and the Fee Dispute cannot be resolved or settled within sixty (60) days after the mediation has commenced before the appointed mediator(s).

***Recovery of our costs and/or monies due to us to be determined in Court***

25.4   You agree to submit to the non-exclusive jurisdiction of the Singapore Courts for the purposes of any action or court proceedings (including any summons, motion or petition) brought by us for or in relation to the recovery of our costs incurred or to be incurred by us on your behalf.

***Your obligation to submit all other disputes to mediation before arbitration***

25.5   You agree as a mandatory pre-condition to arbitration referred to in clause 25.6 to first submit all other disputes and differences arising under, out of, or in connection with our Agreement, or services provided by us to you, including any question regarding the existence, validity or termination of our Agreement, to the SMC for resolution by mediation in accordance with the Mediation Procedure for the time being in force. You further agree to participate in the mediation in good faith and undertake to abide by the terms of any settlement agreement reached.

25.6   In the event such disputes and differences referred to in clause 25.5 cannot be resolved or settled through mediation under clause 25.5 within sixty (60) days after the mediation has commenced before the appointed mediator(s), such disputes and differences shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("**SIAC Rules**") for the time being in force, which rules are deemed incorporated by reference to this clause. In relation to such arbitration:

(a)     the place and seat of arbitration shall be Singapore;

(b)     the administrative and appointing authority shall be the Singapore International Arbitration Centre;

(c)     the dispute shall be determined by a single arbitrator, such arbitrator to be appointed by mutual agreement between us, or in the event that no mutual agreement is reached, then in accordance with the SIAC Rules;

(d)     the language to be used in the arbitral proceedings shall be English; and

(e)     the arbitration proceedings shall be governed by the International Arbitration Act ("**IAA**") (Cap 143A) and Part II of the IAA and the UNCITRAL Model Law shall apply.



**26.    ALTERNATIVE DISPUTE RESOLUTION (ADR) FOR CIVIL CASES IN THE HIGH COURT AND COURT OF APPEAL**

26.1    It is our duty to advise you about the different ways in which your disputes may be resolved using one of the following forms of ADR:

(a)    Mediation

(b)    Neutral Evaluation

(c)    Expert Determination

(d)    Conciliation

26.2    You should consider ADR at the earliest possible stage of the proceedings in order to facilitate the just, expeditious and economical disposal of your case and especially where ADR may save costs and achieve a quicker resolution of your dispute.

26.3    In addition, you should note that the Judge hearing your case may take the view that ADR is suitable for your case and any unreasonable refusal on your part to resolve your case via mediation or any other means of ADR may result in adverse costs orders being made against you pursuant to Order 59 Rule 5(c) of the Rules of Court, which provides that:

*"The Court in exercising its discretion as to costs shall, to such extent, if any, as may be appropriate in the circumstances, take into account the parties' conduct in relation to any attempt at resolving the cause or matter by mediation or any other means of dispute resolution."*

***Mediation***

26.4    All disputes are capable of resolution through mediation provided all parties to the dispute are willing to seek resolution if they can.  However, some disputes may need more than one attempt at mediation before resolution is achieved.

26.5    Disputes which are ideal for resolution through mediation include:

(a)    Commercial disputes in which the disputants have an ongoing relationship that needs to be preserved;

(b)    Small value construction disputes where the costs and time involved in having the matter resolved through the courts is out of proportion to the sums at stake;

(c)    Neighbourhood disputes over noise, boundaries, rights of way or user;

(d)    Professional partnership disputes over dissolution or the respective rights of outgoing and remaining partners;

(e)    Actions by liquidators in which the available assets are limited and likely to be consumed by the costs of the liquidators and litigation;

(f)    Clinical and medical negligence cases where the victim needs to be heard in an environment which is less formal than a court room and where the medical professional may more easily apologise and explain;

(g)    Most employment cases, including all forms of discrimination, in which the complainant and the defendant can confront each other in an informal environment which is less inhibiting than a tribunal or court;



(h)    All types of claims where the costs of any proceedings are likely to equal or exceed the value of the claim.

**Neutral Evaluation**

26.6    If your matter requires specialised legal or technical expertise, appointing a neutral with the necessary expertise to give either a binding or non-binding evaluation may be a better way of informing all parties what the probable outcome may be. This can then form the basis for negotiation or mediation.

