**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*, [1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket Nos. 22 & 231** |

**NOTICE OF FILING OF EXHIBIT A TO FIRST AMENDED**
**COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF**
**LIQUIDATION OF NEAR INTELLIGENCE, INC. AND ITS AFFILIATED DEBTORS**

   **PLEASE TAKE NOTICE** that on December 8, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [Docket No. 22] (as may be amended, supplemented, or modified from time to time, the "Combined Disclosure Statement and Plan" with the United States Bankruptcy Court for the District of Delaware (the "Court").

   **PLEASE TAKE FURHTER NOTICE** that on February 1, 2024, the Debtors filed the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [Docket No. 231] (the "First Amended Combined Disclosure Statement and Plan").

   **PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 1** is the Liquidation Analysis, Exhibit A to the First Amended Combined Disclosure Statement and Plan.

*[Signature page follows]*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

Dated: February 2, 2024
        Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

**EXHIBIT 1**

**Liquidation Analysis**

## LIQUIDATION ANALYSIS

**INTRODUCTION**[1]

Under the "best interests" test set forth in section 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court may not confirm a plan unless the plan provides each holder of a claim or interest who does not vote in favor of the plan with property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. To demonstrate that the proposed Combined Disclosure Statement and Plan satisfies the "best interests" test, the Debtors and their professionals have prepared the following hypothetical liquidation analysis (the "Liquidation Analysis"), based upon certain assumptions discussed in the Combined Disclosure Statement and Plan and in the accompanying notes and assumptions.

The Liquidation Analysis estimates potential distributions to holders of Allowed Claims and Interests in a hypothetical Chapter 7 liquidation of all the Debtors' assets (the "Chapter 7 Liquidation Scenario"). As such, asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Combined Disclosure Statement and Plan. The Debtors prepared the Liquidation Analysis with the assistance of their advisors.

The Debtors have prepared this Liquidation Analysis based on a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. It is assumed, among other things, that the hypothetical liquidation under Chapter 7 would commence under the direction of a Court-appointed trustee and would continue for a period of time, during which time all of the Debtors' major assets would be sold or surrendered to the respective lien holders, and the cash proceeds, net of liquidation-related costs, would then be distributed to creditors in accordance with relevant law.

The determination of the costs of, and proceeds from, the hypothetical liquidation of the Debtors' assets in a Chapter 7 Liquidation Scenario is an uncertain process involving the use of significant estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, economic, and competitive uncertainties, and contingencies beyond the control of the Debtors, their management and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual Chapter 7 liquidation, and unanticipated events and circumstances could materially affect the ultimate results in an actual Chapter 7 liquidation.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL

---

[1]    Capitalized terms used but not defined in the Liquidation Analysis shall have the meanings given to them in the Combined Disclosure Statement and Plan.

RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY.

THIS LIQUIDATION ANALYSIS IS A HYPOTHETICAL EXERCISE THAT HAS BEEN PREPARED FOR THE SOLE PURPOSE OF PRESENTING A REASONABLE GOOD FAITH ESTIMATE OF THE PROCEEDS THAT WOULD BE REALIZED IF THE DEBTORS WERE LIQUIDATED IN ACCORDANCE WITH CHAPTER 7 OF THE BANKRUPTCY CODE AS OF THE PLAN EFFECTIVE DATE. THIS LIQUIDATION ANALYSIS SHOULD NOT BE USED FOR ANY OTHER PURPOSE. THIS LIQUIDATION ANALYSIS DOES NOT PURPORT TO BE A VALUATION OF THE DEBTORS' ASSETS AS A GOING CONCERN, AND THERE MAY BE A SIGNIFICANT DIFFERENCE BETWEEN THIS LIQUIDATION ANALYSIS AND THE VALUES THAT MAY BE REALIZED OR CLAIMS GENERATED IN AN ACTUAL LIQUIDATION.

