## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*, [1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 148** |
| | <u>**Objection Deadline**</u>: **February 29, 2024 at 4:00 p.m. (ET)** |

### NOTICE OF FILING OF DECLARATION OF DISINTERESTEDNESS OF ORDINARY COURSE PROFESSIONAL AEI LEGAL LLC

**PLEASE TAKE NOTICE** that on January 9, 2024, the Court entered the *Order Authorizing (I) the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Effective as of the Petition Date and (II) Waiving Certain Information Requirements of Local Rule 2016-2* [Docket No. 148] (the "OCP Order").[2] The OCP Order provides that each ordinary course professional shall file with the Court a Declaration of Disinterestedness prior to the receipt of payment of fees and reimbursement of expenses incurred for postpetition services rendered to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the procedures set forth in the OCP Order, the Debtors hereby file the Declaration of Disinterestedness (the "Declaration") of AEI Legal LLC (the "OCP"), a copy of which is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the procedures set forth in the OCP Order, any objections to the Declaration must be filed and served on or before **February 29, 2024 at 4:00 p.m. (ET)**. If no timely objection is filed and served, the Debtors shall be authorized to retain the OCP on a final basis without further order of the Court.

*[Signature page follows]*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]  All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the OCP Order.

Dated: February 15, 2024
          Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

## EXHIBIT A

### Declaration of Disinterestedness

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline:** **February 29, 2024 at 4:00 p.m. (ET)** |

### DISCLOSURE DECLARATION OF ORDINARY COURSE PROFESSIONAL

I, <u>Chee Yuen Li, Andrea</u>, do hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.    This declaration (this "<u>Declaration</u>") is submitted in accordance with that certain Order Authorizing the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Docket No. 148 (the "<u>OCP Order</u>").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the OCP Order.

2.    The Debtors have requested that AEI Legal LLC (the "<u>Firm</u>") provide (i) legal advisory services; and (ii) corporate secretarial services, including the provision of a company secretary, nominee director and Corppass Administrator services to Near Intelligence Pte. Ltd., and the Firm has agreed to provide such services.

3.    The Firm may have performed services in the past, may currently perform services, and may perform services in the future, in matters unrelated to these chapter 11 cases for persons

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

that are parties in interest in these Chapter 11 Cases.  The Firm does not perform services for any such person in connection with these Chapter 11 Cases or have any relationship with any such person, their attorneys, or accountants that would be adverse to the Debtors or their estates.

4.       As part of its customary practice, the Firm is retained in cases, proceedings, and transactions involving many different parties, some of whom may represent or be retained by the Debtors, claimants, and parties in interest in these Chapter 11 Cases.

5.       Neither I nor any principal, partner, director, or officer of, or professional employed by, the Firm has agreed to share, or will share, any portion of the compensation to be received from the Debtors with any other person other than the principal and regular employees of the Firm.

6.       Neither I nor any principal, partner, director, or officer of, or professional employed by, the Firm, insofar as I have been able to ascertain, holds, or represents any interest adverse to the Debtors or their estates with respect to the matter(s) upon which this Firm is to be retained.

7.       The Debtors owe the Firm US$3,836.70 for prepetition services, the payment of which is subject to limitations contained in the Bankruptcy Code.

8.       As of the Petition Date, the Firm was party to an agreement for indemnification with certain of the Debtors.  Copies of such agreements are attached hereto as **Exhibit 1**.

9.       The Firm has read the OCP Order and understands the limitations on compensation and reimbursement of expenses under the OCP Order.  Specifically, the Firm understands that in the event that it exceeds the OCP Cap, the Firm will be required to file with the Court a fee application for its fees and expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of the Court.

10.       The Firm is conducting further inquiries regarding its retention by any creditors of the Debtors, and upon conclusion of that inquiry, or at any time during the period of its retention,

if the Firm should discover any facts bearing on the matters described herein, the Firm will supplement the information contained in this Declaration.

