# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 12, 2024, at 1:00 p.m. (ET)** |
| | **Re: D.I. Nos. 22, 231, 243, 245, 288, 304, 305** |

## STATEMENT OF THE OFFICIAL
## COMMITTEE OF UNSECURED CREDITORS
## IN SUPPORT OF CONFIRMATION OF THE THIRD AMENDED
## COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement (the "Statement") in support of approval of the *Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 304] (the "Disclosure Statement" or "Plan", as applicable)[2] and respectfully states as follows:

1. Throughout these chapter 11 cases, the Committee has successfully worked with the Debtors and Blue Torch to reach consensus as to, first, key issues relating to the Sale, Bidding Procedures, and DIP Facility, and, then, the terms of the Plan that is now before the Court for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (9004), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Disclosure Statement or Plan, as applicable.

confirmation.

2. In this connection, the Committee's focus from the outset has been on the claims that the Debtors' estates hold against former officers, directors, and third parties that arise out of the Debtors' relationship with MobileFuse and the Debtors' failed deSPAC transaction, which it views as the sources of value most likely to fund a recovery at a reasonable level to the Debtors' unsecured creditors. Under the Plan, those claims will be contributed to a litigation trust (the "Litigation Trust"), but, until the Sale Hearing, there had been a dispute regarding the allocation of the Litigation Trust proceeds between Blue Torch on account of its unsecured deficiency claim, and the rest of the Debtors' general unsecured creditors.

3. In advance of the Sale Hearing, however—as a result of the Committee's continued negotiations with Blue Torch—the Committee, Blue Torch, and the Debtors reached a resolution (the "Plan Settlement") regarding the allocation of the proceeds of the Litigation Trust, which has now been incorporated into the Plan.

4. Under the Plan Settlement, each general unsecured creditor will receive, in full and final satisfaction of such creditor's Allowed General Unsecured Claim, either (a) its *pro rata* share of a general unsecured creditor cash pool equal to $750,000 (the "GUC Cash Pool"); or (b) at the election of each such creditor, an interest in the Litigation Trust entitling such creditor to its Pro Rata Share of the Litigation Trust proceeds, in accordance with the distribution priorities set forth in Section 9.11 of the Plan, up to the Allowed amount of such Allowed General Unsecured Claim.[3] The GUC Cash Pool will be funded via a loan provided by BTC Near HoldCo LLC (the "NewCo Trust Loan"). The NewCo Trust Loan will be subject to repayment from the proceeds of

---

[3] General unsecured creditors must make an election prior to or following the Effective Date and in accordance with the Litigation Trust Agreement and Confirmation Order. Distributions under this option will occur pursuant to the distribution scheme in Article 9.11 of the Plan.

the Litigation Trust.

5.  In addition, the Plan Settlement also provides an avenue for recovery for general unsecured creditors whose claims arise from Convertible Debentures, which are subject to subordination agreements in favor of Blue Torch.  Under the Plan Settlement and Article 9.11 of the Plan, such creditors may recover up to $900,000 in Litigation Trust Distribution Proceeds (in the aggregate among all holders of Convertible Debentures), prior to any enforcement of Blue Torch's rights under the subordination agreements.

6.  The Plan, as revised to reflect the Plan Settlement, provides the Debtors' general unsecured creditors with tangible benefits, whereas the original plan offered almost none. Accordingly, the Committee believes that the Plan Settlement maximizes recoveries to general unsecured creditors and therefore supports confirmation of the Plan and approval of the Disclosure Statement.

## RESERVATION OF RIGHTS

7.  The Committee supports confirmation of the Plan and approval of the Disclosure Statement in its current form, but to the extent that the Plan or Disclosure Statement is modified, the Committee reserves all rights with respect thereto.

[*Remainder of page intentionally left blank*]

Dated: March 8, 2024
     Wilmington, Delaware

Respectfully submitted,
**DLA PIPER LLP (US)**

*/s/ Aaron S. Applebaum*
R. Craig Martin, Esq. (DE #5032)
Aaron S. Applebaum, Esq. (DE #5587)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email:  craig.martin@us.dlapiper.com
aaron.applebaum@us.dlapiper.com

*- and -*

Dennis C. O'Donnell (admitted *pro hac vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email:  dennis.odonnell@us.dlapiper.com

*Counsel for the Official Committee of Unsecured Creditors*