**Expert Determination**

26.7    If your dispute is likely to be determined by an expert's opinion and each party's expert holds a different view, appointing a third party expert to give an expert determination (whether binding or non-binding) may clarify the issue(s) and provide parties with a basis for negotiation or mediation.

**Conciliation**

26.8    If your dispute involves a breakdown in a commercial or personal relationship, for example, a workplace dispute, conciliation may be the best route to dispute resolution.



**DREW & NAPIER**

## RULE 26 OF THE LEGAL PROFESSION (PROFESSIONAL CONDUCT) RULES

**Completion of retainer and withdrawal from representation**

26. —   (1)      The following principle guides the interpretation of this rule.

*Principle*

The duties of honesty, competence and diligence owed by a legal practitioner to his or her client continue until the termination of the retainer.

(2)      Except as otherwise provided in this rule, a legal practitioner must complete the work which he or she agreed to undertake pursuant to his or her client's instructions.

(3)      The dissolution of a law practice terminates the lawyer-client relationship between a client of the law practice and the legal practitioner in the law practice who is in charge of the client's matter.

(4)      A legal practitioner must withdraw from representing a client, if —

(a)      the legal practitioner is discharged from the engagement by the client; or

(b)      having come into possession of a document belonging to another party by any means other than the normal and proper channels, and having read the document, the legal practitioner would be embarrassed in the discharge of the legal practitioner's duties by the knowledge of the contents of the document.

(5)      A legal practitioner may withdraw from representing a client in a case or matter, if —

(a)      the legal practitioner gives reasonable notice of the withdrawal to the client;

(b)      the withdrawal will not cause any significant harm to the client's interests, the client is fully informed of the consequences of the withdrawal, and the client voluntarily assents to the withdrawal;

(c)      the legal practitioner reasonably believes that continued engagement in the case or matter is likely to have a serious adverse effect on the legal practitioner's health;

(d)      the client —

(i)      fails to pay the legal practitioner's invoice within the stipulated period; or

(ii)     otherwise breaches an agreement with the legal practitioner regarding —

(A)      fees or expenses to be paid by the client; or

(B)      the client's conduct;

(e)      the client makes material misrepresentations about the facts of the case or matter to the legal practitioner;

(f)      the withdrawal is necessary to avoid a contravention by the legal practitioner of —

**DREW & NAPIER**

    (i)      the Act;

    (ii)     these Rules or any other subsidiary legislation made under the Act;

    (iii)    any practice directions, guidance notes and rulings issued under section 71(6) of the Act;

    (iv)    any practice directions, guidance notes and rulings (relating to professional practice, etiquette, conduct and discipline) issued by the Council or the Society; or

    (v)    if the legal practitioner is duly authorised or registered to practise law in any state or territory other than Singapore, any practice directions, guidance notes and rulings (relating to professional practice, etiquette, conduct and discipline) issued by —

        (A)    the foreign authority having the function conferred by law of authorising or registering persons to practise law in that state or territory; or

        (B)    any relevant professional body of that state or territory;

(g)    there is a serious loss of confidence between the legal practitioner and the client; or

(h)    any other good cause exists.

(6)    Where a legal practitioner withdraws from representing a client in a case or matter, the legal practitioner must —

(a)    take reasonable care to avoid foreseeable harm to the client, including, where the circumstances permit —

    (i)      by giving reasonable notice of the withdrawal to the client;

    (ii)     by giving the client a reasonable amount of time to engage another legal practitioner to take over the case or matter; and

    (iii)    by cooperating with the client's new legal practitioner; and

(b)    abide by the client's decision on whether to appoint another legal practitioner, and who to appoint, to take over the case or matter, if not completed.

(7)    Where a legal practitioner (*A*) claims to exercise a lien for unpaid legal costs over any document of his or her client relating to a matter —

(a)    in any case where another legal practitioner (*B*) is acting for the client, *A* must release that document to *B*, and offer such assistance as may be necessary to enable *B* to take over the matter, if —

    (i)      *B* undertakes to hold that document subject to the lien, and provides reasonable security for *A*'s unpaid costs; or

    (ii)     *B* offers to pay, or to enter into an agreement with the client to obtain payment of, *A*'s costs upon the completion of the matter, and *A* accepts *B*'s offer; or



(b)      in any other case, *A* must release that document to the client, if *A* receives reasonable security for *A*'s unpaid costs.