NOTHING CONTAINED IN THIS LIQUIDATION ANALYSIS IS INTENDED TO BE, OR CONSTITUTES, A CONCESSION, ADMISSION, OR ALLOWANCE OF ANY CLAIM BY THE DEBTORS. THE ACTUAL AMOUNT AND PRIORITY OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH AND USED IN THIS LIQUIDATION ANALYSIS.

THE DEBTORS RESERVE ALL RIGHTS TO SUPPLEMENT, MODIFY, OR AMEND THE LIQUIDATION ANALYSIS.

## NOTES AND ASSUMPTIONS[2]

1.  **Conversion Date**. The Liquidation Analysis has been prepared assuming that the Chapter 7 Liquidation Scenario would commence on or around March 8, 2024 (the "Conversion Date").

2.  **Dependence on Forecasted Financials**. The Liquidation Analysis includes numerous estimated amounts that are still under review and remain subject to further legal and accounting analysis.

3.  **Additional Unsecured Claims**. The Liquidation Analysis assumes a Chapter 7 Liquidation Scenario is likely to trigger certain claims that otherwise would not exist under a scenario where the Combined Disclosure Statement and Plan is confirmed and consummated (the "Chapter 11 Liquidating Plan Scenario"). These claims include various potential employee claims, tax liabilities, claims related to the rejection of Executory Contracts and other potential Allowed Claims. Such additional claims could be significant and may be entitled to priority in payment over General Unsecured Claims. In a Chapter 7 Liquidation Scenario, Priority Claims (if any) would be paid in full out of liquidation proceeds before any amount would be available for distribution to Allowed General Unsecured Claims.

---

[2]   Additional notes and assumptions are included in the Liquidation Analysis.

4. **Tax Consequences**. The Liquidation Analysis does not include estimates for the tax consequences, both foreign and domestic, that may be triggered upon the liquidation and sale of assets in the manner described above. Such tax consequences may be material.

5. **Wind-Down Costs**. For illustrative purposes, the Liquidation Analysis estimates cash as of the Conversion Date, inclusive of the wind-down budget amount of $750,000 reflected in the Debtors' most current DIP budget. However, in a Chapter 7 Liquidation Scenario, such amount would likely be unavailable to fund the costs of winding down and closing the Debtors' estates.

6. **Estimated Proceeds Available for Distribution**. The net estimated proceeds available for distribution to creditors in the Chapter 11 Liquidating Plan Scenario is lower as compared to the Chapter 7 Liquidation Scenario due to substantially all of the Debtors' assets being acquired by the Stalking Horse Bidder pursuant to the Stalking Horse Agreement in the Chapter 11 Liquidating Plan Scenario.

7. **Litigation Proceeds**. The value of litigation proceeds is undetermined at this time due to the uncertainties, contingencies, and difficulty in assessing the likelihood of success in connection with future litigation and any recoveries associated therewith. However, the Liquidation Analysis assumes that the value of litigation proceeds would be significantly higher in a Chapter 11 Liquidating Plan Scenario, as compared to a Chapter 7 Liquidation Scenario. In a Chapter 11 Liquidating Plan Scenario, the Debtors would assign significant estate claims and causes of action to the Litigation Trust established under the Combined Disclosure Statement and Plan. The Litigation Trust would be sufficiently funded and better positioned to pursue and maximize recoveries with respect to estate claims and causes of actions, as compared to a chapter 7 trustee in the Chapter 7 Liquidation Scenario.

8. **Chapter 7 Liquidation Costs and Length of Liquidation Process**. The Liquidation Analysis assumes that a liquidation would occur over approximately six months in order to pursue timely sales of substantially all of the Debtors' remaining assets and collect receivables. This would include retaining a limited group of personnel to arrange distributions, and otherwise administer and close the estates. In an actual liquidation, the wind down process and time period(s) could vary significantly thereby impacting recoveries. For example, the potential for priority, contingent and other claims, litigation, rejection costs and the final determination of Allowed Claims could substantially impact both the timing and amount of the distribution of the asset proceeds to the Holders of such Allowed Claims. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation.

Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Chapter 7 trustee, including expenses associated with selling the Debtors' assets, will be entitled to payment in full prior to any distribution to Chapter 11 administrative and other Priority Claims. The estimate used in the Liquidation Analysis for these expenses includes estimates for certain legal, accounting, and other professionals, as well as an assumed 3% fee based upon liquidated assets payable to a Chapter 7 trustee.

9.    **Consummation of the Stalking Horse Agreement**.  The Liquidation Analysis assumes that in a Chapter 11 Liquidating Plan Scenario, the Stalking Horse Bidder is the Successful Bidder and the Stalking Horse Agreement is consummated.  The Liquidation Analysis also assumes that in a Chapter 7 Liquidation Scenario, the Stalking Horse Agreement is not consummated, which would result in the DIP Loan Claims and Allowed Prepetition Loan Claims remaining outstanding in their entire Allowed amounts and having to be satisfied in Cash.  The conversion of the Chapter 11 Cases to a Chapter 7 case is a termination event under the Stalking Horse Agreement.

10.    **Claims Estimates**.  Unless otherwise specified in the Liquidation Analysis, estimated Claim amounts are based on forecasted book liabilities as of the Petition Date.

11.    **DIP Loan Claims**.  The Liquidation Analysis assumes that in a Chapter 11 Liquidating Plan Scenario, Holders of DIP Loan Claims are projected to recover all of their DIP Loan Claims on account of the Credit Bid Amount.  It also assumes that in a Chapter 7 Liquidation Scenario, DIP Loan Claims would remain outstanding and would have to be satisfied in Cash.

12.    **Allowed Prepetition Claims**.  The Liquidation Analysis assumes that in a Chapter 11 Liquidating Plan Scenario, Holders of Allowed Prepetition Loan Claims are projected to recover a portion of their Allowed Prepetition Loan Claims on account of the Credit Bid Amount.  The recovery for Holders of Allowed Prepetition Loan Claims in a Chapter 11 Liquidating Plan Scenario may be modified depending on the results of the Sale process and the ultimate amount of Litigation Trust Distribution Proceeds, which amount is undetermined as this time.  The Liquidation Analysis also assumes that in a Chapter 7 Liquidation Scenario, Prepetition Loan Claims would remain outstanding and would have to be satisfied in Cash.

13.    **Allowed General Unsecured Claims**.  The estimate of Allowed General Unsecured Claims is based on the Debtors' books and records as of the Petition Date.  This estimate does not include any potential unsecured damages claims resulting from the rejection of any Executory Contracts.  The Debtors estimate that in a Chapter 7 Liquidation Scenario, the estimated amount of General Unsecured Claims would increase by approximately $3.9 million on account of unsecured claims arising under Executory Contracts that would otherwise be assumed, assigned, and satisfied in connection with the closing of the Stalking Horse Agreement in a Chapter 11 Liquidating Plan Scenario.  The projected recovery for Holders of General Unsecured Claims depends on the ultimate amount of Litigation Trust Distribution Proceeds, which amount is undetermined at this time due to the uncertainties, contingencies, and difficulty in assessing the likelihood of success in connection with future litigation and any recoveries associated therewith are speculative at this time.

14.    **Distribution of Net Proceeds**.  Priority Non-Tax, Priority Tax and Administrative Claim amounts, Professional Fee Claims, U.S. Trustee fees and other such Claims that may arise in a liquidation scenario would be paid in full from the liquidation proceeds before the balance of those proceeds will be made available to pay pre-bankruptcy priority, secured

- 5 -

and general unsecured claims.  Under the absolute priority rule pursuant to section 1129(b) of the Bankruptcy Code, no junior creditor would receive any distribution until all senior creditors are paid in full, and no equity holder would receive any distribution until all creditors are paid in full.  The assumed distributions to creditors as reflected in the Liquidation Analysis are estimated in accordance with the absolute priority rule.