11.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Andrea Chee (Feb 14, 2024 10:09 GMT+8)

CHEE YUEN LI, ANDREA
1 Phillip Street, #05-01, Royal One Phillip,
Singapore 048692

**EXHIBIT 1**

**AGREEMENT FOR APPOINTMENT OF COMPANY SECRETARY**
**OF NEAR INTELLIGENCE PTE. LTD. (the "Agreement")**

**THIS AGREEMENT** is made on the   6th   day of   November     2023

**Between**:

(1)    **NEAR INTELLIGENCE PTE. LTD.** ("**Company**") of 160 Robinson Road, #20-03, Singapore 068914; and

(2)    **AEI LEGAL LLC** ("**AEI**") of 1 Phillip Street, #05-01, Royal One Phillip, Singapore 048692,

(collectively, the "**Parties**", and each a "**Party**").

**Whereas**:

(A)    The Company has requested that AEI provide corporate secretarial services and a natural person to act in the capacity of a company secretary (the "**Company Secretary**") of the Company during the Appointment Period.

(B)    AEI has agreed to provide corporate secretarial services and a natural person to act in the capacity of Company Secretary.

**1.    DURATION**

1.1    AEI hereby agrees to provide corporate secretarial services and a natural person to act in the capacity of Company Secretary for the Appointment Period.

1.2    Subject to Clause 9, AEI shall provide such services as may be agreed in writing with the Company (the "**Services**").

1.3    The Services do not include attendance by the Company Secretary at any meeting or performance by AEI or the Company Secretary of any services which AEI deems to be of a non-routine, irregular, or special nature.

**2.    REPLACEMENT**

The Company hereby undertakes to AEI and the Company Secretary that it shall be the Company's sole responsibility to procure that a suitable replacement corporate secretarial services provider and company secretary is appointed on the same date that this engagement ceases or terminates. In the event that the replacement corporate secretarial services provider and company secretary appointment is held by any competent authority to be invalid in any way, the Company shall pay any fees and expenses that may be incurred pursuant thereto, including but not limited to additional fees payable to AEI.

3. **COMPANY SECRETARY'S POWERS**

3.1    Subject to Clause 3.2, the Company shall procure that the Authorised Person(s) (as defined below) provide Instructions (as defined below) to AEI and/ or the Company Secretary.

3.2    The Parties acknowledge and agree that AEI and/ or the Company Secretary shall have, and may exercise, all powers necessary or desirable to discharge its duties as a company secretary under Applicable Law (defined below).

3.3    "**Applicable Law**" includes all applicable legislation, statutes, directives, regulations, judgments, decisions, decrees, orders, instruments, by-laws, and other legislative measures or decisions having the force of law, treaties, conventions and other agreements between states, or between states and supranational bodies, rules of common law, customary law and equity and all civil or other codes and all other laws of, or having effect in, any jurisdiction from time to time and whether before or after the date of this Agreement;

3.4    "**Authorised Person(s)**" shall mean any natural persons duly or purporting to be duly authorised in writing by the Company from time to time to communicate with AEI and/ or the Company Secretary.

3.5    "**Instructions**" shall be received only from Authorised Person(s) in respect of matters referred to in this Agreement, and shall be in writing. If instructions are provided by telephone, such instructions shall be deemed "Instructions" only when confirmed in writing by any Authorised Person or AEI or the Company Secretary. If there is more than one Authorised Person, AEI and/ or the Company Secretary may act on the instructions of any Authorised Person.

4. **INDEMNITY**

4.1    The Company shall hold harmless and indemnify AEI and the Company Secretary and their respective executors, administrators and successors in title, at all times to the fullest extent permitted by Applicable Law, from and against:

   (a)    all actions, proceedings, claims, liabilities, or demands (collectively, "**Claims**") which may involve AEI and/ or the Company Secretary directly or indirectly;
   (b)    all costs and expenses on a full indemnity basis which AEI and/ or the Company Secretary may incur in connection with any Claim(s); and
   (c)    all judgments, penalties, fines, and amounts which may be paid in settlement by AEI and/ or the Company Secretary directly or indirectly in connection with any Claim(s),

   by reason of AEI providing corporate secretarial services to the Company or of the Company Secretary acting as company secretary for the Company, or by reason of any act, deed, matter or thing done or omitted by the Company Secretary in the capacity of company secretary of the Company (unless there is a final non-appealable decision rendered by a court of competent jurisdiction making the determination that such act, deed, matter or thing was done or omitted knowingly in contravention of the laws of any other place having jurisdiction over the Company, or applicable in the place where such act, deed, matter or thing is done or omitted, or in contravention of any express lawful instructions given by the Company or any Authorised Person(s) to AEI and/ or the Company Secretary).