15.  **Conclusion**.  The Debtors have determined, as summarized in the Liquidation Analysis, that Confirmation of the Combined Disclosure Statement and Plan in a Chapter 11 Liquidating Plan Scenario would provide creditors with a recovery that is not less than what they would otherwise receive under the Chapter 7 Liquidation Scenario.

**Near Intelligence Inc. and its Debtor Subsidiaries**
Liquidation Analysis
($USD in 000's)

### I. Calculation of Net Estimated Proceeds Available for Distribution to Creditors

| Liquidation Value | Note Ref. | Unaudited Book Value | Chapter 7 Liquidation Estimated Recovery % Low | High | Estimated Liquidation Value Low | High | Chapter 11 Liquidating Plan Estimated Amount Available for Distribution Low | High | Low | High |
|---|---|---|---|---|---|---|---|---|---|---|
| **Near Intelligence Assets** | | | | | | | | | | |
| Cash | 1 | $990 | 95% | 100% | $941 | $990 | 100% | 100% | $990 | $990 |
| Trade receivables | 2 | $5,553 | 25% | 40% | $1,388 | $2,221 | | | $0 | $0 |
| Intercompany receivables | 3 | $853 | 0% | 5% | $0 | $43 | | | $0 | $0 |
| PP&E | 4 | $375 | 0% | 5% | $0 | $19 | | | $0 | $0 |
| Prepayments & deposits | 5 | $6,165 | 0% | 0% | $0 | $0 | | | $0 | $0 |
| Equity Investments | 6 | $2,618 | 0% | 5% | $0 | $131 | | | $0 | $0 |
| Intangibles | 7 | $68,020 | 0% | 0% | $0 | $0 | | | $0 | $0 |
| Patents and trademark | 8 | $1,000 | 5% | 10% | $50 | $100 | | | $0 | $0 |
| Litigation Proceeds | 9 | Undetermined | - | Undetermined | $0 | Undetermined | | | $0 | Undetermined |
| **Total Assets/Proceeds** | | | | | $ 2,379 | $ 3,504 | | | $ 990 | $ 990 |
| **Less: Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | 10 | | | | ($70) | ($101) | | | $0 | $0 |
| Wind-Down Costs | 11 | | | | ($700) | ($350) | | | ($700) | ($350) |
| **Net Estimated Proceeds Available for Distribution** | 12 | | | | $ 1,609 | $ 3,052 | | | $ 290 | $ 640 |