2

4.2    Unless AEI and/ or the Company Secretary (as applicable) elects so in writing, in respect of any threatened, pending or completed Claim(s) in which the Company is jointly liable with AEI and/ or the Company Secretary (or would be if joined in such action, suit or proceeding), to the fullest extent permitted under Applicable Law, the Company shall pay, in the first instance, the entire amount of any judgment or settlement of such Claim(s) without requiring AEI and/ or the Company Secretary (as applicable) to contribute to such payment and the Company hereby waives and relinquishes all existing or future right of contribution or other similar rights against AEI and/ or the Company Secretary. To the fullest extent permitted under Applicable Law, the Company shall not enter into any settlement of any Claim(s) in which the Company is jointly liable with the Company Secretary and/ or AEI (or would be if joined in such action, suit or proceeding) unless such settlement provides for a full and final release of all actions, proceedings, claims, liabilities, or demands asserted against the Company Secretary and AEI.

4.3    To the fullest extent permitted under Applicable Law, the Company shall fully indemnify and hold AEI and/ or the Company Secretary harmless from any Claim(s) which may be brought by officers, directors, employees, agents or representatives of the Company.

4.4    The Company shall, in connection with the indemnity in this Clause 4, advance all expenses incurred by or on behalf of AEI and/ or the Company Secretary (as applicable), whether prior to or after the final disposition of any Claim(s). Any advances and undertakings to repay pursuant to this Clause 4.4 shall be unsecured and interest free.

4.5    The indemnity in this Clause 4 shall remain in full force and effect notwithstanding the cessation of AEI's and/ or the Company Secretary's appointment, or other termination of this Agreement.

## 5.    EXCLUSION OF LIABILITY

Neither AEI nor the Company Secretary shall in any event be liable to the Company, or any Authorised Person in respect of anything done or omitted to be done by AEI and/ or the Company Secretary, unless the act done or omitted to be done is a direct result of the fraud of AEI or the Company Secretary.

## 6.    UNDERTAKINGS

6.1    The Company undertakes and warrants to AEI and the Company Secretary that:

(a)    any act that any Authorised Person may request the Company Secretary to commit shall comply with and not contravene in any respect any Applicable Law;

(b)    any statement or document that any Authorised Person may request the Company Secretary to sign will be true, accurate and complete in all respects; and

(c)    the Company Secretary and/ or AEI may request to not comply with any request of the Company, in any event.

## 7.    SUCCESSORS AND ASSIGNS

7.1    The Company shall not transfer or otherwise assign its obligations under this Agreement without AEI's prior written consent.

3

7.2    The benefit of the rights of AEI and the Company Secretary herein shall not be affected by any change in the structure of AEI and shall also be for the benefit of any Company Secretary which AEI may substitute, and shall continue notwithstanding the termination of this Agreement.

## 8.    APPOINTMENT OF SUBSTITUTE

AEI may at any time appoint a substitute to act in the place of an existing Company Secretary by notifying the Company in writing.

## 9.    DURATION AND TERMINATION

9.1    This Agreement shall commence on the date when it has been signed by all Parties. Unless terminated in accordance with the terms of this Agreement, this Agreement shall continue for an initial term of one (1) year ("**Initial Term**") and shall automatically extend for a period of one (1) year ("**Extended Term**") at the end of the Initial Term and at the end of each Extended Term ("**Appointment Period**").

9.2    Either Party may at any time revoke the nomination with one (1) month's prior written notice to the other Party(ies). The Company shall ensure that all such acts as may be necessary to give effect to such revocation or termination, including securing the appointment of an appropriate replacement company secretary for the Company, are done promptly.

9.3    Any termination of this Agreement shall not affect (i) the continued force and effect of Clauses 4 (Indemnity), 5 (Exclusion of Liability), 7 (Successors and Assigns), 9 (Duration and Termination), 10 (Variation), 11 (Severability), 13 (Contracts (Rights of Third Parties) Act 2001 (Singapore)) and 14 (Governing Law and Dispute Resolution); and (ii) any rights or obligations of the Parties which have accrued prior to termination. AEI shall be entitled to receive all fees and other monies accrued and due up to the date of such termination.