### II. Allocation of Net Estimated Proceeds Available for Distribution to Creditors

| Claim Classes | Note Ref. | Estimated Claim Amount | Chapter 7 Liquidation Estimated Recovery % Low | High | Estimated Recovery $ Low | High | Chapter 11 Liquidating Plan Estimated Recovery % Low | High | Estimated Recovery $ Low | High |
|---|---|---|---|---|---|---|---|---|---|---|
| **Allowed Administrative Claims** | 13 | **$100** | 100% | 100% | $100 | $100 | 100% | 100% | $100 | $100 |
| Remaining Proceeds After Satisfying Allowed Administrative Claims | | | | | $1,509 | $2,952 | | | $190 | $540 |
| **Allowed Priority Claims** | 14 | **$0** | 100% | 100% | $0 | $0 | 100% | 100% | $0 | $0 |
| Remaining Proceeds After Satisfying Allowed Priority Claims | | | | | $1,509 | $2,952 | | | $190 | $540 |
| **Class 1: Priority Non-Tax Claims** | 15 | **$0** | 100% | 100% | $0 | $0 | 100% | 100% | $0 | $0 |
| Remaining Proceeds After Satisfying Allowed Priority Non-Tax Claims | | | | | $1,509 | $2,952 | | | $190 | $540 |
| **Class 2: Other Secured Claims** | 16 | **$0** | 100% | 100% | $0 | $0 | 100% | 100% | $0 | $0 |
| Remaining Proceeds After Satisfying Other Secured Claims | | | | | $1,509 | $2,952 | | | $0 | $0 |
| **DIP Loan Claims** | 17 | **$16,000** | 9% | 18% | $1,509 | $2,952 | 100% | 100% | $16,000 | $16,000 |
| Remaining Proceeds After Satisfying DIP Loan Claims | | | | | $0 | $0 | | | $0 | $0 |
| **Class 3: Prepetition Loan Claims** | 18 | **$82,725** | 0% | 0% | $0 | $0 | 41% | 41% | $34,000 | $34,000 |
| Remaining Proceeds After Satisfying Prepetition Loan Claims | | | | | $0 | $0 | | | $0 | $0 |
| **Class 4: General Unsecured Claims** | 19 | **$30,321** | 0% | 0% | $0 | $0 | 0% | 0% | $0 | $0 |
| Remaining Proceeds After Satisfying General Unsecured Claims | | | | | $0 | $0 | | | $0 | $0 |
| **Class 5: Existing Securities Law Claims** | | **$0** | 0% | 0% | $0 | $0 | 0% | 0% | $0 | $0 |
| Remaining Proceeds After Satisfying Existing Securities Law Claims | | | | | $0 | $0 | | | $0 | $0 |
| **Class 6: Interests** | | **N/A** | 0% | 0% | $0 | $0 | 0% | 0% | $0 | $0 |
| Remaining Proceeds After Satisfying Interests | | | | | $0 | $0 | | | $0 | $0 |
| **Class 7A: Intercompany Claims** | | **N/A** | 0% | 0% | $0 | $0 | 0% | 0% | $0 | $0 |
| Remaining Proceeds After Satisfying Intercompany Claims | | | | | $0 | $0 | | | $0 | $0 |
| **Class 7B: Intercompany Interests** | | **N/A** | 0% | 0% | $0 | $0 | 0% | 0% | $0 | $0 |
| Remaining Proceeds After Satisfying Intercompany Interests | | | | | $0 | $0 | | | $0 | $0 |
| **Total Claims Recovery** | | | | | $ 1,609 | $ 3,052 | | | $ 50,100 | $ 50,100 |

**Notes**

1  Estimated cash balance as of the Conversion Date, March 8, 2024. Includes Wind-Down Budget amount of $750,000.

2  Debtors' trade receivables balance as of January 22, 2024. Based on account receivables aging report, excluding receivables from nondebtor and certain other customers.

3  Intercompany receivables value based on Debtors' consolidated balance sheet as of the Petition Date, December 8, 2023.

4  Property, plant & equipment value is net of depreciation and based on the Debtors' consolidated balance sheet as of the Petition Date, December 8, 2023. This asset is comprised of fixed assets such as office equipment, computers, and servers.

5  Prepayment & deposits value is as of the Petition Date, December 8, 2023. This asset is comprised primarily of director & officer insurance premium pre-payments.

6  Includes value of the Debtors' minority investments in X-Locations Inc. and Memob Plus FZ LLC (in the aggregate, approximately $2.6M) and their non-debtor subsidiaries (in the aggregate, valued at approximately $6 million). The value and potential liquidation recoveries for these assets are uncertain, especially considering that the equity of neither X-Locations Inc. nor Memob Plus FZ LLC is publicly traded, and, with respect to equity interests in the non-debtor subsidiaries, the value of such equity interests is subject to an ongoing analysis of the net impact of certain intercompany claims.

7  Value of intangibles is based on the Debtors' consolidated balance sheet as of the Petition Date, December 8, 2023. This asset is comprised of, among other things, right of use, contracts, customer relationships, software, noncompete agreements, and goodwill.

8  Patents and trademark includes the value of intellectual property that is not already accounted for in the estimated value of intangibles. This asset primarily represents an estimate of the value of the Debtors' website domain.