## 10.    VARIATION

No amendment or variation of this Agreement shall be effective unless so amended or varied in writing and signed by or on behalf of each of the Parties.

## 11.    SEVERABILITY

11.1    If any provision (or any part of a provision) of this Agreement is held by any court or administrative body of competent jurisdiction to be invalid, unenforceable or illegal, the other provisions shall remain in force.

11.2    If any invalid, unenforceable or illegal provision would be valid, enforceable and legal if some part of it were deleted, such provision shall apply with such deletion or modification as may be necessary to make it valid, enforceable and legal.

12.   **COUNTERPARTS**

This Agreement may be entered into by the Parties in any number of separate counterparts, each of which when so executed shall be an original, but all counterparts shall together constitute one and the same document. Signatures may be exchanged by electronic mail (in PDF or otherwise), with original signatures to follow. Each Party agrees to be bound by its own electronic mail and that it accepts the electronic (sent via electronic mail) signature of the other Party.

13.   **CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 2001 (SINGAPORE)**

Save for the Company Secretary, who may enforce any term of this Agreement as though he/ she were party to this Agreement, nothing in this Agreement is intended to grant to any third party any right to enforce any term of this Agreement or to confer on any third party any benefits under this Agreement for the purposes of the Contracts (Rights of Third Parties) Act 2001 (Singapore) and any re-enactment thereof, the application of which legislation is hereby expressly excluded.

14.   **GOVERNING LAW AND DISPUTE RESOLUTION**

14.1   This Agreement shall be governed by and construed in accordance with the laws of Singapore. The Company shall not in any event take advantage of any sovereign immunity or similar or analogous defenses which may be available in any Claim brought by AEI and/ or the Company Secretary against the Company.

14.2   The Parties agree that if a dispute arises out of or in connection with this Agreement, or the engagement, including any question regarding its existence, validity or termination the Parties shall first try to settle the dispute via negotiations in good faith, before proceeding to mediation in good faith as administered by the Singapore Mediation Centre, and only thereafter to arbitration as provided below.

14.3   The Parties agree that all disputes, claims or differences arising out of or in connection with this Agreement or the engagement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("**SIAC Rules**") for the time being in force, which rules are deemed to be incorporated by reference to this clause. The arbitral tribunal shall consist of a single arbitrator to be appointed by mutual consent. Where there is no mutual consent, the appointment shall be in accordance with the SIAC Rules. The language of the arbitration shall be in English. The arbitral tribunal shall decide any dispute submitted to arbitration strictly in accordance with the substantive laws of Singapore (without regard to principles of conflict of laws thereunder) and shall not apply any other substantive law.

[The remainder of this page is intentionally left blank, execution page to follow]

IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date first written above.


_____
Authorised signatory of
NEAR INTELLIGENCE PTE.
LTD.
Name: John Faieta
Designation: Director


_____
Authorised signatory of
AEI LEGAL LLC
Name: Andrea Chee
Designation: Managing
Director


_____
Witness' name: Christina Handal
NRIC/ Passport no: 665668607


_____
Witness' name:
NRIC/ Passport no:


*Execution page*

IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date first written above.

_____

Authorised signatory of
NEAR INTELLIGENCE PTE.
LTD.
Name:
Designation: Director

Andrea Chee (Nov ... 2023 09:48 GMT+8)
_____

Authorised signatory of
AEI LEGAL LLC
Name: Andrea Chee
Designation: Managing
Director

_____

Witness' name:
NRIC/ Passport no:

_____

Witness' name:  Thang Rui Ling
NRIC/ Passport no: SXXXX385E

*Execution page*

**AGREEMENT FOR APPOINTMENT OF NOMINEE DIRECTOR
OF NEAR INTELLIGENCE PTE. LTD. (the "Agreement")**

**THIS AGREEMENT** is made on the    6th    day of    November    2023

**Between**:

(1)    **NEAR INTELLIGENCE PTE. LTD.** ("**Company**") of 160 Robinson Road, #20-03, Singapore 068914; and

(2)    **AEI LEGAL LLC** ("**AEI**") of 1 Phillip Street, #05-01, Royal One Phillip, Singapore 048692,

(collectively, the "**Parties**", and each a "**Party**").