9  The value of litigation proceeds is undetermined at this time due to the uncertainties, contingencies, and difficulty in assessing the likelihood of success in connection with future litigation and any recoveries associated therewith. However, the Debtors estimate that the value of litigation proceeds would be significantly higher in a Chapter 11 Liquidating Plan scenario, as compared to a Chapter 7 Liquidation scenario. In a Chapter 11 Liquidating Plan scenario, the Debtors would assign significant estate claims and causes of action to a litigation trust established under their chapter 11 liquidating plan. The litigation trust would be sufficiently funded and better positioned to pursue and maximize recoveries with respect to estate claims and causes of actions, as compared to a chapter 7 trustee.

10  Chapter 7 trustee fees are calculated as 3% of the estimated proceeds available for distribution in a Chapter 7 Liquidation scenario.

11  Wind-down costs are estimated to include between $150k - $300k in plan administration, legal, and U.S. Trustee fees, $100k - $200k in costs related to the claims reconciliation process, $60k - $120k in taxes, and $40k - $80k of entity wind down

12  The net estimated proceeds available for distribution to creditors in a Chapter 11 Liquidating Plan scenario is lower as compared to a Chapter 7 liquidation scenario on account of substantially all of the Debtors' assets being acquired by the Stalking Horse Bidder pursuant to the Stalking Horse Agreement.

13  Amount of estimated allowed administrative claims is for illustrative purposes. The actual amount of allowed administrative claims may vary materially from the estimate provided, and the Debtors estimate that allowed administrative claims would be significantly higher in a Chapter 7 Liquidation scenario as compared to a Chapter 11 Liquidating Plan scenario

14  As of the date of this Liquidation Analysis, the Debtors are not aware of any Priority Claims against their estates.

15  As of the date of this Liquidation Analysis, the Debtors do not anticipate that there will be any Allowed Priority Claims against their estates.

16  As of the date of this Liquidation Analysis, the Debtors are not aware of any Other Secured Claims against their estates.

17  Estimated recoveries for DIP Loan Claims assume that (i) the Stalking Horse Bidder is the Successful Bidder and the Stalking Horse Agreement is consummated in a Chapter 11 Liquidating Plan scenario, and (ii) the Stalking Horse Agreement is not consummated in a Chapter 7 Liquidation scenario, which would result in the DIP Loan Claims remaining outstanding in their entire Allowed amounts in a Chapter 7 Liquidation scenario and having to be satisfied in cash. In the event that the Stalking Horse Agreement is consummated in a Chapter 11 Liquidating Plan scenario, DIP Loan Claims are estimated to be satisfied in full on account of the Credit Bid Amount.

18  Estimated recoveries for Allowed Prepetition Loan Claims assume that (i) the Stalking Horse Bidder is the Successful Bidder and the Stalking Horse Agreement is consummated in a Chapter 11 Liquidating Plan scenario, and (ii) the Stalking Horse Agreement is not consummated in a Chapter 7 Liquidation scenario, which would result in the Prepetition Loan Claims remaining outstanding in their entire Allowed amounts in a Chapter 7 Liquidation scenario and having to be satisfied in cash. In the event that the Stalking Horse Agreement is consummated in a Chapter 11 Liquidating Plan scenario, Allowed Prepetition Loan Claims are estimated to be satisfied in the amount of approximately 41% on account of the Credit Bid Amount.

19  Estimate of Allowed General Unsecured Claims is based on the Debtors' books and records as of the Petition Date, December 8, 2023. This estimate does not include any potential damages claims resulting from the rejection of any Executory Contracts. The Debtors estimate that in a Chapter 7 Liquidation scenario, the estimated amount of General Unsecured Claims would increase by $3.9M on account of unsecured claims arising under Executory Contracts that would otherwise be assumed, assigned, and satisfied in connection with the closing of the Stalking Horse Agreement in a Chapter 11 Liquidating Plan scenario.