**Whereas**:

A.    The Company has requested that AEI provide a natural person to act in the capacity of a nominee Director (the "**Nominee Director**") of the Company during the Appointment Period.

B.    AEI has agreed to provide a natural person to act in the capacity of Nominee Director.

**1.    DURATION**

1.1    AEI hereby agrees to provide a Nominee Director to act in the capacity of the ordinarily resident Director of the Company for the Appointment Period.

1.2    Subject to Clause 9, the Nominee Director shall, upon receipt of the Company's written instructions provided in accordance with Clause 3, execute directors' resolutions of the Company relating to the following matters:

(a)    appointment and resignation of Directors;
(b)    appointment and resignation of the company secretary;
(c)    opening of bank accounts;
(d)    convening of General Meetings;
(e)    change of the Company's name;
(f)    changes to the Company's Constitution;
(g)    appointment and change of auditors; and
(h)    any other matters reasonably necessary to conduct the business of the Company,

(collectively, the "Services").

1.3    The Services do not include attendance by the Nominee Director at any meeting or performance by the Nominee Director of any services which the Nominee Director deems to be of a non-routine, irregular, or special nature.

1

## 2. CESSATION OF NOMINEE DIRECTOR

The Company hereby undertakes to AEI and the Nominee Director that it shall be the Company's sole responsibility to procure that a suitable replacement director is appointed on the same date that the Nominee Director's appointment ceases or terminates. In the event that the replacement director's appointment is held by any competent authority to be invalid in any way, the Company shall pay any fees and expenses that may be incurred pursuant thereto, including but not limited to additional fees payable to AEI.

## 3. NOMINEE DIRECTOR'S POWERS

3.1    Subject to Clause 3.2, the Company shall procure that the Authorised Person(s) (as defined below) provide Instructions (as defined below) to the Nominee Director and/ or AEI.

3.2    The Parties acknowledge and agree that the Nominee Director shall have, and may exercise, all powers necessary or desirable to manage the business and affairs of the Company, in order to discharge his/ her duties as a director under Applicable Law (defined below).

3.3    "**Applicable Law**" includes all applicable legislation, statutes, directives, regulations, judgments, decisions, decrees, orders, instruments, by-laws, and other legislative measures or decisions having the force of law, treaties, conventions and other agreements between states, or between states and supranational bodies, rules of common law, customary law and equity and all civil or other codes and all other laws of, or having effect in, any jurisdiction from time to time and whether before or after the date of this Agreement;

3.4    "**Authorised Person(s)**" shall mean any natural persons duly or purporting to be duly authorised in writing by the Company from time to time to communicate with the Nominee Director and/ or AEI.

3.5    "**Instructions**" shall be received only from Authorised Person(s) in respect of matters referred to in this Agreement, and shall be in writing. If instructions are provided by telephone, such instructions shall be deemed "Instructions" only when confirmed in writing by any Authorised Person or the Nominee Director or AEI. If there is more than one Authorised Person, the Nominee Director and/ or AEI may act on the instructions of any Authorised Person.

## 4. INDEMNITY

4.1    The Company shall hold harmless and indemnify the Nominee Director and AEI and their respective executors, administrators and successors in title, at all times to the fullest extent permitted by Applicable Law, from and against:

(a)    all actions, proceedings, claims, liabilities, or demands (collectively, "**Claims**") which may involve the Nominee Director and/ or AEI directly or indirectly;

(b)    all costs and expenses on a full indemnity basis which the Nominee Director and/ or AEI may incur in connection with any Claim(s); and

2

      (c)     all judgments, penalties, fines, and amounts which may be paid in settlement by the Nominee Director and/ or AEI directly or indirectly in connection with any Claim(s),

by reason of the Nominee Director acting as director for the Company, or by reason of any act, deed, matter or thing done or omitted by the Nominee Director in the capacity of director of the Company (unless there is a final non-appealable decision rendered by a court of competent jurisdiction making the determination that such act, deed, matter or thing was done or omitted knowingly in contravention of the laws of any other place having jurisdiction over the Company, or applicable in the place where such act, deed, matter or thing is done or omitted, or in contravention of any express lawful instructions given by the Company or any Authorised Person(s) to AEI and/ or the Nominee Director).

4.2     Unless the Nominee Director and/ or AEI (as applicable) elects so in writing, in respect of any threatened, pending or completed Claim(s) in which the Company is jointly liable with the Nominee Director and/ or AEI (or would be if joined in such action, suit or proceeding), to the fullest extent permitted under Applicable Law, the Company shall pay, in the first instance, the entire amount of any judgment or settlement of such Claim(s) without requiring the Nominee Director and/ or AEI (as applicable) to contribute to such payment and the Company hereby waives and relinquishes all existing or future right of contribution or other similar rights against the Nominee Director and/ or AEI. To the fullest extent permitted under Applicable Law, the Company shall not enter into any settlement of any Claim(s) in which the Company is jointly liable with the Nominee Director and/ or AEI (or would be if joined in such action, suit or proceeding) unless such settlement provides for a full and final release of all actions, proceedings, claims, liabilities, or demands asserted against the Nominee Director and AEI.

4.3     To the fullest extent permitted under Applicable Law, the Company shall fully indemnify and hold the Nominee Director and AEI harmless from any Claim(s) which may be brought by officers, directors, employees, agents or representatives of the Company.

4.4     The Company shall, in connection with the indemnity in this Clause 4, advance all expenses incurred by or on behalf of the Nominee Director and/ or AEI (as applicable), whether prior to or after the final disposition of any Claim(s). Any advances and undertakings to repay pursuant to this Clause 4.4 shall be unsecured and interest free.

4.5     The indemnity in this Clause 4 shall remain in full force and effect notwithstanding the cessation of the Nominee Director's and/ or AEI's appointment, or other termination of this Agreement.


**5.**     **EXCLUSION OF LIABILITY**

Neither AEI nor the Nominee Director shall in any event be liable to the Company, or any Authorised Person in respect of anything done or omitted to be done by AEI and/ or the Nominee Director, unless the act done or omitted to be done is a direct result of the fraud of AEI or the Nominee Director.

6.     **UNDERTAKINGS**

6.1    The Company undertakes and warrants to AEI and the Nominee Director that:

(a)    the Company shall keep proper accounts and will file on a timely basis all returns, papers and documents to be filed with any authority;

(b)    the Company shall exercise due and proper care in managing and administrating all monies from all accounts in the name of or used by the Company, maintained at any bank or other financial institution;

(c)    all taxes required to be paid by the Company will be promptly and duly paid;

(d)    any act that any Authorised Person may request the Nominee Director to commit shall comply with and not contravene in any respect any Applicable Law;

(e)    any statement or document that any Authorised Person may request the Nominee Director to sign will be true, accurate and complete in all respects;

(f)    the Company shall take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the Director in doing, all things necessary, proper or advisable to carry out the intent and purposes of this Agreement; and

(g)    the Nominee Director and/ or AEI may request to not comply with any request of the Company, in any event.

7.     **SUCCESSORS AND ASSIGNS**

7.1    The Company shall not transfer or otherwise assign its obligations under this Agreement without AEI's prior written consent.

7.2    The benefit of the rights of the Nominee Director and AEI herein shall not be affected by any change in the structure of AEI and shall also be for the benefit of any Nominee Director which AEI may substitute, and shall continue notwithstanding the termination of this Agreement.

8.     **APPOINTMENT OF SUBSTITUTE**

AEI may at any time appoint a substitute to act in the place of an existing Nominee Director by notifying the Company in writing.

9.     **DURATION AND TERMINATION**

9.1    This Agreement shall commence on the date when it has been signed by all Parties. Unless terminated in accordance with the terms of this Agreement, this Agreement shall continue for an initial term of one (1) year ("**Initial Term**") and shall automatically extend for a period of one (1) year ("**Extended Term**") at the end of the Initial Term and at the end of each Extended Term ("**Appointment Period**").

9.2    Either Party may at any time revoke the nomination with one (1) month's prior written notice to the other Party(ies). The Company shall ensure that all such acts as may be necessary to give effect to such revocation or termination, including securing the appointment of an appropriate replacement director for the Company, are done promptly.

9.3    Any termination of this Agreement shall not affect (i) the continued force and effect of Clauses 4 (Indemnity), 5 (Exclusion of Liability), 7 (Successors and Assigns), 9 (Duration and Termination), 10 (Variation), 11 (Severability), 13 (Contracts (Rights of Third Parties) Act 2001 (Singapore)) and 14 (Governing Law and Dispute Resolution); and (ii) any rights or obligations of the Parties which have accrued prior to termination. AEI shall be entitled to receive all fees and other monies accrued and due up to the date of such termination.

## 10.    VARIATION

No amendment or variation of this Agreement shall be effective unless so amended or varied in writing and signed by or on behalf of each of the Parties.

## 11.    SEVERABILITY

11.1    If any provision (or any part of a provision) of this Agreement is held by any court or administrative body of competent jurisdiction to be invalid, unenforceable or illegal, the other provisions shall remain in force.

11.2    If any invalid, unenforceable or illegal provision would be valid, enforceable and legal if some part of it were deleted, such provision shall apply with such deletion or modification as may be necessary to make it valid, enforceable and legal.

## 12.    COUNTERPARTS

This Agreement may be entered into by the Parties in any number of separate counterparts, each of which when so executed shall be an original, but all counterparts shall together constitute one and the same document. Signatures may be exchanged by electronic mail (in PDF or otherwise), with original signatures to follow. Each Party agrees to be bound by its own electronic mail and that it accepts the electronic (sent via electronic mail) signature of the other Party.

## 13.    CONTRACTS (RIGHTS OF THIRD PARTIES) ACT 2001 (SINGAPORE)

Save for the Nominee Director, who may enforce any term of this Agreement as though he/ she were party to this Agreement, nothing in this Agreement is intended to grant to any third party any right to enforce any term of this Agreement or to confer on any third party any benefits under this Agreement for the purposes of the Contracts (Rights of Third Parties) Act 2001 (Singapore) and any re-enactment thereof, the application of which legislation is hereby expressly excluded.

## 14.    GOVERNING LAW AND DISPUTE RESOLUTION

14.1    This Agreement shall be governed by and construed in accordance with the laws of Singapore. The Company shall not in any event take advantage of any sovereign immunity

or similar or analogous defenses which may be available in any Claim brought by AEI and/ or the Nominee Director against the Company.

14.2 The Parties agree that if a dispute arises out of or in connection with this Agreement, or the engagement, including any question regarding its existence, validity or termination the Parties shall first try to settle the dispute via negotiations in good faith, before proceeding to mediation in good faith as administered by the Singapore Mediation Centre, and only thereafter to arbitration as provided below.

14.3 The Parties agree that all disputes, claims or differences arising out of or in connection with this Agreement or the engagement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre in accordance with the Arbitration Rules of the Singapore International Arbitration Centre ("**SIAC Rules**") for the time being in force, which rules are deemed to be incorporated by reference to this clause. The arbitral tribunal shall consist of a single arbitrator to be appointed by mutual consent. Where there is no mutual consent, the appointment shall be in accordance with the SIAC Rules. The language of the arbitration shall be in English. The arbitral tribunal shall decide any dispute submitted to arbitration strictly in accordance with the substantive laws of Singapore (without regard to principles of conflict of laws thereunder) and shall not apply any other substantive law.

[The remainder of this page is intentionally left blank, execution page to follow]

IN WITNESS WHEREOF the parties hereto have executed this Agreement on the date first written above.

Authorised signatory of
**NEAR INTELLIGENCE PTE. LTD.**
Name: John Faieta

Authorised signatory of
**AEI LEGAL LLC**
Name: Andrea Chee
Designation: Managing Director

Witness' name: Christina Handal
NRIC/ Passport no: 665668607

Witness' name:
NRIC/ Passport no:

*Execution page*

**I**N WITNESS WHEREOF the parties hereto have executed this Agreement on the date first written above.

Andrea Chee (Nov 1 2023 09:48 GMT+8)

_____

Authorised signatory of
**NEAR INTELLIGENCE PTE. LTD.**
Name:

Authorised signatory of
**AEI LEGAL LLC**
Name: Andrea Chee
Designation: Managing Director

_____

Witness' name:
NRIC/ Passport no:

Witness' name: Thang Rui Ling
NRIC/ Passport no: SXXXX385E

*Execution page*